Edwards Law
Jeff Edwards (TBN 24014406; to be admitted *pro hac vice*)
jeff@edwards-law.com
Law Offices of Carl F. Schwenker
Carl F. Schwenker (TBN 00788374, to be admitted *pro hac vice*)
cfslaw@swbell.net
706 Guadalupe Street
Austin, Texas 78701
Telephone:  512.623.7727
Facsimile:   512.623.7729

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARC OPPERMAN, et al., for themselves and all others similarly situated individuals,<br><br>            Plaintiffs,<br><br>        v.<br><br>PATH, INC. et al.,<br><br>            Defendants. | Case No. 3:13-cv-00453-JST<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT TWITTER, INC.'S RENEWED MOTION TO SEVER**<br><br><br>Hon. Jon S. Tigar |

Plaintiffs oppose and ask the Court to deny Defendant Twitter, Inc.'s ("Twitter's") Renewed Motion to Sever [Dkt # 236].  This same motion was dismissed on January 15, 2013, in an order finding that Plaintiffs' claims have a common "nexus" and that trying matters separately would waste judicial resources and risk inconsistent rulings.  Order [Dkt #217] at pp. 6-7.  Alone, those finding preclude severance.  Twitter's motion is also premature prior to discovery because it requires resolution of disputed facts.  Twitter's severance motion also cannot dispute facts alleged in Plaintiffs' otherwise uncontroverted complaint in an effort to gin up grounds for severance because Twitter has failed to timely answer Plaintiffs' pleadings.  FED. R. CIV. P. 8(b)(6) and 12(a)(4)(A).

## **BACKGROUND**

This putative consumer class action concerns Apple, Inc. ("Apple") *iPhone*™, *iPad*™ and *iPod touch*™ products ("iDevices"), the mobile iDevice address books owned by consumers, Apple's

"App Developer Program," and eleven (11) harmful iDevice-compatible "apps" that were created under Apple's App Developer Program using Apple-supplied tools, code and components and made available to iDevice owners for their iDevices exclusively through Apple's digital *App Store™*. SAC ¶¶ 1-7, 8-28, 56-86, 89-92, 97, 126, 129, 138-281, 300, 306, 310, 315-16, 369.   Each  harmful app, including Twitter's, had a common undisclosed feature: it automatically and surreptitiously transmitted the iDevice owner's private mobile iDevice address book back to the company that "developed" the app. SAC ¶¶ 1-7, 24-39, 56-83, 152, 231-372, 243-56.  Apple, through its comprehensive oversight and control of the app development and sales channels for iDevice-compatible apps, knew this feature was present in each of the identified apps in suit but nevertheless marketed each app and facilitated and encouraged their use.  SAC ¶¶ 3, 105-16, 136.

Into early 2012, the defendant developers (with Apple's knowing assistance) collected the private iDevice address books of millions of iDevice owners.  SAC ¶¶ 3, 7, 46-47.  Defendants' surreptitious address book collection practices and Apple's assistance violated iDevice owners' property,[1] privacy,[2]  and secrecy rights in their private iDevice address books, breached the terms governing Apple's App Developer Program, contradicted Apple's marketing statements on the safety and security of its iDevices and the apps available from its *App Store™*,[3] and violated ordinary standards of care.  SAC ¶¶ 7, 76-83, 88, 105-32 and pp. 57-61.  Plaintiffs assert that with Apple's help, these defendants wrongfully collected their valuable private address books from their iDevices in violation of numerous laws and statutes using methods that amount to computer hacking, wire tapping, wire fraud, deceptive practices, misappropriation and basic theft. SAC ¶¶ 44, and at p. 45-83.

Apple's iDevices, it turns out, were nowhere near as secure as Apple marketed them to be.

---

[1] *See* SAC ¶ 129 (noting that Apple instructs participants in its app developer program that "the Address Book database is ultimately <u>owned</u> by the user") (emphasis added).

[2] Mobile phone address books are vested with privacy interests.  *See United States v. Zavala*, 541 F.3d 562, 577 (5th Cir. 2008) ("[C]ell phones contain a wealth of private information, including emails, text messages, call histories, address books, and subscriber names.  Zavala [the cell phone owner] had a reasonable expectation of privacy regarding this information."); *United States v. Wurie*, 612 F. Supp.2d 104, 109 (D. Mass. 2009) (observing that it *"seems indisputable that a person has a subjective expectation of privacy in the contents of his or her cell phone"*).

[3] Apple CEO Steve Jobs said that apps from Apple's "curated" App Store would and could not have these problems. SAC ¶ 127.

2

SAC ¶¶ 3, 71, 83, 136.  Address books could easily be wirelessly collected from iDevices without notice because, until after this suit was filed, Apple did not restrict apps from accessing, altering or transmitting the address books maintained via the iDevice's pre-installed "contacts" app.  SAC ¶¶ 89-91, 141.  Thus, consumers who purchased iDevices, like these Plaintiffs, were short-changed by this iDevice address book security short-fall while Apple conversely received a windfall on its iDevice sales.  SAC ¶ 83.

Facing a public outcry and congressional inquiries on developers' harvesting of consumers' iDevice address books, several defendants promised to stop the practice, many publicly apologized, all released revised versions of their apps on the *App Store™*, and Apple announced that "[a]pps that collect or transmit a user's contact data without their prior permission are in violation of our guidelines." SAC ¶ 7, 61-63 and at pp. 34-53.  *See also* FAC [Dkt #3] at pp. 146-277 (illustrations).

## PROCEDURAL HISTORY

On March 13, 2012, Plaintiffs sued the defendants in the Western District of Texas.  Plaintiffs' Original Class Action Complaint [Dkt #1].  Except for defendant Hipster, Inc., who was served but has not appeared (and is subject to default), all other defendants have entered an appearance.

On September 11, 2012, Plaintiffs filed their Second Amended Class Action Complaint [Dkt # 103] ("SAC"), which is the only active pleading in the case.

Defendants' deadline to respond to the SAC was October 12, 2012.  Order [Dkt #106].  Defendants did not answer but instead filed a "barrage" of motions, seeking severance under FED. R. CIV. P. Rule 21, dismissal under FED. R. CIV. P. Rules 8 and 12(b), or, alternatively, transfer to the Northern District of California under 28 U.S.C. §1404(a).  Order [Dkt # 217] ("Transfer Order") at pp. 1-2.  *See also* Defendants' Initial Motions [Dkt ## 110, 122, 124, 135, 136, 141, 142, 145, 147].  Twitter's original severance motion [Dkt # 135] was included in this "barrage." Transfer Order at p. 1.

On January 15, 2013, Judge Sparks considered the defendants' motions, granted the alternate request for transfer under §1404(a), and "dismissed" defendants' pending motions to dismiss and motions to sever "without prejudice," ruling:

> [O]n this day the Court reviewed the entire file in the above-styled cause . . . specifically [] the . . . motions . . . the parties have leveled at the Court.  These are as follows: [containing a list identifying each of defendants' above-enumerated motions to

3

dismiss or sever] . . .. [H]aving considered the documents . . . the Court now enters the following opinion and orders. . . . There is no dispute [that three identified defendants] sold apps through ***the Apple app store***, which ***is the nexus*** of the allegations in this case.  The same applies to the other Defendants as well. . . . Two other class actions, based on similar allegations, are already pending in the Northern District of California. ***To try this case separately virtually guarantees a waste of judicial resources, and risks inconsistent rulings***. . . .  [T]he Court GRANTS Defendants' Motions to Transfer . . ..  ***All other motions are DISMISSED WITHOUT PREJUDICE***.

Transfer Order at pp. 1-8 (emphasis added).

As noted, the Court affirmatively acted on each of the defendants' pending Rule 12(b) motions by dismissing them.  Transfer Order at p. 8.  It did not, in contrast, leave the motions pending for a later ruling by this Court.  *Compare Galliani v. CitiMortgage, Inc.*, No 2:12-cv-00411-KJM-KJN (E.D. Cal., Jan. 4, 2013) (granting § 1404(a) transfer but noting that "[b]ecause the court grants defendant's motion to transfer venue, it does not reach the 12(b)(6) motion").  The Transfer Order does not specify or set a new date or deadline for defendants to answer the SAC nor indicate any revised timeline that alters standard deadlines contained in the Federal Rules.[4]  The Transfer Order also does not on its face explicitly grant defendants a right to re-urge any of their Rule 12(b) dismissal motions[5] or Rule 21 severance motions.  Thus, under the Federal Rules, the defendants' answers to the

---

[4] Notably, no defendant asked to reconsider, clarify, appeal or mandamus any ruling in the Transfer Order before the January 31, 2013 date when the transferred case file was received in this District, Order [Dkt # 220], Clerk's Notation [Dkt #219], and on which the Western District of Texas' plenary power expired.  *See Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509 (10th Cir. 1991) ("Once the files in a case are transferred physically to the court in the transferee district, the transferor court loses all jurisdiction over the case, including the power to review the case.  The date the papers in the transferred case are docketed in the transferee court, not the date of the transfer order, consequently forms the effective date that jurisdiction in the transferor court is terminated . . . [and] also forms the effective date that appellate jurisdiction in the transferor circuit is terminated; the transfer order becomes unreviewable as of that date.") (citing 15 FEDERAL PRACTICE AND PROCEDURE Sec. 3846 at 35) (citations omitted).  Accordingly, the Transfer Order is now law-of-the-case.  *See id.*; *Pac. Coast Marine Windshields v. Malibu Boats*, No. 1:11-cv-01594-LJO-BAM, 2011 U.S. Dist. LEXIS 139353, at *11 (E.D. Cal. Dec. 5, 2011) ("[w]hen an action is transferred, that which has already been done remains untouched . . ..").

[5] In view of the Transfer Order's failure to alter the earlier ordered October 12, 2012 SAC response date, any claimed right by a defendant to re-urge those dismissed 12(b) motions is suspect, at best. Even so, if the Transfer Order's dismissal "without prejudice" language were to imply a right to re-urge those dismissed motions, that right is not limitless and remains constrained by the deadlines in the Federal Rules.  By waiting more than a month (so far) since the date of the Transfer Order and the arrival of the case in this District, defendants have missed any outside window that arguably might exist under the Federal Rules, *see generally* FED. R. CIV. P. Rules 12 and 15 (containing pleading response deadlines of from 14 to a maximum of 21 days), to re-urge any Rule 12(b) motions and, thus, can no longer do so.  *See, e.g., Kema, Inc. v. Koperwhats*, No. 09-cv-01587- MMC (N.D. Cal., Dec.

*(Cont'd on next page)*

SAC were due within fourteen days from entry of the Transfer Order, or January 29, 2013.  FED. R.

CIV. P. Rule 12(a)(4)(A)(requiring a defendant to serve its responsive pleading "within 14 days after

notice of the court's action" on a motion to dismiss).  None have been filed.

On either January 31 or February 1, 2013, the clerk for this District received the case file,

docketed the case and assigned it a new case number.  *See* Order [Dkt # 220]; Clerk's Notation [Dkt

#219].  Twitter filed its Renewed Motion to Sever [Dkt # 236] on February 19, 2013.  To date, Twitter

has elected to not answer or respond to the SAC, though over 30 and 45 days, respectively, have

passed since receipt of the case in this District and entry of the Transfer Order.  (No other defendant

has answered, yet, either.)  This Court recently issued an order setting a case management conference.

Notice [Dkt #264].  At present, discovery has not begun.

### LEGAL STANDARD FOR TWITTER'S RULE 21 MISJOINDER MOTION

Twitter has re-moved to sever under Rule 21.[6]  Renewed Motion [Dkt # 236].  Rule 20,

entitled permissive joinder of parties, sets the applicable standard under which a court assesses

whether claims and parties are properly joined or may be severed.  *See Acevedo v. Allsup's

Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010) (citing *Pan Am. World Airways, Inc. v.

U.S. Dist. Court for Cent. Dist. of Cal.*, 523 F.2d 1073, 1079 (9th Cir.1975)) ("[s]ince Rule 21 does

not provide any standards by which district courts can determine if parties are misjoined, courts have

looked to Rule 20 for guidance").  Rule 20(a)(2) lets plaintiffs join multiple defendants in one case if:

> (A) ***any right to relief is asserted against them jointly***, severally, or in the alternative with respect to or ***arising out of the same*** transaction, occurrence, or ***series of transactions or occurrences***; and

> (B) ***any question of law or fact common to all*** defendants will arise in the action.

---

*(Cont'd from previous page)*

21, 2010)  (Chesney, J.) (striking defendant's motion dismiss filed four days after the responsive pleading deadline and ordering defendant to promptly answer plaintiff's complaint).

[6] While Twitter asks to be "dropped" from the case, Rule 21 states that misjoinder is not grounds for dismissal.  FED. R. CIV. P. 20(a)(2).  Indeed, a severed action would almost certainly remain a consolidated case before this Court and be coordinated for at least pre-trial proceedings.  FED. R. CIV. P. 42(a) ("If actions before the court involve ***a*** common question of law or fact, the court may (a) join for hearing or trial any or all matters at issue in the actions, [or] (b) consolidate the actions.") (emphasis added).

FED. R. CIV. P. 20(a)(2) (emphasis added).  "The Ninth Circuit has interpreted the phrase 'same transaction, occurrence, or series of transactions or occurrences' to require a degree of *factual commonality* underlying the claims." *Bravado Int'l Grp. Merch. Servs. v. Cha*, 2010 WL 2650432, at *4 (C.D. Cal. Jun. 30, 2010) (citing *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)). Typically, this means that a party "must assert rights . . . that arise from related activities — a transaction or an occurrence or a series thereof."  *Id.*

Courts have discretion to sever claims, so long as those claims are *discrete and separate* from the other claims in the complaint.  *See United States v. Testa*, 548 F.2d 847, 856 (9th Cir. 1977); *Wynn v. Nat'l Broad. Co., Inc.*, 234 F. Supp. 2d 1067, 1078 (C.D. Cal. 2002) ("A determination on the question of joinder of parties lies within the discretion of the district court.").  Nevertheless, Rule 20 "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits."  *League to Save Lake Tahoe v. Tahoe Reg. Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977) (citations omitted). "'Under the rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; *joinder of claims, parties and remedies is strongly encouraged*.'" *Id.* (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)) (emphasis added).[7]

## DISCUSSION

Here, the joinder of Twitter in this action easily satisfies Rule 20's criteria.  Separating Twitter would waste resources, create inefficiencies and cause inconsistencies.  Moreover, the motion is premature, it conflicts with the Transfer Order, and impermissibly raises factual disputes in conflict with the presently uncontroverted SAC.  Indeed, the vast majority of defendants have not sought severance Accordingly, Twitter's renewed motion should be denied for the following reasons.

---

[7] *See also Viada v. Osaka Health Spa, Inc.*, 235 F.R.D. 55, 61 (S.D.N.Y. 2006) ("The requirements of Fed. R. Civ. P. 20(a) are to be interpreted liberally 'to enable the court to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding.'")  "Although the specific requirements of Rule 20 . . . may be satisfied, a trial court must also examine the other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness." *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980).  Such factors may include judicial economy, prejudice, and whether separate claims require different witnesses and documentary proof. *SEC v. Leslie*, No. C 07-3444, 2010 WL 2991038, at *4 (N.D. Cal. Jul. 29, 2010) (Fogel, J.).

First, Twitter's renewed motion disregards a facially-dispositive fact: Twitter and co-defendant Apple are **joint tortfeasors**—they assisted, collaborated, and conspired with one another and mutually benefited from their wrongful, harmful acts described in the SAC.  *See* SAC ¶¶ 1-7,58-60, 75, 105-23, 133-35, 231, 326-32, 335-68, 410-14.  Plaintiffs expressly allege that Twitter was able to harvest their iDevice address books (and, thereby harm them) **because** Twitter, Apple and their products worked together in myriad ways (i.e., in the same transaction or occurrence).  *Id*.  Irrespective of a conspiracy, the benign inquiry into the interactions between Twitter's app and Apple's iDevices that allowed the collection of iDevice address books, by itself, warrants (and may, in fact, mandate, *see* FED. R. CIV. P. 19) joinder of Plaintiffs' claims against Twitter and Apple in one suit.  Thus, Twitter is **_properly joined_** in this action under FED. R. CIV. P. Rule 20.

The chart below of the cross-pollination of defendants' apps on plaintiffs' iDevices and plaintiffs' defendant-specific claims show that this holds true for Apple and each of its co-defendants:

| Chart I: Matrix of Plaintiff's cross-pollinated claims Defendants | | Defendants | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Apple | Foodspotting | Foursquare | Gowalla (Facebook) | Hipster | Instagram | Kik | Path | Rovio (Chillingo/EA) | Twitter | Yelp | ZeptoLab (Chillingo/EA) |
| Plaintiffs | Mr. Beurshasen | x | | | x | | | | | x | x | | |
| | Ms. Biondi | x | | | | | | | | | x | x | x |
| | Mr. Dean | x | | | x | | | | | x | x | | |
| | Ms. Dennis-Cooley | x | | | | | x | x | x | | x | | |
| | Ms. Hodgins | x | | | | | | | | x | x | x | x |
| | Mr. Green | x | | | | | x | x | x | x | | | x |
| | Mr. Hoffman | x | | x | | | x | | | | x | x | |
| | Ms. King | x | x | x | x | x | x | | | | x | | |
| | Ms. Mandaywala | x | | x | x | | x | | | x | x | x | x |
| | Ms. Moses | x | | | | | x | | | | x | | |
| | Mr. Opperman | x | | | | | x | | x | x | x | | |
| | Ms. Paul | x | | x | x | | | | x | | x | x | |
| | Ms. Sandiford | x | x | x | x | | x | | | x | | x | x |
| | Mr. Varner | x | | x | x | | x | | | x | x | | x |

*See* SAC ¶¶ 8-21, pp. 33-53, and 57-81.[8]  As a result of this cross-pollination of apps, each plaintiff has multiple overlapping claims against Apple and from four to eight of its co-defendants. SAC pp. 1-4, 57-82.  As this matrix shows, the plaintiffs' claims against the 15 defendants are inextricably cross-linked and any severance would complicate matters and prejudice numerous parties.[9]

Second, Plaintiffs' claims against Twitter integrally relate to and intertwine with the claims against all of Twitter's co-defendants, not just Apple.  The same series of transactions or occurrences led to all claims in the case: the developer defendants' creation and sale to consumers exclusively under and through Apple's App Developer Program and *App Store*™ of apps that similarly collected Plaintiffs' valuable private address books from their Apple-manufactured iDevices and surreptitiously transferred them to the defendants.  *See generally* SAC; Transfer Order at p. 5 (dubbing the sale of these apps through the *App Store*™ the "nexus of the allegations in this case").

The factual commonalities between these related series of transactions are overwhelming.  For example, Plaintiffs obtained each harmful app for his or her iDevice from Apple; Apple approved and released each app over its *App Store*™ (the exclusive source for iDevice-compatible versions of each app in suit); each app was created using Apple-supplied tools, code, components and certificates under the contractually-mandated terms, conditions and policies of Apple's App Developer Program; Apple purportedly reviewed and tested each app for compliance with common Apple-mandated legal and technical standards; and each app nevertheless collected Plaintiffs' valuable private address books from Plaintiffs' iDevices in violation of those standards and agreements.  Not surprisingly, myriad common legal and factual issues predominate over any distinctions pointed to by Twitter.

Only one common issue of fact or law—for example, the question of what protectable rights a person has in an iDevice address book (which permeates the claims against all defendants)—is needed to justify joinder.  The class commonality portion of Plaintiffs' SAC, SAC ¶¶ 48, identifies a page

---

[8] Notably, the *Twitter* app was the most prevalent app across the fourteen plaintiffs' iDevices, appearing thirteen (13) times.

[9] Severance of any developer, such as Twitter, from Apple would likely violate Rule 19's compulsory joinder rules.  FED. R. CIV. P. Rule 19 (mandating that parties be joined if in their absence complete relief cannot be afforded or the absent party's interest would, as a practical matter, be impaired).

worth's of applicable common inquiries in this case.[10]  Thus, all defendants, including Twitter, are properly joined in this action.  FED. R. CIV. P. Rules 20, 21.

Third, the Transfer Order precludes re-litigation of Twitter's already-rejected contention that a unitary case will present more inefficiencies than a multitude of cases against severed defendants.  Six weeks ago, Judge Sparks dismissed Twitter's first severance motion and stated that separately managing cases against Apple, Path, and this case's defendants (including Twitter)  "would virtually guarantee[] a waste judicial resources, and risk inconsistent rulings."  Transfer Order at p. 7.  That ruling is unassailable by Twitter at this juncture; it is the law of the case.[11]  Thus, in view of Judge Sparks' determination on the miscellaneous joinder inquiries, *see supra*, n. 7, severance of any defendant is inappropriate.  FED. R. CIV. P. Rules 21.

Fourth, Twitter's severance motion is, at best, premature in advance of discovery.  *See Anticancer, Inc. v. Pfizer Inc.*, No.11-cv-107 JLS RBB, 2012 WL 1019796, *4 (S.D. Cal. Mar. 26, 2012) (denying motion to sever as premature until "after discovery, claim construction, and pretrial motion practice have been completed").  Twitter's motion relies on information in Twitter's control (i.e., attached Twitter documents and Twitter employee testimony) and seeks the Court's pre-discovery resolution for severance purposes of fundamental factual issues pertaining to the merits of the case.  For example, the SAC states that ***Twitter did not obtain consent*** to collect or upload Plaintiffs' private iDevice address books, SAC ¶¶ 235-37, Twitter's motion now says that it did and presents that controverted fact as a primary reason to sever Twitter from the other defendants.  *See* Motion at pp. 2-3, 8.  Before substantial discovery has been conducted, Plaintiffs are unable to

---

[10] Plaintiffs also direct the Court to Plaintiff's response to Twitter's first severance motion, Plaintiffs' Response To Twitter and Rovio's Rule 21 Motions to Sever [Dkt #194], wherein Plaintiffs detail numerous additional common facts underlying the claims against each defendant and describe how the claims against each defendant all arise of the same series of transactions or events.

[11] Under the law-of-the-case doctrine, "'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'"  *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (citation omitted); *accord Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988).  The doctrine applies to the decisions of a transferor court following a § 1404 transfer.  *See Christianson*, 486 U.S. at 816 & n.5 (1988); *see also, e.g., NPR, Inc. v. Am. Int'l Ins. Co.*, 242 F. Supp. 2d 121, 126 (D.P.R. 2003) (applying doctrine after transfer under 28 U.S.C. § 1404(a)).  As numerous courts have recognized, "[a]dherence to law of the case principles is even more important . . . where the transferor judge and the transferee judge are not members of the same court." *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 169 (3d Cir. 1982).

9

investigate and the Court is unable to fairly or adequately question, test or resolve that dispute or assess the veracity of Twitter's contended distinctions.  Thus, Twitter's motion is premature and should be denied or, at minimum, deferred until the conclusion of discovery.[12]

Fifth, to justify severance, Twitter's motion relies on its version of disputed factual issues and its contentions about the sufficiency of Plaintiffs' claims.  Twitter, though, has not pled or otherwise responded to the SAC.  Absent a timely responsive pleading, which Twitter never filed, Plaintiffs' pleadings stand uncontroverted and the SAC's factual and legal allegations control.  See, e.g., FED. R. CIV. P. Rule 8(b)(6) ("Effect of Failing to Deny. An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").  Accordingly, should Twitter's motion warrant even cursory consideration, the Court should take the SAC contentions as true and disregard any conflicting contentions in and materials attached to Twitter's severance motion.[13]

## CONCLUSION

For the foregoing reasons, severance is unwarranted and Plaintiffs ask this Court to deny Twitter's renewed motion to sever or, at minimum, defer its consideration until the conclusion of discovery.

---

[12] See A&E Products Group L.P. v. The Accessory Corp., No. 00-7271 (LMM), 2002 WL 1041321, at *2 (S.D.N.Y. May 23, 2002) ("the Court denies plaintiff's motion with leave to renew at such time as discovery is complete and all dispositive motions are resolved").  While Twitter presumably is well-informed about its own products, processes, and documents, at this stage the other parties and the Court are not—certainly not enough to assess or resolve the purported similarities or dis-similar features of the various defendants' apps.  Accordingly, the overwhelming majority of courts deny as premature motions to sever prior to discovery.  See @ First Time Videos, 276 F.R.D. at 258 (listing cases).

[13] Twitter's pre-answer severance motion is not an adequate substitute for, nor can it supplant or circumvent the requirement of, a timely answer or Rule 12(b) motion.

Dated: March 5, 2013                    Respectfully submitted,

LAW OFFICE OF CARL F. SCHWENKER

By:  /s/
            Carl F. Schwenker

706 Guadalupe Street
Austin, Texas 78701
Telephone: 512.480.8427
Facsimile:  512.857.1294
cfslaw@swbell.net

Jeff Edwards
EDWARDS LAW
706 Guadalupe Street
Austin, Texas 78701
Telephone: 512.623.7727
Facsimile:  512.623.7729
jeff@edward-law.com

Attorneys for Plaintiffs

11

1                  UNITED STATES DISTRICT COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3                 SAN FRANCISCO DIVISION

| | |
|---|---|
| 4   MARC OPPERMAN, et al., for themselves and all others similarly situated individuals, | Case No. 3:13-cv-00453-JST |
| 5 | |
| 6          Plaintiffs, | **[PROPOSED] ORDER DENYING DEFENDANT TWITTER, INC.'S RENEWED MOTION TO SEVER** |
| 7     v. | |
| 8   PATH, INC. et al., | |
| 9          Defendants. | Hon. Jon S. Tigar |

10      The Court, having considered Defendant Twitter, Inc.'s ("Twitter's) Renewed Motion to Sever

11 [#236] and the papers filed in support of and in opposition to the motion, the oral arguments of

12 counsel, and the record as a whole, determines as follows:

13      The parties are properly joined in this action.  Fed. R. Civ. P. 20, 21.  Plaintiffs' claims against

14 the defendants, including Twitter, arise out of the same series of transactions and occurrences, involve

15 common questions of law and fact, and present issues of joint and several liability.

16      Severing any defendant, including Twitter, would risk inconsistent rulings and adjudications,

17 result in duplication of proceedings, waste judicial resources, and exponentially increase the burdens

18 on the parties and witnesses.  Moreover, Twitter and its co-defendants are unlikely to be prejudiced by

19 the maintenance and trial of this suit as a single proceeding.

20      Accordingly, **IT IS HEREBY ORDERED** that Twitter's motion is **DENIED.**

21 DATED: _____, 2013

22

23                     _____

24                     Honorable Jon S. Tigar
                      UNITED STATES DISTRICT JUDGE

25

26

27

28

PLAINTIFFS' OPPOSITION TO TWITTER'S RENEWED MOTION TO SEVER
CASE NO. 3:13-CV-00453-JST