UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARC OPPERMAN, et al., | Case No. : 13-cv-00453-JST |
| Plaintiffs, | CLASS ACTION |
| v. | **JOINT CASE MANAGEMENT STATEMENT** |
| PATH, INC., et al., | |
| Defendant. | **THIS DOCUMENT RELATES TO ALL CASES** |
| | DATE:          June 21, 2013<br>TIME:           2:00p.m.<br>COURTROOM:  9<br>JUDGE:         Hon. Jon S. Tigar |
| OSCAR HERNANDEZ, et al., | |
| Plaintiffs, | Case No. : 12-cv-01515-JST |
| v. | CLASS ACTION |
| PATH, INC., | |
| Defendant. | |
| MARIA PIROZZI, | |
| Plaintiff, | Case No.: 12-cv-01529 JST |
| v. | CLASS ACTION |
| APPLE INC., | |
| Defendant. | |

Pursuant to Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-9, and the Court's docket entry Order dated May 17, 2013 (*Opperman* Dkt. No. 327), the undersigned counsel for Plaintiffs and Defendants in the above-captioned actions hereby submit this Joint Case Management Statement.

## I.   JURISDICTION AND SERVICE

There are no issues pending concerning personal jurisdiction, venue, or service of process, with the exception of Kik Interactive, Inc. ("Kik"), explained in greater detail in Section I.B.1, below.

### A.   <u>Plaintiffs' Positions</u>

Plaintiffs assert that the Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1332(d) ("CAFA"). For each Related Action, the proposed Class consists of 100 or more members, at least one proposed Class member is a citizen of a state that is diverse from any defendant's citizenship, and the matter in controversy exceeds $5,000,000 USD, exclusive of interest and costs.

#### 1.   *Opperman* **Plaintiffs' Position**

Plaintiffs meet the criteria for standing under Article III of the Constitution. Their operative Second Amended Complaint ("SAC"), ECF No. 103, identifies particularized injuries fairly traceable individually and jointly to each defendant that monetary, injunctive, equitable and/or declaratory relief can remedy.

The iDevices and Apps Plaintiffs purchased and obtained from Apple Inc. ("Apple") and, indirectly, Apple's co-defendants lacked important attributes they were marketed to have in areas impacting iDevice address book security, control and privacy and fell below industry and Apple's own standards. Plaintiffs overpaid Apple for those products and Apple and its co-defendants were negligent in releasing them.

These inadequacies allowed Defendants to knowingly and intentionally exploit, interfere with, and appropriate Plaintiffs' personal property – specifically their iDevices and their valuable private iDevice address books. Defendants wrongfully exercised domain and control over

1

1   Plaintiffs' iDevices and iDevice address books, caused Plaintiffs' iDevices to transmit and

2   publicly disclose Plaintiffs' private iDevice address books to third parties, and acquired (or

3   facilitated the wrongful acquisition of) Plaintiffs' valuable, private iDevice address books.  Thus,

4   Plaintiffs' injuries are concrete – they suffered actual economic damages in amounts to be

5   calculated and proven at trial – are particularized, as they are specific to Plaintiffs and others

6   who purchased or acquired iDevices and the Apps in suit from Apple, and are redressable by

7   monetary and other awards.   The SAC further states that Plaintiffs are entitled to statutory

8   awards for Defendants' statutory violations, equitable and monetary relief for Defendants' unjust

9   enrichment at Plaintiffs' detriment, and declarations on the validity of, enforceability of, and

10  respective rights under disputed purported legal agreements between the Plaintiffs and the

11  Defendants, including Apple.  Each of Plaintiffs' claims establish Plaintiffs' standing to pursue

12  this case.

13        Several Defendants previously moved last October to dismiss Plaintiffs' SAC on Article

14  III standing grounds under Rule 12(b)(1).  ECF Nos. 136 at pp. 3-4, 145 at pp. 5-7, and 147 at

15  pp. 14-19.   They did not prevail.   Judge Sparks of the Western District of Texas (Austin

16  Division) instead granted their alternate request to transfer the *Opperman* action to this Court

17  under § 1404(a),concurrently "dismissed without prejudice" Defendants' Rule 12(b) and other

18  motions, but did not re-set the expired Rule 12(b) response deadline of October 12, 2012 that had

19  been set by the Court at Defendants' own request.  ECF Nos. 104, 106 and 217 at pp. 1, 8.  Thus,

20  Defendants are not entitled to either resubmit their prior Rule 12(b) motions or file revised or

21  new versions of those motions.  See infra § IV.A.1.a.

22        In his transfer Order, Judge Sparks explicitly ruled that all Defendants – including Kik –

23  are properly subject to the personal jurisdiction of and venue in this Court. ECF No. 217 at p. 6.

24  Moreover, personal jurisdiction and venue are deemed findings implicit in all transfer orders

25  under § 1404(a).  Kik did not appeal or mandamus Judge Sparks' Order.  Accordingly, that

26  Order is preclusive on issues of personal jurisdiction and venue for all Defendants.  Thus, Kik

27

28

2

1   may not challenge personal jurisdiction or attempt to assert a motion under Rule 12(b)(2) here.

2   <u>See</u> § I.B.1,

3            **2.**     *Hernandez* **Plaintiffs' Position**

4       No disputes regarding personal jurisdiction or venue exist and no parties remain to be

5   served.

6       See *Hernandez* Plaintiffs' fact section below in Sec. II(A)(2) describing the injury-in-fact

7   suffered by Plaintiffs that meets the Article III standing requirements of the United States

8   Constitution.

9            **3.**     *Pirozzi* **Plaintiff's Position**

10       Upon information and belief, Pirozzi also states that, based upon Defendant's sales

11   through retail stores nationwide, more than two-thirds of all members of the proposed Class are

12   citizens of a state other than California.

13       Pirozzi has met all three prongs of the standing requirement under Article III of the

14   United States Constitution because her complaint alleges a particularized injury traceable to

15   Apple that can be redressed through monetary and injunctive relief. Pirozzi alleges a concrete

16   economic injury based on failure to receive benefit of the bargain or overpayment for her Apple

17   Device. This injury is concrete – resulting in actual economic damages in amounts to be

18   calculated and proven at trial – and is particularized, because it is specific to Pirozzi and other

19   Apple Device purchasers. This Court has previously found that "[o]verpaying for goods or

20   purchasing goods a person otherwise would not have purchased based upon alleged

21   misrepresentations by the manufacturer would satisfy the injury-in-fact and causation

22   requirements for Article III standing. Counts I through IV, for violations of California's UCL,

23   FAL and CLRA, and Negligent Misrepresentation, allege that Pirozzi overpaid and/or purchased

24   an Apple Device based upon Apple's alleged misrepresentations." Pirozzi's Second Amended

25   Class Action Complaint (the "Pirozzi Complaint") enumerates misrepresentations made by

26   Apple to Pirozzi and members of the Class as well as the basis for Pirozzi's decision to purchase

27   the Apple Device and to download apps. *See* Pirozzi Complaint ¶¶10, 80-85.

28

3

**B.      Defendants' Positions**

**1.      App Developer Defendants' Position in *Opperman***

Defendants in the above-captioned actions contend that the *Opperman* complaint, and any consolidated complaints, should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of standing under Article III of the United States Constitution.

Plaintiffs' claims center on the allegedly improper use of address book information from iOS devices (iPhone, iPad, and iPod Touch, or generally "iDevices") to facilitate the use of free software applications ("apps") that individuals voluntarily downloaded.  Plaintiffs allege that, as part of each app's functionality, the app transferred information from a user's contact book to the app developer.  Although plaintiffs allege that different apps implemented this functionality in different ways, they allege that this was done for the purpose of helping users connect with their contacts who are also using the application.  These allegations do not establish any cognizable injury in fact that is fairly traceable to any App Developer Defendant.

*First*, Plaintiffs' allegation that Defendants' use of their address books somehow made them obtainable by third parties is too vague and speculative to establish Article III standing. *Second*, the theory that the contact books have intrinsic economic value has been repeatedly rejected by courts considering similar arguments.   *Third*, Plaintiffs' vague allegations that Defendants' actions used iDevice resources (such as battery life)—which are not tied to any specific Plaintiff, device, or Defendant—fail to allege that any specific Plaintiff experienced actual injury.  And *fourth*, Plaintiffs' allegation that Defendants uploaded their address books to enable software features can only establish a benefit, rather than any harm to Plaintiffs.

Plaintiffs' claims for "statutorily authorized awards" do not overcome these deficiencies. While the Ninth Circuit has recognized that Article III standing exists for certain statutory claims even without actual injury, here Plaintiffs have failed to state a claim for relief under any such statute.

Finally, the *Opperman* Plaintiffs make a bizarre argument that Defendants cannot move to dismiss, but instead must now answer their Second Amended Complaint.  But Judge Sparks'

4

1   order—granting Defendants' motions to transfer the case from the Western District of Texas—

2   said precisely the opposite, expressly noting that the denial of Defendants' other Rule 12 motions

3   was "without prejudice."  And this Court laid Plaintiffs' argument to rest in its Order of May 17,

4   2013 by granting "Defendants in each action . . . an extension of time, if applicable, for

5   responding to the complaint(s)."  (*Opperman Dkt. No.* 327 at 2:13-14.)

6       Uniquely among the App Developer Defendants, Kik asserts that the *Opperman*

7   Plaintiffs' claims against it should be dismissed for lack of personal jurisdiction under Rule

8   12(b)(2).  Kik is a foreign corporation with its headquarters, principal place of business, and sole

9   office located in Ontario, Canada; Kik does not advertise in or derive any revenue from

10  California, does not employ any persons residing in California, and none of the named Plaintiffs

11  alleged to have downloaded Kik Messenger reside in California.

12                          **2.      Path's Position in *Hernandez*.**

13      No disputes exist as to personal jurisdiction or venue.

14      Path contends that the *Hernandez* plaintiffs lack subject-matter jurisdiction, because they

15  do not allege an injury in fact as required by Article III of the United States Constitution.  Path

16  previously moved to dismiss Counts III through X of Hernandez's First Amended Complaint for

17  lack of Article III standing under Fed. R. Civ. P. 12(b)(1).  On October 19, 2012, Judge Gonzalez

18  Rogers issued an Order Granting in Part Path's Motion to Dismiss with Leave to Amend

19  (*Hernandez* Dkt. No. 33), dismissing numerous claims and finding the only basis for Article III

20  standing to be the *Hernandez* Plaintiffs' allegation that Path installed "tracking software" on

21  users' iDevices that Plaintiffs would need to hire forensic experts to remove.  *Id.* at 3.  Plaintiffs

22  now intend to withdraw their allegations that Path installed tracking software when they seek

23  leave to file an amended complaint.  Path believes that Plaintiffs will not satisfy the requirements

24  for Article III standing with the elimination of their tracking software allegations, and Path

25  reserves its right to oppose Plaintiffs' causes of action on this basis and to oppose new causes of

26  action.

27

28

5

### 3. Apple's Position in *Pirozzi* and *Opperman*

Apple asserts that this Court lacks subject matter jurisdiction over the claims asserted against Apple in both the *Pirozzi* and *Opperman* matters because Plaintiffs in both cases have failed to allege that they personally suffered an injury-in-fact that is fairly traceable to Apple, as required to satisfy Article III standing. Judge Gonzalez Rogers previously found that Plaintiff Pirozzi lacked Article III standing to bring her claims because she failed to allege facts sufficient to show that she suffered *any* actual injury, much less a concrete and particularized injury that is fairly traceable to Apple's conduct. Pirozzi's Second Amended Complaint does not cure this defect or allege that Apple caused any plaintiff any concrete injury-in-fact. Likewise, Plaintiff Opperman's 439-paragraph, 83-page Second Amended Complaint is devoid of a single allegation that Plaintiffs personally lost money or property or in any way suffered a non-speculative injury-in-fact that is in any way attributable to Apple.

Instead, both complaints focus entirely on allegations that third-party app developers accessed Plaintiffs' contacts from their mobile devices without consent (without in any way involving Apple or Apple's servers), and that app developers alone used and benefited from Plaintiffs' information. Because any conceivable harm resulted solely from the independent actions and content of third-party app developers—and *not* from any conduct of Apple—both the *Pirozzi* and *Opperman* complaints should be dismissed because Plaintiffs have not identified any injury that can be "fairly traced" to Apple.

## II. FACTS

### A. Plaintiffs' Positions

#### 1. *Opperman* Plaintiffs' Position

Plaintiffs and Class members bought iDevices from Apple. SAC at ¶ 84. Each iDevice came with certain pre-installed Apps, including the "Contacts" App that helps users maintain and manage their address book contacts on their iDevices. SAC ¶ 89–92. Apple encouraged Plaintiffs to maintain and manage their address books – which Plaintiffs spent time and effort collecting and compiling – on their iDevices. Plaintiffs' iDevice address books are personal

6

1    property, have value, SAC ¶ 77-79, 89-92, are non-public, are private, and are admitted by Apple

2    to be owned by Plaintiffs.

3          The App Store is a centralized system and on-device storefront under which Apple

4    collects, markets, sells, distributes and activates other Apps designed by Apple or third parties.

5    SAC ¶ 93–95.  To oversee the creation and inclusion of third-party Apps in its App Store, Apple

6    created the iOS Developer Program; App developers pay a fee to participate in the program, and

7    if they charge users for their Apps, Apple charges them 30% of App revenue.  SAC ¶ 98.  With

8    limited exceptions, the only way to offer or obtain a third party App for an iDevice is via the App

9    Store.  SAC ¶ 102.

10         Apple's iOS Developer Program functions as Apple's "testing, review and legal

11   clearance process," resource bank and virtual app manufacturing facility for Apple's aspiring app

12   developer registrants.  SAC ¶ 105, 111.  Through that program, Apple promulgated standards

13   and guidelines which App developers must comply with to distribute Apps through the App

14   Store.  SAC ¶ 105-08.  Apple purports to review every app on the App Store based on a set of

15   technical, content, and design criteria, as well as for reliability, offensive material, malware and

16   privacy issues.  SAC ¶ 111 and 114.

17         Apple represented to its users that apps offered on or obtained from the App Store would

18   respect users' property and users' privacy.   SAC ¶ 127.   Apple's then-CEO Steve Jobs

19   announced that the App Store would not and did not distribute malicious apps or apps "that

20   invade [iDevice owners'] privacy" and that the App Store provided users "freedom from

21   programs that steal your private data [and] freedom from programs that trash your [mobile

22   device] battery."  SAC ¶ 127.  As part of those representations, Apple tells its developers that

23   "the Address Book database is ultimately owned by the user." SAC ¶ 129.

24         Contrary to its public representations, however, Apple's mandatory guidelines for

25   designing Apps, called iOS Human Interface Guidelines, actually encouraged developers to take

26   users' private contacts and address book materials without consent. SAC ¶ 133.   Apple's

27   tutorials and developer sites also taught App developers how to code and create Apps that non-

28

7

consensually access, manipulate, alter, use and upload the address book maintained on an owner's iDevice.  Thus, not only did Apple fail in its review and oversight process to exclude apps that surreptitiously steal users' private address books, it actively encouraged, facilitated, enabled and provided the tools and components to accomplish such activity.

With Apple's support, Apple's co-defendant app developers each created an App which, following Apple's review, Apple released, marketed, and distributed on the App Store.  SAC ¶ 205, 231.  These Defendants' Apps each had a similar undisclosed function which, when triggered, caused users' iDevice address books to be uploaded without alerting users of that fact or seeking prior consent to do so.  SAC ¶ 207-211, 232, 234, 235, 237.  Consequently, until at least mid-February 2012 and with Apple's express knowledge and blessing, millions of iDevices running  Defendants' Apps illegally uploaded substantial portions of millions of iDevice owners' private iDevice address books to the Internet and, subsequently, to the Defendants' servers for the Defendants' commercial benefit.

Though the Defendants each represented that their products and associated services were safe and that users' private or otherwise protectable materials would not be exposed to or shared with third-parties without the user's express consent, this was not the case.  Instead, iDevices were vulnerable to malicious apps, which Apple itself released.  Moreover, Plaintiffs purchased their iDevices under the expectation that their private iDevice address books would remain safe and subject to their exclusive control.  They would not have paid as much for their iDevices had Apple accurately represented that appropriate safeguards were not in place.

### 2.  *Hernandez* **Plaintiffs' Position**

*Hernandez* Plaintiffs filed their lawsuit on behalf of themselves and a class of similarly situated individuals ("Class Members") over allegations that after Class Members downloaded and installed Defendant Path, Inc.'s ("Path") application on their mobile devices, Path surreptitiously sent code to Plaintiffs' and Class Members' mobile devices that gave Path access to private contact address book data and subsequently uploaded this contact address book data to Path's servers, all without any notice or consent of Plaintiffs or Class Members.

1    Plaintiffs contend that Path released Path version 2.0 on or about November 29, 2011,
2    containing a new feature that surreptitiously uploaded Plaintiffs' and Class Members' private
3    contact address book data to Path's servers without notice or consent.  Prior to its release of Path
4    version 2.0, Path had very few new user registrations per month.  In an effort to increase and
5    broaden its user base—and therefore increase its potential revenue base—Path created and
6    released Path version 2.0.  Immediately following the release of Path version 2.0 on or about
7    November 29, 2011, Path's monthly new user registrations dramatically increased.  Plaintiffs
8    allege that Path's explosive new user registration growth was a direct result of its newly-enabled
9    and surreptitious address book upload feature contained within Path version 2.0.  The cash value
10   of users' personal information can be quantified.  For example, recent studies have valued user
11   contact information at approximately $4.20 per year (and other studies value user contact
12   information at even higher amounts) and active markets exist worldwide for user contact
13   information.  Thus, Plaintiffs allege, Path took valuable information in the form of Plaintiffs' and
14   Class Members' address book data without permission or payment and utilized such information
15   to dramatically broaden and increase its user—and revenue—base.

16   Plaintiffs and Class Members also allege Path stored this information on its servers and
17   used the information for purposes including efforts to track future interactions on third-party
18   social network sites, and stored and transmitted this data in an insecure manner exposing it to an
19   increased risk of theft.  After the public became aware of Path's actions, Path admitted it had
20   improperly accessed users' phone contacts.  The contact address books, which Path improperly
21   uploaded and stored, contain sensitive personal information regarding Plaintiffs and Class
22   Members, such as what doctors Plaintiffs and Class Members may have seen for health issues
23   and what religious organizations they are associated with, as well as sensitive personal
24   information about Plaintiffs' and Class Members' contacts, including full names, phone numbers,
25   physical and email addresses, instant message screen names, job titles, employers, websites,
26   birthdates, notes, and more.

27

28

9

1    Plaintiffs allege that Path's conduct violated certain state statutes and state common law.

2    Plaintiffs further contend that these actions carried out by Path diminished Plaintiffs' and Class

3    Members' mobile device resources, such as storage, battery life, and bandwidth, and caused an

4    increased, unexpected, and unreasonable risk to the security of sensitive personal information.

5              **3.      *Pirozzi* Plaintiff's Position**

6    Pirozzi alleges, on behalf of herself and all other purchasers of the Apple iPhone, iPod

7    touch and/or iPad mobile devices (the "Apple Device") who purchased mobile software

8    applications ("apps") from Apple, Inc. ("Apple" or the "Company") through an Apple-controlled

9    digital distribution platform that makes software available to the Apple Devices – the App Store.

10   Pirozzi alleges that the App Store is under Apple's exclusive domain and the Company has

11   ultimate control of what apps are available for purchase or download by consumers.  Pirozzi

12   seeks to represent a class consisting of all persons who purchased an Apple Device between June

13   15, 2010 and the present and who downloaded apps on these devices (the "Class").

14   Pirozzi alleges that Apple has designed the Apple Devices to accept apps only from the

15   App Store.  Pirozzi further alleged that each Apple Device comes pre-programmed with certain

16   built-in apps created by Apple.  These Apple-created apps cannot be deleted from the Apple

17   Device.  The App Store is one of such built-in app and provides Apple Device purchasers with

18   instant access to any app available through the App Store.  Similarly, additional built in apps

19   includes the Photos app (where users can store personal photographs and videos) as well as the

20   Contacts app (which allows users to customize contacts information using the following fields:

21   (1) first and last name, (2) company and job title, (3) address(es), (4) phone number(s), (5) e-mail

22   address(es), (6) instant messenger contact, (7) photo, (8) related people, (9) homepage, and (10)

23   notes).

24   Pirozzi alleges that she and other members of the proposed Class downloaded apps to

25   their Apple Device from the App Store as part of the use of their mobile devices.  Apple claims

26   to review each application before offering it to its users, purports to have implemented apps

27   privacy standards, and claims to have created a strong privacy protection for its customers.

28

However, unbeknownst to consumers such as Pirozzi, some of these apps have been accessing and/or uploading information from other apps located on the Apple Devices, including, but not limited to user name and contact information,  detailed contacts list stored in the Contacts app, photographs, and videos without user knowledge or consent.  For example, users who allow apps to use location data are also unknowingly giving these apps access to the user's private photo and video files that can be uploaded and saved on the app's servers.  Similarly, users who use an app's "find friends" feature unwittingly allowed these apps to access and download users' entire address book and contacts list.

Pirozzi alleges that Apple failed to properly safeguard Apple Devices and, instead, induced Pirozzi and members of the Class to purchase Apple Devices and to download apps under the premise that users' private information would remain confidential and would not be shared with third-party developers without express consent.

Pirozzi alleges that Apple has repeatedly represented that Apple's products are safe and private user information would not be shared with third-party developers without the user's express consent.  Pirozzi did not consent to her private information being provided to third parties, nor was she aware that these apps were able to do so.  Pirozzi alleges that Apple invaded and/or facilitated the invasion her privacy, misappropriated and misused her personal information, and/or designed the Apple Devices in such a way as to make these devices vulnerable to unauthorized access by third-parties.  Pirozzi purchased her Apple Device with the expectation that her private information would remain safe and would not have paid as much for her Apple Device if she knew that Apple did not properly safeguard these devices.

**B.    Defendants' Positions**

**1.    App Developer Defendants' Position in *Opperman***

The Application Developer Defendants (all defendants other than Apple; alternately "App Developer Defendants") are developers of popular mobile applications, including games,

11

social networking and local search applications.[1]   The Second Amended Complaint alleges that

over a limited period of time, each Application Developer Defendant uploaded contact entries

from users' of their respective apps' iPhone and other iOS device address books.  Although the

level of user visibility of and consent to this function differed significantly across the different

defendant's apps, the purpose was allegedly the same for each Application Developer Defendant:

to give users the option to identify and connect with "friends" (people they have contact

information from) who are also using the application.   When users exercise this option, the

applications search the address book maintained on a user's wireless mobile device to match the

contact information with other users of the application.

Plaintiffs have not—and cannot—allege that this practice injured them in any way.

Plaintiffs did not pay to use most Application Developer Defendants' apps.  Except for Angry

Birds and Cut the Rope, they were all distributed for free.  Nor do Plaintiffs allege that the

Defendants sold or otherwise monetized their contact information.  Instead, Plaintiffs only allege

the Defendants used the contact information to improve the service they offered to Plaintiffs by

helping them connect with their existing contacts on the service.

Twitter specifically contends that it acted only pursuant to plaintiffs' request, and that

plaintiffs expressly consented to any alleged access or use of address book information: First,

when plaintiffs agreed to Twitter's Terms of Service; second, when the plaintiffs elected to use

Twitter's Follow Your Friends feature after being told that doing so would "scan [their]

contacts."

Rovio Entertainment Ltd. s/h/a Rovio Mobile Oy ("Rovio") and ZeptoLab UK Limited

("ZeptoLab") are developers of two Apps named in the *Opperman* case: Angry Birds Classic and

Cut the Rope, respectively.  However, neither Rovio nor ZeptoLab sold or distributed their

---

[1] Facebook is also named as a defendant, but Plaintiffs do not allege that Facebook ever copied, uploaded, transmitted, disclosed, stored, or used its users' address book materials without prior consent.  Rather, the claims against Facebook relate to its alleged acquisition of co-defendant Gowalla.

12

1   respective Apps to consumers through Apple's App Store.  Rather, both of these Apps were

2   distributed by the games' publisher, defendant Chillingo, Ltd. ("Chillingo").  Neither Rovio nor

3   ZeptoLab has a contractual relationship with Apple regarding the publication and distribution of

4   their respective apps through the App Store.

5          Plaintiffs allege that their address book data was improperly taken while using a social

6   gaming platform known as "Crystal," which was accessible through the Apps.  Crystal, however,

7   is owned and controlled by Chillingo—not Rovio or ZeptoLab.  In order to use the Crystal

8   platform, game users, such as Plaintiffs, must register with Crystal, and accept Crystal's Terms of

9   Use and Privacy Policy.  Neither Rovio nor ZeptoLab control any aspect of the Crystal platform,

10  and neither developer had access to or received, transmitted, uploaded, copied, or stored any user

11  address book data that is alleged in the Second Amended Complaint to have been collected by

12  Crystal.

13         Rovio and ZeptoLab further state that, even assuming as true Plaintiffs' allegation that

14  address book data had been collected by Crystal, neither Zeptolab nor Rovio accessed, received,

15  transmitted, uploaded, copied or stored Plaintiffs' address book data through any other means.

16   For these reasons, there is no basis for Rovio or ZeptoLab to remain as defendants in this action,

17  and both companies have informed Plaintiffs of such.

18         EA/Chillingo[2] generally denies the allegations of the *Opperman* Second Amended

19  complaint.   EA/Chillingo published two apps in this litigation:  Angry Birds Classic, which

20  defendant Rovio developed, and Cut the Rope, which ZeptoLab developed. Both Cut the Rope

21  and Angry Birds Classic contained Chillingo's Crystal Social Network ("Crystal") which

22  allowed players the option of connecting with friends that also played each game.  The

23  *Opperman* complaint contains specific factual allegations regarding users' consent to the alleged

24  use of their address book information by Crystal.  EA/Chillingo thus did not as a matter of law

25

26  [2] Chillingo is a subsidiary of Electronic Arts, Inc. ("EA"); they are referred to collectively as
27  "EA/Chillingo."

28

make any unauthorized or illegal use of Plaintiffs' address books. Even if, as Plaintiffs allege, their address book data was accessed, any alleged accessing of that data was only done with user consent, and done only to allow users to find friends using Crystal. Additionally, EA/Chillingo did not upload address book information over unencrypted channels or make any other use of that information. EA/Chillingo, Rovio and ZeptoLab should each be dismissed from the action for this reason.

### 2.        Path's Position in *Hernandez*

Path disputes *Hernandez* Plaintiffs' factual contentions as they are framed above.

Path provides a personal journal application (the "Path App") for both Apple iPhones and Android smart phones that allows users to record moments in their lives, including photos, places they are visiting, their thoughts, favorite songs, and more. If users choose to do so, they may share those moments (including notes, photos, music or videos) with a limited network of friends and family who also use the Path App. Users can also share information from Path with broader groups, by linking Path to other social networks, such as Facebook and Twitter.

To use the Path App, users must download it from Apple's App Store or Google's "Play" store, install it on their phones, and register a new account with Path. The Path App is, and always has been free, and Path does not place advertising on the App or sell its users' information to advertisers.

The crux of Plaintiff's claims concerns a feature Path added in November 2011 to assist its users in identifying and recommending friends who were also members of Path. For a little over two months, from approximately November 29, 2011 to February 8, 2012, when a Path user initially logged into a specific version of the Path App, known as Path 2.0, the Path App uploaded the user's contacts over a secure, encrypted HTTPS SSL connection to Path's secure servers. Path used this contact information to let its users know if people in their contacts had joined or later joined the Path service, giving the user a choice to invite them to join their Path network. On February 8, 2012, following complaints that this feature had not been made adequately clear to Path's users, Path released a new version of its App, in which, when users tap

14

"Add Friends," they will see a pop-up notice that states: "To find family and friends, Path needs to send your contacts to our server."  Users may select either "OK" or "Don't Allow."  On that same day—February 8, 2012—Path deleted all previously uploaded contacts from its servers. None of the contact information was ever shared with third parties before Path deleted it.  Path contends that no aspect of its friend recommendation feature violated any laws, nor were any users of its free App harmed in any way.

### 3.    Apple's Position in *Pirozzi* and *Opperman*

Plaintiffs' core complaint is that certain apps created by third-party app developers accessed Plaintiffs' address book information without their consent.  Crucially, Plaintiffs do *not* maintain that Apple itself collected, uploaded, or used any personal information from Plaintiffs (or anyone), nor do Plaintiffs assert that Apple is any way responsible for creating the third-party app software content that allegedly was designed to misappropriate data on users' devices. Instead, both complaints acknowledge that Apple merely manufactures the hardware devices and operates an electronic storefront (the App Store) where users can download third-party apps.

Plaintiffs' only complaint against Apple is that Apple purportedly misrepresented the nature of its measures to prevent apps from collecting data.  But Plaintiffs do not identify *a single* statement Apple made to users promising to prevent apps from collecting data from their devices.  On the contrary, Apple's Privacy Policy and other user agreements—to which all users of the App Store must explicitly agree—specifically provide that Apple is not responsible for examining the content of third-party materials and clearly disclose to users that third-party apps may collect information such as contact data from their devices.  Plaintiffs also fail to identify a single purported misrepresentation by Apple that any named Plaintiff personally viewed and relied upon in his/her decision to purchase an iOS device.

In addition, Plaintiffs fail to identify any concrete, particularized, and non-speculative injury that they (or anyone) suffered as a result of Apple's purported failure to protect users' information from potential misappropriation.  For these and other reasons, Apple denies that Plaintiffs have any viable claims.

1    **III.    LEGAL ISSUES**

2          **A.    Plaintiffs' Positions**

3                 **1.    *Opperman* Plaintiffs' Position**

4          The *Opperman* Plaintiffs' SAC, ECF No. 103, states the following claims and causes of

5    action:, (i) invasion of privacy, (ii) misappropriation, (iii) conversion, (iv) trespass to personal

6    property and/or chattels, (v) misappropriation of trade secrets and proprietary information, (vi)

7    negligence, (vii) violation of the Electronic Communications Privacy Act ("ECPA"), (vii) 18

8    U.S.C. § 2510, (viii) violation of the Computer Fraud and Abuse Act ("CFAA"), (ix) 18 U.S.C. §

9    1030, (x) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

10   U.S.C. §§ 1343, 2314 via wire fraud, 18 U.S.C. § 1343, and transportation of stolen property, 18

11   U.S.C. § 2314, (xii) aiding and abetting as to Apple, (xiii) aiding and abetting as to Defendant

12   Facebook, Inc., and (xiv) unjust enrichment. The SAC also alleges (xv) violation of the Texas

13   statutory prohibition of theft of property, Tex. Penal Code § 31.03 and violation of the Theft

14   Liability Act, Tex. Civ. P & Rem. Code §134.001, and (xvi) violation of the Texas Wiretap Acts,

15   Tex. Code Crim. Proc. Art. 18.20, § 1(3) and Tex. Pen. Code § 16.02(A). Finally, the SAC

16   alleges (xvii) violations of California Penal Code § 502 and (xviii) violations of the California

17   Wiretap Act, Cal. Penal Code § 630.   *Opperman* Plaintiffs also pray in the SAC for a

18   constructive trust, a declaratory judgment, and injunctive relief.

19         *Opperman* Plaintiffs state that the principal issues to be resolved include: (a) the

20   protectable property, privacy and secrecy interests that Plaintiffs have in their iDevice address

21   books and iDevices, (b) the value of iDevice address books to Plaintiffs, Class members and

22   Defendants, (c) the extent to which Defendants benefitted from Plaintiffs' iDevice address books

23   and iDevices, (d) the validity and enforceability of any purported legal agreements between the

24   parties and the meaning of any purported App disclosures or alerts, (e) consent, including

25   whether it was requested or acquired, (f) choice of law (whether contractual or otherwise) to be

26   applied to the causes of action in the *Opperman* SAC, (g) whether Apple and/or its App co-

27

28
                                                      16

1    defendants misled consumers about the privacy and security defects of their products and

2    services, and (h) the propriety of class certification,

3         The *Opperman* case is the first-filed of the above-captioned related cases.  ECF Nos. 306,

4    322. The Opperman Plaintiffs recommend that the Related Actions be consolidated and propose

5    to file a Consolidated Amended Complaint within 30 days of the issuance of the initial Case

6    Management Order.

7                        **2.    *Hernandez* Plaintiffs' Position**

8         On October 17, 2012, the Court granted in part and denied in part Path's motion to

9    dismiss Plaintiffs' claims.  The remaining causes of action Plaintiffs bring against Path in their

10   Amended Class Action Complaint are for: (1) claims arising under the California Computer

11   Crime Law, Cal. Penal Code § 502; (2) claims arising under the California Unfair Competition

12   Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; (3) Negligence; and (4) Unjust Enrichment.  Based

13   on recent discovery, Plaintiffs intend to amend their complaint to eliminate certain allegations

14   against Path and to add Apple, Inc. as a Defendant in the action.  Plaintiffs have met and

15   conferred with counsel for Path and have agreed to file their amended complaint within two

16   weeks of the June 21, 2013 Case Management Conference.  To the extent the Court desires a

17   consolidated amended complaint, Plaintiffs can amend their complaint accordingly.  While the

18   factual operation of the various Apple applications, such as Path or Instagram may differ, certain

19   legal issues for the cases will overlap and thus counsel for the *Hernandez* Plaintiffs recognize

20   omnibus briefing will best preserve judicial resources.  To that end, a briefing schedule on

21   anticipated motions to dismiss should be coordinated between all actions through either a

22   consolidated amended complaint or an omnibus briefing schedule.[3]

23        At this time, no counter-claims or third-party claims have been filed.

24

25   ────────────────────

26   [3] Counsel for the *Hernandez* Plaintiffs is also counsel for Plaintiff in *Gutierrez v. Instagram, Inc*.
     There is a motion pending before this Court to relate *Gutierrez* to the above-captioned Related
     Cases.  *See* section X.  Counsel for *Hernandez* can and will be prepared to speak for the
27   *Gutierrez* Plaintiff at the June 21, 2013 Case Management Conference in this matter.

28

                                                    17

**3.**   ***Pirozzi* Plaintiff's Position**

Pirozzi states that this case will center on the causes of action alleged in the Complaint: (1) violations of the Consumers Legal Remedies Act (Cal. Civ. Code §1750, *et seq*.); (2) violations of the False and Misleading Advertising Act (Cal. Bus. & Prof. Code §17500, *et seq*.); (3) violations of the Unfair Competition Law (Cal. Bus. & Prof. Code §17200, *et seq*.); (4) negligent misrepresentation; and (5) unjust enrichment.  With regard to these claims, Pirozzi believes that the principal issues that will require resolution include a determination of whether Apple misled consumers of Apple Devices about the privacy and security defects of the Apple Devices, the propriety of class certification, and the choice of law to be applied to the causes of action in the Pirozzi Complaint.

**B.**   **Defendants' Positions**

**1.**   **App Developer Defendants' Position in *Opperman***

App Developer Defendants identify the following legal issues in *Opperman*:

- Whether *Opperman* Plaintiffs have standing to sue under Article III of the United States Constitution, when Plaintiffs have failed to identify any cognizable harm from the copying and brief storage of contact book information by free applications;

- Whether Plaintiffs have stated a claim upon which relief may be granted for each cause of action in the *Opperman* Second Amended Complaint, namely:  Invasion of Privacy; Misappropriation; Conversion; Trespass to Personal Property and/or Chattels; Misappropriation of Trade Secrets and Property Information; Negligence; violation of the Electronic Communication Privacy Act under 18 U.S.C. § 2511; commission of a Fraud in Connection with Computers under18 U.S.C. §  1030; RICO violations under 18 U.S.C. §§ 1961-64; commission of Wire Fraud under 18 U.S.C. § 1343; Transportation of Stolen Property under 18 U.S.C. § 2314; Theft of Property under Tex. Penal Code § 31.03; violation of the Texas Theft Liability Act, Tex. Civ. P. & Rem. Code § 134.001, *et seq*.; violation of the California Computer Crime Law, Cal. Penal Code § 502; violation of Texas Wiretap Acts, Tex. Pen. Code § 16.02; violation California Invasion of Privacy Act, Cal. Pen. Code. §  631 *et seq*.; secondary liability for Aiding

18

1    and Abetting/Assisting and Encouraging as to Apple or as to Facebook; Unjust Enrichment;

2    Constructive Trust; and claim for Declaratory Judgment;

3         •       Whether Plaintiffs or members of the putative class have suffered any cognizable

4    injury;

5         •       Whether Plaintiff and members of the putative class consented to the conduct

6    alleged in the Complaint;

7         •       Whether Plaintiffs can satisfy the stringent requirements of Federal Rule of Civil

8    Procedure 23 for certifying a sweeping nationwide class, where Plaintiffs' claims implicate the

9    variable disclosures and consent mechanisms implemented by different apps;

10        •       Whether a nationwide class may be certified under the legal theories alleged by

11   Plaintiffs;

12        •       Whether the *Opperman* Second Amended Complaint fails to meet the

13   requirements of Fed. R. Civ. P. 8;

14        •       Whether the *Opperman* Plaintiffs have standing to assert California statutory

15   causes of action;

16        •       Whether California recognizes a separate cause of action for Unjust Enrichment;

17        •       Whether severance is proper as to particular Defendants; for example, Twitter

18   asserts that its app feature functioned differently than many of the other App Developer

19   Defendants and that it will be prejudiced by remaining in the case;

20        •       Whether Plaintiffs' claims against Kik should be dismissed for lack of personal

21   jurisdiction;

22        •       Whether Opperman's Second Amended Complaint fails as a matter of law

23   because it explicitly alleges that Angry Birds and Cut the Rope users affirmatively consented to

24   each apps' alleged access to their address books; and

25        •       Whether Plaintiffs' claims against Facebook for "successor liability" and aiding-

26   and-abetting liability should be dismissed.

27

28

JOINT CASE MANAGEMENT STATEMENT                    13-cv-00453-JST; 12-cv-01515-JST; 12-cv-01529-JST

2.      **Path's Position in *Hernandez***

Path identifies the following legal issues in *Hernandez*:

- Whether the *Hernandez* Plaintiffs lack standing to sue for their state law claims under Article III of the United States Constitution, when Plaintiffs have failed to identify any cognizable harm from the copying and storage of contact book information;

- Whether Plaintiffs have stated a claim upon which relief may be granted for each cause of action in the Hernandez Second Amended Complaint, namely: violation of the California Computer Crime Law, Cal. Penal Code § 502; the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.; Negligence; and Unjust Enrichment;

- Whether Plaintiffs or members of the putative class have suffered any cognizable injury;

- Whether Plaintiffs have standing pursuant to pursuant to Cal. Bus. And Prof. Code § 17204, to assert a cause of action under the California Unfair Competition Law, where Plaintiffs have neither suffered injury in fact, nor lost money or property as a result of Path's alleged unfair business practices;

- Whether Plaintiff and members of the putative class consented to the conduct alleged in the Complaint;

- Whether Plaintiff has satisfied the requirements of Fed. R. Civ. P. 23 for class certification;

- Whether a nationwide class may be certified for certain state law theories, including Unjust Enrichment; and

- Whether California recognizes a separate cause of action for Unjust Enrichment.

3.      **Apple's Position in *Pirozzi* and *Opperman***

In addition to the issues identified by the other Defendants, Apple identifies the following legal issues in *Pirozzi* and *Opperman*:

20

1      •      Whether Plaintiffs lack standing under Article III and California's Unfair

2 Competition Law (see Pirozzi Order dismissing all of Plaintiff's claims for lack of Article III

3 standing);

4      •      Whether Plaintiffs' claims against Apple are barred by the Communications

5 Decency Act, 47 U.S.C. § 230(c)(1) & (c)(2);

6      •      The choice of law to be applied to the causes of action alleged in the complaints,

7 as to each individual putative Class member;

8      •      Whether Plaintiffs can satisfy the stringent requirements of Federal Rule of Civil

9 Procedure 23 for certifying a sweeping nationwide class, where Plaintiffs' claims implicate the

10 variable disclosures and consent mechanisms implemented by hundreds of thousands of different

11 apps; and

12      •      Whether Plaintiffs have plausibly alleged a violation of federal, state, or common

13 law against Apple (see Pirozzi Order dismissing all of Pirozzi's claims).

14 **IV.    MOTIONS**

15     **A.    <u>Pending Motions</u>**

16         **1.    Pending Motions in the *Opperman* Action**

17             **a.    *Opperman* Plaintiffs' Position**

18      Defendant Twitter, Inc. asked the Court in an Administrative Motion filed under L.R. 7-

19 11 to allow the Defendants to file a second set of Rule 12(b) motions against *Opperman*

20 Plaintiffs' SAC or (re)set a deadline for them to answer. ECF No. 269. That March 2013

21 motion is currently in abeyance. ECF No. 327 at p. 2. Earlier, Defendants filed nine

22 consolidated motions against the SAC containing around 20 motions to dismiss, transfer and/or

23 sever. ECF Nos. 100, 122, 124, 135, 136, 141, 142, 145 and 147. On January 15, 2013, the

24 transferor court granted motions to transfer raised in ECF. Nos. 124 and 147, transferred the case

25 to this District, and "dismissed without prejudice" all remaining motions. ECF No. 217, 218.

26 *Opperman* Plaintiffs contend that a second set of Rule 12(b) motions is neither warranted nor

27 authorized under the federal rules or the transferor court's Order, ECF Nos. 217, 273; Fed. R.

28

1   Civ. P. 12(b). Regardless, procedural deadlines for moving for dismissal under Rule 12(b)

2   previously expired. See ECF Nos. 104, 106 and 273. Defendants' attempt to again raise

3   defenses via motion under Rule 12(b) is not meritorious either procedurally or substantively –

4   indeed, Judge Rogers previously allowed many of the same claims to proceed in *Hernandez* –

5   and is interposed to further delay this action. This issue may be mooted in the event a

6   consolidated complaint is filed.

7          Defendant Instagram, Inc. ("Instagram") filed an Administrative Motion on May 29,

8   2013 under L.R. 3-12 and 7-11 to relate putative class action *Gutierrez v. Instagram, Inc.*, No.

9   12-cv-06550-JST ("*Gutierrez*") to the earlier-filed *Opperman* action. ECF No. 328. The motion

10  was not opposed and is pending before the Court. Id.

**b.      App Developer Defendants' Position in *Opperman***

12         App Developer Defendants and Apple dispute *Opperman* Plaintiffs' efforts to prevent

13  the Court from hearing Fed. R. Civ. P. 12(b) motions that have never been decided on their

14  merits. Such motions were dismissed *without* prejudice, as Plaintiffs admit, concurrent with the

15  order of transfer from the Western District of Texas to this Court. Plaintiffs' basis for their

16  position is a misreading of the Federal Rules, while ignoring Defendants' good faith efforts to

17  confer and arrive at an agreement to coordinate submitting such motions to the Court. (*See*

18  *Opperman* Dkt. No. 276.) And the Court has already laid this issue to rest in its Order of May

19  17, 2013 by granting "Defendants in each action . . . an extension of time, if applicable, for

20  responding to the complaint(s)." (*Opperman* Dkt. No. 327 at 2:13-14.)

**2.      Pending Motions in the *Hernandez* Action**

22         No motions are outstanding at this time.

**3.      Pending Motions in the *Pirozzi* Action**

24         On December 20, 2012, the Court dismissed the First Amended Complaint in *Pirozzi*

25  with leave to amend, finding that Plaintiff (1) had failed to allege an injury-in-fact to meet

26  Article III standing requirements, (2) had not alleged facts with sufficient particularity as

27  required under Fed. R. Civ. P. 9(b), and (3) failed to state a claim for violation of the UCL,

28

22

CLRA, common law negligence, or unjust enrichment.  Apple moved to dismiss the Second Amended Class Action Complaint in *Pirozzi* on February 22, 2013, in accordance with the Court's Order issued February 5, 2013.  Plaintiff filed an opposition to Apple's Motion on March 25, 2013, and Apple filed a reply in further support of the Motion on April 15, 2013.  The Motion is presently pending, and Apple respectfully requests that the Court hear it at the earliest date that is convenient for the Court.

B.      **Anticipated Motions**

1.      **Anticipated Motions in the *Opperman* Action**

a.      ***Opperman* Plaintiffs' Position**

Counsel for the *Opperman* Plaintiffs contacted *Hernandez* and *Pirozzi* Plaintiffs' counsel to discuss consolidation of the Related Actions, however no consensus has been reached.  At this time, the *Opperman* Plaintiffs anticipate moving:

- for the Consolidation or Stay of the Related Cases in favor of the first-filed, more comprehensive *Opperman* action, ECF Nos. 306, 322;

- for Entry of Default against Defendant Hipster, Inc., which was served, ECF No. 37, failed to appear, ECF No. 217 at p. 6, n. 4**,** and is in default;

- to Relate any other appropriate cases;

- for Class certification; and,

- for summary judgments.

b.      **App Developer Defendants' Position in *Opperman***

Given the similarities in allegations between *Opperman* and *Hernandez*, the overlap of issues—for example whether there is a basis for recovery and whether Plaintiffs have Article III standing to support subject matter jurisdiction—as well as Defendants' collective intention to seek dismissal under at least Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for the reasons described in Section I.B.1 above[4], App Developer Defendants believe that the most efficient means of

---

[4] Before *Opperman* was transferred from the Western District of Texas to this Court, Defendants filed the following motions: ZeptoLab UK Limited's Motion to Dismiss (Dkt. No. 110); Path,

1  addressing deficiencies in the complaints is by an omnibus motion to dismiss, to be submitted

2  jointly by all App Developer Defendants.   To the extent there are individualized issues to

3  address—some of which are discussed below—each App Developer Defendant may file a

4  concise joinder to the omnibus motion to dismiss.  In the event that the Court determines one or

5  more claims may proceed, App Developer Defendants anticipate filing motions regarding class

6  certification and summary judgment.   App Developer Defendants may file additional motions

7  should any be necessary, including motions relating to discovery, expert testimony, or severance.

8      Apple anticipates filing its own motion to dismiss the *Opperman* claims against Apple on

9  the basis that Plaintiffs lack Article III standing, that their claims are barred by Communications

10  Decency Act Section 230, and that Plaintiffs' claims against Apple (including alleged violations

11  of RICO (18 U.S.C. § 1962) and claims for alleged negligence, aiding and abetting, unjust

12  enrichment and constructive trust) fail to state a valid claim.  In addition, in the event the Court

13  permits one or more of the claims in *Pirozzi* or *Opperman* to go forward, Apple anticipates filing

14  motions regarding class certification, summary judgment, and expert testimony.  Apple may also

15  file other motions as deemed necessary, such as a motion for consolidation or discovery-related

16  motions.

17      In addition, Instagram may file a motion for a more definite statement, on the basis that

18  Opperman's Second Amended Complaint does not meet the requirements of Rule 8.

19  Specifically, although Plaintiffs assert that they are Instagram users, they have refused to provide

20  their user identification information.  Because Instagram users are not required to utilize their

21  real names when establishing their account, without the requested information Instagram cannot

22  confirm that Plaintiffs are users of the application—and thus cannot fairly frame its response to

23  the complaint.

24

---

25  Inc. et al.'s Motion to Dismiss or Transfer (Dkt. No. 124); Twitter's Motion to Dismiss (Dkt. No.

26  136); Kik Interactive, Inc.'s Motion to Dismiss (Dkt. No. 141); Facebook, Inc.'s Motion to
    Dismiss (Dkt. No. 142); Chillingo, Ltd. et al.'s Motion to Dismiss (Dkt. No. 145); and Apple,

27  Inc.'s Motion to Dismiss or Transfer (Dkt. No. 147).

28

24

1      Twitter expects to file a joinder to the omnibus motion to dismiss for failure to state a

2   claim that is specific to the factual allegations made against Twitter.   Specifically, Twitter

3   contends that the Second Amendment Complaint makes clear that Twitter obtained consent from

4   plaintiffs regarding any alleged use of their address book information.

5      Facebook expects to file a joinder to the omnibus motion, seeking to dismiss Plaintiffs'

6   claims arising from Facebook's alleged "successor liability" and aiding-and-abetting liability for

7   co-defendant Gowalla's alleged misconduct.   The *Opperman* Plaintiffs do not allege that

8   Facebook ever copied, uploaded, transmitted, disclosed, stored, or used its users' address book

9   materials without prior consent.   Rather, Plaintiffs seem to latch on to Facebook's hiring of

10   employees from Gowalla.   Two theories are advanced by Plaintiffs, seeking to find Facebook

11   liable based on "aiding and abetting" Gowalla or being its "successor in interest."   Neither theory

12   has any factual or legal basis.

13      In addition to the jointly filed dispositive motions discussed above, Kik expects to file a

14   motion seeking dismissal for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).   Kik

15   may also file its own motion for a more definite statement, on the basis that the *Opperman*

16   Second Amended Complaint does not meet the requirements of Rule 8: although Plaintiffs assert

17   that they are users, they have refused to provide their user identification information.   Because

18   Kik users are not required to use their real names when establishing their account, without the

19   requested information Kik cannot confirm that Plaintiffs are users of the website.

20      EA, Chillingo, Rovio, ZeptoLab, and Twitter cannot join in Path's statement regarding

21   the similarities in allegations between *Opperman* and *Hernandez*, particularly where there is no

22   amended complaint on file in *Hernandez*.   EA, Chillingo, Rovio, ZeptoLab, and Twitter agree

23   that for judicial efficiency, the motion to dismiss in *Opperman* may be coordinated with a motion

24   to dismiss the *Hernandez* complaint if an amended complaint is filed.   EA, Chillingo, Rovio,

25   ZeptoLab, and Twitter anticipate filing motions to sever and joinders in any motion to dismiss

26   based on specific allegations regarding user consent in the *Opperman* Second Amended

27   Complaint.

28

1      2.      **Anticipated Motions in the *Hernandez* Action**

2           a.      ***Hernandez* Plaintiffs' Position**

3      Counsel for *Hernandez* Plaintiffs have reached out to other Plaintiffs' counsel to discuss

4 stipulating to consolidate the Related Actions, however no consensus has been reached.  Counsel

5 for *Hernandez* Plaintiffs believe this should be a topic for discussion at the Case Management

6 Conference and will await further discussion with the Court to determine whether a motion for

7 consolidation should be filed.  The motion for consolidation should not be used as an attempt to

8 garner leadership, but rather leadership should be addressed either by stipulation or separate

9 motion.  Manual for Complex Litigation, Fourth, § 21.11.  As stated in section II.A.2 above,

10 *Hernandez* Plaintiffs intend to seek leave of Court to amend the complaint within two weeks of

11 the June 21, 2013 Case Management Conference.  The amended complaint may be filed in

12 connection with a consolidated amended complaint as set forth in section V.2.  In addition,

13 following the resolution of any potential motion to dismiss made by Path or any other Defendant,

14 it is anticipated that motions will be filed regarding class certification, summary judgment, and

15 other motions that the Parties deem necessary.

16           b.      **Path's Position in *Hernandez***

17      As discussed in the previous section, IV.B.1, Path believes that numerous similarities in

18 between *Opperman* and *Hernandez*—in factual allegations, legal issues, and Defendants'

19 collective intention to seek dismissal–all point toward an omnibus motion to dismiss as the most

20 efficient means of addressing deficiencies in the complaints.   To the extent Path has

21 individualized issues to address, Path intends to file a concise joinder to the omnibus motion to

22 dismiss.  In the event that the Court determines one or more claims may proceed, Path anticipates

23 filing motions regarding class certification and summary judgment.  Path may file additional

24 motions as necessary, including motions relating to discovery and expert testimony.

25      3.      **Anticipated Motions in the *Pirozzi* Action**

26      Apple's Motion to Dismiss Pirozzi's Second Amended Complaint with prejudice is

27 pending.  In the event the Court permits one or more of Pirozzi's claims to go forward (which

28

26

1   Apple submits it should not), it is anticipated that motions will be filed regarding class

2   certification, for summary judgment, and to exclude expert testimony.  The Parties may also file

3   other motions they deem necessary, such as a motion for consolidation or discovery-related

4   motions.

5   **V.      AMENDMENT OF PLEADINGS**

6       **A.      Plaintiffs' Positions**

7           **1.      *Opperman* Plaintiffs' Position**

8   As noted, *Opperman* Plaintiffs recommend consolidation and anticipate filing a

9   Consolidated Amended Complaint ("CAC") encompassing the related cases.

10  Pleadings should remain open until at least 60 days after the close of the fact discovery

11  period.

12  The Parties may seek to amend their pleadings based upon additional information

13  obtained through stipulations, disclosures or discovery or otherwise and reserve their right to do

14  so as the case progresses.

15          **2.      *Hernandez* Plaintiffs' Position**

16  As stated in section II.A.2 above, *Hernandez* Plaintiffs intend to seek leave of Court to

17  amend the complaint within two weeks of the June 21, 2013 Case Management Conference.  The

18  amended complaint may be filed separately or as part of an amended consolidated complaint.

19  Additionally, *Hernandez* Plaintiffs may seek to amend their pleadings based upon additional

20  information obtained through discovery.

21          **3.      *Pirozzi* Plaintiff's Position**

22  Pirozzi may seek to amend her pleadings based upon additional information obtained

23  through discovery.  Pirozzi requests an opportunity to move for leave to amend any pleading by

24  no later than 60 days after the close of the fact discovery period.

25

26

27

28

**B.** **Defendants' Positions**

1. **App Developer Defendants' Position in *Opperman***

App Developer Defendants oppose consolidation of all Complaints against all defendants. Twitter in particular opposes consolidation of the *Opperman* complaint with either the *Pirozzi* or *Hernandez* complaints for any purpose. Twitter is not a party to either *Pirozzi* or *Hernandez*, and while plaintiffs allege that several defendants facilitated collection of or obtained address book information without providing notice, Twitter merely responded to plaintiffs' express request and pursuant to their consent. The claims in *Pirozzi* and *Hernandez* arise from entirely different events and involve different parties, facts, discovery, and a variety of theories of liability that have nothing to do with Twitter.

Defendant Path, however, believes that consolidation of the allegations against Path in *Opperman* and *Hernandez* into a single Complaint would serve the interest of judicial economy.[5]

If the Court does not grant the *Opperman* or *Hernandez* Plaintiffs' request to file a single consolidated amended complaint against all defendants and the *Opperman* Plaintiffs seek leave to file a third amended complaint, the App Developer Defendants request that they do so within two weeks of the June 21 CMC. Similarly, Instagram requests that, if its Motion to Relate *Gutierrez* to *Opperman* is granted, the *Gutierrez* Plaintiffs be required to seek leave to file an amended complaint within two weeks of the June 21 CMC.

The App Developer Defendants specifically oppose the *Opperman* Plaintiffs' request to permit the amendment of pleadings after the close of fact discovery. Such a provision would deprive the App Developer Defendants of the opportunity to conduct fact discovery regarding any new allegations or causes of action. Rather, if any of the *Opperman* claims advance, the

---

[5] Instagram's unopposed Motion to Relate *Gutierrez v. Instagram, Inc.*, Case No. 12-cv-06550, to the *Opperman* action is presently pending before this Court (*see* Dkt. No. 328). Instagram believes that consolidation of the allegations in *Gutierrez* and *Opperman* into a single Complaint would serve the interest of judicial economy.

1    deadline for amending pleadings should be after a reasonable time for discovery but well in
2    advance of the close of fact discovery.

3              **2.      Path's Position in *Hernandez***

4              Path understands that *Hernandez* Plaintiffs intend to file a consolidated amended
5    complaint or seek leave of Court to amend their currently operative Second Amended Complaint
6    within two weeks of the June 21, 2013 Case Management Conference.  As stated above, Path
7    believes that consolidation of all allegations against Path in *Opperman* and *Hernandez* into a
8    single Complaint would serve the interest of judicial economy.

9              If the Court does not grant the *Hernandez* and *Opperman* Plaintiffs' requests to file a
10   single consolidated amended complaint, Path requests that the *Hernandez* Plaintiffs seek leave to
11   file a third amended complaint within two weeks of the June 21 CMC.  Path does not oppose the
12   withdrawal of Plaintiffs' "tracking software" allegations, but reserves the right to oppose the
13   addition of new causes of action.

14             **3.      Apple's Position in *Pirozzi* and *Opperman***

15             In the event the Second Amended Complaint in *Pirozzi* survives Apple's Motion to
16   dismiss (it should not), Apple believes consolidation of the *Pirozzi* and *Opperman* cases—at
17   least with respect to the claims against Apple—would be appropriate.  Because a dismissal of the
18   Second Amended Complaint in *Pirozzi* would moot the issue of consolidation (at least as to
19   Apple), Apple believes the Court should defer a decision on consolidation until it has ruled on
20   Apple's pending motion to dismiss the Second Amended Complaint in *Pirozzi*.  A dismissal of
21   the *Opperman* claims—which also is appropriate—would moot the issue of consolidation, as
22   well.  In the event any of Plaintiffs' claims against Apple survive and Apple is required to file an
23   Answer, Apple may later seek to amend its pleadings based upon information obtained through
24   discovery.  Apple requests that the Court establish a deadline for Plaintiffs to move to amend
25   their respective complaints to add or remove new parties that is no later than 90 days after the
26   commencement of discovery.

27

28

## VI.   EVIDENCE PRESERVATION

The Parties have taken steps to preserve evidence in accordance with the Federal Rules of Civil Procedure and shall follow the Northern District of California Guidelines for the Discovery of Electronically Stored Information to their preservation efforts.

## VII.   DISCLOSURES

### A.   Disclosures in the *Opperman* Action

The *Opperman* Plaintiffs propose exchanging initial disclosures no later than 30 days after the Court's entry of an appropriate protective order and its Case Management Order.

The *Opperman* Plaintiffs propose that the Related Actions be subject to a customized supplemental disclosure and discovery procedure narrowly tailored to this action as sanctioned by the *Manual for Complex Litigation, Fourth*.

The App Developer Defendants request that the *Opperman* parties' exchange of initial disclosures be contingent on the outcome of Defendants' anticipated motion(s) to dismiss.  To that end, App Developer Defendants request that the *Opperman* parties exchange disclosures within 30 days of any Court order permitting any claims asserted in *Opperman* to proceed, or as otherwise established by the Court.  To move forward with disclosures before rulings on motions to dismiss, which may obviate the need as to some App Developer Defendants, would waste resources and be inefficient.  Apple likewise requests that the *Opperman* parties exchange initial disclosures within 30 days of any order permitting any claims asserted in *Opperman against Apple* to go forward, or as otherwise established by the Court.

### B.   Disclosures in the *Hernandez* Action

*Hernandez* Plaintiffs and Defendant Path exchanged their initial disclosures under Federal Rule of Civil Procedure 26 on January 4, 2013.  Path requests that disclosures and discovery in the *Hernandez* case be stayed pending Plaintiffs' amendment of the Complaint to withdraw the tracking software allegations and Path's motion to dismiss that amended Complaint.

1        **C.**      **Disclosures in the *Pirozzi* Action**

2          Pirozzi made her Rule 26 initial disclosures on November 12, 2012.  Apple made its Rule

3    26 initial disclosures on November 16, 2012.

4    **VIII.**   **DISCOVERY**

5        **A.**      <u>**Discovery Taken To Date**</u>

6            **1.**      **Discovery in the *Opperman* Action**

7          Discovery has not yet commenced.  *Opperman* Plaintiffs contend that discovery should

8    commence immediately and that appropriately crafted procedures, as recommended in the

9    *Manual for Complex Litigation*, also be employed.

10         App Developer Defendants assert that discovery in *Opperman* should remain stayed

11   pending the Court's resolution of Defendants' motions to dismiss the currently operative or any

12   amended complaint, and pending the Court's determinations regarding consolidation.  The App

13   Developer Defendants have raised threshold issues as to whether subject matter jurisdiction

14   exists and whether Plaintiffs have stated any valid claims.  Resolution of the motions to dismiss

15   will likely at least narrow the claims and issues in this case as in *Hernandez*, where Judge

16   Gonzalez Rogers has already dismissed numerous causes of action.  (*Hernandez* Dkt. No. 22

17   (Dismissing Wiretap Act, Stored Communications Act and common law privacy causes of action

18   against Path).)    It would be grossly inefficient for discovery to proceed before the Court has

19   resolved these issues.

20         Apple asserts that discovery in *Opperman* should be stayed, as in *Pirozzi*, pending

21   resolution of the motions to dismiss the *Opperman* complaint and, if applicable, a determination

22   by the Court regarding consolidation of any of the above-captioned actions.  Apple has raised

23   substantial, threshold questions concerning whether Plaintiffs may pursue any claims against

24   Apple because (1) they have failed to allege an injury-in-fact that is fairly traceable to Apple, as

25   required to establish Article III standing; (2) Plaintiffs' claims are barred by the Communications

26   Decency Act Section 230 because they are directed to Apple's review and distribution of third-

27   party app content, rather than content created by Apple; and (3) Plaintiffs have failed to allege a

28

                                      31

1  viable claim against Apple.   Indeed, Judge Gonzalez Rogers previously dismissed Plaintiff

2  Pirozzi's Amended Complaint, finding that she did not satisfy Article III standing and did not

3  state a valid claim.   Apple respectfully submits that it would be contrary to the interests of the

4  parties or judicial economy for discovery to proceed before this Court has addressed fundamental

5  questions concerning its subject matter jurisdiction or the ability of Plaintiffs to state legally

6  cognizable claims against Apple for app content created by third parties.

7         In addition, Chillingo, Rovio, and ZeptoLab each have witnesses and documents located

8  in foreign countries, including the United Kingdom and Finland.   Any discovery schedule or

9  coordination should take into account special concerns regarding conducting discovery in

10  Europe, including the need for additional time to produce witnesses and documents.

11              **2.       Discovery in the *Hernandez* Action**

12         The Parties have conducted significant discovery to date.   Plaintiffs have served the

13  following discovery requests to Path: Requests for Admission (1 set), Requests for Production of

14  Documents and Things (3 sets), and Interrogatories (3 sets).   In addition, Plaintiffs took the

15  deposition of Path's persons most knowledgeable under Rule 30(b)(6) on April 19, 2013.   Path

16  has served the following discovery requests on Plaintiffs: Requests for Admission (1 set),

17  Requests for Production of Documents and Things (2 sets), and Interrogatories (2 sets).   The

18  parties had scheduled the depositions of Plaintiffs Oscar Hernandez and Lauren Carter, but those

19  depositions have been taken off the calendar pending the June 21 CMC and the outcome of any

20  dispositive motions to be filed in response to Plaintiffs' anticipated third amended complaint.

21              **3.       Discovery in the *Pirozzi* Action**

22         Discovery has not yet commenced in this matter.   The Parties disagree regarding when

23  discovery should commence.   Pirozzi contends that discovery should commence immediately.

24  The Plaintiffs in the above captioned actions discussed the possibility of consolidating the above-

25  captioned action into a single action.   Pirozzi takes the position that consolidation discussions

26  should take place after the Court decides pending motions to dismiss, but has agreed to

27  coordinate discovery for common issues and defendants.

28
                                              32

1    Apple notes that the Court previously denied Plaintiff Pirozzi's request to open discovery

2    pending resolution of Apple's motion to dismiss the Second Amended Complaint.   Plaintiff

3    Pirozzi conversely notes that the Court stated it would take under consideration its request to

4    commence discovery while Apple's motion to dismiss the Second Amended Complaint was

5    pending and did not issue a decision on that matter before the action was transferred.

6    Accordingly, the parties have not commenced discovery in this matter.   As in Section VIII.A.1,

7    above, Apple asserts that discovery should be stayed pending the Court's decision on Apple's

8    pending Motion to Dismiss the Second Amended Complaint.    Judge Gonzalez Rogers already

9    dismissed Pirozzi's complaint once for lack of Article III standing and failure to state a claim,

10    and Apple contends that Pirozzi has not cured the fatal defects in her Second Amended

11    Complaint.  Apple respectfully submits that it should be required to undertake discovery in this

12    matter unless and until the Court holds that subject matter jurisdiction exists and Pirozzi can state

13    a claim.

14        **B.    Scope of Anticipated Discovery**

15        The Parties state that all fact discovery is presently expected to be completed by the fact

16    discovery cutoff date (*see infra* § XVII).

17            **1.    Scope of Discovery in the *Opperman* Action**

18                **a.    *Opperman* Plaintiffs' Position**

19        Appropriate subjects for discovery include: the Parties (including and any formal,

20    informal, direct or indirect relationships between them); Defendants' products and services

21    (including iDevices and Apps), interactivity between any Defendants' products, Defendants'

22    competitors' products, advertising, marketing, promotions and statements concerning all such

23    products; the App Store, the iTunes Store, the iOS/App Developer Program and all Parties'

24    participation or interaction in, by or through the App Store or iOS/App Developer Program;

25    industry standards; Apple's and the App Defendants' policies and procedures; Apple's policies

26    and procedures toward third-party app developers; documents evidencing the manner in which

27

28

33

1  the accused and other Apps work within iOS; use of the accused Apps; and communications

2  between or about any Party, its products or its services.

3      *Opperman* Plaintiffs anticipate serving Requests for Admission, Requests for Document

4  Production, and Interrogatories and deposing corporate representatives of each Defendant, as

5  well as consultants and other witnesses with relevant knowledge regarding their products,

6  services, procedures and policies and those of other industry participants.

7      The *Opperman* Plaintiffs propose that appropriately crafted procedures, as recommended

8  in the *Manual for Complex Litigation*, also be employed.

9          **b.      App Developer Defendants' Position in *Opperman***

10     App Developer Defendants contend that the appropriate scope of discovery cannot be

11  determined until after a ruling on Defendants' motions to dismiss, which may eliminate or

12  substantially limit the claims at issue.

13          **c.      Apple's  Position in *Opperman***

14     Apple maintains that, in the event that this Court permits any of Plaintiffs' claims to go

15  forward, Apple intends to seek discovery from Plaintiffs regarding the purchase of their iOS

16  device(s), each app that they downloaded to their device(s), the various developer terms and

17  licenses applicable to those apps, their use of and expectation(s) regarding those apps, any pre-

18  suit factual investigation or analysis of whether or what information was transmitted from their

19  devices by particular apps, as well as any evidence of injury Plaintiffs have suffered as a result of

20  the alleged collection and use of their personal information by third-party apps without their

21  consent.  Apple also would require forensic images of each iOS device(s) used by Plaintiffs to

22  assess these matters.

23          **2.      Scope of Discovery in the *Hernandez* Action**

24          **a.      *Hernandez* Plaintiffs' Position**

25     *Hernandez* Plaintiffs anticipate serving further discovery in the form of Requests for

26  Admission, Requests for Production of Documents and Things, and Interrogatories.

27  Additionally, Path has noticed the depositions of Plaintiffs Oscar Hernandez and Lauren Carter.

28

                                              34

1    However, pursuant to the Parties' agreement, Path removed those depositions from calendar until

2    after the Court rules on the motion to dismiss that Path anticipates filing in response to Plaintiffs'

3    amended complaint.  Path believes the scope of fact discovery may be further limited following

4    the resolution of that motion.

5                    **b.      Path's Position in *Hernandez***

6            Path contends that the appropriate scope of discovery cannot be determined until after a

7    ruling on Defendants' anticipated motions to dismiss, which may eliminate or substantially limit

8    the claims at issue.

9                    **3.      Scope of Discovery in the *Pirozzi* Action**

10                   **a.      *Pirozzi* Plaintiff's Position**

11           Pirozzi believes that the appropriate subject matters for discovery include the following

12   general issues: Apple's advertisements regarding the Apple Devices, the apps, and the App

13   Store; Apple's internal policies and procedures for apps; Apple's policies and procedures toward

14   third-party app developers; and documents evidencing the manner in which the apps work within

15   the iOS.  Pirozzi anticipates deposing corporate representatives of Apple, as well as consultants

16   and other witnesses with relevant knowledge regarding Apple's representations about the Apple

17   Devices, apps, and App Store; privacy policies; and requirements set forth by Apple for

18   applications to be approved for distribution through the App Store.  Pirozzi anticipates serving

19   Requests for Admission, Requests for Document Production, and Interrogatories.

20                   **b.      Apple's Position in *Pirozzi***

21           In the event that this Court permits any of Plaintiff's claims to go forward, Apple intends

22   to seek discovery from Plaintiff regarding the purchase of her iOS device(s), each app that she

23   downloaded to her device(s), the various developer terms and licenses applicable to those apps,

24   her use of and expectation(s) regarding those apps, any pre-suit factual investigation or analysis

25   of whether or what information was transmitted from her devices by particular apps, as well as

26   any evidence of injury Plaintiff has suffered as a result of the alleged collection and use of her

27

28

                                                    35

1  personal information by third-party apps without her consent.  Apple also would require forensic

2  images of each iOS device(s) used by Plaintiff to assess these matters.

3       **C.**     **Electronically-Stored Information**

4       The *Opperman* Defendants anticipate that discoverable information in this action will

5  primarily be in electronic form.   While the most effective and proportional methods of

6  production of electronically stored information ("ESI") cannot yet be determined, Defendants

7  agree to cooperate and confer about these issues if, and as, discovery proceeds.

8       The *Hernandez* Plaintiffs and Path have entered into a protocol for the review of source

9  code as part of the stipulated Protective Order in that case, which was approved by the Court on

10  November 27, 2012 (*Hernandez* Dkt. No. 40).  To date, no source code review has occurred in

11  *Hernandez.*

12       The Parties in *Opperman* and *Pirozzi* will meet and confer in good faith with Defendants

13  regarding a protocol for the production of ESI if and when discovery has opened in this matter.

14       **D.**     **Privilege or Other Protections**

15       The *Hernandez* Plaintiffs and Path entered into a stipulated protective order, which was

16  approved by the Court on November 27, 2012 (*Hernandez* Dkt. No. 40).

17       The Defendants and *Opperman* Plaintiffs expect that discovery sought by the Parties will

18  involve confidential information.  Accordingly, and prior to producing documents in the *Pirozzi*

19  and *Opperman* matters, the Parties will attempt in good faith to agree to, and then obtain Court

20  approval of, stipulated protective orders to protect certain confidential information, including a

21  provision related to the inadvertent disclosure of privileged information and provisions providing

22  for the production of Highly Confidential materials in accordance with the Northern District's

23  Model Agreement for Stipulated Protective Order for Litigation Involving Patents, Highly

24  Sensitive Confidential Information and/or Trade Secrets.

25

26

27

28

36

1   E.      **Limitations or Modifications of Discovery**

2          1.      **Plaintiffs' Position**

3          Other than as described above in section VIII, the Plaintiffs presently do not seek any

4  modifications or limitations to the discovery provisions set forth in the Federal Rules of Civil

5  Procedure.   In the event that any Party later believes that modifications or limitations are

6  required, the Parties will work in good faith toward agreement on any such modification or

7  limitation.  Absent agreement, the Parties will present their respective positions to the Court.

8          As stated herein all Plaintiffs believe that discovery should commence immediately.

9  "[T]he Federal Rules of Civil Procedure do not provide for automatic or blanket stays of

10  discovery when a potentially dispositive motion is pending. Indeed, district courts look

11  unfavorably upon such blanket stays of discovery." *Mlejnecky v. Olympus Imaging Am., Inc.*,

12  No. 2:10-CV-02630, 2011 WL 489743 (E.D. Cal. Feb. 7, 2011) (citations omitted); *San*

13  *Francisco Tech. Kraco Enterprises LLC*, No. 5:11-CV-00355 EJD, 2011 WL 2193397 (N.D.

14  Cal. June 6, 2011) (same); *Skellercup Indus. Ltd. v. City of L.A.*, 163 F.R.D. 598, 600-601

15  (C.D.Cal.1995) ("Had the Federal Rules contemplated that a motion to dismiss under

16  Fed.R.Civ.P. 12(b)(6) would stay discovery, the Rules would contain a provision for that effect.

17  In fact, such a notion is directly at odds with the need for expeditious resolution of litigation").

18  Thus, Parties are required to make a "strong showing" when requesting a protective order staying

19  discovery pending disposition of a potentially dispositive motion. *San Francisco Tech. Kraco*

20  *Enterprises LLC*, No. 5:11-CV-00355 EJD, 2011 WL 2193397 (N.D. Cal. June 6, 2011) (quoting

21  Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir.1975).  In fact, Apple has failed in its

22  previous attempts to stay discovery in similar circumstances.  *In re Apple In-App Purchase*

23  *Litigation*, Case No. 11-cv-1758 (Feb 15, 2012).  Apple similarly requested a motion to stay

24  discovery while its motion to dismiss was pending, the Court refused finding that "Defendant has

25  not made a strong showing proving the necessity of staying discovery. Defendants' contentions

26  that Plaintiffs have not alleged a cognizable claim and that discovery would be costly do not

27

28

1   prove the need for a stay."   The same holds true here.   Thus, discovery should move forward

2   immediately.

3                   **2.       Defendants' Position**

4          Timing: The *Opperman* and *Pirozzi* Defendants submit that all discovery should be

5   stayed pending the Court's rulings on the Defendants' dispositive motions, and should

6   commence no sooner than 30 days after Defendants file their respective answers to the operative

7   complaints (assuming any of Plaintiffs' claims survive the pleadings phase).   The Ninth Circuit

8   has repeatedly upheld the issuance of discovery stays pending resolution of potentially

9   dispositive motions and has stated that "[i]t is sounder practice to determine whether there is any

10  reasonable likelihood that plaintiffs can construct a claim before forcing the Parties to undergo

11  the expense of discovery."  *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th

12  Cir. 1987) ("The purpose of [Rule] 12(b)(6) is to enable defendants to challenge the legal

13  sufficiency of complaints without subjecting themselves to discovery."); *see also Wenger v.*

14  *Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (affirming stay of discovery pending resolution of

15  defendant's motion to dismiss) (citing *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (per

16  curiam)); *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987) (affirming stay of discovery

17  pending resolution of motions to dismiss where no "factual issues" were raised by the motions);

18  *Little v. Seattle*, 863 F.2d 681, 685 (9th Cir. 1988).

19          In addition to the above, Twitter submits that to the extent discovery is necessary, it

20  should not commence until after Twitter is given the opportunity to submit briefing on this issue.

21          Phasing: As noted above, Defendants contend that the appropriate scope of discovery

22  cannot be determined until after a ruling on Defendants' motions to dismiss, which may

23  eliminate or substantially limit the claims at issue.   Depending on the nature of the claims that

24  survive Defendants' motions (if any), certain modifications or limitations to the discovery

25  provisions in the Federal Rules of Civil Procedure may be appropriate.   For example, certain

26  discovery may not be appropriate until the Court has ruled on class certification.   Defendants

27

28

                                                    38

submit that the Court need not consider this issue until it has ruled on Defendants' motions to dismiss.

## IX.    CLASS ACTIONS

### A.    Plaintiffs' Positions

#### 1.    *Opperman* Plaintiffs' Position

*Opperman* Plaintiffs bring this class action under Federal Rules of Civil Procedure 23 for themselves and appropriate class(es) of similarly-situated persons consisting of:

> Plaintiffs and all owners of iDevices who obtained Apps from Apple's App Store that without requesting the iDevice owner's prior consent initiated an unauthorized iDevice call following which the owner's address book materials were copied, uploaded, transmitted, and/or disclosed to others and/or remotely stored and/or otherwise remotely used by others, including any of the following Apps: *Angry Birds Classic, Crystal, Cut the Rope, Foursquare, Foodspotting, Gowalla, Hipster, Kik Messenger, Instagram, Path, Twitter*, or *Yelp!* (the "Class")

as presently defined in the SAC, see ECF No. 103 at ¶ 46-52, or as further defined in any subsequent amendments thereto. The prospective Class consists of millions of members who were similarly affected by the Defendants' described conduct.

Class matters and certification issues should be deferred until the consolidation issue is resolved and Defendants have answered all operative complaints and raised any applicable affirmative defenses. *Opperman* Plaintiffs' counsel have substantial experience prosecuting class actions and complex litigation, including matters involving intangible property rights.

#### 2.    *Hernandez* Plaintiffs' Position

*Hernandez* Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and/or 23(b)(3) on behalf of themselves and the following class: All persons residing in the United States who possessed a Mobile Device and downloaded the Path Application from November 15, 2010 to the date of Class certification.

Plaintiffs make the following allegations concerning the propriety of bringing this action on a class basis: the proposed Class consists of potentially hundreds of thousands of individuals who downloaded and installed the Path application during the Class period, making joinder impractical.  There are many questions of law and fact common to Plaintiffs and Class Members,

1   including the extent of Path's business practice of accessing and storing users' mobile device

2   contact address data; what information Path collected from its business practice of accessing and

3   storing users' mobile device contact address data, and what it did with that information; the

4   security features Path had in place to protect users' sensitive information; and the questions of

5   law relating to each of the four causes of action. The questions of law and fact common to Class

6   Members predominate over any questions affecting only individual members and a class action is

7   superior to all other available methods for the fair and efficient adjudication of this controversy.

8   Moreover, Plaintiffs' claims are typical of the claims of all other Class Members, and Plaintiffs

9   will fairly and adequately represent the interests of the other Class Members because Plaintiffs

10  have retained counsel with substantial experience in prosecuting complex litigation and class

11  actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on

12  behalf of Class Members and have the financial resources to do so.

13          Plaintiffs further allege that Path has acted and failed to act on grounds generally

14  applicable to Plaintiffs and other Class Members, requiring the Court's imposition of uniform

15  relief to ensure compatible standards of conduct toward Class Members. Further, Plaintiffs

16  contend that the factual and legal basis of Path's liability to Plaintiffs and to other Class

17  Members are the same, resulting in injury to Plaintiffs and all other Class Members. Plaintiffs

18  and the other Class Members allege to have all suffered harm and damages as a result of Path's

19  wrongful conduct.

20          Plaintiffs intend to seek certification of the class in accordance with the schedule outlined

21  below.

22                      **3.   *Pirozzi* Plaintiff's Position**

23          Pirozzi brings this action as a class action pursuant to Federal Rules of Civil Procedure

24  23(a) and 23(b) on behalf of herself and all others similarly situated as members of the following

25  class: All persons who purchased an Apple Device between June 15, 2010 and the present and

26  who downloaded apps on these devices. Pirozzi intends to seek certification of the class in

27  accordance with the schedule outlined below.

28

40

### B.     Defendants' Positions

If certain of Plaintiffs' claims against certain Defendants remain after the Court rules on Defendants' motions to dismiss, Defendants intend to seek discovery on whether Plaintiffs and their claims satisfy the requirements of Rule 23 for class certification.   Apple and the App Developer Defendants intend to oppose class certification, and they maintain that Plaintiffs cannot satisfy the requirements to certify a class under Federal Rule of Civil Procedure 23.

## X.     RELATED CASES

*Opperman, et al. v. Path, Inc., et al.*, Case No. 13-CV-00453 JST

*Hernandez, et al. v. Path, Inc.,* Case No. 12-CV-01515 JST

*Pirozzi v. Apple Inc.*, Case No. 12-CV-01529 JST

*Gutierrez v. Instagram, Inc.*, Case No. 12-CV-06550-JST (motion to relate pending)

## XI.    RELIEF

### A.     Plaintiffs' Positions

#### 1.     *Opperman* Plaintiffs' Position

*Opperman* Plaintiffs seek the following relief for themselves and the Class members (i) actual, compensatory, incidental, consequential, statutory, and/or nominal damages and an award of Defendants' wrongfully obtained profits; (ii) statutory treble damages; (iii) exemplary and punitive damages; (iv) injunctive relief; (v) imposition of constructive trusts and disgorgement of any benefits wrongfully received or obtained by the Defendants; (vi) declaratory relief; (vii) pre- and post-judgment interest at the highest applicable legal rates; (ix) attorneys' fees and litigation expenses incurred through trial and any appeals; (x) costs of suit; (xi) an order under 11 U.S.C. § 523(a)(6) that Defendants be prohibited from any discharge under 11 U.S.C. § 727 for injuries caused to Plaintiffs' and the Class members by Defendants' malicious and willful conduct, and, (xii) such other and further relief that this Court deems just and proper.

#### 2.     *Hernandez* Plaintiffs' Position

*Hernandez* Plaintiffs, individually and on behalf of their proposed Class, seek the following relief: (i) an order certifying this case as a class action and appointing Plaintiffs and

41

their counsel to represent the Class; (ii) economic damages to be determined through subsequent discovery and expert valuations; (iii) compensatory, statutory, exemplary, aggravated, and punitive damages, as permitted by law; and (iv) restitution in an amount to be determined at trial.

Plaintiffs also seek injunctive and equitable relief including: an order (i) prohibiting Path from engaging in the acts alleged; (ii) requiring Path to disgorge all of its ill-gotten gains to Plaintiffs and other Class Members, or to whomever the Court deems appropriate; (iii) requiring Path to delete all data surreptitiously or otherwise collected through the acts alleged; (iv) requiring Path to provide Plaintiffs and other Class Members a means to easily and permanently decline any participation in any data collection activities by means of the Path app or any similar online activity, in any present or future iteration of Path; (v) awarding Plaintiffs and Class Members full restitution of all benefits wrongfully acquired by Path by means of the wrongful conduct alleged; and (vi) ordering an accounting and constructive trust imposed on the data, funds, or other assets obtained by unlawful means as alleged, to avoid dissipation, fraudulent transfers, and/or concealment of such assets by Path.

Plaintiffs further seek a permanent injunction enjoining and restraining Path, and all persons or entities acting in concert with it during the pendency of this action and thereafter perpetually, from: (i) initiating or procuring transmission of unsolicited commercial electronic messages on or through Class Members' mobile devices, Class Members' networks, or to Path users; (ii) accessing or attempting to access Class Members' networks, data, information, user information, profiles, and/or mobile devices; (iii) soliciting, requesting, or taking any action to induce Path visitors to provide identifying information, or representing that such solicitation, request, or action is being done with any Class Member's authorization or approval; (iv) retaining any copies, electronic or otherwise, of any Class Member's information, including contact address book data, obtained through illegitimate and/or unlawful actions; (v) engaging in any activity that alters, damages, deletes, destroys, disrupts, diminishes the quality of, interferes with the performance of, or impairs the functionality of Class Members' mobile devices, data,

1    and email or other services; and (vi) engaging in any unlawful activities alleged in the Amended

2    Class Action Complaint.

3           Plaintiffs also seek an order requiring Path to account for, hold in constructive trust, pay

4    over to Class Members, and otherwise disgorge all profits derived from its unlawful conduct and

5    unjust enrichment, as permitted by law; an award to Plaintiffs and Class Members of reasonable

6    costs, including reasonable attorneys' fees; pre- and post-judgment interest as allowed by law;

7    and for such other relief as the Court may deem just and proper.

8                  **3.    *Pirozzi* Plaintiff's Position**

9           Pirozzi seeks the following relief on behalf of her proposed Class: (i) an order certifying

10   this case as a class action and appointing Pirozzi and her counsel to represent the Class; (ii) a

11   temporary, preliminary and/or permanent order for injunctive relief; (iii) a temporary, preliminary

12   and/or permanent order for injunctive relief requiring Apple to undertake an informational

13   campaign to inform members of the general public as to the wrongfulness of Apple's practices;

14   (iv) an award of actual, statutory and/or exemplary damages; (v) an order requiring disgorgement

15   of Apple's ill-gotten gains by requiring the payment of restitution to Pirozzi and members of the

16   Class; (vi) reasonable attorneys' fees; (vii) all related costs of this suit; (viii) pre- and post-

17   judgment interest; and (ix) such other and further relief as the Court may deem necessary or

18   appropriate.   Upon information and belief, Pirozzi's range of provable damages exceeds

19   $5,000,000, exclusive of interest and costs.

20          **B.    Defendants' Positions**

21                  **1.    App Developer Defendants' Position in *Opperman***

22          The App Developer Defendants dispute the *Opperman* Plaintiffs' allegations concerning

23   damages and dispute Plaintiffs' and the putative class's entitlement to any relief.

24                  **2.    Path's Position in *Hernandez***

25          Path disputes the *Hernandez* Plaintiffs' allegations concerning damages and disputes

26   Plaintiffs' and the putative Class's entitlement to any relief.  Path contends that there are no

27   recoverable damages because Plaintiffs have not suffered any economic loss from the use of

28                                          43

1  Path's free service.  Path further disputes that the Plaintiffs and the putative class are entitled to

2  any injunctive or other equitable relief.

3              **3.       Apple's Position in *Pirozzi* and *Opperman***

4         Apple denies that the Plaintiffs or any putative class member have been injured or

5  damaged in any way by Apple's conduct or are entitled to any relief whatsoever.  To the extent

6  any putative class member was entitled to any relief, such relief could only be calculated on an

7  individualized basis that would take into account which third-party apps each class member

8  downloaded, which of those apps uploaded the class member's personal information, what

9  personal information was uploaded by each third-party app, the amount of personal information

10  that was allegedly uploaded, and that particular putative class member's expectations and/or

11  consent with respect to  the personal information that was allegedly uploaded.

12  **XII.    SETTLEMENT AND ADR**

13         **A.    Plaintiffs' Positions**

14                 **1.       *Pirozzi* Action**

15         The parties in the *Pirozzi* Action discussed the likelihood of settlement, and which ADR

16  process should be utilized pursuant to ADR Local Rule 3-5.  The parties in the *Pirozzi* Action

17  agree that private mediation with a mediator to be determined at a later date is in the best interest

18  of the parties.  The parties in the *Pirozzi* Action propose that mediation be commenced within 90

19  days following any answer filed by defendants in each action.

20                 **2.       *Opperman* Action**

21         In the *Opperman* action, certain Defendants have discussed the prospect of settlement

22  with *Opperman* Plaintiffs but in view of those discussions, a party-negotiated settlement does not

23  appear likely at this time. The *Opperman* Plaintiffs are amenable to mediation.

24         **B.    Defendants' Positions**

25                 **1.      App Developer Defendants' Position in *Opperman***

26         The App Developer Defendants believe that mediation prior to their anticipated omnibus

27  motions to dismiss is unlikely to be productive.  App Developer Defendants believe that the

28

1 nature and timing of ADR efforts should be revisited after resolution of the anticipated omnibus

2 motion or other motions to dismiss.

3         **2.**         **Path's Position in *Hernandez***

4        The *Hernandez* parties earlier agreed to postpone mediation until resolution of Path's

5 earlier motion to dismiss. Path believes that mediation prior to the anticipated omnibus motion

6 to dismiss is unlikely to be productive and prefers to revisit the nature and timing of ADR efforts

7 after the resolution of the anticipated omnibus motion or other motions to dismiss.

8         **3.**         **Apple's Position in *Pirozzi***

9        The Parties discussed the likelihood of settlement, and which ADR process should be

10 utilized pursuant to ADR Local Rule 3-5. Apple does not believe Plaintiff's Second Amended

11 Complaint should or will survive its motion to dismiss. Plaintiff's previous complaint was

12 dismissed for lack of Article III standing and failure to state a claim. In the event any of

13 Plaintiff's claims survive, Apple believes private mediation would be the best ADR option.

14 **XIII. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

15        The Parties do not consent to have a magistrate judge conduct any proceedings, including

16 trial.

17 **XIV. OTHER REFERENCES**

18        Defendants Kik and Instagram have arbitration clauses in their respective terms of use,

19 and each reserves the right to move for an order referring Plaintiffs' claims against them to

20 binding arbitration. The remaining Parties do not identify any other potential references at this

21 time.

22 **XV. NARROWING OF ISSUES**

23        The parties in the *Pirozzi* Action do not believe the issues are framed in such a manner as

24 would allow for issue-narrowing.

25        The *Opperman* Plaintiffs propose that appropriately crafted procedures, as recommended

26 in the *Manual for Complex Litigation*, be employed, which may allow the issues to be promptly

27 framed in such a manner as would allow for issue-narrowing reasonably early in the case.

28

1    All Defendants believe that resolution of their anticipated motions to dismiss for failure

2 to state a claim and lack of Article III standing will substantially narrow, if not eliminate, the

3 issues in dispute.

4 **XVI.  EXPEDITED TRIAL PROCEDURE**

5    At this time, the Parties do not believe this case is appropriate for expedited trial

6 procedures.

7 **XVII. SCHEDULING**

8    Each Party's proposed dates for designation of experts, fact, and expert discovery cutoff,

9 hearing of dispositive motions, pretrial conference, and trial are set forth in a Schedule of Pretrial

10 and Trial Dates, attached hereto.

11 **XVIII. TRIAL**

12    The Parties request trial by jury as to all claims for which a right to a jury trial exists.

13    **A.    Plaintiffs' Positions**

14        **1.    *Opperman* Plaintiffs' Position**

15    Given the current procedural status of the case, Plaintiffs are not in a position to provide

16 an accurate estimate for the length of trial at this time, but based on present knowledge regarding

17 the parties and assuming that the Related Actions are consolidated, *Opperman* Plaintiffs estimate

18 an expected length of trial of from 4 to 8 weeks.  See also § XVII (a)(1),

19        **2.    *Hernandez* Plaintiffs' Position**

20    Based on the current knowledge of the Parties, the expected length of trial is seven to ten

21 days.

22        **3.    *Pirozzi* Plaintiff's Position**

23    The expected length of the trial is 7-10 days.

24    **B.    Defendants' Positions**

25        **1.    App Developer Defendants' Position in *Opperman***

26    The App Developer Defendants believe it is premature to estimate the length of trial,

27 given the current procedural status of the case.  The length of trial will be greatly impacted by

28

46

1   what, if any, claims remain following the Court's determinations of Defendants' Fed. R. Civ. P.

2   12(b) motions in response to the current or any amended complaint.   Further, if there are

3   remaining claims, the outcome of class certification motions will also affect the length of trial.

4   Assuming the Court permits Plaintiffs to proceed on any causes of action, the App Developer

5   Defendants propose that a trial schedule be set only after the Court's determinations regarding

6   class certification.

7                  **2.       Path's Position in *Hernandez***

8          Path anticipates that trial on the narrowed claims of the *Hernandez* case would last 5 to 7

9   days.

10                 **3.       Apple's Position in *Pirozzi***

11         Given the current procedural status in both *Pirozzi* and *Opperman*, Apple is not in a

12   position to provide a reasoned estimate for the length of trial in either case at this time.   Apple

13   respectfully requests that the Court set deadlines for class certification and defer any trial

14   schedule pending a decision on that issue.

15  **XIX.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

16         **A.       *Opperman* Action**

17         The *Opperman* Plaintiffs will have filed Certificates of Interested Entities or Persons by

18   the Case Management Hearing.   All Defendants will file Certificates of Interested Entities or

19   Persons by the Case Management Hearing.

20         **B.       *Hernandez* Action**

21         *Hernandez* Plaintiffs filed a Certificate of Interested Entities or Persons pursuant to Civil

22   Local Rule 3-16 on March 26, 2012.   Path, Inc. filed a Certificate of Interested Entities or

23   Persons on April 16, 2012.   Other than the named parties, there is no such interest to report.

24         **C.       *Pirozzi* Action**

25         Apple filed a Certificate of Interested Entities or Persons pursuant to Civil Local Rule 3-

26   16 on December 13, 2012.   Pirozzi filed a Certificate of Interested Entities or Persons on

27   February 14, 2013.   Other than the named parties, there is no such interest to report.

28

**XX.    OTHER ISSUES (as outlined by the Court's May 17, 2013 Order)**

**A.    Summary of the claims and defenses of each party**

*See* Sections I (Jurisdiction and Service), II (Facts), III (Legal Issues) and XI (Relief).

**B.    Summary of any dispute currently existing between the parties**

*See* Sections I (Jurisdiction and Service), II (Facts), III (Legal Issues), IV.A (Pending Motions), VIII (Discovery) and XI (Relief).

**C.    Whether the related cases may be consolidated for purposes of avoiding duplicative discovery and/or discovery disputes**

**1.    Plaintiffs' Positions**

Plaintiffs in the above referenced Related Actions have met and conferred about the possibility of consolidating the Related Actions into a single Action.

*Opperman* Plaintiffs assert that the Related Actions should be consolidated or stayed in favor of the first-filed, more comprehensive *Opperman* action.  The Related Actions include overlapping parties, claims, legal and factual issues, prospective class definitions, and necessary discovery, motion and trial practice.  Consolidation or a stay or the Related Actions is appropriate and will facilitate more efficient management and expeditious resolution of the cases, reduce burdens on the parties, witnesses and the Court, and avoid duplicative discovery or inconsistent or conflicting rulings.  ECF No. 217 at p. 7.

Coordinating discovery across the Related Actions, whether consolidated or not, will reduce burdens on the parties and witnesses, reduce potential discovery disputes, and result in numerous efficiencies.  The Parties should confer on coordinated discovery and on establishing a cloud- or privately-managed electronic repository for centralized storage of discovery requests, responses and production.

Plaintiff in the *Pirozzi* Action believes that consolidation should be addressed following the Court's ruling on Defendants' motions to dismiss and agrees to coordinate with the Plaintiffs in the other Related Actions for purposes of discovery and mediation. *Pirozzi* Plaintiff will oppose any stay of its action.

48

Plaintiffs' counsel in the *Hernandez* action has initiated contact with counsel for Plaintiffs in the *Opperman* and *Pirozzi* actions regarding consolidation of the Related Actions, however no consensus was reached.  *Hernandez* Plaintiffs favor consolidation of the Related Actions under a single complaint.  While factual issues related to the various Defendants may differ, some of the legal principles the Court must apply are the same or similar and consolidation under a single complaint would conserve the Parties' and the Court's time and resources. Counsel for the *Hernandez* Plaintiffs is also counsel for Plaintiff in *Gutierrez v. Instagram* and supports consolidation of that case in an amended complaint as well.

## 2.    Defendants' Positions

### a.    App Developer Defendants' Position

App Developer Defendants believe consolidation of all claims against all parties would not serve the interest of judicial economy, and, to the contrary, would result in substantial delay and waste. Twitter further opposes consolidation because the factual allegations against it are distinct from the allegations against Defendants Path and Apple in *Pirozzi* and *Hernandez*. Rovio and ZeptoLab further object to consolidation of the related cases as the claims asserted against them are probably the most unrelated to all of the Defendants because they simply are developers of their respective Apps and did not receive, access, upload, transmit, or store any of Plaintiffs' address book data.  Defendant Path believes that consolidation of claims against it would benefit judicial economy by avoiding duplicative discovery and motions.  Instagram similarly believes that consolidation of the claims against it brought in *Opperman* and *Gutierrez* would advance the interest of judicial and party economy, as it stated in its Unopposed Motion to Relate.  (*See Opperman* Dkt. No. 328).  In addition, all App Developer Defendants believe common causes of action and issues relating to whether plaintiffs in the *Opperman* and *Hernandez* action have Article III standing can be addressed in a single, omnibus motion to dismiss.  Unique factual allegations as to each defendant can be addressed through concise, separate joinders.

1

### b.      Apple's Position

2        Apple contends that, in view of the Court's prior order dismissing Plaintiff Pirozzi's

3   Amended Complaint for lack of Article III standing and for failure to state a claim, and because

4   Apple's motion to dismiss the Second Amended Complaint in *Pirozzi* has been fully briefed,

5   determination regarding possible consolidation of the above-captioned matters for discovery

6   purposes should be deferred until after the Court's resolution of Apple's pending Motion to

7   Dismiss in *Pirozzi*.  Because the Second Amended Complaint in *Pirozzi* does not address the

8   defects in the Court's prior order of dismissal—and because this is the only case in addition to

9   *Opperman* that asserts claims against Apple—Apple respectfully submits that it may not be

10  necessary to address consolidation of the *Pirozzi* and *Opperman* cases depending on the outcome

11  of Apple's motion.  To the extent that the Court permits any claims to go forward in *Pirozzi*,

12  Apple would seek to consolidate the claims in *Opperman* and *Pirozzi*, which arise from

13  substantially similar facts and legal theories.

14        Accordingly, Apple respectfully requests that the Court hear Apple's pending motion to

15  dismiss Plaintiff Pirozzi's Second Amended Complaint at the earliest possible date.  The Court

16  might then consider whether the related cases may be consolidated for the determination of any

17  common legal or factual questions, including, but not limited to: motions to dismiss, Article III

18  standing, class certification, admission of expert testimony, and summary judgment.

19        Because the *Pirozzi* motion to dismiss has been fully briefed, Apple submits that the

20  interests of efficiency and judicial economy would best be served if this Court ruled on the

21  pending motion to dismiss in *Pirozzi* before addressing consolidation of the complaints for

22  purposes of these determinations.  Apple believes that consolidation would be appropriate should

23  the Court permit one or more of the claims in both *Pirozzi* and *Opperman* to go forward.

24

25

26

27

28

**D.   Whether the related cases may be consolidated for the determination of any common legal or factual questions, including, but not limited to: motions to dismiss, Article III standing, class certification, admission of expert testimony, and summary judgment**

**1.   Plaintiffs' Positions**

The *Opperman* Plaintiffs assert that the Related Actions should be consolidated or stayed in favor of the first-filed, more comprehensive *Opperman* action, which will facilitate more efficient management and expeditious resolution of common legal and factual questions.

Plaintiff in the *Pirozzi* Action believes that consolidation should be addressed following the Court's ruling on Defendants' motions to dismiss and agrees to coordinate with the Plaintiffs in the other Related Actions for purposes of discovery and mediation. *Pirozzi* Plaintiff will oppose any stay of its action.

Plaintiffs' counsel in the *Hernandez* action has been in contact with counsel for Plaintiffs in the *Opperman* and *Pirozzi* actions regarding consolidation of the Related Actions, however no consensus was reached. *Hernandez* Plaintiffs favor consolidation of the Related Actions under a single complaint. While factual issues related to the various Defendants may differ, some of the legal principles the Court must apply are the same or similar and consolidation under a single complaint would conserve the Parties' and the Court's time and resources. The Class definitions in the Related Actions vary in several respects and, depending on the outcome of certain discovery, *Hernandez* Plaintiffs may propose a different schedule with regard to class certification of a consolidated action, if any. Additionally, factual defenses (for example, reliance on various Defendants' terms of service) may differ among Defendants.

**2.   Defendants' Position**

*See* response to Section XX.C, above.

**E.   Whether the related cases may be consolidated for trial**

**1.   Plaintiffs' Positions**

While Plaintiffs have not agreed to consolidate at this time, Plaintiffs have conferred and agreed to revisit the topic of consolidation following the Court's input at the court conference

51

1  and following the Court's resolution of outstanding motions to dismiss.  Plaintiffs also agreed to

2  coordinate discovery with respect to common issues and defendants.

3      The *Opperman* Plaintiffs assert that the Related Actions should be consolidated with or

4  stayed in favor of the first-filed, more comprehensive *Opperman* action, which will facilitate

5  more efficient management and expeditious resolution of common legal and factual questions.

6  In advance of Defendants' filing of answers and discovery, *Opperman* Plaintiffs cannot

7  adequately assess whether the Related Actions will be more suited to a consolidated trial of all

8  parties, actions and issues, to a series of severed party- or issue-specific trials or mini-trials, or to

9  some combination thereof.  *Opperman* Plaintiffs nonetheless anticipate, as did the transferor

10 court, that overlapping parties, issues, and witnesses and Apple's status as an alleged joint

11 tortfeasor with each of its App co-defendants will more likely than not necessitate a consolidated

12 trial to adjudicate principal liability and damages on the asserted claims.  ECF 217 at p. 7

13 (finding that, "Try this case separately virtually guarantees a waste of judicial resources, and

14 risks inconsistent rulings.") (citing *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)).

15             **2.    Defendants' Position**

16     Defendants' believe this topic is premature until after the Court has ruled on Defendants'

17 anticipated motions to dismiss.  However, as currently pleaded, App Developer Defendants

18 believe a consolidated trial of all claims against all defendants would lead to unnecessary delay

19 and juror confusion, due to the substantial differences between each defendant and the operation

20 of each defendant's applications.  Defendant Twitter further opposes consolidation because the

21 factual allegations against it are distinct from those against Path and Apple in *Hernandez* and

22 *Pirozzi*.  EA, Chillingo, and ZeptoLab also oppose consolidation of these cases for trial.

23     Defendant Path believes a consolidated trial of overlapping claims only as to Path would

24 serve the interests of judicial efficiency and avoid the risk of inconsistent rulings.

25     Apple supports consolidation of the claims against Apple in the above-captioned matters

26 for trial, in the event that the Court permits one or more of the claims in both *Pirozzi* and

27 *Opperman* to go forward.

28

Instagram supports consolidation of the claims brought against Instagram in the *Gutierrez* and *Opperman* matters for trial, in the event the Court permits any claims to go forward.

**F.     To what extent the class definitions asserted in each action overlap, and how the parties intend to coordinate class certification proceedings**

**1.     Plaintiffs' Positions**

Plaintiff in the *Pirozzi* Action seeks to represent purchasers of Apple Devices (iPhone, iPad and iPod touch) who overpaid for their devices and has defined her class as consisting of all persons who purchased an Apple Device between June 15, 2010 and the present and who downloaded apps to these devices.  Pirozzi will meet and confer with the other Plaintiffs with respect to coordination of class certification following the Court's ruling on the pending motions to dismiss.

*Opperman* Plaintiffs assert that the Class definitions in the Related Actions substantially overlap and, depending on the content of Defendants' pleadings and the outcome of certain discovery, may overlap further as matters progress or pleadings are amended.  *Opperman* Plaintiffs assert that Class matters and certification issues should be deferred until the consolidation issue is resolved and Defendants have answered all operative complaints and raised any applicable affirmative defenses.

*Hernandez* Plaintiffs assert that the Class definitions in the Related Actions vary in several respects and, depending on the outcome of certain discovery, *Hernandez* Plaintiffs may propose a different schedule with regard to class certification of a consolidated action, if any.

**2.     Defendants' Positions**

The App Developer Defendants believe that issues related to overlap in class certification should be deferred until after a determination is made as to whether Plaintiffs can file a consolidated amended complaint (which some App Developer Defendants would oppose).

In Apple's view, Plaintiffs in *Pirozzi* and *Opperman* both seek to represent a sweeping nationwide class of individuals in possession of an iOS device between June 15, 2010 and the present who downloaded apps to that device.  However, Plaintiff Pirozzi's class definition broadly covers *all* individuals who purchased an iOS device in this period, regardless of whether

53

they downloaded an app that actually accessed their contact information without consent.  In contrast, *Opperman*'s class definition is not restricted to any time period, such that the class encompasses all owners of iOS devices (whether they purchased the devices or not) who obtained apps from the App Store, whose address book materials were accessed without the user's consent, and who were damaged thereby.

Apple will meet and confer with the other Defendants regarding coordination of class certification following the Court's resolution of (i) Apple's pending Motion to Dismiss in *Pirozzi*, (ii) Apple's second Motion to Dismiss in *Opperman*, and (iii) consolidation among the above-captioned actions.

   **G.   To what extent the asserted causes of action in each action overlap, and whether it would be expedient to consolidate some or all of the causes of action in a single complaint**

   **1.   Plaintiffs' Positions**

The *Opperman* Plaintiffs assert that the causes of action in the Related Actions substantially overlap and that the Related Actions should be consolidated with or stayed in favor of the first-filed, more comprehensive *Opperman* action.  *Pirozzi* Plaintiff asserts that the above-captioned actions do not have any causes of actions in common although they arise out of similar acts and contain similar issues.  *Pirozzi* asserts that, while both *Opperman* and *Pirozzi* Actions bring claims for unjust enrichment, the underlying basis of these claims differ.  The Plaintiffs have discussed the possibility of consolidation and coordination in the future with respect to common issues and Defendants.  *See Hernandez* response regarding consolidation above.

   **2.   Defendants' Positions**

The remaining causes of action against Path in *Hernandez* overlap with the causes of action against Path in *Opperman,* which also asserts additional causes of action, many of which were considered and dismissed in *Hernandez* by Judge Gonzalez Rogers in her October 19, 2012 Order.  (*Hernandez* Dkt. No. 22 (Dismissing Wiretap Act, Stored Communications Act and

1  common law privacy causes of action against Path).)  The remaining App Developer Defendants

2  are not parties to any other cases that are currently related before this Court.[6]

3          In Apple's view, Plaintiffs in *Pirozzi* and *Opperman* both assert a common law claim for

4  unjust enrichment against Apple, and the *Pirozzi* Plaintiff previously asserted a negligence

5  claim—which is also asserted by the *Opperman* Plaintiffs—but which was dismissed by the

6  Court for failure to state a claim.  In addition, the *Opperman* Plaintiffs are asserting claims

7  against Apple for alleged negligence, aiding and abetting, unjust enrichment and constructive

8  trust, and violation of RICO, but in each case, the claims relate to substantially similar

9  allegations that Apple failed to prevent third-party apps from accessing users' contacts

10  maintained on their mobile devices.  Accordingly, Apple believes that consolidation would be

11  appropriate should the Court permit one or more of the claims in both *Pirozzi* and *Opperman* to

12  go forward.

13        **H.    To what extent Plaintiffs in the *Opperman* action intend to assert both
                  Texas and California statutory violations of law, and whether any
14                choice of law issues must be resolved;**

15      *Opperman* Plaintiffs intend at this time to assert both California and Texas statutory

16  violations of law and agree that there are choice of law issues to be resolved following

17  appropriate discovery.

18        **I.    To what extent it would be appropriate to phase discovery, pretrial,
                  and/or trial proceedings with respect to particular defendants**
19

20              **1.    Plaintiffs' Position**

21          Plaintiffs have conferred and have agreed to coordinate discovery with respect to

22  common defendants.

23

24

25  _____

26  [6] As previously noted, Instagram's unopposed Motion to Relate Motion to Relate *Gutierrez v.
    Instagram, Inc.*, Case No. 12-cv-06550, to the *Opperman* action is presently pending before this
27  Court.  (*See* Dkt. No. 328.)

28

1

### 2. Defendants' Position

2    As noted above, Defendants contend that the appropriate scope of discovery cannot be

3 determined until after a ruling on Defendants' motions to dismiss, which may eliminate or

4 substantially limit the claims at issue. Depending on the nature of the claims that survive

5 Defendants' motions (if any), certain modifications or limitations to the discovery provisions in

6 the Federal Rules of Civil Procedure may be appropriate. For example, certain discovery may

7 not be appropriate until the Court has ruled on class certification. Defendants submit that the

8 Court need not consider this issue until it has ruled on Defendants' motions to dismiss.

9
### J. Whether there are any questions of law the early resolution of which would aid the parties in evaluating these cases for settlement
10

11
### 1. Plaintiffs' Position

12    Resolution of (1) *Opperman* Defendants' right, if any, to re-assert motions under 12(b),

13 (2) any pending or subsequent motions to dismiss, (3) consolidation.

14
### 2. Defendants' Position

15    Resolution of the App Developer Defendants' anticipated motions to dismiss the

16 *Opperman* and to-be-amended *Hernandez* complaints will narrow or eliminate the issues in

17 dispute.

18    Apple's settlement evaluations would be aided by the Court's resolution of (i) Apple's

19 pending Motion to Dismiss in *Pirozzi* and (ii) Apple's second Motion to Dismiss in *Opperman*.

20
### K. Whether it would be appropriate to establish a formal structure coordinating the prosecution and defense of these actions, *e.g.*, the establishment of lead and/or liaison counsel, steering committees, etc.
21

22
### 1. Plaintiffs' Positions

23    In the event of consolidation, *Opperman* Plaintiffs assert that a formal structure for

24 coordinating both the prosecution and the defense of these actions should be established and a

25 steering committee set up on the plaintiffs' side, with the *Opperman* Plaintiffs' counsel

26 designated as lead in view of the more comprehensive nature of the action and its first-filed

27 status. Irrespective of consolidation, *Opperman* Plaintiffs assert that coordination of matters

28

through one to three designated liaison defense counsel representing similarly-situated Defendants is nevertheless appropriate in the *Opperman* case.

*Hernandez* Plaintiffs, in addition to Plaintiff in *Gutierrez v. Instagram* (motion to relate to the above-captioned Related Cases currently pending before this Court), propose that one firm from their group, one firm from the group representing the *Opperman* Plaintiffs, and one firm from the group representing the *Pirozzi* Plaintiff be appointed as co-lead counsel for the Plaintiffs under a consolidated complaint, if any.  Such group would assign work to other firms representing Plaintiffs in the Related Actions as required.  Absent any other agreement, *Hernandez* Plaintiffs propose that interested firms submit leadership applications to this Court for a determination of the leadership issue under the criteria outlined in the Manual for Complex Litigation.  Manual for Complex Litigation, Fourth, § 10.22.

Plaintiffs in the *Pirozzi* Action believe that no such formal structure is necessary prior to the Court's ruling on the pending motions to dismiss.  Plaintiffs have conferred and agreed to revisit the topic of consolidation following the Court's resolution of outstanding motions to dismiss.  Plaintiffs also agreed to coordinate discovery with respect to common issues and defendants.

### 2.   Defendants' Position

The App Developer Defendants do not believe a formal structure is necessary for coordination of the defense of the actions, and such a structure may not be workable given each App Developer's unique factual and legal issues.

In Apple's view, should the Court permit one or more of the claims in *Opperman* or *Pirozzi* to go forward against Apple, Apple believes that the Court should establish a formal structure for prosecuting the actions, but would not support a formal defense structure as to the claims against Apple, which are distinct from the claims against the App Developer Defendants.

**L.      With respect to all actions, and the *Opperman* action in particular, the parties' proposed alterations to the page limits and briefing timetables provided by the local rules that will eliminate the potential for duplicative or unnecessarily burdensome motion practice**

### 1.      Plaintiffs' Position

Plaintiffs in the *Opperman* Action do not require alternative page limits, but will seek to meet and confer with Defendants with respect to alternative briefing timetables for any future motions that may be filed.  In the event of consolidated motions by groups of Defendants, Plaintiffs in the *Opperman* Action anticipate that the parties may seek alternative page and time limit extension and request extensions commensurate with those allowed to any movant(s).

Plaintiffs in the *Pirozzi* Action does not require alternative page limits, but will seek to meet and confer with Apple with respect to alternative briefing timetables for any future motions that may be filed.

Plaintiffs in the *Hernandez* action do not require alternative page limits, but will seek to meet and confer with Path with respect to alternative briefing timetables for any future motions that may be filed.

### 2.      Defendants' Position

Defendants believe that the anticipated omnibus motion to dismiss on behalf of the App Developer Defendants should be limited to 40 pages and that each Defendant should be permitted to file a concise joinder to the omnibus motion to address issues unique to that Defendant, and with replies limited to 30 pages.  Defendants also propose the following alteration to Civil Local Rule 7-3: (a) the time to respond to any amended or consolidated complaint will be extended to 45 days from filing and service; (b) the time to oppose any motion to dismiss any amended or consolidated complaint will be extended to 45 days from filing and service; and (c) the time to file a reply to any motion to dismiss any amended or consolidated complaint will be extended to 30 days from filing and service.

Apple respectfully requests the following proposed alterations for briefing in its Motion to Dismiss the *Opperman* Plaintiffs' Second Amended Complaint:  (1) extended filing deadlines providing 10 additional days for Plaintiffs' opposition brief and seven additional days for

1   Apple's reply brief, and (2) extended page limits providing seven extra pages for Apple's motion

2   to dismiss and Plaintiffs' opposition briefs, and four extra pages for Apple's reply brief.  Apple

3   will meet and confer with the Parties regarding further page limit alterations and alternative

4   briefing timetables for any future motions that may be filed.

5         **M.      The parties' proposed coordinated discovery plan and timetable**

6         *See* Attached Proposal

7         **N.      The parties' proposed coordinated pretrial schedule, including case
                  management**

8

9         *See* Attached Proposal.

10        **O.      The parties' proposed coordinated trial schedule – *See* Attached
                  Proposal.**

11

12        *See* Attached Proposal.

13        **P.      Any other procedures, issues, or concerns relating to the expedient
                  and fair resolution of the related actions**

14        *Opperman* Plaintiffs assert that the selection and use of appropriate procedures

15   recommended in the *Manual for Complex Litigation* will reduce potential burdens on the Parties

16   and the Court and will facilitate the expedient and fair resolution of the Related Actions.

17        *Pirozzi* Plaintiff is not aware of any other matter that may facilitate the expedient and fair

18   resolution of the related actions.

19        *Hernandez* Plaintiffs suggest that moving the case forward on a coordinated basis

20   between all Parties will facilitate the expedient and fair resolution of the Related Actions.

21        The parties are not aware at this time of any other matters that may facilitate the just,

22   speedy and inexpensive disposition of this matter or other matters affecting the status or

23   management of the case at this time.

24

25

26

27

28
                                        59

1

2   DATED:  June 7, 2013                         Respectfully submitted,

3                                                PHILLIPS, ERLEWINE & GIVEN LLP

4                                                By:   /s/ David M. Given
                                                       David M. Given
5
                                                 David M. Given (CBN 142375)
6                                                Nicholas A. Carlin (CBN 112532)
                                                 50  California Street, 35th Floor
7                                                San Francisco, CA  94111
                                                 Telephone:  415-398-0900
8                                                Fax:        415-398-0911
                                                 Email:      dmg@phillaw.com
9                                                            nac@phillaw.com

10                                               EDWARDS LAW
                                                 Jeff Edwards (TBN 24014406; *pro hac vice*)
11                                               The Haehnel Building
                                                 1101 East 11th Street
12                                               Austin, Texas 78702
                                                 Telephone: 512.623.7727
13                                               Facsimile:  512.623.7729
                                                 jeff@edwards-law.com
14
                                                 LAW OFFICES OF CARL F. SCHWENKER
15                                               Carl F. Schwenker (TBN 00788374; *pro hac vice*)
                                                 The Haehnel Building
16                                               1101 East 11th Street
                                                 Austin, Texas 78702
17                                               Telephone: 512.480.8427
                                                 eFax:       512.857.1294
18                                               cfslaw@swbell.net

19                                               *Attorneys for* Opperman *Plaintiffs Alan*
                                                 *Beuershasen, Giuli Biondi, Steve Dean, Stephanie*
20                                               *Dennis-Cooley, Claire Hodgins, Jason Green,*
                                                 *Gentry Hoffman, Rachelle King, Nirali*
21                                               *Mandaywala, Claire Moses, Marc Opperman, Judy*
                                                 *Paul, Theda Sandiford and Greg Varner*
22
                                                 STRANGE & CARPENTER
23
                                                 By:/s/Brian R. Strange
24                                               BRIAN R. STRANGE

25                                               STRANGE & CARPENTER
                                                 Brian R. Strange (Cal. Bar No. 103252)
26                                               LACounsel@earthlink.net
                                                 12100 Wilshire Boulevard, Suite 1900
27                                               Los Angeles, CA 90025
                                                 Telephone: (310) 207-5055
28                                                                    60

Facsimile: (310) 826-3210

*Attorneys for Plaintiffs Oscar Hernandez and Lauren Carter*

GARDY & NOTIS, LLP

By:*/s/ Jennifer Sarnelli*
JENNIFER SARNELLI

GARDY & NOTIS, LLP
Jennifer Sarnelli (Cal. Bar No. 242510)
jsarnelli@gardylaw.com
Kira German (*pro hac vice*)
kgerman@gardylaw.com
501 Fifth Avenue, Suite 1408
New York, NY 10017
Telephone: (212) 905-0509
Facsimile: (212) 905-0508

*Counsel for Plaintiff Maria Pirozzi*

GIBSON, DUNN & CRUTCHER LLP

By: */s/ S. Ashlie Beringer*
S. Ashlie Beringer
GIBSON DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94036
Telephone:  650.849.5300
Facsimile:  650.849.5333
aberinger@gibsondunn.com

Attorneys for Defendant
APPLE INC.

DHILLON & SMITH LLP

By: */s/ Harmeet K. Dhillion*
Harmeet K. Dhillon (#207873)
DHILLON & SMITH LLP
177 Post Street, Suite 700
San Francisco, CA 94108
Tel.: (415) 433-1700
Email: harmeet@dhillonsmith.com

Attorneys for GOWALLA INCORPORATED

Mitchell, Silberberg & Knupp LLP

By: */s/ Jeffrey M. Movit*
Jeffrey M. Movit
Mitchell Silberberg & Knupp LLP
12 East 49th Street, 30th Floor

61

New York, NY  10017
(917) 546-7708 (direct)
(917) 546-7678 (fax)
jmm@msk.com

ATTORNEYS FOR ZEPTOLAB

FENWICK & WEST LLP

By:/s/ Tyler G. Newby
Tyler G. Newby (CSB No. 205790)
tnewby@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:    415.875.2300
Facsimile:    415.281.1350

Attorneys for Defendant PATH, INC.

DURIE TANGRI LLP

By: /s/ Michael H. Page
MICHAEL H. PAGE (#154913)
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:  415-362-6666
Facsimile:  415-236-6300
mpage@durietangri.com

Attorneys for Defendants
YELP INC. and FOODSPOTTING, INC.


PERKINS COIE, LLP

By: /s/ Timothy L. Alger
Timothy L. Alger
PERKINS COIE, LLP
3150 Porter Dr.
Palo Alto, CA 94304-1212
Telephone: 650.838.4334
Facsimile: 650.838.4350
TAlger@perkinscoie.com

Attorneys for Defendant Twitter, Inc.

COOLEY LLP

By:      /s/ Mazda K. Antia
Mazda K. Antia
Cooley LLP

62

1
2

4401 Eastgate Mall
San Diego, CA 92121-1909
Phonet: (858) 550-6000
Fax: (858) 550-6420

3
4

Attorneys for Defendants FACEBOOK, INC.,
INSTAGRAM, INC., and KIK INTERACTIVE,
INC.

5

Morrison & Foerster LLP

6
7
8
9
10

By: ___/s/ David F. McDowell_____
David F. McDowell (125806)
Morrison & Foerster LLP
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
Telephone: 213-892-5200
Facsimile: 213-892-5454
Email: DMcDowell@mofo.com

11

Attorneys for Defendant
FOURSQUARE LABS, INC.

12

ZwillGen Law LLP

13
14
15
16
17

By: michele@zwillgen.com_____
    Michele Floyd (SBN 163031)
ZWILLGEN LAW LLP
915 Battery Street, Second Floor, Suite 3
San Francisco, California 94111
Telephone: (415) 590-2340
Facsimile: (415) 590-2335
Michele@zwillgen.com

18
19
20
21
22

Marc J. Zwillinger (admitted *pro hac vice*)
marc@zwillgen.com
Jacob A. Sommer (admitted *pro hac vice*)
jake@zwillgen.com
ZWILLGEN PLLC
1705 N St NW
Washington, DC 20036
Telephone: (202) 296-3585
Facsimile: (202) 706-5298

23

Attorneys for Defendants ELECTRONIC ARTS,
INC. AND CHILLINGO LTD.

24

HOLLAND & KNIGHT LLP

25
26
27

By: _/s/ Christopher G. Kelly___
Christopher G. Kelly
Holland & Knight LLP
31 West 52nd Street
New York, New York 10019

28

63

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Tel.:  (212) 513-3200
Fax:  (212) 385-9010
christopher.kelly@hklaw.com

Shelley G. Hurwitz
HOLLAND & KNIGHT LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel.: (213) 896-2476
shelley.hurwitz@hklaw.com

Attorneys for Defendant ROVIO
ENTERTAINMENT LTD.
s/h/a ROVIO MOBILE OY

### *OPPERMAN* PROPOSED SCHEDULE OF PRETRIAL AND TRIAL DATES

| EVENT | PLAINTIFFS' PROPOSAL | APP DEVELOPER DEFENDANTS' PROPOSAL | APPLE'S AND PATH'S PROPOSAL |
|---|---|---|---|
| Commencement of Fact Discovery | Immediately | Discovery to be stayed pending the outcome of motions to dismiss | Simultaneous with any answer filed by Apple |
| Last Day for Motions Regarding Class Certification | 8 months following commencement of fact discovery | 8 months following commencement of fact discovery | 6 months following any answer |
| Opposition to Motion Regarding Class Certification | 45 days following motion regarding class certification | 45 days following motion regarding class certification | 45 days following Motion for Class Certification |
| Reply in Support of Motion Regarding Class Certification | 30 days following opposition to motion regarding class certification | 30 days following opposition to motion regarding class certification | 30 days following Opposition to motion for Class Certification |
| Hearing on Motion Regarding Class Certification | To be determined by the Court | To be determined by the Court | To be determined by the Court |
| Fact Discovery Cutoff | 12 months following commencement of fact discovery | 18 months following commencement of fact discovery | 9 months after answer filed by Apple |
| Rule 26(a)(2) Expert Disclosures | 13 months following commencement of fact discovery | 19 months following commencement of fact discovery | Identification of any experts to be used in class-certification briefs by 5 months following answer |
| Rebuttal Expert Disclosures | 14 months after commencement of fact discovery | 20 months following commencement of fact discovery | |
| Expert Discovery Cutoff | 16 months following commencement of fact discovery | 25 months following commencement of fact discovery | |
| Last Day for Summary Judgment Motions | 30 days after the ruling on class certification | 90 days after close of expert discovery | |
| Summary Judgment Oppositions | 60 days following motion for summary judgment | 45 days following filing of motions | |

65

| EVENT | PLAINTIFFS' PROPOSAL | APP DEVELOPER DEFENDANTS' PROPOSAL | APPLE'S AND PATH'S PROPOSAL |
|---|---|---|---|
| Summary Judgment Replies | 45 days following opposition to motion for summary judgment | 20 days following filing of oppositions | |
| Hearing on Summary Judgment Motions | To be determined by the Court | | |
| Pretrial Conference | To be determined by the Court | At least 15 days before trial | |
| Trial | To be determined by the Court | | |

### ___PIROZZI___ PROPOSED SCHEDULE OF PRETRIAL AND TRIAL DATES

| EVENT | PLAINTIFF'S PROPOSAL | APPLE'S PROPOSAL |
|---|---|---|
| Commencement of Fact Discovery | Immediately | Simultaneous with any answer filed by Apple |
| Last Day for Motions Regarding Class Certification | 8 months following commencement of fact discovery | 6 months following any answer |
| Opposition to Motion Regarding Class Certification | 45 days following motion regarding class certification | 45 days following Motion for Class Certification |
| Reply in Support of Motion Regarding Class Certification | 30 days following opposition to motion regarding class certification | 30 days following Opposition to motion for Class Certification |
| Hearing on Motion Regarding Class Certification | To be determined by the Court | To be determined by the Court |
| Fact Discovery Cutoff | 12 months following commencement of fact discovery | 9 months after answer filed by Apple |
| Rule 26(a)(2) Expert Disclosures | 13 months following commencement of fact discovery | Identification of any experts to be used in class-certification briefs by 5 months following answer |
| Rebuttal Expert Disclosures | 14 months after commencement of fact discovery | Identification of any rebuttal experts to be used in class-certification briefing 3 weeks later |
| Expert Discovery Cutoff | 16 months following commencement of fact discovery | |
| Last Day for Summary Judgment Motions | 30 days after the ruling on class certification | |
| Summary Judgment Oppositions | 60 days following motion for summary judgment | |
| Summary Judgment Replies | 45 days following opposition to motion for summary judgment | |
| Hearing on Summary Judgment Motions | To be determined by the Court | |

67

| EVENT | PLAINTIFF'S PROPOSAL | APPLE'S PROPOSAL |
|---|---|---|
| Pretrial Conference | To be determined by the Court | |
| Trial | To be determined by the Court | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28