# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| MARC OPPERMAN, et al., | Case No.: 13-cv-00453-JST |
| Plaintiffs, | CLASS ACTION |
| v. | **STIPULATED PROTOCOL REGARDING ELECTRONICALLY STORED INFORMATION; [PROPOSED] ORDER** |
| PATH, INC., et al., | |
| Defendants. | **THIS DOCUMENT RELATES TO ALL CASES:** |
| | No. 13-cv-00453-JST<br>No. 12-cv-01515-JST<br>No. 12-cv-01529-JST<br>No. 12-cv-06550-JST |

The parties have agreed to the terms of this Stipulation Regarding Electronically Stored Information:

1. **Introduction.** Pursuant to this Court's Guidelines for the Discovery of Electronically Stored Information, Federal Rules of Civil Procedure 16 and 26(f), and this Court's August 1, 2013 Order (Dkt. No. 361),[1] the parties have conferred regarding matters affecting the discovery of electronically stored information ("ESI" or "e-discovery") and agreed on the following procedures and guidelines regarding the production of ESI in this case. ESI, as used herein, has the same meaning as in Federal Rule of Civil Procedure 34 and refers to computer-generated information or data of any kind stored in or on any storage media located on computers, file servers, disks, tapes, or other real or virtual devices or media. This stipulation relates solely to the general protocol of identifying and producing ESI. Any party may bring a motion to modify or clarify the application of this Order to particular ESI or otherwise.

2. **Cooperation.** The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3. **E-Discovery Coordinator.** The parties will each identify an "E-Discovery Coordinator" to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each E-Discovery Coordinator will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the E-Discovery Coordinators, as needed, to confer about ESI and to help resolve disputes without Court intervention.

4. **Identification and Preservation of Relevant Systems and Custodians.** The parties have discussed their preservation obligations and needs and agree that within twenty-one

---

[1] Docket Numbers are to the *Opperman* docket, No. 13-cv-00453-JST.

1

STIPULATED PROTOCOL RE: ESI 13-cv-00453-JST

(21) days following the deadline for Initial Disclosures under Federal Rule of Civil Procedure 26(a)(1), the parties will:

    a. Meet and confer to attempt to agree on the relevant period of time for which ESI will be preserved and searched;

    b. Exchange a list of the most likely custodians of relevant ESI or, in the alternative, the job descriptions of the most likely custodians;

    c. Exchange a list of the most likely relevant electronic systems that have been in use during the relevant time period and a general description of each such system, including the software used and the general nature of the systems and information contained thereon;

    d. Meet and confer to attempt to agree on the number of custodians per party for whom ESI will be preserved and searched;

    e. Exchange a list of the data sources that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B);

    f. Exchange a list of the data sources that are not reasonably accessible for any other reason, and thus do not require preservation.

Where disputes arise concerning the production of allegedly inaccessible ESI, the parties shall follow the procedures set forth in the Court's Standing Order for All Civil Cases Before District Judge Jon S. Tigar.

5. **Format for Production.** Unless the parties agree otherwise, the provisions set forth in this paragraph shall govern the format for production of ESI: the parties will produce paper[2] and electronic documents in Tagged Image File Format (TIFF or .TIF) or Full Text

---

[2] The parties recognize and understand that, in some instances, a producing party may only have in its files hard copy versions of certain documents responsive to discovery requests. In such instances, it is agreed that:

    a. If the producing party, on its own initiative, chooses to put the hard copy documents in an electronic format, the producing party shall produce to the requesting parties a copy of the documents in the same electronic format the producing party has created for itself;

Searchable PDF ("PDF") files, at the producing party's option, subject to paragraphs 6, and 7 below. Each image should have a unique file name, which is the Bates number of the page. TIFF files shall be produced in single-page Group IV format, with a minimum resolution of 300 dpi (except that any native file that is in the form of a TIFF image need not be scanned or re-processed simply to achieve such minimum resolution when produced). After initial production in TIFF or PDF format is complete, a party may request in writing that the producing party produce specific documents in their native format. Should the parties not reach agreement after meeting and conferring in good faith, the requesting party may move the Court for such production. When scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records. Each document production will be accompanied by two load files: an image load file and a metadata load file. Those load files shall be produced in Concordance format (.DAT file using Concordance standard delimiters for the metadata load files and .OPT file using Concordance standard fields for the image load files). The image load file shall provide image and document break information for the TIFF or PDF files produced that correspond to the beginning Bates numbers contained in the metadata load file. Every TIFF or PDF file in each production must be referenced in the production's corresponding image load file. The total number of TIFF or PDF files referenced in a production's image load file should match the number of TIFF or PDF files in the production. In addition to any metadata collected and produced pursuant to paragraph 6 below, the metadata load file for each production shall provide the Bates numbers and the Bates number attachment range for email or other documents containing attachments. For documents that do not contain redactions, the producing party will produce an extracted text file for each

---

b. If the producing party maintains the documents solely in hard copy form, then the producing party shall elect either to (i) copy the documents and produce a set to the requesting parties or (ii) make the documents available to the requesting parties' counsel for inspection and copying at a reasonably accessible location; and

c. In the event a producing party chooses to make documents available for inspection and copying, the parties shall negotiate in good faith to determine appropriate procedures applicable to that process.

1 electronic document and an Optical Character Recognition ("OCR") text file for each imaged
2 paper document. For documents that contain redactions, the producing party will provide an
3 OCR text for the unredacted portions of such documents. All non-redacted documents are to be
4 provided with multi-page searchable text (.TXT) files. The OCR text files and image load files
5 should indicate page breaks, to the extent possible.

6       6.    **<u>Metadata.</u>**  During the process of converting ESI from the electronic format of
7 the application in which the ESI is normally created, viewed, and/or modified to TIFF or PDF,
8 metadata values should be extracted and produced in a load file ("metadata load file"). To the
9 extent they are available in collected data, and are not otherwise redacted, the metadata values
10 that are to be extracted and produced in the metadata load files are:

11     <u>Metadata from Email:</u>
12     Email Subject
13     Email Author
14     Email Recipient
15     Email CC
16     Email BCC
17     Email Received Date
18     Email Sent Date
19     Email Received Time
20     Email Sent Time
21     Email Received Date and Time
22     Email Sent Date and Time
23     <u>Metadata from Electronic Files:</u>
24     File Name
25     File Author
26     File Created Date
27     File Created Time
28

File Modified Date

File Modified Time

File Extension

<u>Metadata for both Email and Electronic Files:</u>

Custodian/Source

Starting and Ending Production Number

MD5 Hash (if generated when processed)

To the extent reasonably available, with respect to ESI gathered from an individual's hard drive or network share, metadata sufficient to identify the individual custodian from whose hard drive or network share such ESI has been gathered will be provided in the Custodian/Source field. Data that is not collected from an individual's hard drive or network share and is not reasonably identifiable as to source will be designated as "company documents" in a coding field, as they cannot be related to an individual Custodian or Source.

7. **Production of E-Discovery with Attachments.** For all e-discovery (for example, email) that contains an attachment, to the extent available, the following fields should be produced and populated as part of the metadata load file to provide the parent/child or parent/sibling relationship:

Production Number Begin (ProdBegDoc)

Production Number End (ProdEndDoc)

Production Attachment Range Number Begin (ProdBegAttach)

Production Attachment Range Number End (ProdEndAttach)

8. **De-Duplication.** A party is only required to produce a single copy of any responsive document. A party may de-duplicate ESI across each party's custodians or sources, but if that option is exercised, the producing party must identify in some fashion each custodian or source where the document was located. Each party will disclose the methodology it used to de-duplicate. De-duplicated originals shall be preserved and made available for inspection and copying upon reasonable request.

1      9.     **Searches: Key Words and Other Search Methodologies.** To the extent that key words or other methodologies are to be used in limiting the universe of potentially responsive documents to be reviewed in advance of production, the parties shall meet and confer to develop a mutually agreeable list of search terms and protocols.

     10.     **Production of Spreadsheets and Database E-Discovery.** Excel and Apple Numbers spreadsheets shall be produced both in native and TIFF (or PDF) formats or, if the producing party wishes, in native format with a TIFF (or PDF) placeholder. If such spreadsheets include redacted information, they shall be produced with the extracted text and applicable metadata fields set forth in paragraphs 5 and 6 of this Order, except to the extent the extracted text or metadata fields are themselves redacted. Non-Excel and non-Numbers spreadsheets may be produced in TIFF or PDF format. If the receiving party wishes to have certain non-Excel and non-Numbers spreadsheets produced in native format, the receiving party shall provide the producing party with a list of the spreadsheets requested in native format. If a non-Excel and non-Numbers spreadsheet can be produced in native format, the producing party will do so; if a spreadsheet cannot be produced in native format, the parties will meet and confer regarding that production.

The parties will meet and confer regarding production, in a mutually agreeable format, of responsive data contained in databases.

     11.     **Production of Email Files.** Email files may be produced in the native file format in which they were maintained in the ordinary course of business at the option of the producing party. If the native format of the email files is not readily readable by the receiving party, the producing party will meet and confer regarding the production of the email files in a mutually agreeable format.

To the extent feasible, where any email file or attachment in a parent-child relationship is subject to production, email files shall be produced along with attachments in sequential order as part of a family, maintaining the parent-child relationship, although portions of families may be redacted as appropriate. As a general matter, subject to specific review by the producing party,

where any email file or attachment in a parent-child relationship is subject to production, no other portion of that family may be withheld from production solely based on the fact that one or more family members are privileged, irrelevant, or non-responsive.

12. **Media Files.** The parties will meet and confer regarding the production of media files. The agreement to meet and confer regarding media files will not be construed as relieving any party from their discovery obligations under the Federal Rules of Civil Procedure.

13. **Bates Numbering.** Each page of a produced e-discovery document will contain a legible Bates number that (1) is unique across the document production, (2) has a constant length (0-padded) across the production, and (3) is sequential within a given document. Each page of a produced e-discovery document will also contain a confidentiality notice, if applicable. If a Bates number or set of Bates numbers is skipped in a production, the producing party will notify the receiving party in its cover letter to the production that the production contains skipped Bates numbers. Both the Bates number and confidentiality notice shall be placed on the page image in a manner that does not conceal or interfere with any information contained on the page. No other stamp or information will be placed on a document other than Bates number, confidentiality notice, and any redactions. This paragraph does not apply to spreadsheets or other files produced in native electronic format.

14. **Native File Production.** Any file produced in its native format is to be named with its corresponding Bates number and extension. If any produced native file is confidential under the terms of the Stipulated Protective Order, the file name must include the corresponding confidentiality designation following the Bates number. For example, native files that are designated "Confidential" must be named following the pattern "BATESNumber_Confidential.extension" and native files that are designated "Highly Confidential" must be named following the pattern "BATESNumber_HighlyConfidential.extension." Any file produced in native format should be produced with its corresponding load file, including a coding field containing its original file name. The load file shall contain a link to any native file produced.

15. **Redacted E-Discovery.** To the extent a producing party redacts any document, such redaction shall be clearly marked on the TIFF or PDF image of the document. The redaction(s) shall specifically identify the reason(s) for such redactions or such information shall be otherwise provided in a list or log.

16. **Confidential Documents.** ESI that contains Confidential or Highly Confidential information shall be handled utilizing the procedures set forth in paragraphs 14 and 15 above and the Stipulated Protective Order. If a party converts native files or other ESI designated Confidential or Highly Confidential under the Stipulated Protective Order to hard copy form, it shall mark the hard copy with the appropriate designation.

17. **Production of Privileged Documents.** Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, does not operate as and is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

18. **Privileged Communications.** Privileged communications that post-date the filing of the complaint need not be placed on a privilege log. Privileged communications may be identified on a privilege log by category, rather than individually, if appropriate. All privilege logs must comply with Federal Rule of Civil Procedure 26(b)(5)(A). The parties will meet and confer regarding the specific contents of all privilege logs during the Federal Rule of Civil Procedure 26(f) conference and will include the results (or, if no agreement can be reached, will include competing proposals) in the Rule 26(f) conference report to the Court.

19. **Costs.** Each party shall bear its own e-discovery costs unless otherwise ordered by the Court.

20. **Modifications.** In the event of individual issues that arise with regard to the identification and production of ESI and ESI-related information, as set forth in this Order, any practice or procedure provided for herein as to such identification and/or production may be

1 varied by written agreement of the parties.  The parties shall meet and confer in the event of any

2 dispute over the need for or nature of such variance in practice or procedure, in an effort to reach

3 agreement prior to informing the Court of any unresolved issues.

4 DATED:  September 27, 2013

Respectfully submitted,

**STRANGE & CARPENTER**

By: */s/ Brian R. Strange*
     Brian R. Strange

**STRANGE & CARPENTER**
Brian R. Strange (CBN 103252)
LACounsel@earthlink.net
John T. Ceglia (CBN 287147)
jceglia@strangeandcarpenter.com
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Telephone: (310) 207-5055
Facsimile: (310) 826-3210

*Attorneys for Plaintiffs Haig Arabian and Lauren Carter*

**GARDY & NOTIS, LLP**

By: */s/ Jennifer Sarnelli*
     Jennifer Sarnelli

**GARDY & NOTIS, LLP**
Jennifer Sarnelli (CBN 242510)
jsarnelli@gardylaw.com
Kira German (*pro hac vice*)
kgerman@gardylaw.com
501 Fifth Avenue, Suite 1408
New York, NY 10017
Telephone: (212) 905-0509
Facsimile: (212) 905-0508

*Attorneys for Plaintiff Maria Pirozzi*

**PHILLIPS, ERLEWINE & GIVEN LLP**

By: */s/ David M. Given*
      David M. Given

David M. Given (CBN 142375)
dmg@phillaw.com
Nicholas A. Carlin (CBN 112532)
nac@phillaw.com
50 California Street, 35th Floor
San Francisco, CA  94111
Telephone: (415) 398-0900
Facsimile: (415) 398-0911

**EDWARDS LAW**
Jeff Edwards (TBN 24014406; *pro hac vice*)
jeff@edwards-law.com
The Haehnel Building
1101 East 11th Street
Austin, Texas 78702
Telephone: (512) 623-7727
Facsimile: (512) 623-7729

**LAW OFFICES OF CARL F. SCHWENKER**
Carl F. Schwenker (TBN 00788374; *pro hac vice*)
cfslaw@swbell.net
The Haehnel Building
1101 East 11th Street
Austin, Texas 78702
Telephone: (512) 480-8427
Facsimile: (512) 857-1294

*Attorneys for Plaintiffs Alan Beuershasen, Giuli Biondi, Steve Dean, Stephanie Dennis-Cooley, Claire Hodgins, Jason Green, Gentry Hoffman, Rachelle King, Nirali Mandaywala, Claire Moses, Judy Paul, Theda Sandiford, and Greg Varner*

GIBSON, DUNN & CRUTCHER LLP

By:  */s/ S. Ashlie Beringer*
S. ASHLIE BERINGER

GIBSON DUNN & CRUTCHER LLP
S. Ashlie Beringer
aberinger@gibsondunn.com
1881 Page Mill Road
Palo Alto, CA 94036
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

*Attorneys for Defendant
Apple Inc.*

DHILLON & SMITH LLP

By: */s/ Harmeet K. Dhillion*
Harmeet K. Dhillon (#207873)
DHILLON & SMITH LLP
177 Post Street, Suite 700
San Francisco, CA 94108
Tel.: (415) 433-1700
Email: harmeet@dhillonsmith.com

Attorneys for GOWALLA INCORPORATED

Mitchell Silberberg & Knupp LLP

By: */s/ Jeffrey M. Movit*
Jeffrey M. Movit
Mitchell Silberberg & Knupp LLP
12 East 49th Street, 30th Floor
New York, NY  10017
(917) 546-7708 (direct)
(917) 546-7678 (fax)
jmm@msk.com

ATTORNEYS FOR ZEPTOLAB UK LIMITED

FENWICK & WEST LLP

By:*/s/ Tyler G. Newby*
Tyler G. Newby (CSB No. 205790)
tnewby@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:     415.875.2300
Facsimile:     415.281.1350

Attorneys for Defendant PATH, INC.

DURIE TANGRI LLP

By: */s/ Michael H. Page*
MICHAEL H. PAGE (#154913)
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:  415-362-6666
Facsimile:  415-236-6300
mpage@durietangri.com

Attorneys for Defendants
YELP INC. and FOODSPOTTING, INC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PERKINS COIE, LLP

By: /s/ Timothy L. Alger
Timothy L. Alger
PERKINS COIE, LLP
3150 Porter Dr.
Palo Alto, CA 94304-1212
Telephone: 650.838.4334
Facsimile: 650.838.4350
TAlger@perkinscoie.com

Attorneys for Defendant Twitter, Inc.

COOLEY LLP

By:     /s/ Mazda K. Antia
Mazda K. Antia
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121-1909
Phone: (858) 550-6000
Fax: (858) 550-6420

Attorneys for Defendants FACEBOOK, INC., INSTAGRAM, LLC and KIK INTERACTIVE, INC.

Morrison & Foerster LLP

By:     /s/ David F. McDowell
David F. McDowell (125806)
Morrison & Foerster LLP
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
Telephone: 213-892-5200
Facsimile: 213-892-5454
Email: DMcDowell@mofo.com

Attorneys for Defendant
FOURSQUARE LABS, INC.

ZwillGen Law LLP

By: /s/ Michele Floyd
Michele Floyd (SBN 163031)
ZWILLGEN LAW LLP
915 Battery Street, Second Floor, Suite 3
San Francisco, California 94111
Telephone: (415) 590-2340
Facsimile: (415) 590-2335
Michele@zwillgen.com

Marc J. Zwillinger (admitted *pro hac vice*)
marc@zwillgen.com
Jacob A. Sommer (admitted *pro hac vice*)
jake@zwillgen.com
ZWILLGEN PLLC
1705 N St NW
Washington, DC 20036
Telephone: (202) 296-3585
Facsimile: (202) 706-5298

Attorneys for Defendants ELECTRONIC ARTS, INC. AND CHILLINGO LTD.

HOLLAND & KNIGHT LLP

By:  /s/ Judith Nemsick
Christopher G. Kelly
Judith Nemsick
Holland & Knight LLP
31 West 52nd Street
New York, New York 10019
Tel.:  (212) 513-3200
Fax:  (212) 385-9010
christopher.kelly@hklaw.com
judith.nemsick@hklaw.com

Shelley G. Hurwitz
HOLLAND & KNIGHT LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel.: (213) 896-2476
shelley.hurwitz@hklaw.com

Attorneys for Defendant ROVIO ENTERTAINMENT LTD. s/h/a ROVIO MOBILE OY

///

///

///

13

**IT IS SO ORDERED.**

Date: _____, 2013.

                                            _____
                                            **HON. JON S. TIGAR**
                                            **UNITED STATES DISTRICT JUDGE**

**FILER'S ATTESTATION**

Pursuant to Civil Local Rule 5-1(i), I, Brian R. Strange, hereby attest that concurrence in the filing of this document has been obtained from the above-listed counsel.

DATED:  September 27, 2013

Respectfully submitted,

**STRANGE & CARPENTER**

By: */s/Brian R. Strange*
         Brian R. Strange

**STRANGE & CARPENTER**
Brian R. Strange (CBN 103252)
LACounsel@earthlink.net
John T. Ceglia (CBN 287147)
jceglia@strangeandcarpenter.com
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Telephone: (310) 207-5055
Facsimile: (310) 826-3210

*Attorneys for Plaintiffs Haig Arabian and Lauren Carter*