David M. Given (State Bar No. 142375)
Nicholas A. Carlin (State Bar No. 112532)
PHILLIPS, ERLEWINE & GIVEN LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
Tel: 415-398-0900
Fax: 415-398-0911
Email: dmg@phillaw.com
nac@phillaw.com

James M. Wagstaffe (State Bar No. 095535
Michael K. Ng (State Bar No. 237915)
Ivo M. Labar (State Bar No. 203492
Michael J. Von Loewenfeldt (State Bar No. 178665)
KERR & WAGSTAFFE LLP
100 Spear Street, 18th Floor
San Francisco, CA 94105
Tel: 415-371-8500
Fax: 415-371-0500
Email: wagstaffe@kerrwagstaffe.com
mng@kerrwagstaffe.com
labar@kerrwagstaffe.com
myl@kerrwagstaffe.com

Interim Lead Counsel for Plaintiffs
[ADDITIONAL COUNSEL LISTED BELOW]

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

IN RE:

APPLE IDEVICE ADDRESS BOOK LITIGATION

Case No. 13-cv-00453-JST

**CLASS ACTION**

**PLAINTIFFS' OPPOSITION TO FACEBOOK, INC.'S AND GOWALLA INCORPORATED'S MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6)**

*Hernandez v. Path, Inc.*, No. 12-cv-1515-JST
*Pirozzi v. Apple, Inc.*, No. 12-cv-1529-JST
*Gutierrez v. Instagram, Inc.*, No. 12-cv-6550-JST
*Espitia v. Hipster, Inc.*, No. 4:13-cv-432-JST
(collectively, the "Related Actions")

Date: January 22, 2014
Time: 9:30 a.m.
Courtroom: 9

## TABLE OF CONTENTS

**I. INTRODUCTION AND SUMMARY ..........1**

**II. RELEVANT BACKGROUND ..........2**

**A. PROCEDURAL BACKGROUND ..........2**

**B. FACTUAL BACKGROUND OF "AQUI-HIRE" AGREEMENTS ......... 3**

**III. LEGAL DISCUSSION..........4**

**A. GENERAL LEGAL STANDARDS ..........4**

**B. Plaintiffs Have Sufficiently Pled Their Claim Under The Uniform Fraudulent Transfers Act..........5**

**C. The Question of Whether Facebook is the Successor to Gowalla is a Fact Issue – and, in Any Event, is Adequately Pled ..........13**

**D. Plaintiffs Have Sufficiently Pled Their Aiding and Abetting Claims..........14**

**1. Texas Law Has Not Rejected Stand-Alone Aiding-And-Abetting Claims ..........14**

**2. Plaintiffs Have Adequately Pled Aiding-and-Abetting Liability Under Both California and Texas Law..........15**

**IV. CONCLUSION..........18**

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

**TABLE OF AUTHORITIES**

**Cases**

*Bateman v. Cooper*, 2012 WL 1110080, *2 (Bank. E.D.N.C. April 2, 2012) ............................ 10

*Federal Housing Finance Agency v. Deutche Bank AG*, 903 F. Supp. 2d 285, 291 (S.D.N.Y. 2012)............................................................................................................ 13

*Foman v. Davis*, 371 U.S. 178, 182 (1962)........................................................................ 18

*In re 3dfx Interactive, Inc.*, 389 B.R. 842, 862 n. 15 (N.D. Cal. Bnkr. 2008)............................... 6

*In re: Schulman Transport Enterprises Inc.*, 744 F.2d 293, 295 (2nd Cir. 1984) .......................... 4

*In re: Still*, 393 B.R. 896, 917 (Bank. C.D. Cal. 2008) ............................................................ 6

*Innospan Corp. v. Intuit, Inc.*, 2011 WL 856265 (N.D Cal. March 9, 2011).............................. 16

*Juhl v. Airington*, 936 S.W.2d 640 (Tex. 1996) ...................................................................... 18

*Litwin v. Blackstone Group, L.P.*, 634 F.3d 706, 708 (2nd Cir. 2011)........................................... 8

*Mitchell v. John Wiesner, Inc.*, 923 S.W.2d 262, 264 (Tex. 9th Dist. Ct. of App. 1996) ............ 15

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)............................... 6

*Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)................................................................ 7

*O'Kane v. Coleman*, 2008 WL 2579832 (Tex. 14th Dist. Ct. of App. July 1, 2008).................... 14

*People v. Toomey*, 157 Cal. App. 3d 1 (1984) ........................................................................ 17

*Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152-1153 (2004)................................................................ 9

*Sindell v. Abbott Laboratories*, 26 Cal. 3d 588, 604 (1980) ..................................................... 15

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012) .......... 11

Texas Bus. & Comm. Code § 24.005(a)(2)................................................................................ 11

*Toy v. TriWire Engineering Solutions, Inc.*, 2010 WL 3448535, * 3 (N.D. Cal. Sept. 1, 2010) . 17

**Statutes**

Cal. Civ. Code § 3439.04 ....................................................................................... *passim*

Texas Bus. & Comm. Code § 24.005...................................................................... *passim*

Texas Government Code § 22.201 ............................................................................... 15

**Rules**

Fed. R. Civ. P. 9(b) .... 8

Fed. R. Civ. P. 12(b)(6) .... *passim*

**Treatises**

Federal Civil Procedure Before Trial (Rutter Group), § 9:188.1 .... 15

**Other Authorities**

Black's Law Dictionary (9th ed. 2009) .... 11

Coyle & Polsky, "Acqui-Hiring," *Duke Law Journal* 63:2 (Nov. 2013) .... *passim*

Solomon, Andrew T., "A Simple Prescription For Texas' Ailing Court System: Stronger *Stare Decisis*," 37 *St. Mary's Law Journal* 417, 439 (2005-2006) .... 16

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

## I. INTRODUCTION AND SUMMARY

This Opposition presents a cutting-edge legal issue: How does a plaintiff properly plead successor, accessory and secondary liability founded upon an "acqui-hire" agreement?

Within the last three years, large technology companies seeking to acquire startups have been turning to a new and legally untested form of transaction, popularly called the "acqui-hire." By this transaction, the acquiring company attempts to obtain the principal benefits associated with a formal acquisition (the start-up's intellectual property, and the know-how and cooperation of its key employees) while avoiding one singular disadvantage in a formal acquisition — liability for the start-up's conduct.

To thread this needle, acqui-hire transactions often contain the following terms: (1) the start-up's founder and key personnel accept jobs at the acquiring company, and (2) the start-up's intellectual property is licensed to the acquiring company. By these terms, the two most important assets of a start-up — its people and its IP — are transferred to the acquiring company. But the acquiring company will attempt to avoid successor liability by pointing to various terms in the acqui-hire agreement, such as the fact that the start-up continues to exist on the books of the relevant Secretary of State (as little more than a paper corporation) or that the IP license to the acquirer is non-exclusive (although, in reality, few or no additional licenses are issued competing with the acquirer's *royalty-free* license).

In the Consolidated Amended Class Action Complaint (the "CAC"), Plaintiffs allege that various companies publicly offered software which unlawfully copied, used and relayed the contact information of friends and family contained on consumers' electronic devices. In this way, the companies surreptitiously data-mined the social networks of its users.

In the CAC, Plaintiffs allege that Defendant Facebook, Inc., and Defendant Gowalla, Incorporated, are liable under 15 separate claims for relief. Facebook and/or Gowalla challenge most of these claims for relief in the Application Developer

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

Defendants' Joint Motion to Dismiss Consolidated Amended Class Action Complaint (the "App Developers' Joint Motion"). See Dkt. No. 396.

Facebook and Gowalla also brought a separate Motion to Dismiss (the "Motion"). See Dkt. No. 394. Apart from the App Developers' Joint Motion, they argue that (1) Plaintiffs failed to allege sufficient facts upon which aiding and abetting liability can be imposed; (2) Plaintiffs failed to allege facts constituting a violation of the Uniform Fraudulent Transfers Act (the "UFTA"); and (3) Plaintiffs failed to allege facts upon which Facebook could be held liable as a successor-in-interest to Gowalla.

Each of these arguments is based in part on a "Release And Waiver Agreement" between Facebook and Gowalla identified in the Motion. See Motion, at 3:13-14 & fn. 4. Plaintiffs allege that the acqui-hire transaction memorialized in that document creates successor liability (as well as creating aiding and abetting liability and constituting a UFTA violation). Facebook and Gowalla insist that their agreement does not create or allow for such liability.

The acqui-hire is just the latest incarnation of the age-old (and mostly discredited) strategy of buying assets while claiming not to buy liabilities in a corporate acquisition. As Plaintiffs allege (and expect to prove), the acqui-hire transaction at issue here is a fraudulent transfer imposing successor and aiding-and-abetting liability on Facebook.

Accordingly, the Court should deny the Motion. In the alternative, should the Court decide additional allegations are needed, Plaintiffs respectfully request leave to amend.

## II. RELEVANT BACKGROUND

### A. PROCEDURAL BACKGROUND

In this civil action, four class actions have been consolidated under the caption *In Re: Apple IDevice Address Book Litigation* in the CAC. While the CAC alleges a total of 26 claims for relief asserted by several plaintiff groups against multiple defendants,

only 15 are asserted against Gowalla and/or Facebook.[1] Gowalla and Facebook's separate joint motion (the one addressed here) challenges only three of those.

First, Gowalla and Facebook move to dismiss Count XXVI alleging that Gowalla and Facebook are liable under theories of secondary and vicarious liability. See Motion, at 6-11. Second, Gowalla and Facebook move to dismiss Count XXIV alleging that Gowalla and Facebook are liable for violations of the Uniform Fraudulent Transfer Act. See Motion, at 11-17. Third, Facebook moves to dismiss the relevant plaintiffs' claims that Facebook is a successor to Gowalla.[2] See Motion, at 17-19.

### B. FACTUAL BACKGROUND OF "ACQUI-HIRE" AGREEMENTS.

Acqui-hires are a new and legally untested form of transaction. In or about 2009, Facebook began using the acqui-hire format to purchase start-ups, partly to obtain the services of the start-up's founders and engineers. "One of the ways to do this is to focus on acquiring great companies with great founders, and I think we've probably done maybe five or six or seven of them in the last year or so," Facebook chairman and CEO Mark Zuckerberg stated on October 16, 2010, during a presentation at the Y Combinator Startup School at Stanford University.

Starting in 2012, mainstream press outlets began reporting on the use of acqui-hire deals in the tech world. See, e.g., Dan Bobkoff, "Employee Shopping: 'Acqui-Hire' Is The New Normal in Silicon Valley," NPR, Sept. 24, 2012; Sarah E. Needleman, "Start-Ups Get Snapped Up For Their Talent," *Wall Street Journal*, Sept. 13, 2012.

---

[1] Plaintiffs allege multiple claims against Facebook. The CAC also alleges in Paragraph 424 that Facebook operated Gowalla (and continued Gowalla's privacy violations) *after* the acqui-hire agreement closed – contrary to the claim Facebook and Gowalla now make (see Motion, at 2:9) that Plaintiffs have "abandoned their direct claims against Facebook."

[2] Gowalla does not say to what extent, if any, its challenge to Plaintiffs' theory of secondary and vicarious liability in this Motion overlaps with arguments made in the App Developers' Joint Motion. Accordingly, Plaintiffs will treat the instant Motion and the App Developers' Joint Motion as entirely separate, responding in separate Oppositions to the issues raised by each motion.

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

As of the date of the filing of this Opposition, acqui-hire agreements appear to be legally untested. Research failed to reveal any court decision, state or federal, using the term "acqui-hire" or its variants. The first law review article on the trend was published last month. See *Coyle & Polsky*, "Acqui-Hiring," *Duke Law Journal* 63:2 (Nov. 2013). The courts have thus not yet had the opportunity to determine whether an acqui-hire is a *de facto* acquisition — which leaves the acquiring company liable for the start-up's misconduct — or is a *bona fide* personnel and licensing agreement. This Court's ultimate decision on this subject will be precedent-setting.

For the reasons that follow, the Court should make that determination based on the *facts and evidence* after discovery, not based on movants' cramped reading of the CAC. The Court should therefore deny this Motion and allow the evidence to be tested as to whether this Facebook-Gowalla acqui-hire was a *de facto* corporate acquisition.

## III. LEGAL DISCUSSION

### A. GENERAL LEGAL STANDARDS

The Court is no doubt aware of the legal standards applicable to a motion to dismiss under Rule 12(b)(6). Plaintiffs do not repeat them here.

Perhaps the most important legal principle applicable to this Motion is the rule that courts must look beyond the form of a transaction to its substance. *In re: Schulman Transport Enterprises Inc.*, 744 F.2d 293, 295 (2nd Cir. 1984). The Motion depends in large part on Facebook and Gowalla's contention that their Release and Waiver Agreement should be taken at face value; Plaintiffs contend that the agreement is a disguised acquisition, that it is an acqui-hire and that acqui-hire deals are the latest vehicle by which acquiring parties attempt to avoid being held to the liabilities of the businesses they purchase.

In *Schulman*, the Second Circuit summarized a court's duty to look beyond the form of a transaction when confronted with an allegedly dispositive contract:

> [W]here the public interests or the rights of third parties are involved, the relationship between contracting parties must be

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

> determined by its real character rather than by the form and color that the parties have given it. A usurious loan is not made lawful by falsely terming it a sale or a corporate obligation. An investment in a partnership is not transformed into a loan by a disclaimer that a partnership relationship exists. An employee does not become an independent contractor simply because a contract describes him as such. A debtor does not become the agent of his creditor simply because he is called an agent. [Citations omitted.]

This rule frames the issue here. Facebook's acquisition of Gowalla is not a personnel and licensing deal just because Facebook and Gowalla say it is.

### B. Plaintiffs Have Sufficiently Pled Their Claim Under The Uniform Fraudulent Transfers Act.

Facebook and Gowalla characterize Plaintiffs' claim for violation of the Uniform Fraudulent Transfer Act as an "outlier." See Motion, at 11:17. But the UFTA violation alleged in the CAC highlights the question of whether the acqui-hire agreement was a stratagem to avoid paying Plaintiffs and the other creditors asserting claims for electronic privacy violations.

The California UFTA, Cal. Civil Code § 3439.04(a), reads in relevant part:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows: (1) With actual intent to hinder, delay, or defraud any creditor of the debtor. (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either: (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction. (B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

In this statute, a transaction satisfying the elements of Section 3439.04(a)(1) is sometimes referred to as an "actual" fraudulent transfer, and a transaction satisfying the elements of Section 3439.04(a)(2)(A) or (B) is sometimes referred to as a "constructive"

fraudulent transfer.[3] Only one of these two theories needs to be established for a plaintiff to prevail under the UFTA. *In re: Still*, 393 B.R. 896, 917 (Bank. C.D. Cal. 2008)

Despite the moving parties' contention to the contrary, the CAC adequately pleads both theories.

***Actual Fraudulent Transfer.*** The gravamen of an actual fraudulent transfer allegation is that a debtor entered into a transaction or incurred an obligation "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civil Code § 3439.04(a)(1). *See also* Texas Bus. & Comm. Code § 24.005(a)(1) (same).

Facebook and Gowalla argue that this claim must meet the heightened pleading requirements of FRCP 9(b). See Motion, at 12:18-20. But FRCP 9(b) provides that, "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Allegations regarding intent are thus subject to a relaxed pleading standard and are unsuitable for disposition via a Rule 12(b)(6) motion. "Whether a conveyance was made with fraudulent intent is a question of fact, and proof often consists of inferences from the circumstances surrounding the transfer." *In re: Still*, *supra*, 393 B.R. at 917. See also *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("[T]he rule may be relaxed as to matters within the opposing party's knowledge. For example, in cases of corporate fraud, plaintiffs will not have personal knowledge of all of the underlying facts.").

Facebook and Gowalla also make the sweeping argument that allegations concerning actual fraud cannot, as a matter of law, be made upon information and belief. See Motion, at 12:21-13:4. The first cited decision, *Moore*, *supra*, 885 F.2d at 540, says no such thing (and, as quoted above, supports Plaintiffs' argument for a relaxed intent

[3] The analogous provisions of the Texas UFTA are worded in almost identical manner. See Texas Business and Commerce Code § 24.005(a)(1) ("actual" fraudulent transfer), § 24.005(a)(2)(A) or (B) ("constructive" fraudulent transfer). Thus, for purposes of this Motion, the Court need not make a choice of law between the California and Texas UFTAs. Cf. *In re 3dfx Interactive, Inc.*, 389 B.R. 842, 862 n. 15 (N.D. Cal. Bnkr. 2008) ("California fraudulent conveyance law and Bankruptcy Code § 548 are similar in form and substance and both may be analyzed contemporaneously.").

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

pleading requirement). The second cited decision, *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993), contradicts the argument ("This court has held that the general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge. In such situations, plaintiffs cannot be expected to have personal knowledge of the relevant facts."). Intent is, of course, uniquely within the accused bad actor's knowledge.

Many of Gowalla and Facebook's other arguments are simply re-statements of their contention that the CAC fails to plead facts upon which an UFTA violation may be based. But a review of the CAC demonstrates that Plaintiffs have pled their UFTA claim with more-than-requisite particularity.

*Plaintiffs allege*: In late 2011, Facebook conducted due diligence into its contemplated acquisition of Gowalla; in the course of that due diligence, Facebook learned that Gowalla's software was surreptitiously harvesting users' mobile address book data without consent. CAC, ¶¶ 414, 415. In or around late 2011 or early 2012, Facebook proceeded with the acquisition of Gowalla using a transaction designed to "fraudulently transfer" Gowalla's personnel and "substantially all existing Gowalla company assets" to Facebook in violation of the UFTA. CAC, ¶¶ 416, 418, 426, 716.

This transaction was a legally dubious acqui-hire: Gowalla's key personnel, including its founder, became Facebook employees. CAC, ¶¶ 416, 422. Gowalla's technology, its other principal asset, was also transferred to Facebook. CAC, ¶ 416. Facebook and Gowalla knowingly failed to reserve sufficient money or assets to pay creditors such as persons, like Plaintiffs, whose privacy had been violated by the Gowalla app; instead the money and other consideration (such as Facebook stock) was routed to Gowalla management, shareholders and investors.[4] CAC, ¶¶ 416, 426. After

---

[4] In support of their counter-narrative, Facebook and Gowalla assert that "Facebook made a substantial payment to Gowalla (*not its shareholders and/or management*) in both cash and stock" (see Motion, at 15:3-4 [emphasis added]), a fact they suggest plaintiffs "must concede." And indeed, the attack on the UFTA claim rests in large part on this and related contentions arising from the nature and scope of the Release And Waiver Agreement. But Facebook's S-1

the transaction, Facebook controlled and dominated Gowalla. CAC, ¶¶ 418, 421, 423-426. For about three months (approximately December 2011 to March 2012), Facebook directly sold the unlawful software, and, around March 2012, Facebook shuttered Gowalla. CAC, ¶ 424.

These allegations sufficiently plead an actual fraudulent transfer and *de facto* acquisition on the part of Facebook and Gowalla. All of the baseline fraud questions are answered: The "who" are Facebook and Gowalla, the "when" is late 2011 or early 2012, the "where" is either Facebook's California headquarters (CAC, ¶ 36) or Gowalla's Texas headquarters (CAC, ¶ 39), the "what" is an attempt to transfer to Facebook the principal assets of Gowalla — its people and its technology — in a knowing attempt to prevent Gowalla's creditors (including invasion-of-privacy claimants such as Plaintiffs) from satisfying their claims, and the "how" is the acqui-hire transaction itself. The Motion's argument (at 14:4-12) that the CAC fails to plead who, what, where, when and how is meritless.

Plaintiffs have therefore sufficiently pled a claim for an actual fraudulent transfer under the California and Texas UFTAs.

---

Registration Statement – sworn to by Mark Zuckerberg and other Facebook officers just months after the acqui-hire deal with Gowalla – contradicts the foregoing. See *Litwin v. Blackstone Group, L.P.*, 634 F.3d 706, 708 (2nd Cir. 2011) (considering Form S-1 in reviewing Rule 12(b)(6) motion) (collecting cases). It states (at page II-4) that Facebook did *not* pay Gowalla for the assets and rights it received from Gowalla – rather, it paid Gowalla's *shareholders*. See Facebook's S-1 Registration Statement (May 16, 2012) (available at http://www.sec.gov/ Archives/edgar/data/1326801/000119312512034517/d287954ds1.htm) ("On January 3, 2012, [Facebook] issued 90,000 shares of our Class A common stock as consideration *to four individuals and 13 entities* in connection with *our purchase of certain assets* from a company [i.e., Gowalla]." [Emphasis added.]). This sworn statement also contradicts the contention (see Motion, at 18:9-10) that "Facebook acquired no assets at all" in this transaction. The scheme of paying consideration directly to individuals rather than the entity via the acqui-hire vehicle is commonplace according to one academic survey on the subject. See *Coyle & Polsky*, *supra*, at 297 (describing common elements of "deal consideration" and "compensation pool" in acqui-hire transactions – where former goes to investors and other shareholders and latter goes to personnel joining buyer).

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

In an attempt to avoid this reality, Facebook and Gowalla argue that Plaintiffs "fail to identify a single asset transferred." See Motion, at 13:10-11 & 18:9-10. Paragraph 416 of the CAC states that the transaction was structured to transfer "personnel" and "technology" and "know-how." Facebook and Gowalla's argument that these do not constitute assets ignores the reality of their business – as well as the legal recognition and protection accorded to copyrights, patents, trade secrets and, in some situations, at-will employment relationships. *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152-1153 (2004) (interference with at-will employees). Facebook's S-1 filing is in accord. See fn. 4, *supra* (describing "purchase of certain assets" from Gowalla).

Facebook and Gowalla contend that Plaintiffs failed to allege injury or prejudice. See Motion, at 13:15-21. But the CAC specifically alleges that "Plaintiffs were harmed by the Defendants' acts described above." CAC, ¶ 430. Plaintiffs also allege that the fraudulent transaction directed assets to Gowalla ownership and management "which could (and should) have been used to satisfy creditor claims" (CAC, ¶ 416) and "did not reserve sufficient assets to satisfy all creditor claims" (CAC, ¶ 426). Plaintiffs have adequately alleged harm.

Facebook and Gowalla contend that they did not know of any potential creditor claims at the time of the transaction. See Motion, at 13:22-14:3. This is a factual argument that cannot be considered on this Motion. In Paragraphs 413-15 of the CAC, Plaintiffs allege that Facebook (as the subject of an FTC consent decree for prior privacy violations) conducted due diligence of Gowalla and learned of Gowalla's privacy violations. The transaction was then structured to prevent creditors (including potential invasion-of-privacy claimants) from attaching Gowalla's assets. CAC, ¶¶ 416, 426.

Facebook and Gowalla argue that the CAC's pleading of the transfer is merely a legal conclusion. See Motion, at 14:12-17. Black's Law Dictionary (9th ed. 2009) defines a "legal conclusion" as a "statement that expresses a legal duty or result but omits the facts creating or supporting the duty or result." The CAC is not limited to mere allegations of a "fraudulent transfer" with a naked "intent to hinder creditors." As

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

shown above, the CAC explains who did what to whom, when, how and why. The CAC contains enough detail for Facebook and Gowalla to understand the allegations against them and to commence preparing their defense — the standard to which federal notice pleading is held.

Facebook and Gowalla argue that Plaintiffs, in asserting a non-equivalent exchange of value as a badge of actual fraud (Cal. Civ. Code § 3439.04(b)(8); Tex. Bus. & Comm. Code § 24.005(b)(8)), failed to plead the specific values involved, *i.e.*, how much value was received, how much value was conveyed and the basis for the valuations. See Motion, at 14:18-24. But these are defendants' internal accounting figures; the Federal Rules do not require pleading of facts within a defendant's sole control. Facebook and Gowalla cite the decision in *SCI Real Estate Investments, LLC*, 2013 WL 1829648 (Bank. C.D. Cal. May 1, 2013), but that is a very different case in which, judging from the limited quotations from the operative complaint, the plaintiff's allegations were truly skeletal there – and lacked the detail pled here.

Facebook and Gowalla also argue that Plaintiffs, in asserting Gowalla's insolvency as evidence of actual fraud (Cal. Civ. Code § 3439.04(b)(9); Tex. Bus. & Comm. Code § 24.005(b)(9)), failed to "plead facts establishing that the sum of Gowalla's debts is greater than the value of its assets." See Motion, at 14:24-25. Plaintiffs repeatedly alleged both Gowalla's insolvency and that the acqui-hire transaction, by stripping Gowalla of its only real assets, rendered Gowalla insolvent. CAC, ¶¶ 39, 416, 418, 426, 717, 720. The cited case of *SCI Real Estate* does not require the pleading of ledger-like detail. The other cited case, *Bateman v. Cooper*, 2012 WL 1110080, *2 (Bank. E.D.N.C. April 2, 2012), involves a situation in which the bankruptcy trustee pointed to evidence of insolvency which post-dated the relevant transaction *by two years*. In contrast, the CAC alleges that Gowalla was insolvent at or near the time of its transaction with Facebook.

Moreover, academic research has recently revealed that *an acqui-hire transaction is itself a badge of insolvency*. In the only scholarly article on the topic, two law

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

professors at the University of North Carolina at Chapel Hill discovered that acqui-hires were the exit vehicle of choice for *insolvent start-ups*:

> Although an acqui-hire transaction can occur at any stage of a new venture's lifecycle, it is most common after a seed round and before a Series A round of financing, or between Series A and Series B rounds of financing. In many cases, *the transaction occurs because the startup was unable to develop a product and successfully bring it to market before it ran out of money*. This type of acqui-hire will occur after it becomes clear that another round of financing will not be forthcoming. In these situations, *the acqui-hire is the only alternative to simply liquidating the company*. Our interviews suggested that this type of acqui-hire — as an alternative to liquidation — was the most common and, accordingly, we treat this scenario as the prototypical acqui-hire in this Article.

Coyle & Polsky, *supra*, at 295 (emphasis added). For present purposes, on this Motion, the Court should accept the inference that the nature of the acqui-hire transaction between Facebook and Gowalla *supports* rather than *defeats* the CAC's contention that Gowalla was insolvent. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012) (when complaint's allegations capable of more than one inference, court "must adopt" whichever plausible inference supports claim).

Plaintiffs have therefore sufficiently pled a claim against Facebook and Gowalla for "actual" fraudulent transfer under the UFTA. The Motion should be denied.

***Constructive Fraudulent Transfer.*** A constructive fraudulent transfer is adequately pled if the plaintiff alleges that the "the debtor made the transfer or incurred the obligation . . . [w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either: (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction [or] (B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due." Cal. Civil Code § 3439.04(a)(2); see also Texas Bus. & Comm. Code § 24.005(a)(2).

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

Plaintiffs have alleged these facts. In Paragraphs 417 and 426, the CAC alleges the lack of equivalent value exchanged in the Facebook-Gowalla transaction. In those same two paragraphs, the CAC alleges that Gowalla failed to set aside money to pay outstanding claims by violation-of-privacy plaintiffs, i.e., Gowalla was engaged in a business for which its remaining assets were unreasonably small in relation to that business. Facebook's decision to leave Gowalla formally standing as an asset-less, personnel-less husk (CAC, ¶ 416, 426), in the face of the anticipated privacy claims, supports the claim that Gowalla and Facebook "intended to incur, or believed or reasonably should have believed that [Gowalla] would incur debts beyond [its] ability to pay as they became due." These allegations alone are sufficient for the Court to deny the Motion.

As with its challenge to the CAC's claim of an actual fraudulent transfer, Facebook and Gowalla contend that Plaintiffs failed to allege with sufficient particularity that Gowalla did not receive equivalent value in its transaction with Facebook. See Motion, at 15:17-16:8. But the CAC is clear: The compensation paid by Facebook actually landed in the hands of Gowalla's personnel and investors (just as described in Facebook's S-1, see fn. 4, *supra*), leaving Gowalla as a shell corporation without sufficient assets to compensate invasion-of-privacy claimants. CAC, ¶¶ 416, 417, 418, 422, 424, 426. Per the CAC's allegations, the value received and retained by Gowalla is either near zero or, phrased differently, is nowhere near enough to compensate Gowalla's contingent liability for victim-creditors like Plaintiffs.

Facebook and Gowalla likewise repeat themselves by challenging the CAC's allegations that Gowalla was insolvent at or soon after the time of the Facebook transaction. See Motion, at 16:9-26. Plaintiffs alleged both Gowalla's insolvency and that the acqui-hire transaction, by stripping Gowalla of its only real assets, rendered Gowalla insolvent. CAC, ¶¶ 39, 416, 418, 426, 717, 720. Facebook and Gowalla argue that the CAC fails to "identify any debts that Gowalla was or is unable to pay." See Motion, at 16:16-17. In fact, the CAC states that, due to the aqui-hire transaction,

Gowalla was rendered unable to pay its debt to invasion-of-privacy claimants. CAC, ¶¶ 416,426.

Under both an actual and a constructive theory of fraudulent transfer, therefore, Plaintiffs have adequately pled that Facebook and Gowalla violated the UFTA.

**C. The Question of Whether Facebook is the Successor to Gowalla is a Fact Issue – and, in Any Event, is Adequately Pled.**

Facebook argues that Plaintiffs have failed to adequately allege that Facebook is a successor to Gowalla. See Motion, at 17-19. By this argument, Facebook is asking the Court to make a merits determination rather than accept Plaintiffs' allegations and the reasonable inferences arising therefrom as true.

Facebook's argument is not directed to any of the 15 claims for relief in the CAC which name Facebook as a defendant. Rather, Facebook seeks to "dismiss" Paragraphs 416 to 419 and 422 and 426 of the CAC. See Motion, at 17:9-16, 18:7-11, 22-26. These paragraphs are not alleged within any of the CAC's claims for relief; these paragraphs are background information which appears on pages 100-03 of the CAC within a section headlined "Allegations Regarding Specific App Defendants" (beginning on page 63) and within a sub-section headlined "Facebook" (beginning on page 100). The first claim for relief is not alleged until later in the CAC (at Paragraph 443 on Page 105).

Facebook is attempting to "dismiss" foundational factual allegations, not a claim for relief. "A Rule 12(b)(6) motion cannot be used to challenge just certain allegations within a claim while the underlying claim is not itself challenged." Federal Civil Procedure Before Trial (Rutter Group), § 9:188.1. Facebook even admits that these informational allegations are "untethered to any cause of action" (see Motion, at 17:8-9). For this reason alone, the request to dismiss these factual allegations should be denied.

Another defect in Facebook's argument is that the issue of corporate successorship is an issue of fact *not* to be decided on a motion to dismiss. *Federal Housing Finance Agency v. Deutche Bank AG*, 903 F. Supp. 2d 285, 291 (S.D.N.Y. 2012) (holding that allegations that "Defendant DB Products is liable as successor-in-

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

interest to [MortgageIT] for the misstatements and omissions in that Registration Statement" adequately plead successor liability, requiring challenge to be made via summary judgment motion).

Facebook's argument is a classic strawman: Facebook assumes what facts Plaintiffs will use to prove their allegations and then Facebook attempts to knock down those facts unilaterally selected by it. Facebook states that the successor theory "appears to be based on" (see Motion, at 17:13) its hiring of Gowalla employees, its Gowalla acquisition or its Gowalla asset purchase. But among other things, the Release And Waiver Agreement makes reference to a slew of other written documents and actions. Under the federal notice pleading rules, Plaintiffs are not required to detail all of their evidence. The allegations as they appear in the CAC are sufficient.

Finally, the issue of corporate successorship is fact-intensive. This is precisely why the issue cannot be resolved at the pleading stage on a 12(b)(6) motion.

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

**D. Plaintiffs Have Sufficiently Pled Their Aiding and Abetting Claims.**

**1. Texas Law Has Not Rejected Stand-Alone Aiding-And-Abetting Claims.**

Facebook begins its challenge to this claim by asserting that Texas law does not recognize a stand-alone aiding-and-abetting claim. See Motion, at 6:17-7:3. The Court need not wade into these weeds. Facebook cites a single, unpublished memorandum opinion, *O'Kane v. Coleman*, 2008 WL 2579832 (Tex. 14th Dist. Ct. of App. July 1, 2008). But the *O'Kane* court limited its observation to the following sentence, "O'Kane does not cite any Texas law recognizing aiding and abetting as a cause of action separate from conspiracy or separate from the underlying wrongful act, and we have found none." The court then proceeded to treat the aiding-and-abetting claim in tandem with its review of a summary judgment order. The appellate court did not make a sweeping assertion of whether Texas recognized an aiding-or-abetting claim for relief.

Even if it did, this Court is not obligated to follow the decision in *O'Kane*. Under Texas' judicial structure, rulings by an intermediate appellate court are binding only

upon the trial courts within that specific Texas appellate district. Andrew T. Solomon, "A Simple Prescription For Texas' Ailing Court System: Stronger Stare Decisis," 37 *St. Mary's Law Journal* 417, 439 (2005-2006) ("Texas's fourteen intermediate appellate districts only bind the lower courts within the geographic region of that appellate district"). See also *Mitchell v. John Wiesner, Inc.*, 923 S.W.2d 262, 264 (Tex. 9th Dist. Ct. of App. 1996) ("The opinions of a sister court of appeals are not precedent that bind other courts of appeals") & Texas Government Code § 22.201(o). Since the Supreme Court of Texas has not held that an aiding-and-abetting claim does not exist, this Court does not have to, either.

**2. Plaintiffs Have Adequately Pled Aiding-and-Abetting Liability Under Both California and Texas Law.**

In determining what elements must be pled to state a claim for aiding-and-abetting relief, the California Supreme Court applied the standards found at Section 876 of the Restatement of Torts:

> The section provides, 'For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, **or** (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, **or** (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.' With respect to this doctrine, Prosser states that 'those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts done for their benefit, are equally liable with him. Express agreement is not necessary, and all that is required is that there be a tacit understanding.

*Sindell v. Abbott Laboratories*, 26 Cal. 3d 588, 604 (1980) (emphases added).

All of these elements are pled in the CAC — and the scenario here involves an express, written, fully executed agreement partially memorializing the tortious conduct. Gowalla and Facebook acted in concert by creating and executing a scheme to

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

fraudulently transfer the assets of Gowalla to Facebook via their acqui-hire agreement, where they intended for those assets to be beyond the reach of creditors such as invasion-of-privacy plaintiffs. CAC, ¶¶ 414, 415, 416, 417, 426. Thereafter, Facebook "authorized, approved and facilitated" continued distribution of the privacy-invading app. CAC, ¶ 813.

These actions constitute, among other things, the aiding and abetting of an UFTA violation as well as pre- and post-transaction invasions of privacy. Gowalla and Facebook engaged in at least one "tortious act in concert" and "common design" — much of which is memorialized in the Release And Waiver Agreement.

Facebook knew at all relevant times that the transaction would defraud invasion-of-privacy creditors. The CAC alleges that Facebook "structured and executed" and "crafted" the transaction with that end in mind. CAC, ¶ 416. Facebook gave substantial assistance and encouragement — in the form of, without limitation, the cash and stock payments of the Release And Waiver Agreement — to Gowalla in its commission of the fraudulent transfer.

And, if (as alleged) Facebook gave substantial assistance to Gowalla in executing its fraudulent transfer and if (as alleged) Facebook's actions, when separately considered, constituted both a fraudulent transfer and a continuation of tortious invasion of users' privacy, then these facts, too, allege a valid aiding-and-abetting claim.

In response, Facebook trots out its all-purpose argument that the CAC's allegations consist of conclusory parroting of the required elements. See Motion, at 10:14-11:5. A reasonable review of the CAC's detailed allegations should persuade the Court otherwise.

Facebook contends that the CAC must specify which causes of action Facebook aided and abetted. This is not a hard-and-fast rule; the only decision cited in support of this proposition, *Innospan Corp. v. Intuit, Inc.*, 2011 WL 856265 (N.D Cal. March 9, 2011), has never been cited by a later court and concerned the specific situation of a plaintiff moving for leave to file a third amended complaint. (The Motion's

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

characterization of *Innospan* as "dismissing" the aiding-and-abetting claim is inaccurate.) Plaintiffs should not be forced to make a binding election at the pleading stage as to which tort claims create aiding-and-abetting liability; a stringent rule to that effect would complicate proceedings by incentivizing plaintiffs to allege that every claim also had an aiding-and-abetting component. The focus of the CAC is on Facebook's violations of the UFTA and of user privacy rights. In any event, this is an issue which, if the Court deems it important, can be easily addressed with leave to amend.

More troubling is the Motion's misleading quotation from *Toy v. TriWire Engineering Solutions, Inc.*, 2010 WL 3448535, * 3 (N.D. Cal. Sept. 1, 2010), a wage and hour case, to the effect of "the UCL does not provide for [aiding-and-abetting] liability." See Motion, at 11:10-12. As detailed in the two paragraphs appearing directly before that selective quotation, the actual rule is that UCL violations most certainly *do* allow for aiding-and-abetting liability when the acts at issue constitute an intentional tort.

The *Toy* decision even cites the civil case of *People v. Toomey*, 157 Cal. App. 3d 1 (1984), which holds, "But if the evidence establishes defendant's participation in the unlawful practices, either directly or by aiding and abetting the principal, liability under sections 17200 and 17500 can be imposed." California recognizes aiding-and-abetting liability under the UCL where, as here, the underlying alleged acts (UFTA and privacy violations) are unlawful.

The Motion claims that, to the extent that the CAC fails under California law, it also fails under Texas law. See Motion, at 10:14-15. As the CAC has adequately stated aiding-and-abetting liability under California law, the Motion appears to concede that the CAC also satisfies Texas law.

The Motion argues that the CAC does not allege that, in a manner sufficient under Texas law, Facebook and Gowalla entered into a "tacit agreement" to participate in a tortious act. See Motion, at 7:18-8:5. The Release And Waiver Agreement, referred to in the CAC (at ¶ 406), is the relevant agreement.

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

The Motion argues that, under Texas law, the CAC failed to plead that Facebook knew that Gowalla's actions were unlawful and offered substantial assistance anyway. See Motion, at 8:8-25. But the CAC is quite clear on the sequence of Facebook's knowledge. Facebook was already operating under a 20-year FTC consent decree for prior privacy violations (CAC, ¶ 413) when it conducted due diligence into Gowalla's activities (CAC, ¶ 414) and learned of Gowalla's violations of user privacy (CAC, ¶ 415). Facebook proceeded with the transaction anyway, structuring the deal in a fraudulent attempt to obtain Gowalla's assets without incurring Gowalla's liabilities (CAC, ¶ 416-418). In other words, the CAC — especially Paragraph 415 — states that Facebook knew of Gowalla's violations, and the CAC — especially Paragraphs 416-18 — states what substantial assistance Facebook offered.

Finally, the Motion argues that aiding-and-abetting liability should be dismissed based on the mere fact that the activity pled in the CAC does not rise to the level of dangerousness found in drag racing on public streets and other inherently dangerous activities. See Motion, at 9:1-9. The decision cited by the Motion, *Juhl v. Airington*, 936 S.W.2d 640 (Tex. 1996), lists "the nature of the wrongful act" as one factor out of five that the Texas high court used in determining the case. Facebook has cherry-picked one line of thought and re-cast it as the central, pivotal, outcome-determinative consideration.

Under both California and Texas law, Plaintiffs have adequately alleged facts upon which Facebook can be found liable for Gowalla's conduct on an aiding-and-abetting theory.

## IV. CONCLUSION

For the reasons stated, the Court should deny the Motion. In the alternative, Plaintiffs respectfully request leave to amend the CAC. See *Foman v. Davis*, 371 U.S. 178, 182 (1962).

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

Dated: December 2, 2013

*By _/s/ David M. Given*

David M. Given
Nicholas A. Carlin
PHILLIPS, ERLEWINE & GIVEN LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
Tel: 415-398-0900
Fax: 415-398-0911

*By /s/ James M. Wagstaffe*

James M. Wagstaffe
Michael K. Ng
Ivo M. Labar
Michael J. Von Loewenfeldt
KERR & WAGSTAFFE LLP
100 Spear Street, 18th Floor
San Francisco, CA 94105
Tel: 415-371-8500
Fax: 415-371-0500

*Interim Co-Lead Counsel for Plaintiffs*

Carl F. Schwenker (TBN 00788374,)
LAW OFFICES OF CARL F. SCHWENKER
The Haehnel Building
1101 East 11th Street
Austin, TX 78702
Tel: 512.480.8427
Fax: 512.857.1294

*Plaintiffs' Liaison Counsel*

Jeff Edwards (TBN 24014406; *pro hac vice*)
EDWARDS LAW
The Haehnel Building
1101 East 11th Street
Austin, TX 78702
Telephone: 512.623.7727
Facsimile: 512.623.7729
Email: jeff@edwards-law.com

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
(415) 398-0900

Jennifer Sarnelli
James S. Notis
Gardy & Notis LLP
560 Sylvan Avenue
Englewood Cliffs, NJ 07632
Email: jsarnelli@gardylaw.com
jnotis@gardylaw.com

*Plaintiffs' Steering Committee ("PSC")*