1  DURIE TANGRI LLP
   MICHAEL H. PAGE (SBN 154913)
2  mpage@durietangri.com
   217 Leidesdorff Street
3  San Francisco, CA  94111
   Telephone:    415-362-6666
4  Facsimile:    415-236-6300

5  Attorneys for Defendants
   YELP INC. and FOODSPOTTING, INC.
6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11  MARC OPPERMAN, RACHELLE KING,          Case No. 4:13-cv-00453-JST
    CLAIRE MOSES, GENTRY HOFFMAN,
12  STEVE DEAN, ALICIA MEDLOCK, ALAN       **DEFENDANTS YELP INC. AND
    BEUESHASEN, SCOTT MEDLOCK, GREG        FOODSPOTTING, INC.'S NOTICE OF
13  VARNER, JUDY LONG, GUILI BIONDI,       MOTION AND MOTION TO DISMISS
    JASON GREEN and NIRALI                 PLAINTIFFS' SECOND CONSOLIDATED
14  MANDAYWALA, for themselves and all others  AMENDED COMPLAINT**
15  similarly situated,
                                           Date:    December 2, 2014
16                   Plaintiffs,           Time:    2:00 p.m.
                                           Ctrm:    9, 19th Floor
17         v.                              Judge:   Honorable Jon S. Tigar

18  PATH, INC., TWITTER, INC., APPLE, INC.,
    FACEBOOK, INC., BELUGA, INC., YELP!
19  INC., BURBN, INC., INSTAGRAM, INC.,
    FOURSQUARE LABS, INC., GOWALLA
20  INCORPORATED, FOODSPOTTING, INC.,
    HIPSTER, INC., LINKEDIN CORPORATION,
21  ROVIO MOBILE OY, ZEPTOLAB UK
    LIMITED AKA ZEPTOLAB, CHILLINGO
22  LTD., ELECTRONIC ARTS INC., and KIK
    INTERACTIVE, INC.,
23
24                   Defendants.
25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on December 2, 2014 at 2:00 p.m., or as soon thereafter as the Court may order, in Courtroom 9, 19th Floor of the U. S. District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Jon S. Tigar, Defendants Yelp Inc. ("Yelp") and Foodspotting, Inc. ("Foodspotting") by their attorneys Durie Tangri LLP, will move and hereby move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Plaintiffs' Second Consolidated Amended Complaint.

This Motion is based upon this Notice of Motion and Memorandum, the Second Consolidated Amended Complaint, and other pleadings on file in this matter, the arguments of counsel, and such other and further matter as the Court may consider.

i

YELP INC. AND FOODSPOTTING, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT / CASE NO. 4:13-CV-00453-JST

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II. ARGUMENT ........................................................................................................4

    A.  Renewal of Defendants' Rule 12 Challenge to The Intrusion Upon Seclusion Claim is Proper ...........................................................................4

    B.  Plaintiffs Do not State a Claim for Intrusion ....................................................5

        1.  Legal Standard ........................................................................................5

        2.  Plaintiffs' Consent Bars Any Claim of Intrusion Against Yelp and Foodspotting ...........................................................................................5

        3.  Intrusion Based on Copying of Contact Information Is Preempted.........7

    C.  The SCAC Fails to State a Claim for Conversion ............................................9

        1.  Plaintiffs lack Article III Standing for their Conversion Claim.............9

        2.  No Property is at Issue Here ..................................................................10

        3.  The SCAC Fails to State a Conversion Claim ......................................12

        4.  Plaintiffs' Conversion Claim is Preempted...........................................13

III. CONCLUSION....................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Belluomini v. Citigroup Inc.*,
No. 3:13–cv–01743, 2013 WL 5645168 (N.D. Cal. Oct. 16, 2013)......................................6

*Bruton v. Gerber Prods. Co.*,
No. 12-cv-02412-LHK, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ...............................5

*Cardonet, Inc. v. IBM Corp.*,
No. C-06-06637 RMW, 2008 WL 941707 (N.D. Cal. Apr. 7, 2008) ................................12

*Carson v. Dynegy*,
344 F.3d 446 (5th Cir. 2003) ...........................................................................................12

*Del Madera Properties v. Rhodes & Gardner, Inc.*,
820 F.2d 973 (9th Cir. 1987) .........................................................................................8, 9

*Design Art v. Nat'l Football League Props, Inc.*,
No. 00CV593 JM (JAH), 2000 WL 33151646 (S.D. Cal. Aug. 18, 2000) .......................13

*Devon Energy Corp. v. Westacott*,
No. C 10–0075 RS (PR), 2011 WL 1157335 (S.D. Tex. March 24, 2011)......................12

*Dielsi v. Falk*,
916 F. Supp. 985 (C.D. Cal. 1996) ....................................................................................9

*DVD Copy Control v. Bunner*,
31 Cal. 4th 864 (2003) .....................................................................................................11

*Endemol Entm't B.V. v. Twentieth Television Inc.*,
48 U.S.P.Q.2d 1524 (C.D. Cal. 1998)................................................................................8

*Entous v. Viacom Int'l Inc.*,
58 U.S.P.Q.2d 1628 (C.D. Cal. 2001)..............................................................................8, 9

*Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.*,
499 U.S. 340 (1991)..........................................................................................................11

*Firoozye v. Earthlink Network*,
153 F. Supp. 2d 1115 (N.D. Cal. 2001) .........................................................................8, 13

*FMC Corp. v. Capital Cities/ABC, Inc.*,
915 F.2d 300 (7th Cir. 1990) .........................................................................................10, 13

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994)............................................................................................................9

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ........................................................................................5, 6

*Hernandez v. Path, Inc.*,
No. 12-CV-01515 YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012) ..........................12

*Hill v. NCAA*,
7 Cal. 4th 1 (1994) ..........................................................................................................6

*Idema v. Dreamworks, Inc.*,
162 F. Supp. 2d 1129 (C.D. Cal. 2001),
*dismissed in part on other grounds*, 90 Fed. App'x 496 (9th Cir. 2003)..........................7, 8

*In re Google Inc. Privacy Policy Litig.*,
No. 5:12-cv-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013)....................................10

*In re Google Inc. Privacy Policy Litig.*,
No. 5:12-cv-01382-PSG, 2014 WL 3707508 (N.D. Cal. July 21, 2014)....................................6

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................................6

*In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*,
758 F. Supp. 2d 1077 (S.D. Cal. 2010)............................................................................5

*Kodadek v. MTV Networks, Inc.*,
152 F.3d 1209 (9th Cir. 1998) ...................................................................................8, 9

*Kremen v. Cohen*,
337 F.3d 1024 (9th Cir. 2003) ...........................................................................10, 12, 13

*Lacey v. Maricopa Cnty.*,
693 F.3d 896 (9th Cir.2012) (en banc) ...........................................................................4

*Lorenzo v. United States*,
719 F. Supp. 2d 1208 (S.D. Cal. 2010)...........................................................................5, 6

*Omnibus Int'l, Inc. v. AT&T, Inc.*,
111 S.W.3d 818 (Tex. Ct. App. 2003) ............................................................................12

*Perkins v. LinkedIn Corp.*,
No. 13-CV-04303-LHK, 2014 WL 2751053 (N.D. Cal. June 12, 2014) ...........................................7

*Puerto v. Super. Ct.*,
158 Cal. App. 4th 1242 (2008) ......................................................................................6

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008) ............................................................................6

*Selby v. New Line Cinema Corp.*,
96 F. Supp. 2d 1053 (C.D. Cal. 2000) ...........................................................................8, 9

*Shulman v. Group W Prods., Inc.*,
18 Cal. 4th 200 (1998) ...............................................................................................5

*Sidebotham v. Robison*,
216 F.2d 816 (9th Cir.1954) ........................................................................................4

*U.S. ex rel. Berge v. Trustees of the Univ. of Alabama*,
104 F.3d 1453 (4th Cir. 1997) ......................................................................................8

*Valente-Kritzer Video v. Pinckney*,
    881 F.2d 772 (9th Cir. 1989) ...........................................................................................8

*Valenzuela v. Aquino*,
    853 S.W.2d 512 (Tex. 1993)............................................................................................5

**Statutes**

17 U.S.C. § 101 ..........................................................................................................................8

17 U.S.C. § 102 ..........................................................................................................................8

17 U.S.C. § 301(a) ......................................................................................................................8

**Other Authorities**

Restatement (Second) of Torts § 652B .......................................................................................5

**Rules**

Fed. R. Civ. P. 12 .......................................................................................................................4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

It is now time to stop dealing with "Defendants" *en masse*, and address the remaining claims—or lack of them—against each party individually.  In previous iterations of this lawsuit, the sheer number of claims and parties rendered such individualized analysis impractical:  the last version of the complaint attempted to state twenty-six separate claims against fifteen different defendants.  The claims against the App Developers (*i.e.*, everyone but Apple) were in the main stated generically against "Defendants," notwithstanding that the factual averments concerning each App Defendant varied widely.  Lest the Court be burdened with over a dozen motions, each attacking more than a score of claims, the Defendants filed consolidated motions where possible, addressing the defects of each claim that were for the most part common to all Defendants.

The Court's latest dismissal order, however, has pared this case to manageable proportions.  As to the App Defendants, there remain only two claims:  a claim for intrusion upon seclusion, and a recycled version of a previously-dismissed claim for conversion.  These claims fail as to all App Defendants, for several reasons.  But for several of the App Defendants, including Yelp and Foodspotting,[1] those claims are particularly defective, because the Second Consolidated Amended Complaint (ECF No. 478) ("SCAC") expressly pleads that both Yelp and Foodspotting obtained permission to access their users' Contacts in order to perform the function those users wanted:  To be notified of and connected to any of their friends who were using the same App.

Specifically, as to Yelp, in Plaintiffs' own words:

> 120. Plaintiffs Biondi, Hodgins, Hoffman, Mandaywala, and Paul (the "Yelp Plaintiffs") each recall navigating to various screens on and using the Yelp! App.  They recall providing a log in and navigating within the Yelp! App to a screen containing a ["Find Friends"] button with the accompanying displayed text: "Find friends on Yelp using your Contacts and Facebook friends?  You'll be able to see their bookmarks and find out when they're nearby. [Yes, Find Friends] [No, Skip This]", and pressing the ["Yes, Find Friends"] button.  Plaintiffs do not recall being presented at any time in that process with an intervening alert or pop-up display indicating that the Yelp! App would transfer any portion of his or her

---

[1] Yelp and Foodspotting have no corporate or operational relationship: they join in this motion because they are similarly situated, in an attempt to reduce by one the number of motions the Court must consider.

private address book to Yelp to perform this function or warning that such a transmission was about to occur.

And for Foodspotting:

128. Plaintiffs King and Sandiford (the "Foodspotting Plaintiffs") recall opening the Foodspotting App, signing up via its registration screen, and using the App. More particularly, they recall navigating to the Foodspotting App's "Follow People" screen containing an on-screen button labeled ["Find iPhone Contacts."]. While on that screen, the Foodspotting Plaintiffs tapped that button. The screen contained no warnings whatsoever indicating that the App was relaying his or her address book to Foodspotting.

SCAC ¶¶ 120, 128.

Thus for both Yelp and Foodspotting, there is no factual dispute. In each case, the alleged "intrusion upon seclusion"—the ability of an automated process to "access" the address book in the users' Contacts file—was expressly disclosed and agreed to. There are no allegations that either Yelp or Foodspotting did anything else: no allegation that they disclosed any contact information to third parties, or sold that information, or used that information for advertising purposes, or kept that information any longer than necessary, or did *anything* other than match each Plaintiff's contacts against their user base.[2]

The SCAC, as did its predecessor, attempts to finesse this express consent by drawing a purported distinction between "using," "finding," or "accessing" one's Contacts on the one hand, and "transmitting" or "copying" them to Yelp's or Foodspotting's servers on the other. But putting aside the dubious proposition (discussed below) that there is anything "highly offensive" in an automated process seeing—with permission—the email addresses in one's Contacts to begin with, the SCAC repeats the fallacy that there is some difference between "accessing" the contact information on one's phone for the express purpose of comparing it to the information of other users, and "transmitting" it to a server in order to perform that function. They are one and the same: a computer server cannot "access" or "use" data on a phone without moving (or "transmitting") that data to the server where it can be matched with a database of other users.[3]

---

[2] Nor could Plaintiffs make such allegations, because they are false.

[3] Of course in theory the process could work in reverse, with Yelp *seriatim* sending every one of its millions of user addresses to the user's phone for comparison, but that process would quickly overwhelm any mobile device, and require orders of magnitude more bandwidth and battery usage even if possible.

The fact that users may not *understand* the inevitable mechanics of a "friend finder" function does not mean that either Yelp or Foodspotting are accused of doing anything other than precisely what their users asked them to do.  Imagine, for example, that I call a local restaurant and ask to reserve a table for four this evening.

When I arrive at the restaurant, I proceed to the hostess stand, where I announce myself.  In response, the hostess says "just one moment," and I observe her bringing up a list of reservations on a computer terminal, including my name, phone number, time, and number of guests.  Imagine further that my reaction is "wait a minute!  I just asked for a reservation.  I didn't ask you to put my name and number in your computer system, or show it to the hostess."  No one would see a tort in the routine process that is part and parcel of the very function I requested.  The idea that my rights have been infringed simply because I don't understand the minutiae of that process is untenable.

So too here:  Plaintiffs' feigned confusion between "accessing" and "transmitting" their data cannot create a cause of action where none exists.  That imagined distinction was barely enough to squeak past the prior motion to dismiss, when mixed in with allegations aimed at other App Developers accused of both accessing and transmitting Contacts with no prior disclosure or permission whatsoever.  But the SCAC is different in crucial ways that require dismissal of the claims against Yelp and Foodspotting.

*First*, the intrusion on seclusion claim now stands alone (other than the already-dismissed conversion claim, which as discussed below fails from the same lack of Article III standing and other reasons as before).  Gone are the prior statutory claims of improper acquisition under the Wiretap Act, disclosure to third parties under the Stored Communications Act, common law disclosure of private facts, California and Texas computer crime statutes, and the like.  All that is left is a claim that the App Defendants intruded on the Plaintiffs' "seclusion" by gaining access to private, personal information in their Contact files.  But that tort, if it occurred at all, was completed at the time the Yelp or Foodspotting App first gained access to that data, and that is *precisely* what each Plaintiff concedes what was consented to.  Even if one accepts the false premise that transmitting that data to the developers' servers is somehow a different and additional act, it adds no new claim:  the alleged intrusion has already

occurred, and—as this Court has already held—there are no allegations beyond that initial intrusion that give rise to any additional claim that survives Article III scrutiny.

And *second*, even if one were to accept the proposition that transmitting copies of Plaintiffs' contacts to Yelp's and Foodspotting's servers in order to perform the requested service is somehow an act independent and apart from "accessing" that data, any claim based on that "separate" act is preempted by the Copyright Act: it is purely and simply a claim that—having already obtained permission to access the data—Yelp and Foodspotting then made a copy of it. Such copying is actionable, if at all, only under the Copyright Act, which preempts equivalent state law claims.

Plaintiffs' conversion claim also fails, for multiple reasons: it also is preempted by the Copyright Act, it fails Article III scrutiny, and it fails on the merits, both because it does not involve any property right at all and because the Plaintiffs were never deprived of anything in which they held a property interest.

## II.   ARGUMENT

### A.   Renewal of Defendants' Rule 12 Challenge to The Intrusion Upon Seclusion Claim is Proper

As a threshold matter, we recognize that this Court has already addressed the collective App Developers' arguments concerning Plaintiffs' claim of intrusion upon seclusion. Renewing that challenge, however, is entirely proper. To begin with, as noted above, the SCAC is quite narrower: gone are all of the claims of post-access torts (both statutory and common law) that could convert access with consent to actionable acquisition or disclosure of personal facts. Similarly, where the nature of the prior omnibus complaint and motions required abbreviated consideration of allegations directed to "Defendants" as an undifferentiated mass, we now address only two claims, as against two defendants. And finally, it is established law that the filing of a new complaint "wipes the slate clean" and permits a renewed Rule 12 challenge to the entire complaint, including causes of action carried over from the prior complaint:

> "[A]n amended complaint supersedes the original complaint and renders it
> without legal effect," *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th
> Cir.2012) (en banc), such that a defendant may challenge an amended
> complaint in its entirety, *see Sidebotham v. Robison*, 216 F.2d 816, 823 (9th
> Cir.1954) ("[O]n filing a third amended complaint which carried over the
> causes of action of the second amended complaint, the appellees were free

4

> to challenge the entire new complaint."); *see also In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1098 (S.D. Cal. 2010) (holding that defendant was free to move for dismissal of entire amended complaint, including claim that had already withstood a previous motion to dismiss).

*Bruton v. Gerber Prods. Co.*, No. 12-cv-02412-LHK, 2014 WL 172111, at *7 n.2 (N.D. Cal. Jan. 15, 2014).

### B.    Plaintiffs Do not State a Claim for Intrusion

#### 1.    Legal Standard

Like the common law tort of public disclosure of private facts, California and Texas apply the Restatement, Second, of Torts' elements for common law intrusion.  To state a claim for intrusion under California law, a plaintiff must allege: (1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person, and (3) resulting harm to the plaintiff.  *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998) (citing Restatement (Second) of Torts § 652B).  Similarly, under Texas law, a claim for intrusion on seclusion exists when (i) the defendant intentionally intruded on the plaintiff's solitude, seclusion, or private affairs; and (ii) the intrusion would be highly offensive to a reasonable person.  *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993).  To satisfy the first element, Plaintiffs must allege and ultimately prove that each of them had "an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source, and the defendant must have penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff."  *Lorenzo v. United States*, 719 F. Supp. 2d 1208, 1215 (S.D. Cal. 2010) (internal quotations omitted) (citing *Shulman*, 18 Cal. 4th at 232).  To satisfy the second element, California courts require that plaintiffs "also allege that the *use* of the information was highly offensive."  *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 993 (2011) (allegations that defendant deceptively collected plaintiffs' home addresses for marketing purposes was not "highly offensive" behavior).

#### 2.    Plaintiffs' Consent Bars Any Claim of Intrusion Against Yelp and Foodspotting

In the cases of Yelp and Foodspotting, Plaintiffs cannot satisfy the requirement that they had an "objectively reasonable expectation" that either Yelp or Foodspotting would "obtain[] unwanted access

5

YELP INC. AND FOODSPOTTING, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT / CASE NO. 4:13-CV-00453-JST

to data," (*Lorenzo*, 719 F. Supp. 2d  at 1215) for the obvious reason that the SCAC expressly pleads that both companies obtained consent to precisely that access for the express purpose the user sought.  The SCAC does not allege Defendants used Plaintiffs' mobile device contacts for any further purpose *at all*, much less a "highly offensive" purpose.  At most, the SCAC alleges Defendants used the addresses to enhance the social features of their services to inform Plaintiffs which of their contacts were already users of Defendants' respective services.  Defendants operate online services with social components, and identifying social connections to users was far from a "highly offensive" practice.  Indeed, even if Defendants were alleged to use the contacts for advertising or marketing purposes—and again, there are *no* allegations of the sort against Yelp or Foodspotting—*Folgelstrom* and numerous other cases make clear that such commercial uses of address information are not "highly offensive."  In *Folgelstrom*, Plaintiffs alleged a retailer had requested consumers' zip codes at checkout for the purpose of obtaining their home addresses for marketing and advertising purposes.  Plaintiffs alleged the retailer had acted deceptively by not disclosing how they would use the consumers' zip codes.  *Folgelstrom*, 195 Cal. App. 4th at 992.  The court affirmed dismissal of the case on its pleadings, finding that this was not "highly offensive" but was instead "routine commercial behavior."  *Id.*; *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (disclosure of data, such as address, phone number, name, age, and gender, did not constitute an "egregious breach of social norms" under California law); *In re Google Inc. Privacy Policy Litig.*, No. 5:12-cv-01382-PSG, 2014 WL 3707508, at *12 (N.D. Cal. July 21, 2014) ("This district 'set[s] a high bar' for the requisite 'intrusion [that is] highly offensive to a reasonable person.")[4]; *Puerto v. Super. Ct.*, 158 Cal. App. 4th 1242, 1253-54 (2008) (noting that contact information is not "particularly sensitive" and is not the type of information deemed "private"); *Hill v. NCAA*, 7 Cal. 4th 1, 26 (1994) ("[P]laintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant.").

---

[4] Quoting *Belluomini v. Citigroup Inc.*, No. 3:13–cv–01743, 2013 WL 5645168, at *3 (N.D. Cal. Oct. 16, 2013); *see also Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127–28 (N.D. Cal. 2008) (dismissing invasion of privacy claim where Plaintiff's stolen laptop contained personal information including social security number).

Similarly, in *Perkins v. LinkedIn Corp.*, No. 13-CV-04303-LHK, 2014 WL 2751053 (N.D. Cal. June 12, 2014), the court addressed strikingly similar claims as here, and found that the user's consent to finding "connections" vis "Google Contacts" was fatal to his privacy claims. LinkedIn's use of those Google Contacts to send invitations on behalf of plaintiff was not actionable, because plaintiff had consented to such use. *Id.*

Plaintiffs expressly allowed—indeed requested—Yelp and Foodspotting to access their Contact lists to perform the precise function they desired: to connect with their friends through the Apps to improve the Apps' social networking experiences. As the long line of caselaw discussed above makes clear, such conduct does not rise to the level of intrusion even if done against the plaintiff's will or without the plaintiff's knowledge. When done at the user's request, it cannot possibly support a claim of intrusion upon seclusion.

### 3.     Intrusion Based on Copying of Contact Information Is Preempted

As set forth above, Plaintiffs cannot state a cause of action based on Yelp's or Foodspotting's *access* to their Contacts, both because they consented to that access and because such access, even if nonconsensual, fails to come near the "high bar" for an intrusion claim. In hopes of avoiding that result, the SCAC, as it predecessor did, seeks to piggyback what it portrays as a second, independent basis for liability. The argument, as before, goes as follows: "perhaps we gave you permission to *access* our contacts, but we didn't give you permission to *copy* them, and that copying exceeds the consent we gave."[5]

But even assuming *arguendo* that access and copying are not in fact the same thing here, the copying of the Plaintiffs' contact information becomes the *only* act alleged against either Yelp or Foodspotting for which Plaintiffs did not admittedly give their consent. And thus the claim runs head-on into Copyright Act preemption. As the court in *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1189

---

[5] In declining to dismiss this cause of action in the last round of briefing, this Court relied on Plaintiffs' allegation "that they would not have consented had they known that their apps would not only scan their address books to determine whether their friends were using the same app, **but then upload the address books to the app developer for other purposes.**"  Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (ECF No. 67) ("Order") at 44 (emphasis added).  But in the SCAC, as regards Yelp and Foodspotting, **no other such other purposes or uses are alleged.**

7

YELP INC. AND FOODSPOTTING, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT / CASE NO. 4:13-CV-00453-JST

(C.D. Cal. 2001), *dismissed in part on other grounds*, 90 Fed. App'x 496 (9th Cir. 2003), explained, "[t]he Ninth Circuit employs a two-part test to determine whether the Copyright Act preempts particular state law claims.  Preemption occurs when: (1) the work at issue comes within the subject matter of copyright (i.e., a "work" "expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the physical objects . . .in which they are embodied," 17 U.S.C. § 101; and (2) the rights at issue under state law are equivalent to those protected by the Act.  *See Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1213 (9th Cir. 1998); *Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 776 (9th Cir. 1989); *Del Madera Properties v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir. 1987); 17 U.S.C. § 301(a)."

The first prong of this test is satisfied wherever the works at issue—in this instance, "literary works"—come within the "subject matter of copyright," as defined by 17 U.S.C. § 102, even where the works at issue (or some parts of those works) may not actually be protected, or even protectable, under the Copyright Act.  *See, e.g., Entous v. Viacom Int'l Inc.*, 58 U.S.P.Q.2d 1628, 1634 (C.D. Cal. 2001); *Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1058-59 (C.D. Cal. 2000); *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1124-25 (N.D. Cal. 2001).  In other words, the scope of preemption is broader than the scope of protection, or put another way, "the shadow actually cast by the Act's preemption is notably broader than the wing of its protection."  *Endemol Entm't B.V. v. Twentieth Television Inc.*, 48 U.S.P.Q.2d 1524, 1526 (C.D. Cal. 1998) (quoting *U.S. ex rel. Berge v. Trustees of the Univ. of Alabama*, 104 F.3d 1453, 1463 (4th Cir. 1997)).  The work(s) upon which a state law claim is based need only be within the "subject matter" of copyright; their actual *protection* thereunder is irrelevant to a preemption analysis.  *See, e.g., Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212-13 (9th Cir. 1998) (uncopyrighted drawings).[6]

The second prong is satisfied wherever the rights asserted in the state law cause of action are "equivalent" to those protected by the Copyright Act.  In order to avoid preemption, "the state cause of

---

[6] To be clear, as discussed below, a collection of email addresses does not qualify for copyright protection, but that does not alter the preemption analysis:  the act of copying falls within the subject matter of copyright, and is preempted regardless whether the allegedly copied material satisfies the Copyright Act's originality requirements or—as here—is in the public domain for failure to do so.

action must protect rights which are qualitatively different from the copyright rights." *Del Madera Properties v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir.1987), *overruled on other grounds by Fogerty v. Fantasy, Inc*., 510 U.S. 517 (1994). "The state claim must have an 'extra element' which changes the nature of the action." *Id.* (citation omitted). A court should not rely merely on a "laundry list" of the alleged "elements" of the state law claims at issue, such that the mere *possibility* of an "extra element" protects a claim from preemption. Instead, the court should engage in a fact-specific inquiry into the *actual* allegations underlying the claims at issue in the case, so as to determine whether the "gravamen" of the state law claim asserted is the same as the rights protected by the Copyright Act. *See Entous*, 58 U.S.P.Q.2d at 1634-35; *Selby*, 96 F.Supp.2d at 1059-60; *Kodadek*, 152 F.3d at 1212 (implicitly adopting this approach); *Dielsi v. Falk*, 916 F. Supp. 985, 990-93 (C.D. Cal. 1996). In other words, the question is whether the state law claims *as they are asserted* are "equivalent" to a federal copyright claim.

Here, that analysis is straightforward. Even if Plaintiffs' Contacts lists were copyrightable (and as set forth below, they are not), the only unauthorized act Plaintiffs' allege beyond the scope of their admitted consent is the bare copying of those lists to Yelp's and Foodspotting's servers. There are no additional allegations of improper disclosure (inadvertent or deliberate) to third parties, or sale of lists, or marketing use, or anything beyond bare copying. There is, in short, no "additional element": the gravamen of Plaintiffs' claim is that Yelp and Foodspotting copied their data, period. That claim is squarely preempted by the Copyright Act.

## C.     The SCAC Fails to State a Claim for Conversion

Plaintiffs base their common law conversion claim on allegations that "Defendants" used Plaintiffs' intangible contacts. SCAC ¶¶ 256-64. Because Plaintiffs fail to allege either ownership or dispossession of any property (real or intellectual), because the conversion claim is squarely preempted, and because no Article III harm underlies their claim, the SCAC does not state a claim for conversion and should be dismissed.

### 1.     Plaintiffs lack Article III Standing for their Conversion Claim

This Court has already dismissed this claim once on Article III grounds, finding that "the copying of such information without any meaningful economic injury to consumers is insufficient to establish

9

YELP INC. AND FOODSPOTTING, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT / CASE NO. 4:13-CV-00453-JST

standing on that basis."  Order at 40 ("[I]n cases where the alleged converter has only a copy of the owner's property and the owner still possesses the property itself, the owner is in no way being deprived of the use of his property.  The only rub is that someone else is using it as well.") (citing *FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 303-04 (7th Cir. 1990)).  As this Court noted, Plaintiffs' prior complaint alleged no diminution in the value of their contact information, and thus lacked Article III standing.  Order at 39 ("Put another way, a plaintiff must do more than point to the dollars in a defendant's pocket; he must sufficiently allege that in the process he lost dollars of his own.") (quoting *In re Google Inc. Privacy Policy Litig.*, No. 5:12-cv-01382-PSG, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013)).

Nothing has changed in this version.  Plaintiffs' claims still lack any allegation of economic injury flowing from the alleged conversion, and thus the result must be the same.  There is no Article III standing for this claim.

### 2. No Property is at Issue Here

Conversion is a property tort:  before there can be conversion, one must first establish ownership of whatever has been taken: "[1] First, there must be an interest capable of precise definition; [2] second, it must be capable of exclusive possession or control; and [3] third, the putative owner must have established a legitimate claim to exclusivity."  *Kremen v. Cohen*, 337 F.3d 1024, 1030–31 (9th Cir. 2003) (internal quotations omitted) (citation omitted).  Plaintiffs' conversion claim jumps right over ownership, but upon examination they allege no deprivation of any ***property*** at all, either real, personal, or intellectual.

Plaintiffs unquestionably own their phones and tablets:  they are personal property.  But there is no claim that either Yelp or Foodspotting (or anyone else) has deprived any plaintiff of either ownership or use of their devices, even for a moment.  There is also no dispute that Plaintiffs own their *copies* of the information in their address books, just as they own their paper phone books, and the takeout menus in their kitchen drawers, and the books on their shelves.  But again, there is no allegation that they have been deprived of possession or use of their Contact lists, even for a moment:  they are still right where they always were, and just as useful.

10

YELP INC. AND FOODSPOTTING, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT / CASE NO. 4:13-CV-00453-JST

1    What Plaintiffs allege is only that Yelp and Foodspotting have made *copies* of those lists, without

2  depriving Plaintiffs of any dominion over the originals or the devices in which they reside.  But (over and

3  above the obvious preemption issue, discussed below) this claim does not implicate any property right of

4  Plaintiffs, and absent a property right, there can be no conversion.  If there is any property right in the

5  intangible set of email addresses on one's iPhone that grants the phone's owner exclusive dominion over

6  that list of character strings, it can only be intellectual property.  But U.S. law has a carefully defined set

7  of rules defining when one can "own" each category of intellectual property, and Plaintiffs' address lists

8  meet none of those rules.

9    Lists of email addresses are certainly not patentable, and Plaintiffs make no claim theirs are.

10  Neither are Plaintiffs' Contacts subject to trade secret protection.  Some address lists could be, if they

11  were used in commerce, kept secret, and derived competitive economic value from not being known to

12  competitors.[7]  Customer contact lists are the paradigmatic example.  But again, no Plaintiff makes such a

13  claim here.  And a list of addresses or phone numbers is the classic example of what is *not* copyrightable:

14  no matter how much "sweat of the brow" one puts into compiling the list, it is a list of facts, and not

15  subject to copyright protection.  *Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.*, 499 U.S. 340 (1991)

16  (telephone directories not copyrightable).

17    Simply put, Plaintiffs may have a privacy interest in their Contacts, but as set forth above, that

18  privacy interest is not infringed here.  What they do *not* have is a property interest in the information

19  contained in those lists, or any right to prevent others, once they have been allowed access to those lists,

20  from copying them.  By analogy, you cannot break into my house and steal my box of recipes.  But if I

21  invite you to dinner, and then freely show you my carefully perfected recipe for that dinner, nothing in

22  the law prevents you from copying it down, on the spot or from memory:  I have no property right that

23  bars you from doing so.

24

---

25  [7] *See, e.g.*, *DVD Copy Control v. Bunner*, 31 Cal. 4th 864, 874 (2003) (trade secret consists of
26  "information, including a formula, pattern, compilation, program, device, method, technique, or process,
    that: (1) Derives independent economic value, actual or potential, from not being generally known to the
27  public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the
    subject of efforts that are reasonable under the circumstances to maintain its secrecy.") (internal
28  quotations omitted) (citation omitted).

11

YELP INC. AND FOODSPOTTING, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT / CASE NO. 4:13-CV-00453-JST

### 3. The SCAC Fails to State a Conversion Claim

The Ninth Circuit has recognized that intangible property is subject to the tort of conversion only where the defendant has deprived the plaintiff of possession or use of that intangible property. *Kremen*, 337 F.3d at 1030–31 (Internet domain name "sex.com" was capable of exclusive possession or control); *see also Cardonet, Inc. v. IBM Corp.*, No. C-06-06637 RMW, 2008 WL 941707, at *1 (N.D. Cal. Apr. 7, 2008) (tort of conversion "requires the wrongful exercise of dominion over another's property…. [and] [t]his requires some deprivation of ownership") (internal quotations omitted) (citation omitted). Similarly, Texas law requires that the defendant "wrongfully exercised dominion or control" of plaintiff's property "to the exclusion of and inconsistent with the plaintiff's rights" to state a claim for conversion. *Omnibus Int'l, Inc. v. AT&T, Inc.*, 111 S.W.3d 818, 826 (Tex. Ct. App. 2003). In fact, Texas does not recognize a cause of action for conversion of *any* form of intangible property regardless of whether it is capable of exclusive possession. *See Carson v. Dynegy*, 344 F.3d 446, 456 (5th Cir. 2003) (noting that conversion allegations regarding intellectual property rights, are "outside the scope of Texas conversion law, which concerns only physical property); *Devon Energy Corp. v. Westacott*, No. C 10–0075 RS (PR), 2011 WL 1157335, *10 (S.D. Tex. March 24, 2011) (acknowledging that Texas courts have not yet recognized intangible property as the proper subject of a conversion claim, despite decisions by other state courts to do so). Accordingly, the tort of conversion does not apply to intangible property like Plaintiff's contacts that multiple people can copy and use at the same time.

In *Hernandez*, Judge Gonzalez-Rogers dismissed a conversion claim against Path premised on the same factual allegations here. *Hernandez v. Path, Inc.*, No. 12-CV-01515 YGR, 2012 WL 5194120, at *7 (N.D. Cal. Oct. 19, 2012). Plaintiffs have alleged nothing new that compels a different result here. Plaintiffs have not and cannot allege that Defendants have dispossessed or excluded Plaintiffs from use of the contacts on their respective devices. Rather, Plaintiffs have alleged only that Defendants *copied* this information and transmitted it to others. Plaintiffs claim this harmed them because "Defendants" "*in some cases* disseminate their personal and private address books," (SCAC ¶ 2), but notably make no allegation that either Yelp or Foodspotting has done anything of the sort. But even were it made, this allegation does not amount to conversion. "In cases where the alleged converter only has a copy of the owner's property and the owner still possesses the property itself, the owner is in no way being deprived

12

YELP INC. AND FOODSPOTTING, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT / CASE NO. 4:13-CV-00453-JST

1  of the use of his property." *FMC Corp.*, 915 F.2d at 303–04 ("[T]he receipt of copies of documents,

2  rather than the documents themselves, should not ordinarily give rise to a claim for conversion.")

3  (internal quotation omitted).  Unlike the domain name at issue in *Kremen*—a unique Internet address that

4  could not be replicated—the contact information on Plaintiffs' devices can exist on multiple devices, and

5  multiple people can access and use it without excluding any single person from using it.

6  **4.      Plaintiffs' Conversion Claim is Preempted**

7  Finally, even if Plaintiffs' conversion claim could overcome all of the defects that led to its

8  dismissal the last time around, it is obviously preempted.  The alleged conversion at issue is nothing

9  more than a claim that Yelp and Foodspotting copied Plaintiffs' Contacts to their servers.  As the

10  gravamen of that claim is precisely coextensive with a claim under the Copyright Act (albeit a failed

11  claim, as the work at issue is not copyrightable, it is preempted.  *See* Section B(3), *supra.*

12  Indeed, state law conversion claims are paradigmatic copyright preemption cases.  As Judge

13  Breyer explained in *Firoozye*:

14  > [W]hile a claim for conversion typically involves tangible property and
> thus may be immune from preemption, **where a plaintiff is only seeking**
> **damages from a defendant's reproduction of a work—and not the**
> **actual return of a physical piece of property—the claim is preempted**.
> Because claims involving the conversion or misappropriation of works
> within the subject matter of copyright typically seek damages for the
> unauthorized reproduction of the works and not just the unauthorized
> possession or use of a specific piece of property, "legions of cases ... have
> held pre-empted claims for misappropriation ..."  1 Nimmer on Copyright §
> 1.01[B][1][f], at 1–35; *see id.* § 1.01[B][1][h], at 1–40 (noting that where a
> state law does not require secrecy for a misappropriation claim, there is no
> additional element precluding preemption).
>
> Here, the plaintiff is not seeking the return of a tangible piece of property.
> Indeed, the plaintiff sent WebStash to the defendants and authorized them
> to use it for their own evaluation, so he cannot claim that the defendants
> wrongfully obtained possession over that specific version of the program.
> Instead, the plaintiff is alleging that the defendants wrongfully reproduced
> WebStash without his permission, the essence of a claim for copyright
> infringement.  Accordingly, the plaintiff's claim for conversion is
> preempted ….

25  153 F. Supp. 2d at 1130 (emphasis added; citations omitted); *see also Design Art v. Nat'l Football*

26  *League Props, Inc.*, No. 00CV593 JM (JAH), 2000 WL 33151646, at *3 (S.D. Cal. Aug. 18, 2000)

27  (finding a conversion claim preempted because the plaintiffs were essentially alleging that the defendants

28  "interfered with plaintiffs' exclusive rights as the owner of the copyrights to the subject work").

13

YELP INC. AND FOODSPOTTING, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT / CASE NO. 4:13-CV-00453-JST

1    So too here.  There is no claim that Plaintiffs have been dispossessed of, or denied the use of,

2  either their personal property or their contact information.  Plaintiffs' conversion claim is nothing more

3  than a claim that Yelp and Foodspotting made copies of that information, and such claims are squarely

4  preempted.

5  **III.    CONCLUSION**

6    This case has meandered through two courts, and many complaints, for two and a half years.

7  From the beginning, it has been an amorphous mess, throwing generic complaints numbering in the

8  hundreds of pages against any defendant in sight, regardless whether those defendants had anything in

9  common beyond the bare fact that they all were involved in some way in offering "social" Apps, which

10 by design are intended to link users together with their friends.  At no point in any of the thousands of

11 pages of pleadings has there ever been any allegation that *any* of the Apps at issue did anything other

12 than that.

13    At best, Plaintiffs have alleged that *some* of the Apps did just what the users wanted, but failed to

14 ask permission first.  But for Yelp, Foodspotting, and several other Defendants, Plaintiffs cannot make

15 even that claim:  they expressly plead that both Yelp and Foodspotting obtained their users' consent

16 before accessing their Contacts in order to "find friends."  The analysis should end there.

17    Plaintiffs have now had multiple chances, without success, to craft a tort from Apps that

18 performed exactly as they were supposed to.  Enough is enough.  The two remaining claims against Yelp

19 and Foodspotting should be dismissed, this time with prejudice.

20

21 Dated:  August 22, 2014                                    DURIE TANGRI LLP

22

23                                                  By:  _____*/s/ Michael H. Page*_____
                                                        MICHAEL H. PAGE
24
                                                        Attorneys for Defendants
25                                                      YELP INC. and FOODSPOTTING, INC.

26

27

28

1

**CERTIFICATE OF SERVICE**

2    I certify that all counsel of record who has consented to electronic notification is being served on

3 August 22, 2014 with a copy of this document via the Court's CM/ECF system.  I further certify that I

4 mailed the foregoing document and the notice of electronic filing by first-class mail to all non-CM/ECF

5 participants.

6                   */s/ Michael H. Page*

7                     Michael H. Page

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

YELP INC. AND FOODSPOTTING, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT / CASE NO. 4:13-CV-00453-JST