HARMEET K. DHILLON, ESQ. (SBN: 207873)
Harmeet@dhillonsmith.com
KRISTA L. BAUGHMAN, ESQ. (SBN: 264600)
kbaughman@dhillonsmith.com
DHILLON & SMITH
177 Post Street, Suite 700
San Francisco, CA 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

Attorneys for Defendant
GOWALLA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK OPPERMAN, ET AL., <br><br>        Plaintiffs, <br><br>   v. <br><br> PATH, INC., ET AL. , <br><br>        Defendants. | Case No.: 13-cv-00453-JST <br><br> **GOWALLA, INC.'S MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT** <br><br> Date:      December 2, 2014 <br> Time:     2:00 p.m. <br> Judge:   Hon. Jon S. Tigar <br> Ctrm:     9 <br><br> **THIS DOCUMENT RELATES TO:** <br> *Opperman v. Path, Inc.*, <br> Case No. 13-cv-00453-JST |

## NOTICE OF MOTION AND MOTION TO DISMISS
## SECOND CONSOLIDATED AMENDED COMPLAINT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on December 2, 2014, at 2:00 p.m., or as soon thereafter as available, in the courtroom of the Honorable Jon S. Tigar, located at 450 Golden Gate Avenue, San Francisco, California, 94102, Courtroom 9, Defendant Gowalla Inc. ("Gowalla") will and hereby does move for an order dismissing Plaintiffs' Second Consolidated Amended Complaint (the "SCAC") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and Article III of the United States Constitution.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Court's files in this action, the arguments of counsel, and any other matters that the Court may properly consider.

Dated: August 22, 2014                                      DHILLON & SMITH

By:   __/s/ Harmeet K. Dhillon_____
      HARMEET K. DHILLON
      KRISTA L. BAUGHMAN
      Attorneys for Defendant Gowalla, Inc.

# **Table of Contents**

**Page**

**NOTICE OF MOTION** ................................................................................................ i

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

STATEMENT OF RELIEF SOUGHT ......................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ............................................................ 1

    I.       INTRODUCTION ................................................................................ 1

    II.     FACTUAL ALLEGATIONS OF THE SCAC ...................................... 3

    III.    LEGAL STANDARDS ......................................................................... 4

    IV.    ARGUMENT ........................................................................................ 5

          A.      Plaintiffs Lack Standing To Assert Their Claims Against Gowalla .......... 5

          B.      Plaintiffs Fail to State a Claim Under Rule 12(b)(6) ............................... 9

                1)     Invasion of Privacy: Intrusion Upon Seclusion ............................. 9

                        a.     No Reasonable Expectation of Privacy ............................. 9

                        b.     No Highly Offensive Conduct ......................................... 11

                2)     Conversion ..................................................................................... 13

V.     CONCLUSION ........................................................................................... 16

# Table of Authorities

**Pages**

**Cases**

*A&M Records, Inc. v. Heilman,*
   75 Cal.App.3d 554 (1978) ............................................................................... 15

*Ashcroft v.Iqbal,*
   556 U.S. 662, 677-81 (2009) ............................................................................ 5

*Baker v. Carr,*
   369 U.S. 186, 204 (1962) ................................................................................. 9

*Baugh v. CBS, Inc.,*
   828 F.Supp. 745, 757 (N.D.Cal. 1993) ............................................................ 11

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544, 555 (2007) ................................................................................. 5

*Birdsong v. Apple,*
   590 F.3d 955, 960 (9th Cir. 2009) .................................................................... 6

*Citizens for Health v. Leavitt,*
   428 F.3d 167 (3d Cir. 2005) ............................................................................. 8

*Clapper v. Amnesty International,*
   --- S. Ct. ----, 2013 WL 673353 ...................................................................... 8

*Cobbs v. Grant,*
   8 Cal. 3d 229 (1972) ........................................................................................ 11

*De May v. Roberts,*
   46 Mich.160 (1881) ......................................................................................... 12

*Del Veccio v. Amazon, Inc.,*
   No. 11-366, 2011 WL 6325910, at *3 (W.D.Wash. Dec. 1, 2011) ................... 6

*DIRECTV, Inc. v. Pahnke,*
   405 F.Supp. 1182, 1189 (E.D. Cal. 2005) ........................................................ 15

*Don King Productions/Kingvision v. Lovato,*
   911 F.Supp.419 (N.D. Cal. 1995) .................................................................... 15

*FMC Corp. v. Capital Cities/ABC,*
   *Inc.*, 915 F.2d 300, 303–04 (7th Cir. 1990) .................................................... 9

Gowalla's Motion to Dismiss
Second Consolidated Amended Complaint

DHILLON & SMITH
CASE NO. 13-CV-00453-JST

*Folgelstrom v. Lamps Plus, Inc.,*
195 Cal.App. 4th 986 (2011) ................................................................................. 12

*Fremont Indem. Co. v. Fremont General Corp.,*
148 Cal.App.4th 97, 119 ....................................................................................... 14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
528 U.S. 167, 180-81 (2000) ................................................................................... 5

*G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Service,*
958 F.2d 896 (9th Cir. 1992) .......................................................................... 13, 15

*Hill v. Nat'l Collegiate Athletic Assn.,*
7 Cal. 4th 1, 36 (1994) .......................................................................................... 10

*In re Google Android Consumer Privacy Litig.,*
2013 WL 1283238, at *11 (N.D. Cal. Mar. 26, 2013 ............................................ 13

*In re Google Inc. Cookie Placement Consumer Privacy Litig.,*
No. 12-2358-SLR, 2013 WL 5582866, at *3 (D. Del. Oct. 9, 2013) ...................... 7

*In re Google, Inc. Privacy Policy Litig.,*
No. 12-cv-01382-PSG, 2013 WL 6248499, *5 (N.D. Cal. Dec. 3, 2013) ............... 7

*In re iPhone Application Litig.,*
844 F. Supp. 2d at 1075 ......................................................................................... 15

*In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig.,*
758 F. Supp. 2d 1077, 1098 (S.D. Cal. 2010) ......................................................... 4

*In re Yahoo Mail Litig.,*
5:13-CV-04980, 2014 WL 3962824, at *9 (N.D. Cal. Aug. 12, 2014) .................. 10

*iPhone Application Litig.,*
844 F. Supp. 2d 1040, 1063 1075 (N.D. Cal. 2012) ............................................. 13

*Johnson v. Weinberger,*
851 F.2d 233, 235 (9th Cir. 1988) ........................................................................... 5

*Kremen v. Cohen,*
337 F.3d 1024, 1030–31 (9th Cir. 2003) ............................................................... 14

*LaCourt v. Specific Media, Inc.,*
No. 10-1256, 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) .................................. 7

*Lujan v. Defenders of Wildlife,*
504 U.S. 555, 560-61 (1992) ................................................................................... 4

*May v. Roberts,*
    46 Mich.160 (1881) ................................................................................................ 12

*Miller v. Nat'l Broad. Co.,*
    187 Cal. App. 3d 1463, 1483-84 (1986) ................................................................ 13

*Navarro v. Block,*
    250 F.3d 729, 732 (9th Cir. 2001) .......................................................................... 5

*Puerto v. Super. Ct.,*
    158 Cal. App. 4th 1242, 1253–54 (2008) .............................................................. 13

*Ruiz v. Gap, Inc.,*
    380 F. App'x 689 (9th Cir. 2010) ........................................................................... 7

*Sanchez-Scott v. Alza Pharm.,*
    86 Cal.App.4th 365 (2001) .................................................................................... 12

*Shulman v. Group. W. Prods., Inc.,*
    18 Cal. 4th 200, 231 (1998) .................................................................................... 9

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83, 101-102 (1998) ................................................................................... 4

*Yunker v. Pandora Media, Inc.,*
    No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ...................... 8, 13, 15

**Other**

U.S. Const., Article III……………………………………………………..……………….2, 10, 11

Fed. R. Civ. 12(b)(6) ...................................................................................... vii, 5, 10

Fed. R. Civ. 12(b)(1) ......................................................................................... vii, 4

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**STATEMENT OF RELIEF SOUGHT**

3               Gowalla seeks an order pursuant to Federal Rule of Civil Procedure, Rules 12(b)(1)

4  and 12(b)(6) dismissing with prejudice Plaintiffs' claims against Gowalla for lack of standing

5  pursuant to Article III of the United States Constitution and for failure to state a claim upon which

6  relief can be granted.

7

**STATEMENT OF ISSUES TO BE DECIDED**

8      1.      Whether Plaintiffs have alleged an "injury-in-fact" sufficient to satisfy the case or

9  controversy requirement for standing under Article III of the U.S. Constitution.

10      2.      Whether Plaintiffs' claim against Gowalla for invasion of privacy (intrusion upon

11  seclusion) should be dismissed pursuant to Rule 12(b)(6).

12      3.      Whether Plaintiffs' claim against Gowalla for conversion should be dismissed

13  pursuant to Rule 12(b)(6).

14

**I.     INTRODUCTION**

15               Despite the mounting number of opportunities Plaintiffs have been given to plead

16  injury-in-fact and viable claims against Gowalla, they again fail to do so with the allegations of the

17  Second Consolidated Amended Complaint ("SCAC"), which is a pared-down version of

18  Plaintiffs' largely deficient Consolidated Amended Class Action Complaint ("CAC") and which

19  omits critical allegations upon which Plaintiffs' prior claims depended for their success.

20           At all times relevant to the SCAC, Gowalla provided a free, location-based social network

21  application ("App") that allowed users to check in at areas in their local vicinity by using the App.

22  Plaintiffs concede that they voluntarily downloaded Gowalla's App and took advantage of its

23  optional "Find Friends" through "Address Book" feature. Plaintiffs have withdrawn the allegation

24  that Gowalla used their data for any purpose other than to provide services to Plaintiffs, at their

25  request and instruction. Plaintiffs do not and cannot allege that any conduct on the part of Gowalla

26

27  Gowalla's Motion to Dismiss                         DHILLON & SMITH
Second Consolidated Amended Complaint           CASE NO. 13-CV-00453-JST

28                                  Page 1

has injured or damaged them in any way. In light of the facts and allegations pled, the claims against Gowalla fail for several independent reasons.

First, Plaintiffs cannot demonstrate standing under Article III of the U.S. Constitution, as they fail to identify any form of cognizable harm they incurred as a result of Gowalla's alleged conduct. Conspicuously absent from the SCAC are any allegations that Plaintiffs actually sold, transferred, licensed or allowed use of their address books prior to, or even following, Gowalla's alleged misconduct, or that Gowalla retained, disclosed, de-privatized, manipulated, or otherwise misused their address book data. Plaintiffs fail to allege that they have been deprived of any property right or suffered any actual injury. Moreover, as Plaintiffs allege no constitutional violation and no risk of future harm as a result of Gowalla's alleged conduct, this case is distinguishable from other cases finding injury-in-fact in the context of invasion of privacy claims.

Second, Plaintiffs fail to state a cause of action for invasion of privacy, intrusion upon seclusion. Plaintiffs concede that they explicitly consented to Gowalla's *viewing* of their address books in order to find their friends among Gowalla's database, and do not allege whether or how Gowalla's alleged uploading of that information exceeded this consent. In light of the advance notice and consent pled, Plaintiffs do not have an objectively reasonable expectation of privacy in their address books as to Gowalla. Further, Gowalla's alleged uploading of information that Plaintiffs plainly allowed Gowalla to view is not highly offensive, particularly in the context of Gowalla's operation of a free social networking App, at Plaintiffs' instruction. Nor is address book information the type of highly sensitive information that has been held to give rise to an intrusion claim. Gowalla's alleged conduct is simply not an intrusion upon seclusion, as that tort is interpreted.

Third, Plaintiffs' attempt to salvage their failed conversion claim by alleging that the converted property is Plaintiffs' "right to exclusive possession and control" of their address books, rather than the address books themselves, also fails. SCAC, ¶262. Plaintiffs fail to plead facts showing that their address books are capable of exclusive possession or control, or that they have a

Gowalla's Motion to Dismiss
Second Consolidated Amended Complaint

DHILLON & SMITH
CASE NO. 13-CV-00453-JST

legitimate claim to exclusivity, in light of the indisputable fact that the address books consist in part of information belonging to third parties and are subject to sale, transfer, license or use by those third parties, and others. Plaintiffs fail to allege that Gowalla dispossessed or excluded Plaintiffs from any use of the contacts on their respective iDevices, given that Plaintiffs still retain, and have always retained, those address books. Nor do Plaintiffs plead any damages they incurred as a result of Gowalla's alleged conduct, thereby eviscerating their conversion claim.

For the reasons discussed below, the SCAC must fail. As this is Plaintiffs' fifth deficient attempt at pleading their claims, and as any further amendments would certainly be futile, Gowalla respectfully requests that the Court dismiss the SCAC without leave to amend.

## II.       FACTUAL ALLEGATIONS OF THE SCAC

At all times relevant to the SCAC, Gowalla provided a free, location-based social network application ("App") that allowed users to check in at areas in their local vicinity by using the App. Plaintiffs acknowledge that they "recall using the Gowalla App, logging in and navigating within the App to a 'Find Friends' menu screen, and being offered various options (including an option entitled 'Address Book')." SCAC, ¶96, *see also* CAC ¶ 236; Order (Docket No. 471) p.44 (Plaintiffs allege that Gowalla "copied address books only after they prompted the user to "find friends" who use the same app by scanning Plaintiffs' address books). However, Plaintiffs further allege  that "without prior user consent, the Gowalla App uploaded iDevice address book data to Gowalla or someone acting on its behalf." SCAC, ¶ 94. The SCAC contains no allegations that Gowalla used the address book information for any purpose other than to service Plaintiffs' request, or shared that information with third parties, or that Gowalla continues to access, upload and/or share Plaintiffs' address book information.

The SCAC alleges that the address book data has independent value that reflects both the effort required for the individual user to compile the data, and also its commercial value to third parties. SCAC, ¶¶ 56, 58. According to Plaintiffs, the contact data is "of particular commercial value to businesses engaged in profiting from and exploiting social media, including through

advertising." *Id.,* ¶59. Plaintiffs allege that their ownership rights in their address books "include the exclusive right of possession and control, including exclusive right to sell, transfer, license or allow use of their address books," and that Gowalla's conduct deprived them of their right to exclusive possession and control of the information. *Id.,* ¶¶ 259, 262.

The SCAC alleges that Gowalla's misappropriation of users' address books "enabled the company to more rapidly grow its user base, avoid the costs of customer acquisition, enhance its social networking features, and increase the value of the company, among other benefits." SCAC, ¶97. Plaintiffs allege that their injury "includes the deprivation of benefits and profits realized by the App Defendants as a result of their use of the wrongfully converted property." *Id.,* ¶264.

### III.    LEGAL STANDARDS[1]

To establish standing to sue under Article III of the U.S. Constitution, a plaintiff bears the burden of pleading facts sufficient to establish (1) an injury in fact, (2) that the injury was fairly traceable to the challenged conduct, and (3) that it is likely that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Rule 12(b)(1) requires dismissal where a plaintiff has not established standing under Article III. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-102 (1998).

Rule 12(b)(6) requires dismissal when a plaintiff fails to present a cognizable legal theory or to allege sufficient facts supporting a cognizable legal theory.[2] *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). As the Supreme Court has emphasized, "labels and conclusions, and a

---

[1] This Court's May 14, 2014 Order ("Order") states that "[t]he Court has not identified any differences between Texas and California common law on the issues addressed in this Order, and therefore, for the sake of convenience, discusses only California law." Docket No. 471, p.2, FN 3. As this Motion discusses a subset of the same issues addressed by the Order, only California law is discussed here.

[2] It is beyond dispute that Gowalla is entitled to move to dismiss all claims alleged against it in the SCAC. *See, e.g., In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*,758 F. Supp. 2d 1077, 1098 (S.D. Cal. 2010) (holding that defendant was free to move for dismissal of entire amended complaint, including claim that had already withstood a previous motion to dismiss).

formulaic recitation of the elements of a cause of action will not [survive a motion to dismiss]," and "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). A court must disregard unreasonable inferences or legal characterizations. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-81 (2009). After accepting the well-pleaded allegations, a court then determines whether a complaint alleges a "plausible" claim to relief. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## IV.   ARGUMENT

### A.   Plaintiffs Lack Standing To Assert Their Claims Against Gowalla

To meet the requirements of Article III, a plaintiff bears the burden of alleging facts sufficient to show that (1) "[she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). A plaintiff fails to meet the standing requirements "[w]hen '[s]peculative inferences' are necessary…to establish [the] injury." *Johnson v. Weinberger*, 851 F.2d 233, 235 (9th Cir. 1988) (citation omitted).

In considering standing in connection with the CAC, the Court evaluated four theories of injury-in-fact and determined that two theories did not support standing. Order (Docket No. 471), pp. 38-41. First, the Court found that Plaintiffs could not establish standing through their prayer for injunctive relief because there was no realistic threat of repetition. *Id.,* p. 39. The same conclusion must be reached with respect to the SCAC, which alleges no threat of repetition.

Gowalla's Motion to Dismiss
Second Consolidated Amended Complaint
Page 5

Second, the Court found that Plaintiffs' allegations of interference with their property rights in their address books were insufficient to establish standing because Plaintiffs failed to allege any detail concerning their argument that their address books' value was diminished by alleged misconduct. Order (Docket No. 471), p. 39. The same conclusion must be reached with respect to the SCAC, which alleges no more specificity on the issue of diminishment of the value of the address books. Plaintiffs fail to allege that they have been deprived of any property right or suffered any actual, as opposed to utterly speculative, injury. While they allege that the address books have "intrinsic, extrinsic and commercial value" and that Plaintiffs have been deprived of the "exclusive right to sell, transfer, license, or allow use of their address books" (SCAC, ¶¶ 258-59), they fail to allege that they have ever actually sold, transferred, or licensed their address books, or have ever attempted to do so, or they intend to do so in the future. Plaintiffs's alleged injury "rests on a hypothetical risk" of devaluation of the address books in the context of a speculative future transaction, which cannot support standing. *Birdsong v. Apple,* 590 F.3d 955, 960 (9th Cir. 2009) (no standing where consumers of digital audio player claimed only that users of the player had a potential risk for hearing loss, but not that consumers suffered or imminently would suffer hearing loss from their use of the players); *see also Del Veccio v. Amazon, Inc.,* Case No. 11-366, 2011 WL 6325910, at *3 (W.D.Wash. Dec. 1, 2011) (the theoretical possibility that plaintiffs' information could lose value as a result of its collection and use by defendant was not enough for the court to reasonably infer that such devaluation had actually occurred).

Plaintiffs claim that their injury "includes the deprivation of benefits and profits realized by" Gowalla as a result of its alleged use of the address books, and that Gowalla has benefitted because such use "enabled the company to more rapidly grow its user base, avoid the costs of customer acquisition, enhance its social networking features, and increase the value of the company, among other benefits." SCAC, ¶¶ 97, 262, 264. These allegations merely "point to the dollars in [Gowalla's] pocket" and fail to allege that Plaintiffs lost dollars of their own, and are insufficient to confer Article III standing. Order (Docket No. 471), p. 41, *citing In re Google, Inc.*

1   *Privacy Policy Litig.,* Case No. 12-cv-01382-PSG, 2013 WL 6248499, *5 (N.D. Cal. Dec. 3,

2   2013); s*ee also In re Google Inc. Cookie Placement Consumer Privacy Litig.*, Case No. 12-2358-

3   SLR, 2013 WL 5582866, at *3 (D. Del. Oct. 9, 2013) (holding that plaintiffs who alleged that

4   Google had wrongfully collected their personally identifiable information lacked Article III

5   standing because "plaintiffs [had] not sufficiently alleged that the ability to monetize their PII has

6   been diminished or lost by virtue of Google's previous collection of it"); *LaCourt v. Specific*

7   *Media, Inc.,* Case No. 10-1256, 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) (finding that

8   plaintiffs did not "explain how they were 'deprived' of the economic value of their personal

9   information simply because their unspecified personal information was purportedly collected by a

10  third party" and, therefore, did not have standing).

11          Third, Plaintiffs do not plead any statutory claims against Gowalla, thus eliminating the

12  third theory of injury-in-fact that was considered by the Court. *See* Order (Docket No. 471), p. 40.

13          Accordingly, Plaintiffs' injury-in-fact argument hinges on whether their invasion of

14  privacy claim presents a dispute the Court is permitted to adjudicate, which it does not, under the

15  facts alleged. The Court previously considered the cases of *Ruiz, Yunker and Leavitt,* all of which

16  found standing with respect to invasion of privacy claims, but these cases are materially

17  distinguishable from the instant case, in which no constitutional violation is alleged and where

18  Plaintiffs are not alleged to be at greater risk of future harm as a result of Gowalla's alleged

19  conduct.

20          In *Ruiz v. Gap, Inc.,* 380 F. App'x 689 (9th Cir. 2010) (unpublished), the Ninth Circuit

21  found standing based on "[t]he possibility of future injury" or "[a] credible threat of harm," where

22  plaintiff alleged, with support from an expert affidavit, that he was at greater risk of identity theft

23  because of the theft of a laptop computer that contained his social security number. *Id.* at 690-691.

24  By contrast, Plaintiffs do not allege any credible threat of harm or future injury to themselves

25  based upon Gowalla's alleged uploading of the address books, particularly where Gowalla is not

26  alleged to have misued the informaiton or transmitted it to any third parties, and where the conduct

27  Gowalla's Motion to Dismiss                                    DHILLON & SMITH

28  Second Consolidated Amended Complaint                          CASE NO. 13-CV-00453-JST

                                          Page 7

1   is not alleged to be continuing. Plaintiffs fail to allege *any* potential future injury, much less on

2   that would "present[ ] enough of a risk that the concerns of plaintiffs are real, and not merely

3   speculative." *Id.* at 691; *see also Clapper v. Amnesty International,* --- S. Ct. ----, 2013 WL

4   673353, at *7 ("[W]e have repeatedly reiterated that threatened injury must be *certainly impending*

5   to constitute injury in fact, and that allegations of *possible* future injury are not sufficient."

6   (internal quotations, citations and brackets omitted, emphasis in original)); *Yunker v. Pandora*

7   *Media, Inc.*, Case No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013)

8   (possibility of future harm insufficient to establish standing where plaintiff alleged app collected

9   his personally identifiable information and "did not anonymize" it). Thus, the *Ruiz* case does not

10  weigh in favor of a standing finding.

11      In *Yunker v. Pandora Media, Inc.*, Case No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D.

12  Cal. Mar. 26, 2013), standing was found based on alleged violations of plaintiff's constitutional

13  right to privacy, and the court held that "[t]he actual or threatened injury required by [Article III]

14  may exist solely by virtue of statutes creating legal rights, the invasion of which creates

15  standing…" *Id.* at *6 (internal citations omitted). As Plaintiffs do not allege that their

16  constitutional or statutory privacy rights were invaded, standing does not exist under *Yunker.*

17      In *Citizens for Health v. Leavitt*, 428 F.3d 167 (3d Cir. 2005), cert. den'd 127 S. Ct. 43

18  (2006), plaintiffs were found to have standing to challenge a "Privacy Rule" that allowed medical

19  providers to use or disclose personal health information without patient consent, where summary

20  judgment evidence showed "at least one individual plaintiff's health information has been, or will

21  imminently be, disclosed without her consent by private health care providers and drugstore

22  chains, and that she and her family will avoid seeking medical care to prevent further disclosures

23  of medical information without their consent." *Id.* at 176 and n.9. By contrast, conspicuously

24  absent in this case is any allegation that Gowalla has disclosed their address books to third parties

25  or will do so in the future; that Gowalla continues to upload Plaintiffs' information; that Plaintiffs

26  have changed their course of conduct in any way (much less by refraining to partake in something

27  Gowalla's Motion to Dismiss

28  Second Consolidated Amended Complaint

Page 8

DHILLON & SMITH
CASE NO. 13-CV-00453-JST

as critical as medical care) to prevent future alleged disclosures; or that *any harm* is imminently impending. Accordingly, *Leavitt* does not weigh in favor of an injury-in-fact finding here.

In *Ruiz, Yunker* and *Leavitt*, the alleged invasion of privacy either gave rise to a risk of imminent and serious future harm (risk of identity theft, disclosure of health information, lack of medical care) or was founded in a constitutional or statutory violation. Plaintiffs in this case fall far short of these standards. Plaintiffs also fail to establish standing for their conversion claim based on any injury to their property rights in their address books, as discussed above. Plaintiffs have not been deprived of any property rights because the digital address books on Plaintiffs' iDevices remain unaltered and available for Plaintiffs to use and view. *See FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 303–04 (7th Cir. 1990) (taking copy of information does not deprive owner of possession and, as such, is insufficient to state a claim for conversion).

Plaintiffs demonstrate no "personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends," and thus the SCAC must be dismissed with prejudice for lack of standing as to both claims against Gowalla. *Baker v. Carr,* 369 U.S. 186, 204 (1962).

## B.    Plaintiffs Fail to State a Claim Under Rule 12(b)(6)

### 1)  Invasion of Privacy: Intrusion Upon Seclusion

To state a claim for intrusion under California law, a plaintiff must allege: (1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person, and (3) resulting harm to the plaintiff. *Shulman v. Group. W. Prods., Inc.,* 18 Cal. 4th 200, 231 (1998), *citing* Restatement (Second) of Torts § 652B. Plaintiffs fail to state a claim for intrusion because they did not have a reasonable expectation of privacy in the information, and the alleged "intrusion" (if it can fairly be stated as such) was not sufficiently offensive.

#### a.    No Reasonable Expectation of Privacy

The SCAC alleges that Gowalla uploaded the address book data to Gowalla or its agent "without prior user consent," but concedes that the Gowalla Plaintiffs "each recall using the

1    Gowalla App, logging in and navigating within the App to a 'Find Friends' menu screen, and

2    being offered various options (including an option entitled 'Address Book')". SCAC ¶¶ 94, 96; *see*

3    *also* CAC ¶ 236; Order (Docket No. 471) p.44 (Plaintiffs allege that Gowalla "copied address

4    books only after they prompted the user to "find friends" who use the same app by scanning

5    Plaintiffs' address books). The SCAC does not allege that Gowalla made any representations

6    concerning how it would perform the "Find Friends" services once Plaintiffs selected this option.

7        It is beyond dispute that Plaintiffs explicitly consented to Gowalla's *viewing* of their

8    address books, at the very least. Plaintiffs fail to plead that Gowalla's alleged uploading of their

9    address books exceeded this consent, or that when Plaintiffs gave their consent to view the address

10   books, they reasonably believed that uploading would *not* be involved in Gowalla's review

11   process. Indeed, in light of the purpose for which consent was given (i.e. Gowalla's scanning the

12   contacts to find Plaintiffs' friends within the Gowalla database), Plaintiffs' argument that

13   uploading those contacts exceeded their consent makes little sense. *See, e.g., In re Yahoo Mail*

14   *Litig.*, 5:13-CV-04980, 2014 WL 3962824, at *9 (N.D. Cal. Aug. 12, 2014) (finding it

15   "implausible that users did not – after agreeing, based on the [Yahoo Terms of Service], to

16   Yahoo's scanning and analysis of emails – realize that in order to engage in analysis of emails,

17   Yahoo would have to store the emails somewhere on its servers.").

18       In light of the advance notice and consent pled, Plaintiffs do not have an objectively

19   reasonable expectation of privacy in their address books as to Gowalla. *See, e.g.,* Order (Docket

20   No. 471), p. 43, *citing Hill v. Nat'l Collegiate Athletic Assn.,* 7 Cal. 4th 1, 36 (1994) (advance

21   notice of an impending action and "the presence or absence of opportunities to consent voluntarily

22   to activities impacting privacy interests" may "create or inhibit reasonable expectations of

23   privacy."); *Shulman*, 18 Cal. 4th at 232 ("[t]o prove actionable intrusion, the plaintiff must show

24   the defendant…obtained *unwanted access* to data about, the plaintiff." (emphasis added)).

25       In a stark and critical departure from the allegations of the CAC, Plaintiffs no longer allege

26   that Gowalla made any use of their address books, other than to provide a service to Plaintiffs at

27   Gowalla's Motion to Dismiss

28   Second Consolidated Amended Complaint

DHILLON & SMITH
CASE NO. 13-CV-00453-JST

Plaintiffs' request. Plaintiffs have wholly abandoned their allegations that Gowalla retained, kept, remotely stored, disseminated, or misused their information. (*Compare* CAC, ¶¶ 7, 239-240, *with* SCAC, ¶¶ 93-97.). Plaintiffs failure to plead these allegations moots the reasoning in the Court's prior Order, in which the Court found that Plaintiffs' consent was insufficient in light of the CAC's allegations that Gowalla failed to disclose that its "app[ ] would not only scan their address books to determine whether their friends were using the same app, but then upload the address books to the app developer *for other purposes*." (Order at 44:7–15.)

Even presuming that Plaintiffs' consent was reasonably limited to Gowalla's viewing of the address books only, that consent is sufficient to dismiss the intrusion on seclusion claim. *See Baugh v. CBS, Inc.,* 828 F.Supp. 745, 757 (N.D.Cal. 1993) ("consent is an absolute defense, even if improperly induced" in dismissing intrusion on seclusion claim); *Cobbs v. Grant,* 8 Cal. 3d 229 (1972). In *Baugh,* a plaintiff gave her consent to entry of her home by television news reporters and to videotaping of her discussions, but claimed that she was led to believe that the footage would not be used commercially. *Baugh v. CBS, Inc.,* 828 F.Supp. 745. The court found that she had no remedy with regard to the subsequent news broadcasts of the videotape made at her home based upon intrusion of seclusion. *Id.* Pursuant to *Baugh,* because Plaintiffs consented to Gowalla's review of their address books, the fact that those address books were also uploaded by Gowalla does not support an intrusion claim, even if Plaintiffs were not expressly aware that the uploading would occur. In light of Plaintiffs' consent, they have failed to plead a reasonable expectation of privacy in their address books as to Gowalla.

### b.  No Highly Offensive Conduct

Gowalla's alleged uploading of information that it was explicitly permitted to view was not highly offensive as required for an intrusion claim. Gowalla is not alleged to have used the address book data for its own purposes – a fact that this Court relied upon in denying the App Defendants' motions to dismiss the intrusion upon seclusion claim in the CAC. Order (Docket No. 471), p. 44. Using the Plaintiffs' address book data for the intended and requested purpose of finding friends

1  within a social networking service, as Gowalla is alleged to have done, is routine commercial

2  behavior and certainly does not constitute an "egregious breach of social norms" of the type

3  required to support an invasion of privacy claim. *See Folgelstrom v. Lamps Plus, Inc.,* 195

4  Cal.App. 4th 986 (2011) (commercial uses of address information are "routine commercial

5  behavior" and are not "highly offensive" for the purposes of intrusion claims).

6         Even presuming that Plaintiffs' consent extended only to Gowalla's viewing of their

7  address books and ended abruptly where uploading was concerned, Gowalla's uploading of the

8  address books, without more, was not highly offensive in the context of operating a social

9  networking App at Plaintiffs' request and invitation. Plaintiffs do not even allege that had they

10  known the Gowalla App would upload their address books, they would not have given Gowalla

11  permission to "Find Friends" through the "Address Book" feature. Further, the SCAC fails to

12  allege that Gowalla made any misrepresentations regarding the social nature of its App or how the

13  App functions, nor is it alleged that Gowalla lied to Plaintiffs, or represented that Gowalla would

14  not upload the address books as part of the "Find Friends" and "Address Book" functions, or

15  obtained Plaintiffs' consent through fraud.

16         Further, the address book data is not the type of highly sensitive information that has been

17  held to give rise to an intrusion claim. In cases finding an invasion of privacy where consent is

18  given for one purpose but is exceeded, a serious affront to human dignity is generally at issue. *See,*

19  *e.g., Sanchez-Scott v. Alza Pharm.,* 86 Cal.App.4th 365 (2001) (invasion of privacy where non-

20  medical personnel observed a breast examination, where patient's consent was found reasonably

21  to extend only to medical personnel), *citing to De May v. Roberts,* 46 Mich.160 (1881) (invasion

22  of privacy where non-medical personnel observed a birth, where patient's consent was found

23  reasonably to extend only to medical personnel). This is not such a case. Clearly, Plaintiffs'

24  human dignity is not jeopardized by Gowalla's mere uploading of information that Plaintiffs

25  plainly allowed Gowalla to view.

26

27  Gowalla's Motion to Dismiss

28  Second Consolidated Amended Complaint

The address book data at issue is indistinguishable from the types of personal identification information that courts routinely hold as being insufficient to state a claim for intrusion. *See, e.g., Yunker*, 2013 WL 1282980 (collection of age, gender, and location); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 1075 (N.D. Cal. 2012) (collection of personal data and geolocation information); *In re Google Android Consumer Privacy Litig.*, 2013 WL 1283238, at *11 (N.D. Cal. Mar. 26, 2013 (collection of app activity); *see also Puerto v. Super. Ct.*, 158 Cal. App. 4th 1242, 1253–54 (2008) ("[T]he requested information, while personal, is not particularly sensitive, as it is merely contact information, not medical or financial details, political affiliations, sexual relationships, or personnel information.").

Whether an intrusion is highly offensive depends on "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1483-84 (1986). Considering the totality of the circumstances in this case, including the social networking function that Plaintiffs expressly asked Gowalla to perform to connect them to their friends, it is clear that the nature of the intrusion is not "highly offensive." Moreover, as discussed above, Plaintiffs fail to allege any damage or injury sustained as a result of the alleged uploading. Accordingly, Plaintiffs fail to state a claim for invasion of privacy, intrusion on seclusion.

### 2) Conversion

To establish a claim for conversion, Plaintiffs must show (1) ownership or right to possession of property, (2) wrongful dispossession of the property right, and (3) damages. *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). This Court has already determined that Plaintiffs previously failed to allege that Gowalla had dispossessed or excluded Plaintiffs from any use of the contacts on their respective iDevices, given that Plaintiffs still retain, and have always retained, those address books. As the Court noted in its Order, "In cases where the alleged converter only has a copy of the owner's property and the

1   owner still possesses the property itself, the owner is in no way being deprived of the use of his

2   property." Order (Docket No. 471), p. 40 fn 22; *citing FMC Corp. v. Capital Cities/ABC, Inc.*, 915

3   F.2d 300, 303–04 (7th Cir. 1990). Plaintiffs again fail to make this critical allegation, and their

4   conversion claim again fails on standing grounds.

5       In an effort to circumvent this fatal flaw in their conversion argument, Plaintiffs attempt to

6   reframe the "property" at issue as Plaintiffs' "exclusive right to sell, transfer, license or allow use

7   of their address books," rather than as the address books themselves. SCAC ¶ 259. In essence,

8   Plaintiffs add the word "exclusive" to their previous allegation that they had the "right to set terms

9   and compensation for any allowed use of their iDevices" (CAC, ¶ 644), in an attempt to transform

10  their claim. This attempt fails.

11      "Courts have traditionally refused to recognize as conversion the unauthorized taking of

12  intangible interests that are not merged with, or reflected in, something tangible." *Fremont Indem.*

13  *Co. v. Fremont General Corp.,* 148 Cal.App.4th 97, 119 (internal citations omitted). The Ninth

14  Circuit has recognized that intangible property is subject to the tort of conversion only in limited

15  circumstances: "[1] First, there must be an interest capable of precise definition; [2] second, it

16  must be capable of exclusive possession or control; and [3] third, the putative owner must have

17  established a legitimate claim to exclusivity." *Kremen v. Cohen*, 337 F.3d 1024, 1030–31 (9th Cir.

18  2003) (internal citation omitted).

19      In *Kremen,* in finding that an internet domain name was a form of intangible property

20  sufficient for a conversion claim against a registrar, the Ninth Circuit held that registrants have a

21  legitimate claim to exclusivity because "[r]egistering a domain name is like staking a claim to a

22  plot of land at the title office," and "informs others that the domain name is the registrant's and no

23  one else's." *Kremen v. Cohen*, 337 F.3d at 1030. In other cases recognizing conversion of an

24  intangible property right, the right at issue is one that is indisputably capable of exclusive control

25  and is within the legitimate and exclusive control of one party. *See, e.g., DIRECTV, Inc. v.*

26  *Pahnke,* 405 F.Supp. 1182, 1189 (E.D. Cal. 2005) (conversion of encrypted satellite broadcasting

27  Gowalla's Motion to Dismiss                                    DHILLON & SMITH
    Second Consolidated Amended Complaint                          CASE NO. 13-CV-00453-JST
28                          Page 14

programming offered to customers by DIRECTV); *A&M Records, Inc. v. Heilman,* 75 Cal.App.3d 554 (1978) (conversion claim exists where defendant sold records duplicated from recordings manufactured and owned by plaintiff); *G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Service,* 958 F.2d 896 (9th Cir. 1992) (wrongful disposition of intangible property right in federal regulatory permit may constitute conversion); *Don King Productions/Kingvision v. Lovato,* 911 F.Supp.419 (N.D. Cal. 1995) (denied motion to dismiss conversion claim alleging exclusive proprietary rights to distribute, promote and exhibit a TV program in California).

Plaintiffs fail to state a claim for conversion because they fail to plead facts showing that their address books are capable of exclusive possession or control, or that Plaintiffs have a legitimate claim to exclusivity. The third party contact information contained in Plaintiffs' address books is not capable of exclusive possession or control, as such information could be sold, transferred, licensed or used by those third parties (and countless others who also have that information) at any time. Courts routinely dismiss conversion claims premised on the copying of personal information because such intangible property is not capable of exclusive possession or control. *See, e.g., In re iPhone Application Litig.*, 844 F. Supp. 2d at 1075 (dismissing conversion claim with prejudice because "it is difficult to see how [plaintiffs' PII] is capable of exclusive possession or control"); *Yunker*, 2013 WL 1282980, at *17 (dismissing conversion claim because plaintiffs' PII is not capable of exclusive possession or control).

Plaintiffs cannot establish a legitimate claim to exclusivity concerning the use of a compilation of information that consists of, in large part, non-confidential information about other people, and that is capable of being copied and uploaded. This case is distinguishable from those cited above, which involve property rights that belong exclusively to one party, either through unique registration of the property or by virtue of a party's ownership of identifiable content underlying the interest, and where deprivation of those property rights gave rise to clear harm.

In addition, Plaintiffs fail to allege that they incurred any damages or were deprived of value by virtue of Gowalla's alleged interference with their "exclusive right of possession and

Gowalla's Motion to Dismiss
Second Consolidated Amended Complaint
Page 15

DHILLON & SMITH
CASE No. 13-CV-00453-JST

control" over the address books, particularly where the SCAC does not allege that Plaintiffs have ever sold, transferred, licensed or allowed use of their address books for any monetary gain or other benefit, or that they will do so in the future. Plaintiffs cannot meet the elements of the claim of conversion of intangible property rights, and this claim fails as against Gowalla.

## V.    CONCLUSION

For the foregoing reasons, and because any further amendment by Plaintiffs of their allegations would be futile, Gowalla respectfully requests that the Court dismiss Plaintiffs' claims against Gowalla, without leave to amend.

Respectfully submitted,

Date: August 22, 2014                                DHILLON & SMITH

By:    /s/ Harmeet K. Dhillon
HARMEET K. DHILLON
KRISTA L. BAUGHMAN
Attorneys for Defendant Gowalla, Inc.