1    COOLEY LLP
     MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2    MATTHEW D. BROWN (196972) (brownmd@cooley.com)
     101 California Street, 5th Floor
3    San Francisco, CA  94111-5800
     Telephone:     (415) 693-2000
4    Facsimile:     (415) 693-2222

5    COOLEY LLP
     MAZDA K. ANTIA (214963) (mantia@cooley.com)
6    ERIN E. GOODSELL (262967) (egoodsell@cooley.com)
     4401 Eastgate Mall
7    San Diego, CA  92121-1909
     Telephone:     (858) 550-6000
8    Facsimile:     (858) 550-6420

9    Attorneys for Defendant INSTAGRAM, LLC

10                        UNITED STATES DISTRICT COURT

11                      NORTHERN DISTRICT OF CALIFORNIA

12

13

14   MARC OPPERMAN, *et al.*,                 Case No. 13-cv-00453-JST
        for themselves and all others
15      similarly situated,                   **INSTAGRAM, LLC'S MOTION TO DISMISS
                                              SECOND CONSOLIDATED AMENDED
16           Plaintiffs,                       COMPLAINT**

17   vs.                                       Date:        December 2, 2014
                                              Time:        2:00 P.M.
18   PATH, INC., *et al.*,                     Courtroom: 9
                                              Judge:       Hon. Jon S. Tigar
19
                Defendants.
20

21

22

23

24

25

26

27

28

# Table of Contents

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ............................................................ 1

STATEMENT OF RELIEF SOUGHT ................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ..................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 2

I.    INTRODUCTION ......................................................................................................... 2

II.   STATEMENT OF FACTS ............................................................................................ 4

    A.    Factual Background. ......................................................................................... 4

    B.    Relevant Procedural History. ........................................................................... 5

III.   LEGAL STANDARD ................................................................................................... 6

IV.   ARGUMENT ................................................................................................................ 7

    A.    Plaintiffs Lack Standing To Assert Their Claims Against Instagram. ................... 7

        1.    Plaintiffs alleged no injury-in-fact arising from their intrusion claim. ....................................................................................................... 7

        2.    Plaintiffs alleged no injury-in-fact arising from their conversion claim. ..................................................................................................... 10

    B.    Plaintiffs' Claims Should Be Dismissed Under Rule 12(b)(6). ........................... 11

        1.    Plaintiffs fail to state a claim for intrusion. ............................................ 11

            a.    Plaintiffs fail to plead that they had a reasonable expectation of privacy in their address books under the circumstances alleged. ........................................................................................ 12

            b.    Plaintiffs fail to plead that Instagram's conduct was highly offensive. .................................................................................... 13

            c.    Plaintiffs fail to plead harm. ......................................................... 17

        2.    Plaintiffs fail to state a claim for conversion. ......................................... 17

    C.    Plaintiffs' Claims Against Instagram Should Be Dismissed With Prejudice. ....... 19

V.    CONCLUSION ............................................................................................................ 19

CooLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

-i-

INSTAGRAM'S MOTION TO DISMISS 2ND
CONSOLIDATED AMENDED COMPLAINT
CASE NO. 13-CV-00453-JST

1

## Table of Authorities

2

**Page(s)**

3 **Cases**

4 *Aldridge v. Sec'y, Dept. of the Air Force,*
No. 05-cv-00056-R, 2005 WL 2738327 (N.D. Tex. Oct. 24, 2005) ..................................... 14

5

6 *Allen v. City of Beverly Hills,*
911 F.2d 367 (9th Cir. 1990) ................................................................................................. 19

7 *Andrews v. Metro N. Commuter R.R. Co.,*
882 F.2d 705 (2d Cir. 1989) .................................................................................................... 4

8

9 *In re Apple iPhone Application Litig.,*
No. 11-md-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ................................ 9

10 *Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) .............................................................................................. 6, 7, 12

11

12 *Baugh v. CBS, Inc.,*
828 F. Supp. 745 (N.D. Cal. 1993) ....................................................................................... 13

13 *Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) .......................................................................................................... 6, 12

14

15 *Belluomini v. Citigroup Inc.,*
No. 13-cv-01743-CRB, 2013 WL 3855589 (N.D. Cal. July 24, 2013) ................................ 15

16 *Citizens for Health v. Leavitt,*
428 F.3d 167 (3d Cir. 2005) .................................................................................................... 8

17

18 *Clayton v. Wisener,*
190 S.W.3d 685 (Tex. Ct. App. 2005) ................................................................................... 16

19 *Cornhill Ins. PLC v. Valsamis, Inc.,*
106 F.3d 80 (5th Cir. 1997) ................................................................................................... 16

20

21 *Deteresa v. Am. Broad. Cos., Inc.,*
121 F.3d 460 (9th Cir. 1997) ................................................................................................. 11

22 *In re DoubleClick, Inc. Privacy Litig.,*
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ..................................................................................... 9

23

24 *Express One Int'l, Inc. v. Steinbeck,*
53 S.W.3d 895 (Tex. Ct. App. 2001) ..................................................................................... 18

25 *FMC Corp. v. Capital Cities/ABC, Inc.,*
915 F.2d 300 (7th Cir. 1990) ........................................................................................... 10, 18

26

27 *Folgelstrom v. Lamps Plus, Inc.,*
195 Cal. App. 4th 986 (2011) ...................................................................................... 9, 15, 16

28

**Table of Authorities**
(continued)

**Page(s)**

*Four Navy Seals v. Associated Press,*
    413 F. Supp. 2d 1136 (S.D. Cal. 2005) ............................................................................ 6, 12

*G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Serv., Inc.,*
    958 F.2d 896 (9th Cir. 1992) ..................................................................................................... 17

*In re Google Android Consumer Privacy Litig.,*
    No. 11-md-02264-JSW, 2013 WL 1283238 (N.D. Cal. Mar. 26, 2013) .................... 9, 10, 15

*In re Google Inc. Cookie Placement Consumer Privacy Litig.,*
    988 F. Supp. 2d 434 (D. Del. 2013) ........................................................................................ 10

*In re Google, Inc. Privacy Policy Litig.,*
    No. 12-cv-01382-PSG, 2014 WL 3707508 (N.D. Cal. July 21, 2014) ............................ 15, 16

*In re Google Privacy Policy Litig.,*
    No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ..................................... 10

*Gutierrez v. Instagram, Inc.,*
    Case No. 12-cv-06550-JST, Dkt. Nos. 1 & 17 ..................................................................... 5, 6

*Hernandez v. Hillsides Inc.,*
    47 Cal. 4th 272 (2009) ................................................................................................... 12, 18

*Hernandez v. Path, Inc.,*
    No. 12-cv-01515-YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012) ................................. 18

*Hill v. Nat'l Collegiate Athletic Ass'n,*
    7 Cal. 4th 1 (1994) ................................................................................................................. 12

*Intel Corp. v. Hamidi,*
    30 Cal. 4th 1342 (2003) ........................................................................................................... 9

*In re iPhone Application Litig.,*
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ......................................................................... 15, 17

*Kremen v. Cohen,*
    337 F.3d 1024 (9th Cir. 2003) ................................................................................................ 17

*LaCourt v. Specific Media, Inc.,*
    No. 10-cv-1256-GW(JCGx), 2011 WL 1661532 (N.D. Cal. Apr. 28, 2011) .................... 9, 10

*Low v. LinkedIn Corp.,*
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........................................................................ *passim*

*Low v. LinkedIn Corp.,*
    No. 11-cv-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ................................. 10

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .............................................................................................................. 6, 7

**Table of Authorities**
(continued)

**Page(s)**

*Miller v. Nat'l Broad. Co.*,
    187 Cal. App. 3d 1463 (1986)...........................................................................................11, 13

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001)...................................................................................................6

*In re Nickelodeon Consumer Privacy Litig.*,
    MDL No. 2443 (SRC), 2014 WL 3012873 (D.N.J. July 2, 2014).........................................10

*O'Dea v. Wells Fargo Home Mortg.*,
    No. H-10-4755, 2013 WL 441461 (S.D. Tex. Feb. 5, 2013).................................................14

*Owens v. Kings Supermarket*,
    198 Cal. App. 3d 379 (1988)....................................................................................................4

*Perkins v. LinkedIn Corp.*,
    No. 13-cv-04303-LHK, 2014 WL 2751053 (N.D. Cal. June 12, 2014) ...............................13

*Puerto v. Super. Ct.*,
    158 Cal. App. 4th 1242 (2008) ..............................................................................................15

*Quantlab Techs. Ltd. (BVI) v. Godlevsky*,
    719 F. Supp. 2d 766 (S.D. Tex. 2010) ..................................................................................18

*Robinson v. Salazar*,
    885 F. Supp. 2d 1002 (E.D. Cal. 2012)...................................................................................4

*Ruiz v. Gap, Inc.*,
    380 Fed. App'x. 689 (9th Cir. 2010)........................................................................................8

*Sanchez-Scott v. Alza Pharm.*,
    86 Cal. App. 4th 365 (2001) ..................................................................................................11

*Shulman v. Grp. W Prods., Inc.*,
    18 Cal. 4th 200 (1998) ...........................................................................................................11

*Soda v. Caney*,
    No. 02-10-00628-CV, 2012 WL 1996923 (Tex. Ct. App. June 5, 2012) ..............................16

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001)...................................................................................................6

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)...................................................................................................................6

*United Mobile Networks, L.P. v. Deaton*,
    939 S.W.2d 146 (Tex. 1997)..................................................................................................18

*Westlake Surgical, L.P. v. Turner*,
    No. 03-08-00122-CV, 2009 WL 2410276 (Tex. Ct. App. Aug. 7, 2009)..............................18

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

-iv-

**INSTAGRAM'S MOTION TO DISMISS 2ND
CONSOLIDATED AMENDED COMPLAINT
CASE NO. 13-CV-00453-JST**

**Table of Authorities**
(continued)

**Page(s)**

*In re Yahoo Mail Litig.*,
    No. 5:13-cv-04980, 2014 WL 3962824 (N.D. Cal. Aug. 12, 2014) ................................ 14, 16

*Yunker v. Pandora Media, Inc.*,
    No. 11-cv-03113-JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013)........................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) ............................................................................. 1, 2, 6

Federal Rules of Civil Procedure 12(b)(6) ...................................................................... 1, 2, 6, 11

Article III of the U.S. Constitution ........................................................................................ *passim*

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

–v–

INSTAGRAM'S MOTION TO DISMISS 2ND
CONSOLIDATED AMENDED COMPLAINT
CASE NO. 13-CV-00453-JST

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on December 2, 2014 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 9 of the above-captioned court, before the Honorable Jon S. Tigar, defendant Instagram, LLC ("Instagram") will move and hereby does move pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for an order dismissing the Opperman Plaintiffs' claims against it with prejudice.

This motion is based upon this Notice, the attached Memorandum of Points and Authorities, the complete files and records of this action, the arguments of counsel, and such other matters the Court may consider.

**STATEMENT OF RELIEF SOUGHT**

Instagram seeks an order pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) dismissing with prejudice Plaintiffs' claims against it for failure to allege Article III standing and for failure to state a claim upon which relief can be granted.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Should Plaintiffs' claims against Instagram for invasion of privacy (intrusion upon seclusion) and conversion be dismissed under Federal Rule of Civil Procedure 12(b)(1) for failure to allege Article III standing?

2.      Should Plaintiffs' claims against Instagram for invasion of privacy (intrusion upon seclusion) and conversion be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted?

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

1.

INSTAGRAM'S MOTION TO DISMISS 2ND
CONSOLIDATED AMENDED COMPLAINT
CASE NO. 13-CV-00453-JST

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3

Instagram provides a free, innovative application (the "App") that permits the people who

4

use its service to connect with each other and share photographs and videos.  When Plaintiffs

5

voluntarily downloaded and registered for the Instagram App, they chose to take advantage of its

6

*optional*, opt-in "Find Friends" feature to easily find and connect with friends and family who

7

also use the App.  The Second Consolidated Amended Complaint ("SCAC"), only four

8

paragraphs of which relate specifically to Instagram, is Plaintiffs' latest attempt to plead a viable

9

claim against Instagram based on their use of this voluntary "Find Friends" feature.  Plaintiffs

10

assert that "without prior consent," the App "uploaded iDevice address book data to Instagram"

11

and contend that this act invaded their privacy and converted their property.  Plaintiffs' claims

12

fail.

13

While Plaintiffs characterize Instagram's acts as a surreptitious misappropriation of highly

14

sensitive and valuable information, their own factual allegations reveal that Instagram's access to

15

portions of their address book data occurred only after *Plaintiffs* gave Instagram permission to

16

"Find Friends" from their "Contacts"; involved only basic address book data fields that were

17

neither inherently sensitive nor valuable; and—most importantly—took place so that Instagram

18

could provide requested services to Plaintiffs.  Even assuming Instagram's uploading of portions

19

of Plaintiffs' address book data was "intrusive," it was not—under Plaintiffs' own factual

20

allegations—"highly offensive."  Tellingly, nowhere do Plaintiffs allege that they would not have

21

downloaded the App or used the "Find Friends" feature if they had known it would upload

22

address book data, or that they stopped using the App (or even this feature) when they learned it

23

accessed their address book data to provide this service.

24

This fundamental defect in Plaintiffs' legal theory warrants dismissal under both Rule

25

12(b)(1) and Rule 12(b)(6).  First, Plaintiffs lack standing to pursue their claims because they

26

failed to allege the "irreducible constitutional minimum" of a "concrete and particularized"

27

injury-in-fact.  It is not enough, for Article III standing, for Plaintiffs to allege in general terms

28

that address book data can be "private" without specifying how any of them suffered a concrete

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

2.

INSTAGRAM'S MOTION TO DISMISS 2ND
CONSOLIDATED AMENDED COMPLAINT
CASE NO. 13-CV-00453-JST

injury or was harmed when the App allegedly uploaded some of that data to provide a requested service. Nor is it sufficient for Plaintiffs to allege that Instagram somehow benefitted from their address book data when it enabled Plaintiffs to find their own friends on the App. Courts consistently have found that Plaintiffs must allege an *injury to themselves* resulting from that data upload. The SCAC contains no such allegations.

Second, Plaintiffs fail to plead the most basic elements of intrusion or conversion. Plaintiffs' intrusion claim fails because Plaintiffs could not have had any actual or objectively reasonable expectation that the App would not access their address book data when they took steps to give the App permission to do so to "Find Friends." Critically, the SCAC abandons any allegations that Instagram disclosed or otherwise misused their address book data or that Instagram used address book data for any purpose outside the scope of consent given during the "Find Friends" screen prompts. In addition, even if, as Plaintiffs allege, Instagram's uploading of address book data was minimally intrusive, the intrusion could not possibly be considered "highly offensive" in these circumstances: Instagram is a free service that exists to help users find and share photos with friends and family. These circumstances starkly contrast other cases involving "highly offensive" intrusions, which typically concern extremely sensitive circumstances (such as medical emergencies) and intrusions wholly unrelated to the provision of requested services.

Plaintiffs' conversion claim likewise fails because Plaintiffs allege, at most, that Instagram temporarily uploaded a copy of portions of their address book data. However, Plaintiffs were never dispossessed of whatever property rights they might have in their address book data; that data remained at all times on their own iDevices.

Plaintiffs have failed in their multiple attempts to plead a claim against Instagram, and Instagram now respectfully requests that the claims against it be dismissed with prejudice.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

3.

INSTAGRAM'S MOTION TO DISMISS 2ND
CONSOLIDATED AMENDED COMPLAINT
CASE NO. 13-CV-00453-JST

## II.   STATEMENT OF FACTS

### A.   Factual Background.

The Instagram App is a free social networking application that permits users to connect with each other and share photos and videos.[1]  Users can view, "like," and comment on other users' photos and videos.  Users can also "follow" other users to see their photos and videos. (Consolidated Amended Complaint (Dkt. 362) ("CAC"), ¶¶ 311–12.)

To help users find Instagram accounts of friends and family to "follow", the App provides an optional "Find Friends" feature.  During the relevant time period,[2] the Find Friends feature permitted users to identify other users in several ways.  Users could choose to allow Instagram to access the contacts in their address book, or sync their Facebook or Twitter accounts, to find matches between the user's contacts and Instagram's user database.  (*See* First Amended Complaint (Dkt. 3) ("FAC"), ¶ 458; Second Amended Complaint (Dkt. 103) ("SAC"), ¶ 217; CAC, ¶ 317.)[3]  Users could also manually search for specific names and user names.  (*See id.*) The App's "Find Friends" feature was entirely voluntary and permitted users to choose which (if any) of these methods to use to find other users to follow.  (*Id.*)  If a user selected the option to "Find Friends" from their "contact list," the App would then upload the names, phone numbers, and email addresses[4] in the user's iDevice address books for the purpose of identifying matches

---

[1] While some photo-editing applications permit users to simply edit digital photos without "sharing" them on a social network, the Instagram app's photo editing feature is generally used only in connection with "sharing" photos on social networks.  In addition to Instagram's social network, users can share Instagram photos on other social networks including Facebook and Twitter.

[2] Plaintiffs failed to allege facts describing when they downloaded the App or what, if any, representations about the App each Plaintiff may have seen or relied on when downloading and using the App.

[3] Although Plaintiffs omitted these allegations from the SCAC, they may be considered when deciding the instant motion.  *See Robinson v. Salazar*, 885 F. Supp. 2d 1002, 1024 n.12 (E.D. Cal. 2012).  *See also Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989); *Owens v. Kings Supermarket*, 198 Cal. App. 3d 379, 383–84 (1988) (court can take notice of facts that are omitted from amended complaint to prevent plaintiff from avoiding defects in prior complaint).

[4] Although the SCAC is silent on which address book fields Instagram's App accessed to match users to other users, Plaintiffs previously alleged that Instagram uploaded email addresses, names,

Cooley LLP
Attorneys At Law
San Diego

4.

INSTAGRAM'S MOTION TO DISMISS 2ND
CONSOLIDATED AMENDED COMPLAINT
CASE NO. 13-CV-00453-JST

with Instagram users; the App could then instantly provide the user with a list of suggested friends based on the user's contacts who also had Instagram accounts.  (*See* CAC, ¶ 317; *see also* FAC, ¶ 458; SAC, ¶ 217; Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (Dkt. 471) ("Order"), p. 44 ("Other apps, such as Gowalla and Instagram, copied address books only after they prompted the user to 'find friends' who use the same app by scanning Plaintiffs' address books.").)

Nine plaintiffs allegedly downloaded and used the Instagram App. (SCAC, ¶ 116.)  In previous versions of the Complaint, Plaintiffs admitted that they recalled "signing in, navigating within the *Instagram* App to a 'Find friends' screen, tapping a displayed 'From my contact list' button bar, and then being presented with a list of recognizable names that the Plaintiff could choose to 'follow' by pressing another button near each name."  (CAC, ¶ 317; *see also* FAC, ¶ 458; SAC, ¶ 217.)  In the SCAC, Plaintiffs conveniently abandon these admissions and simply allege that "[w]ithout prior user consent, the Instagram App uploaded iDevice address book data to Instagram or someone acting on its behalf.  As a consequence, Instagram improperly obtained the address book data belonging to Plaintiffs and class members."  (SCAC, ¶ 115.)  Plaintiffs further allege that they "recall using and navigating around" the App and that "Instagram benefitted substantially from its misappropriation of users' address books."  (*Id*. at ¶¶ 116–17.)  While Plaintiffs allege that Instagram "improperly obtained" this information, (*id*. at ¶ 115), Plaintiffs do not allege that Instagram disclosed, manipulated, or otherwise misused their address book data—nor would they have any factual basis for so alleging.  Based on the allegation that Instagram "uploaded" and "improperly obtained" address book data, Plaintiffs assert claims for invasion of privacy (intrusion upon seclusion) and conversion.  (*See id*. at ¶¶ 114–17, 342–71.)

**B.     Relevant Procedural History.**

The Court is already familiar with the procedural history of this case, which was transferred here from the Western District of Texas and then consolidated before this Court.  On

---

and phone numbers.  (FAC, ¶ 462; SAC, ¶ 219; CAC, ¶ 319.)  Plaintiffs do not and have never alleged that Instagram accessed or uploaded the entire contents of a user's address book, including the fields described in paragraph 54 of the SCAC.

Cooley LLP
Attorneys At Law
San Diego

5.

Instagram's Motion to Dismiss 2nd
Consolidated Amended Complaint
Case No. 13-cv-00453-JST

1    May 14, 2014, the Court dismissed fourteen of fifteen claims asserted against Instagram in the

2    CAC, leaving only a claim for intrusion.   (*See* Order.)   Plaintiffs' current iteration of the

3    Complaint—their seventh attempt to state a claim against Instagram (including the two

4    complaints filed in the related and now-dismissed *Gutierrez* action)[5]—abandons all claims

5    (subject to appellate rights) except for conversion and intrusion.  Of the 323 paragraphs pleaded

6    in the eighty-page SCAC, only *four* paragraphs relate specifically to Instagram.  (*See* SCAC,

7    ¶¶ 114–17.)

8    **III.    LEGAL STANDARD**

9           Rule 12(b)(1) requires dismissal where a plaintiff has not established standing to sue

10   under Article III of the U.S. Constitution.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

11   101–02 (1998).  A plaintiff bears the burden of pleading facts sufficient to establish (1) an injury

12   in fact, (2) that the injury was fairly traceable to the challenged conduct, and (3) that it is likely

13   that a favorable decision will redress the injury.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

14   560–61 (1992).

15          Rule 12(b)(6) requires dismissal when a plaintiff fails to present a cognizable legal theory

16   or to allege sufficient facts supporting a cognizable legal theory upon which relief may be

17   granted.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  As the Supreme Court has

18   emphasized, "[l]abels and conclusions, and a formulaic recitation of the elements of a cause of

19   action will not [survive a motion to dismiss]," and "courts are not bound to accept as true a legal

20   conclusion couched as a factual allegation."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–

21   56 (2007) (internal quotation marks and citation omitted).  A court must disregard unreasonable

22   inferences or legal characterizations.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009).  A court

23   may also disregard allegations that contradict documents attached to or incorporated by reference

24   into the complaint.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

25          Once a court has set aside conclusory assertions, it considers the well-pleaded factual

26   allegations to determine whether the plaintiff has pleaded sufficient facts to state a facially

27

28   [5] *See Gutierrez v. Instagram, Inc.*, Case No. 12-cv-06550-JST, Dkt. Nos. 1 & 17.

Cooley LLP
Attorneys At Law
San Diego

6.

INSTAGRAM'S MOTION TO DISMISS 2ND
CONSOLIDATED AMENDED COMPLAINT
CASE NO. 13-CV-00453-JST

plausible claim for relief.  *Iqbal*, 129 S. Ct. at 1949–50.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 1949.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

## IV.    ARGUMENT

### A.    Plaintiffs Lack Standing To Assert Their Claims Against Instagram.

Plaintiffs lack Article III standing because they have failed to allege any injury-in-fact that any of them suffered as a result of Instagram's uploading of certain address book data when Plaintiffs used its "Find Friends" feature.  Although Plaintiffs may have a minimal "personal stake" in this controversy because they alleged that the App uploaded their address book data (*see* Order, p. 40 (citing *Baker v. Carr*, 369 U.S. 186, 204 (1962)), the Supreme Court has made clear that not just any personal relationship or involvement in a controversy gives a plaintiff standing to pursue claims in federal court.  Rather, the standing inquiry requires a plaintiff to establish the "irreducible constitutional minimum" of a "concrete and particularized" injury-in-fact.  *Lujan*, 504 U.S. at 560.  Here, Plaintiffs have not.

#### 1.    Plaintiffs alleged no injury-in-fact arising from their intrusion claim.

Plaintiffs appear to allege that the very act of "upload[ing] iDevice address book data to Instagram or someone acting on its behalf" sufficiently establishes Article III injury-in-fact because iDevice address books may contain "highly personal and private" information.  (*See* SCAC, ¶ 115; *see also id.* at ¶¶ 146, 159, 172).  But Plaintiffs fail to allege that any of their "highly personal and private information" was accessed or any concrete *consequence*—much less *injury*—resulted from the App's use of certain address book data to find matching Instagram users.  Indeed, Plaintiffs do not even allege that they would not have downloaded the App or used the "Find Friends" feature if they had believed the App would upload address book information, belying the notion that they consider themselves to have been harmed by the App.  (*See id.* at ¶¶ 148, 161, 174, 186, 192, 197, 203, 223, 230 (alleging that Plaintiffs would not have paid as much for their iDevices if they had known that apps would upload their address book data

without express consent, *but failing to allege* they would not have downloaded the Instagram App or used the App's "Find Friends" feature.)  Although Plaintiffs allege that Instagram "benefitted" from Plaintiffs' address book data (*id.* at ¶¶ 117, 263), this is irrelevant to the issue of whether *Plaintiffs* suffered an injury in fact and cannot establish Article III standing.  (*See* Order p. 39 (stating that an "injury-in-fact in this context requires more than an allegation that a defendant profited from a plaintiff's personal identification information … a plaintiff must do more than point to the dollars in a defendant's pocket") (quoting *In re Google Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013) ("*Google Privacy Policy I*")).)

Plaintiffs' failure to allege any concrete and particularized harm that any of them suffered as a result of the alleged data upload materially distinguishes this action from those in which alleged privacy intrusions established injury-in-fact.  For example, in each case this Court relied on in its Order regarding the prior version of the complaint, the plaintiffs alleged or demonstrated that the applicable privacy invasion inflicted some actual injury or violated a constitutionally or statutorily protected right:

- In *Ruiz v. Gap, Inc.*, 380 Fed. App'x. 689, 691 (9th Cir. 2010), plaintiff alleged a "greater risk of identity theft" as a result of the violation.

- In *Yunker v. Pandora Media, Inc.*, No. 11-cv-03113-JSW, 2013 WL 1282980, at *4–6 (N.D. Cal. Mar. 26, 2013), plaintiff alleged a violation of a "constitutional right to privacy," which the court concluded provided Article III standing.  The court *rejected* the plaintiff's argument that access and disclosure, alone, created Article III standing.  *See id.*

- In *Citizens for Health v. Leavitt*, 428 F.3d 167, 176 & n. 9 (3d Cir. 2005), plaintiff submitted affidavits and documentary evidence demonstrating that their personal health information had been or would imminently be disclosed by health care providers or drugstore chains without consent *and* that plaintiff and her family would "avoid seeking medical care to prevent further disclosures of medical information without their consent."

(*See* Order, p. 41.)

Here, by contrast, Plaintiffs allege no harm inherent in or resulting from the App's act of uploading portions of their address book data after Plaintiffs asked it to "Find Friends" from their "Contacts."  Plaintiffs do not and cannot allege that this increased their risk of identity theft or permitted disclosure to third parties (or that any human ever even viewed the contents of their address books).  On the contrary, Plaintiffs abandoned their "public disclosure" claim.  Nor do

Cooley LLP
Attorneys At Law
San Diego

8.

Instagram's Motion to Dismiss 2nd
Consolidated Amended Complaint
Case No. 13-cv-00453-JST

Plaintiffs allege a violation of any constitutional or statutory privacy right.  Finally, although this Court previously recognized that a plaintiff in an intrusion claim may recover damages for "anxiety, embarrassment, humiliation, shame, depression, feelings of powerlessness, anguish, etc.", (Order, p. 46 (quoting *Operating Eng'rs Local 3 v. Johnson*, 110 Cal. App. 4th 180, 187 (2003)), Plaintiffs here have not alleged any such harm or distress.

Indeed, California appellate courts have held that an alleged technical violation of a common law cause of action without a showing of harm is not "actionable."  *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1351 (2003) ("[W]hile a harmless use . . . of personal property may be a technical trespass, an interference . . . is not *actionable* . . . without a showing of harm.") (emphasis in original; citation omitted); *see also Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 991 (2011) (recognizing a California constitutional right to privacy but concluding that the alleged invasion of privacy in that case was not "sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right.") (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994)).  Consequently, Plaintiffs' mere allegation of a common law claim for intrusion—without describing any harm resulting from that alleged intrusion—does not establish Article III injury-in-fact.  *See, e.g., Yunker*, 2013 WL 1282980, at *4; *In re Apple iPhone Application Litig.*, No. 11-md-02250-LHK, 2011 WL 4403963, at *4–5 (N.D. Cal. Sept. 20, 2011) ("*iPhone I*") (dismissing privacy claims for lack of Article III standing where plaintiffs had "not identified a concrete harm from the alleged collection and tracking of their personal information sufficient to create injury in fact."); *LaCourt v. Specific Media, Inc.*, No. 10-cv-1256-GW(JCGx), 2011 WL 1661532, at *4–5 (N.D. Cal. Apr. 28, 2011) (no standing due to failure to "give some particularized example" of how the collection of plaintiffs' browsing history "deprived Plaintiffs of this information's economic value"); *In re DoubleClick, Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001) ("[A]lthough demographic information is valued highly … the value of its collection has never been considered a[n] economic loss to the subject."); *In re Google Android Consumer Privacy Litig.*, No. 11-md-02264-JSW, 2013 WL 1283238, at *4 (N.D. Cal. Mar. 26, 2013) ("*Google Android*") (no harm from defendant obtaining access to and tracking plaintiffs' PII);

CooleY LLP
Attorneys At Law
San Diego

9.

Instagram's Motion to Dismiss 2nd
Consolidated Amended Complaint
Case No. 13-cv-00453-JST

1 *Google Privacy Policy I*, 2013 WL 6248499, at *5–6 (Google's alleged combining and

2 comingling of Plaintiffs' information did not establish an injury-in-fact).

3       **2.      Plaintiffs alleged no injury-in-fact arising from their conversion claim.**

4       Nor have Plaintiffs established Article III standing to pursue their common law

5 conversion claim. Although the Complaint does not clearly articulate Plaintiffs' "conversion"

6 theory of injury, Plaintiffs appear to allege that when the App uploaded certain address book data,

7 that act "deprived" Plaintiffs of their "property rights." (SCAC, ¶ 262.)

8       This theory just repackages Plaintiffs' earlier claim that their address book data has some

9 sort of intrinsic value—a claim this Court and numerous others have rejected.[6] (*See* Order, p. 39–

10 40 (citing *Yunker*, 2013 WL 1282980, at *3–4 (rejecting argument that alleged conversion of data

11 deprived user of value)); *Google Privacy Policy I*, 2013 WL 6248499, at *5; and *Google Android*,

12 2013 WL 1283236, at *4.).)[7] Additionally, Plaintiffs' injury theory is untenable because—unlike

13 the "theft" of a physical address book—the digital address books on Plaintiffs' iDevices remain

14 unaltered and under Plaintiffs' control to alter, delete, or use on their phones and anywhere else

15 they have stored the information. *See FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300,

---

[6] Plaintiffs have not pleaded any new facts that would justify the Court reaching a different conclusion here. (*Compare* CAC, ¶ 652 ("Inconsistent with Plaintiffs' rights, the App Defendants … by their actions have exercised control over, converted, trespassed upon and deprived Plaintiffs of the intrinsic, extrinsic and commercial sale and use/rental/licensing value of their iDevices and mobile address books."), *with* SCAC, ¶ 264 ("As a direct and proximate result of the foregoing, each Plaintiff and class member has been injured. That injury includes the deprivation of benefits and profits realized by the App Defendants as a result of their use of the wrongfully converted property.").)

[7] *See also Low v. LinkedIn Corp.*, No. 11-cv-01468-LHK, 2011 WL 5509848, at *5 (N.D. Cal. Nov. 11, 2011) ("*Low I*") (plaintiff asserting conversion claim "failed to allege facts sufficient to support his theory of harm" because he did not "allege how he was foreclosed from capitalizing on the value of his personal data"); *LaCourt*, 2011 WL 1661532, at *4–5 (rejecting diminution-of-value theory of standing because plaintiffs failed to "identify a single individual who was foreclosed from entering into a 'value-for-value exchange' as a result of [defendant's] alleged conduct"); *In re Nickelodeon Consumer Privacy Litig.*, MDL No. 2443 (SRC), 2014 WL 3012873, at *3 (D.N.J. July 2, 2014) (holding that plaintiff's theory that they "could sell their personal information if they wanted to because Viacom and Google might already do so" was conjectural and therefore not legally cognizable); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 988 F. Supp. 2d 434, 441–42 (D. Del. 2013) (allegations that plaintiffs' PII "has value to third-party companies and is a commodity" is insufficient to establish injury-in-fact).

Cooley LLP
Attorneys At Law
San Diego

10.

Instagram's Motion to Dismiss 2nd
Consolidated Amended Complaint
Case No. 13-cv-00453-JST

303–04 (7th Cir. 1990) (taking copy of information does not deprive owner of possession and, as such, is insufficient to state a claim for conversion).

### B.   Plaintiffs' Claims Should Be Dismissed Under Rule 12(b)(6).

Plaintiffs' claims should also be dismissed because Plaintiffs fail to allege facts establishing the requisite elements of a claim for intrusion or conversion.

### 1.   Plaintiffs fail to state a claim for intrusion.

California courts have recognized tort claims for "intrusion upon seclusion" only in cases where a defendant intrudes into a "private place, conversation, or matter" in a "highly offensive" manner. *See Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998). Intrusion cases typically involve unauthorized video or audio recordings by the media or physical intrusions during sensitive situations such as medical exams.[8] We are not aware of any California court permitting an intrusion claim under circumstances similar to those alleged here, and to do so would broadly expand the scope of the claim. This is particularly true because Plaintiffs have failed to allege the required elements of the claim, which are: (1) Plaintiffs had a reasonable expectation of privacy; (2) Instagram intentionally intruded on that expectation of privacy; (3) Instagram's intrusion would be highly offensive to a reasonable person; (4) Plaintiffs were harmed; and (5) Instagram's conduct was a substantial factor in causing Plaintiffs' harm. *See* Judicial Counsel of California Civil Jury Instructions ("CACI") 1800.

---

[8] *See, e.g., Shulman*, 18 Cal. 4th at 230–31 (intrusion cause of action "encompasses unconsented [] physical intrusion into the home, hospital room or other place the privacy of which is legally recognized, as well as unwarranted sensory intrusions such as eavesdropping, wiretapping, and visual or photographic spying"); *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1484 (1986) ("In our view, reasonable people could regard the NBC camera crew's intrusion into Dave Miller's bedroom at a time of vulnerability and confusion occasioned by his seizure as 'highly offensive' conduct…."); *Deteresa v. Am. Broad. Cos., Inc.*, 121 F.3d 460, 466 (9th Cir. 1997) (holding that recording of conversation without plaintiff's consent was insufficient to state an intrusion claim, noting that it is not "a case in which a news team entered someone's bedroom without authorization … [n]or is it a case in which someone gained entrance into another's home by subterfuge … [n]or is it a case in which a private investigator obtained entrance into a hospital room by deception"); *Sanchez-Scott v. Alza Pharm.*, 86 Cal. App. 4th 365, 377–78 (2001) (performance of a breast examination where plaintiff was required to take off her blouse and bra without revealing that a second man present was a drug salesperson and not medical personnel was sufficient to state claim for intrusion).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

11.

INSTAGRAM'S MOTION TO DISMISS 2ND
CONSOLIDATED AMENDED COMPLAINT
CASE NO. 13-CV-00453-JST

a. **Plaintiffs fail to plead that they had a reasonable expectation of privacy in their address books under the circumstances alleged.**

Plaintiffs fail to plead any facts establishing that they had an actual, objectively reasonable expectation that Instagram would not access or upload data from their address books when they used the App's "Find Friends" feature. *See Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1146 (S.D. Cal. 2005) ("To prevail on the first element of the tort of intrusion upon seclusion, a plaintiff must show: (a) an actual, subjective expectation of seclusion or solitude, and (b) that the expectation was objectively reasonable."). While Plaintiffs generally allege that they "have reasonable expectations of privacy in their iDevices and their mobile address books," (SCAC, ¶ 244), and refer to vague articles stating that certain percentages of the population at large would not want an app to access their contacts (*id.* at ¶ 57), Plaintiffs failed to plead that they had a reasonable expectation that the App would not access those contacts. To the contrary, Plaintiffs admit that they specifically asked Instagram to "Find Friends" from their "Contacts". Their generic and unsupported allegations regarding an expectation of privacy, which merely parrot the elements of their intrusion claim without offering any factual support, are insufficient to allege this element. *See Twombly*, 550 U.S. at 555–56; *Iqbal*, 129 S. Ct. at 1949.

Even assuming they had alleged a subjective expectation of privacy, Plaintiffs have failed to establish that such expectation was objectively reasonable. Their own conduct, in fact, belies any such claim: Plaintiffs downloaded the free Instagram App to connect and share with their friends and family, they chose to let Instagram access their address book to "Find Friends" who were also using the App, and then they continued to use the App. *See Hill*, 7 Cal. 4th at 26 ("[T]he plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant."); *Hernandez v. Hillsides Inc.*, 47 Cal. 4th 272, 293 (2009) ("We have said that notice of and consent to an impending intrusion can inhibit reasonable expectations of privacy") (quotation omitted).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

12.

INSTAGRAM'S MOTION TO DISMISS 2ND
CONSOLIDATED AMENDED COMPLAINT
CASE NO. 13-CV-00453-JST

**b.    Plaintiffs fail to plead that Instagram's conduct was highly offensive.**

Plaintiffs' intrusion claim also fails because Instagram's alleged uploading of basic portions of Plaintiffs' address book data does not pass the threshold test of offensiveness—a preliminary determination that "must be made by the court in discerning the existence of a cause of action for intrusion." *See Miller*, 187 Cal. App. 3d at 1483 ("While what is 'highly offensive to a reasonable' person suggests a standard upon which a jury would properly be instructed, *there is a preliminary determination of 'offensiveness' which must be made by the court* in discerning the existence of a cause of action for intrusion.") (emphasis added).  Whether an intrusion is highly offensive depends on "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Id.* at 1483–84.  Here, considering the totality of the circumstances in which Instagram is alleged to have uploaded certain fields of address book data (i.e., name, email address, and phone number), it is clear that the nature of the intrusion is not "highly offensive" for at least three reasons.

***First, uploading Plaintiffs' address book data is not highly offensive because Plaintiffs consented to this voluntary action.***    Plaintiffs admit that they gave their consent to allow Instagram to access their contacts to find friends that were already using the App.  (*See* CAC, ¶ 317 (Plaintiffs navigated to "Find friends" screen and then selected the options to find friends "From my contact list").) Based on these prompts, a reasonable person would anticipate that Instagram would have access to the user's "contact list" for the purpose of finding his or her friends.  (*See* Order, p. 44 (Instagram's "prompts required Plaintiffs to consent").)  *See also Perkins v. LinkedIn Corp.*, No. 13-cv-04303-LHK, 2014 WL 2751053, at *13 (N.D. Cal. June 12, 2014) (plaintiffs consented to collection of email addresses by selecting "Allow" after being presented with notification that LinkedIn was asking for information from their "Google Contacts").  Moreover, Plaintiffs do not (and cannot) allege that Instagram lied to them, misrepresented the functionality of the App, or otherwise obtained their consent through fraud.  As such, Instagram's "intrusion" cannot be deemed highly offensive.  *See Baugh v. CBS, Inc.*,

Cooley LLP
Attorneys At Law
San Diego

13.

INSTAGRAM'S MOTION TO DISMISS 2ND
CONSOLIDATED AMENDED COMPLAINT
CASE NO. 13-CV-00453-JST

828 F. Supp. 745, 757 (N.D. Cal. 1993) (dismissing intrusion claim because "consent is an absolute defense").[9]  Critically, Plaintiffs do not allege that Instagram made any other use of their information beyond helping them to "Find Friends" on Instagram—they have abandoned their baseless allegations that Instagram disclosed this data to third parties or otherwise misused their information. (*Compare* CAC, ¶ 320, *with* SCAC, ¶¶ 114–17.)  These concessions are significant because those allegations formed the basis of the Court's prior Order, which held that Plaintiffs' consent did not appear to be sufficient at the pleadings stage in light of Plaintiffs' allegations that Instagram failed to disclose that its "app[] would not only scan their address books to determine whether their friends were using the same app, but then upload the address books to the app developer for other purposes."  (Order, p. 44.)  Plaintiffs no longer claim that Instagram made misrepresentations in order to obtain their consent.  Indeed, they do not even allege that Instagram used their address book data for "other purposes."  At best, Plaintiffs seem to suggest that because Instagram "uploaded" their address book data instead of "scanning" it on the device itself, Instagram "improperly obtained" their address book data.  Plaintiffs fail to describe the significance of this purported distinction, and just recently Judge Koh rejected a similar argument when she concluded that a "reasonable user" of online services would know that "scanning and analyzing" data necessarily entails its "collection and storage."  *See In re Yahoo Mail Litig.*, No. 5:13-cv-04980, 2014 WL 3962824, *9 (N.D. Cal. Aug. 12, 2014).  Absent a single allegation that Instagram actually used this data for a purpose other than to help Plaintiffs "Find Friends" (it did not), this technical distinction falls well short of the requirements to demonstrate a highly offensive intrusion under California law.

>    ***Second, the allegations in the SCAC make clear that Instagram's uploading of address book data was core to the service Plaintiffs wanted.***  Instagram's App is a free, *social* application

---

[9] Under the law of the State of Texas, where Plaintiffs originally filed suit, Plaintiffs' consent likewise defeats their intrusion claim. *See also Aldridge v. Sec'y, Dept. of the Air Force*, No. 05-cv-00056-R, 2005 WL 2738327, at *3 (N.D. Tex. Oct. 24, 2005) (actionable invasions include videotaping a bedroom or entering a home "without permission"); *O'Dea v. Wells Fargo Home Mortg.*, No. H-10-4755, 2013 WL 441461, at *11 (S.D. Tex. Feb. 5, 2013) (consent defeats intrusion claim).

Cooley LLP
Attorneys At Law
San Diego

14.

Instagram's Motion to Dismiss 2nd
Consolidated Amended Complaint
Case No. 13-cv-00453-JST

that enables people to share pictures and videos with friends and others. (CAC, ¶ 327.) This ability to share photos and videos with a user's friends is part of what makes Instagram unique. (*See id.*) Therefore, it is unsurprising—let alone "highly offensive"—that the App uploaded (when Plaintiffs navigated to Find Friends and selected "From my Contacts") portions of Plaintiffs' address book data for the stated purpose of finding friends with whom they could connect and share photos. *See Folgelstrom*, 195 Cal. App. 4th at 992–93 (unauthorized collection of PII for marketing purposes is not highly offensive because it is "routine commercial behavior"); *see also In re Google, Inc. Privacy Policy Litig.*, No. 12-cv-01382-PSG, 2014 WL 3707508, at *12 (N.D. Cal. July 21, 2014) ("*Google Privacy Policy II*") (collection of PII to serve targeted ads not highly offensive). Indeed, Plaintiffs fail to allege that, had they known the Instagram App would upload information from their contacts in order to complete the "Find Friends" function, they would not have used that feature or would not have downloaded the App. This demonstrates that, for Plaintiffs, the utility of Instagram's free App, and the convenience of letting Instagram automatically find friends for Plaintiffs, outweighed any alleged intrusion into their privacy. That intrusion cannot be "highly offensive."

*Third, Plaintiffs' address book data is not the type of highly sensitive information that gives rise to an actionable claim for intrusion.* The bar is set "high" to state a claim for intrusion. *Belluomini v. Citigroup Inc.*, No. 13-cv-01743-CRB, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("*Low II*"). "Even disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim." *Low II*, 900 F. Supp. 2d at 1025. Here, the relevant address book data (names, email addresses, and phone numbers) is indistinguishable from the types of personal identification information that courts routinely hold as being insufficient to state a claim for intrusion. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) ("*iPhone II*") (collection of personal data and geolocation information insufficient); *Yunker*, 2013 WL 1282980, at *15 (collection of age, gender, and location); *Google Android*, 2013 WL 1283236, at *11 (collection of app activity); *Low II*, 900 F. Supp. 2d at 1025 (collection of browser history); *see also Puerto*

1   *v. Super. Ct.*, 158 Cal. App. 4th 1242, 1253 (2008) ("[T]he requested information, while personal,

2   is not particularly sensitive, as it is merely contact information, not medical or financial details,

3   political affiliations, sexual relationships, or personnel information.").   In addition, even if

4   Plaintiffs' address book data theoretically could include confidential or sensitive information,

5   Plaintiffs failed to allege what specific confidential or sensitive information was in their address

6   book data and uploaded by Instagram.  This deficiency, too, defeats their intrusion claim.  *See*

7   *Yahoo Mail*, 2014 WL 3962824, at *16 (holding that plaintiffs alleging privacy interest in

8   communications must allege with specificity the confidential material in the content of those

9   communications).

10      Lastly, Plaintiffs also suggest—without factual description—that Instagram used their

11   contacts to grow its user base and enhance the social features of the App. (SCAC, ¶ 117.)

12   Plaintiffs' suggestion that Instagram also benefitted from offering the "Find Friends" feature does

13   not change this analysis, however, or make Instagram's conduct highly offensive.  *See*

14   *Folgelstrom*, 195 Cal. App. 4th at 992–93 (collection of PII without consent for marketing

15   purposes is not highly offensive because it is "routine commercial behavior"); *see also Google*

16   *Privacy Policy II*, 2014 WL 3707508, at *12 (using PII to serve targeted ads not highly

17   offensive); *Yunker*, 2013 WL 1282980, at *14–15 (profiting from sale of PII to third parties not

18   "an egregious breach of social norms"); *Low II*, 900 F. Supp. 2d at 1025 (same).

19      Accordingly, the SCAC fails to adequately plead that Instagram's alleged conduct was

20   "highly offensive."[10]

21

22

23

---

24   [10] Such a non-intrusive act falls short under Texas law as well.  *See Soda v. Caney*, No. 02-10-
     00628-CV, 2012 WL 1996923, at *2–3 (Tex. Ct. App. June 5, 2012) (dismissing claim for

25   intrusion despite evidence that defendant viewed plaintiff's financial records because "[w]ithout
     evidence of a physical intrusion or eavesdropping on another's conversation with the aid of

26   wiretaps, microphones, or spying, [plaintiff's] claim for intrusion upon seclusion fails"); *Cornhill*
     *Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 85 (5th Cir. 1997) (dismissing claim for intrusion

27   because plaintiff did not allege a physical invasion of property or eavesdropping on a
     conversation); *Clayton v. Wisener*, 190 S.W.3d 685, 697 (Tex. Ct. App. 2005) (same).

28

Cooley LLP
Attorneys At Law
San Diego

16.

Instagram's Motion to Dismiss 2nd
Consolidated Amended Complaint
Case No. 13-cv-00453-JST

### c.   Plaintiffs fail to plead harm.

Plaintiffs must also plead that they suffered an injury as a result of Instagram's alleged intrusion.  (*See* Order, p. 46.)  *See also* CACI 1800.  Plaintiffs plead no facts establishing that they suffered any harm.  Plaintiffs remained in full possession of their mobile address books at all time, and the only purpose for which Instagram accessed certain contact information was to enable Plaintiffs to find other friends and family on the App.  Not surprisingly, Plaintiffs do not and cannot allege that they suffered "anxiety, embarrassment, [or] humiliation."  (*See* Order, p. 46.)  Rather, they only plead, in wholly conclusory fashion, that "[a]s a direct and proximate result of the respective App Defendants' actions, Plaintiffs suffered harm and damages."  (SCAC, ¶ 248.)  This conclusory allegation is plainly insufficient to establish harm.

### 2.   Plaintiffs fail to state a claim for conversion.

Plaintiffs' conversion claim should likewise be dismissed.  To establish a claim for conversion, Plaintiffs must show (1) ownership or right to possession of property, (2) wrongful dispossession of the property right, and (3) damages.  *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992).  Plaintiffs do not satisfy these elements.

First, Plaintiffs have not established a convertible property right in their address book data.  Intangible property is subject to the tort of conversion if: (1) there is an interest capable of precise definition; (2) it is "capable of exclusive possession or control"; and (3) the owner has established a legitimate claim to exclusivity.  *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003).  Plaintiffs' address book data does not satisfy the second element because Plaintiffs' address book data was—as Plaintiffs' pleadings confirm—capable of being digitally copied and uploaded.  Indeed, courts routinely dismiss conversion claims premised on the copying of personal information because such intangible property is not capable of exclusive possession or control.  *See iPhone II*, 844 F. Supp. 2d at 1075 (dismissing conversion claim with prejudice because "it is difficult to see how [plaintiffs' PII] is capable of exclusive possession or control"); *Yunker*, 2013 WL 1282980, at *17 (dismissing conversion claim because plaintiffs' PII is not capable of exclusive possession or control); *Low II*, 900 F. Supp. 2d at 1030 (same).

Cooley LLP
Attorneys At Law
San Diego

Second, Plaintiffs do not (and cannot) allege that Instagram dispossessed them of their property rights in their address book data.  Plaintiffs allege only that Instagram uploaded a portion of that data.  (SCAC, ¶ 115.)  Critically, Plaintiffs still have possession of all their address book data.  (*See id.* at ¶ 262.)  Thus, Plaintiffs have not been deprived or dispossessed of their address book data and, as a result, cannot state a claim for conversion:

> [T]he receipt of copies of documents, rather than the documents themselves, should not ordinarily give rise to a claim for conversion.  The reason for this rule is that the possession of copies of documents—as opposed to the documents themselves—does not amount to an interference with the owner's property sufficient to constitute conversion.  In cases where the alleged converter has only a copy of the owner's property and the owner still possesses the property itself, the owner is in no way being deprived of the use of his property.  The only rub is that someone else is using it as well.

*FMC*, 915 F.2d at 303–04 (applying California law; quotations & citations omitted).  Further, the court in *Hernandez* dismissed a conversion claim that was premised on the same facts alleged here because plaintiff "only alleged that Path copied the information."  *Hernandez v. Path, Inc.*, No. 12-cv-01515-YGR, 2012 WL 5194120, at *7 (N.D. Cal. Oct. 19, 2012).

Third, because Plaintiffs do not allege how Instagram's alleged uploading of portions of their address book deprived them of value (*see* Section A:2, *supra*), they have failed to satisfy the damages element.  *See Low II*, 900 F. Supp. 2d at 1030–31.[11]  Again, Instagram allegedly accessed only a copy of certain fields in Plaintiffs' address book after Plaintiffs requested that it do so in service of Plaintiffs' desire to find and connect with friends and family on Instagram.

---

[11] Plaintiffs' conversion claim fares no better under Texas law. Texas law does not recognize a cause of action for conversion of intangible property.  *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. Ct. App. 2001) ("Texas law *has never recognized* a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted.") (emphasis added); *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 778 (S.D. Tex. 2010) ("[C]ourts have held that conversion law does not apply to forms of intangible property which do not generally merge with a document.").  Moreover, like California law, the mere copying of information is insufficient to establish a conversion claim under Texas law.  *See Westlake Surgical, L.P. v. Turner*, No. 03-08-00122-CV, 2009 WL 2410276, at *3–4 (Tex. Ct. App. Aug. 7, 2009) (defendant's copying of patient records did not constitute conversion because it did not deprive plaintiff of the information); *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 148 (Tex. 1997) (plaintiff was not damaged by the alleged conversion of a client list because plaintiff retained a copy and continued to use it).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

18.

INSTAGRAM'S MOTION TO DISMISS 2ND
CONSOLIDATED AMENDED COMPLAINT
CASE NO. 13-CV-00453-JST

**C.     Plaintiffs' Claims Against Instagram Should Be Dismissed With Prejudice.**

Plaintiffs have had nearly three years and seven complaints to attempt to plead a claim against Instagram relating to Instagram's uploading of address book data in connection with its "Find Friends" feature.   They cannot, and Instagram requests that the claims against it be dismissed with prejudice.  *See Low II*, 900 F. Supp. 2d at 1033 (dismissing claims with prejudice "because any amendment would likely be futile"); *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (a "court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint") (citation and quotation omitted).

**V.     CONCLUSION**

For the above-stated reasons, Instagram respectfully requests that the Court dismiss Plaintiffs' claims against it with prejudice.

Dated: August 22, 2014                            COOLEY LLP


                                                  */s/ Mazda K. Antia*
                                                  Mazda K. Antia
                                                  Attorneys for Defendant Instagram, LLC

Cooley LLP
Attorneys At Law
San Diego

19.

Instagram's Motion to Dismiss 2nd
Consolidated Amended Complaint
Case No. 13-cv-00453-JST