COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

MAZDA K. ANTIA (214963) (mantia@cooley.com)
4401 Eastgate Mall
San Diego, CA 92121-1909
Telephone: (858) 550-6000
Facsimile: (858) 550-6420

Attorneys for Kik Interactive, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MARC OPPERMAN, *et al.*, <br><br> Plaintiff, <br><br> v. <br><br> PATH, INC. *et al.*, <br><br> Defendant. | Case No. 13-cv-00453-JST <br><br> **KIK INTERACTIVE, INC.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)** <br><br> DATE: December 2, 2014 <br> TIME: 2:00 p.m. <br> COURTROOM: 9 <br> JUDGE: Hon. Jon S. Tigar |

**Table of Contents**

Page

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................... 1
STATEMENT OF RELIEF SOUGHT ........................................................................................... 1
STATEMENT OF ISSUES TO BE DECIDED ............................................................................. 1
I.     INTRODUCTION .............................................................................................................. 2
II.    STATEMENT OF FACTS ................................................................................................. 3
III.   APPLICABLE LEGAL STANDARDS ............................................................................. 4
IV.    ARGUMENT ...................................................................................................................... 4
       A.    Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion.................................. 4
             1.   Plaintiffs fail to plead that they had a reasonable expectation of
                  privacy in their address books under the circumstances alleged.................. 5
             2.   Plaintiffs fail to plead that Kik's conduct was highly offensive ................. 8
             3.   Plaintiffs suffered no harm as a result of Kik's alleged intrusion............. 11
       B.    Plaintiffs Lack Article III Standing for Their Intrusion Claim ............................. 11
       C.    Plaintiffs' Conversion Claim Should Be Dismissed For Failure to State a
             Claim and for Lack of Article III Standing ............................................................ 13
       D.    Plaintiffs' Claims Against Kik Should Be Dismissed With Prejudice ................. 13
V.     CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. City of Beverly Hills*,
   911 F.2d 367 (9th Cir. 1990)..................................................................................................13

*Andrews v. Metro N. Commuter R.R. Co.*,
   882 F.2d 705 (2d Cir. 1989)......................................................................................................6

*In re Apple iPhone Application Litig.*,
   No. 11-md-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................................4, 6

*Baugh v. CBS, Inc.*,
   828 F. Supp. 745 (N.D. Cal. 1993) ...........................................................................................9

*Belluomini v. Citigroup Inc.*,
   No. 13-cv-01743-CRB, 2013 WL 3855589 (N.D. Cal. July 24, 2013) ..................................10

*Citizens for Health v. Leavitt*,
   428 F.3d 167 (3d Cir. 2005)....................................................................................................12

*Deteresa v. Am. Broad. Cos., Inc.*,
   121 F.3d 460 (9th Cir. 1997).....................................................................................................5

*In re DoubleClick, Inc. Privacy Litig.*,
   154 F. Supp. 2d 497 (S.D.N.Y. 2001).....................................................................................12

*Folgelstrom v. Lamps Plus, Inc.*,
   195 Cal. App. 4th 986 (2011) .................................................................................................10

*Four Navy Seals v. Associated Press*,
   413 F. Supp. 2d 1136 (S.D. Cal. 2005).....................................................................................5

*Freeman v. ABC Legal Services, Inc.*,
   827 F. Supp. 2d 1065 (N.D. Cal. 2011) ....................................................................................7

*In re Google Android Consumer Privacy Litig.*,
   No. 11-md-02264-JSW, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ...........................10, 13

*In re Google, Inc. Privacy Policy Litig.*,
   No. 12-cv-01382-PSG, 2014 WL 3707508 (N.D. Cal. July 21, 2014)...................................10

*In re Google, Inc. Privacy Policy Litig.*,
   No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) .................................8, 13

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

ii.

KIK'S MOTION TO DISMISS SCAC
13-CV-00453-JST

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Hill v. Nat'l Collegiate Athletic Ass'n*,
 7 Cal. 4th 1 (1994) ..........................................................................................................8

*In re iPhone Application Litig.*,
 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................................10

*LaCourt v. Specific Media, Inc.*,
 No. 10-cv-1256-GW(JCGx), 2011 WL 1661532 (N.D. Cal. Apr. 28, 2011) ................12

*Low v. LinkedIn Corp.*,
 900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..................................................................10, 13

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ........................................................................................................4

*Miller v. Nat'l Broad. Co.*,
 187 Cal. App. 3d 1463 (1986) .....................................................................................4, 8

*Owens v. Kings Supermarket*,
 198 Cal. App. 3d 379 (1988) ..........................................................................................6

*Plascencia v. Lending 1st Mortg.*,
 583 F. Supp. 2d 1090 (N.D. Cal. 2008) ..........................................................................7

*Puerto v. Super. Ct.*,
 158 Cal. App. 4th 1242 (2008) .....................................................................................10

*Robinson v. Salazar*,
 885 F. Supp. 2d 1002 (E.D. Cal. 2012) ..........................................................................6

*Ruiz v. Gap, Inc.*,
 380 Fed. App'x. 689 (9th Cir. 2010) .............................................................................12

*Sanchez-Scott v. Alza Pharm.*,
 86 Cal. App. 4th 365 (2001) ...........................................................................................5

*Shulman v. Grp. W Prods., Inc.*,
 18 Cal. 4th 200 (1998) ....................................................................................................4

*In re Yahoo Mail Litig.*,
 No. 13-cv-04980, 2014 WL 3962824 (N.D. Cal. Aug. 12, 2014) ................................11

*Yunker v. Pandora Media, Inc.*,
 No. 11-cv-031130JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ..................10, 12

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iii.

**KIK'S MOTION TO DISMISS SCAC**
**13-CV-00453-JST**

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Other Authorities**

Alexis Tsotsis, *Speedy Messaging App Kik Goes Viral, But Is It Cool With Apple's TOS?* .......... 7

California Civil Jury Instructions § 1800 ................................................................................... 11

Federal Rule of Civil Procedure 12(b)(1) ............................................................................. 1, 2, 4

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... 1, 2, 4, 7, 13

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iv.

**KIK'S MOTION TO DISMISS SCAC**
**13-CV-00453-JST**

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 2, 2014 at 2:00 p.m., or as soon thereafter as this motion may be heard in the above-referenced court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 9, 19th Floor, Kik Interactive, Inc. ("Kik") will and hereby does move to dismiss the Second Consolidated Amended Class Action Complaint ("SCAC" (Dkt. No. 478)). This motion is made under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Peter Heinke, pleadings on file, oral argument of counsel, and such other materials and argument as may be presented and appropriately considered in connection with this motion.

**STATEMENT OF RELIEF SOUGHT**

Kik seeks an order dismissing with prejudice Plaintiffs' SCAC and each of the claims alleged therein for failure to state a claim upon which relief can be granted and because Plaintiffs have not met their burden to show Article III standing.

**STATEMENT OF ISSUES TO BE DECIDED**

**1.** Should Plaintiffs' claims against Kik for invasion of privacy (intrusion upon seclusion) and conversion be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted?

**2.** Should Plaintiffs' claims against Kik for invasion of privacy (intrusion upon seclusion) and conversion be dismissed under Federal Rule of Civil Procedure 12(b)(1) for failure to allege Article III standing?

## I. INTRODUCTION

The Kik Messenger Application ("App") is a free smartphone messenger that gives users a fast and simple way to connect with each other. Plaintiffs allege that shortly after the App's launch in late October 2010, several sources—including the press and Kik itself—disclosed that the App accessed certain data fields (phone number and email addresses) from users' address books to let users know which of their iDevice contacts also used Kik Messenger. Indeed, the many public disclosures and statements regarding Kik's address book data collection practices have formed the basis of each of Plaintiffs' five attempts to state claims against Kik arising from their use of its App. These very allegations, however, negate Plaintiffs' claims. While Plaintiffs now characterize Kik's acts as a surreptitious misappropriation of highly sensitive and valuable information, their own factual allegations reveal that Kik's access to portions of address book data was publicly disclosed, involved only basic address book data fields that were neither inherently sensitive nor valuable, and took place so that users could fully benefit from the App's functionality. These admissions defeat Plaintiffs' claims for invasion of privacy (intrusion upon seclusion) and conversion on both Rule 12(b)(6) and Rule 12(b)(1) grounds.

First, Plaintiffs' intrusion claim depends on Plaintiffs' possessing an actual and reasonable expectation that the Kik Messenger App would not access their address book data. Plaintiffs have failed to plead they had any such expectation given their citation to numerous public statements made by Kik, third parties, and the press almost immediately after the App's launch disclosing that Kik Messenger accesses user contacts in order to connect users with each other. Indeed, Plaintiffs—who purport to have had a keen interest in the security of their iDevices and followed closely news from Apple and traditional and non-traditional media sources regarding that topic— cannot be considered to have had a reasonable expectation that Kik Messenger would not access their contacts after so many disclosures to the contrary in the media, Kik's own Terms of Use and Privacy Policy, and within the App itself. In addition, any supposed intrusion into Plaintiffs' privacy was not "highly offensive." Kik Messenger is a *social networking* app that only functions if a user has built his or her *social network*. Kik's upload of phone numbers and email addresses in connection with its provision of services to Plaintiffs is not "highly offensive" in these

1 circumstances.

2 Second, Plaintiffs' conversion claim fails because, among other reasons detailed in other 3 App Developer briefs (in which Kik joins), Plaintiffs failed to plead that Kik *dispossessed* them 4 of their address book data.

5 Third, Plaintiffs' claims should be dismissed for lack of Article III standing because they 6 failed to allege the "irreducible constitutional minimum" of a "concrete and particularized" 7 injury-in-fact. It is not enough, under any established law, for Plaintiffs to allege in general terms 8 that address book data can be "private" and then presume that they were automatically harmed 9 when the App uploaded some of that data. Nor is it sufficient for Plaintiffs to allege that Kik 10 somehow benefitted from their address book data when it simply enabled Plaintiffs to find their 11 own friends on the App. Plaintiffs must allege an *injury to themselves* resulting from that data 12 upload. The SCAC contains no such allegations.

13 Plaintiffs have failed in their multiple attempts to plead a claim against Kik, and Kik now 14 respectfully requests that the claims against it be dismissed with prejudice.

15 **II.  STATEMENT OF FACTS**

16 Kik is a start-up company that developed and offers for download a popular and free 17 instant-messaging application for smart phones called Kik Messenger. Kik Messenger allows its 18 users to "chat" and "message" with others who have also downloaded the App. The *Opperman* 19 Plaintiffs assert claims on behalf of a putative class of persons who downloaded Kik Messenger 20 on their Apple iDevices between July 10, 2008 and February 2012. (SCAC, ¶ 233.)[1] Two of the 21 named plaintiffs, Stephanie Dennis-Cooley and Jason Green, allegedly downloaded Kik 22 Messenger. Although (unlike other Plaintiffs) the Kik Plaintiffs *fail* to specify when they 23 downloaded the App (*compare* SCAC, ¶¶ 159, 172, *with* SCAC, ¶¶ 184, 190), they claim to have 24 installed the App before they filed their initial complaint on March 12, 2012.

25 Plaintiffs allege that, at some unspecified point, "[w]ithout prior user consent, [Kik] 26 uploaded iDevice address book data" and that Apple knew this was happening because it was

---

[1] This allegation is directed at all Defendants, not Kik specifically. The Kik Messenger App was released in October 2010.

disclosed in "numerous reports". (*Id*. at ¶¶ 100–01). Both Plaintiffs "recall using the Kik Messenger App, logging in, and navigating within the App." (*Id*. at ¶ 102.) Plaintiffs allege that "Kik Interactive benefited substantially from its misappropriations of users' address books," which Plaintiffs claim allowed Kik to "more rapidly grow its user base, avoid the costs of customer acquisition, enhance its social networking features, and increase the value of the company." (*Id*. at ¶ 103.) Based on these allegations, Plaintiffs assert claims for invasion of privacy (intrusion upon seclusion) and conversion.

### III. APPLICABLE LEGAL STANDARDS

The Court is familiar with the applicable legal standards on a motion to dismiss under rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (Dkt. 471) ("Order"), pp. 8–9.) As detailed below, Plaintiffs' claims fail both because Plaintiffs have not alleged a "plausible" claim to relief, *see Ashcroft v. Iqbal*, 556 U.S. 662, 677–81 (2009), and because Plaintiffs have failed to plead a concrete and particularized injury-in-fact, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

### IV. ARGUMENT[2]

#### A. Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion

California courts have recognized tort claims for "intrusion upon seclusion" where a defendant intrudes into a "private place, conversation, or matter" in a "highly offensive" manner. *See Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998). Intrusion cases typically involve unauthorized video or audio recordings by the media, or physical intrusions during sensitive situations such as medical exams;[3] we are not aware of any California court permitting

---

[2] In its Order, the Court noted that it had not identified any differences between California and Texas in relation to the common law claims, and confined its discussion to California law. (Order, p. 2, fn. 4.) This Motion therefore addresses only California law.

[3] *See, e.g., Shulman*, 18 Cal. 4th at 230–31 (intrusion cause of action "encompasses unconsented [] physical intrusion into the home, hospital room or other place the privacy of which is legally recognized, as well as unwarranted sensory intrusions such as eavesdropping, wiretapping, and visual or photographic spying"); *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1484 (1986) ("In our view, reasonable people could regard the NBC camera crew's intrusion into Dave Miller's bedroom at a time of vulnerability and confusion occasioned by his seizure as 'highly

1  an intrusion claim under circumstances similar to those alleged here, and to do so would broadly
2  expand the scope of the claim. This is particularly true because, here, Plaintiffs failed to allege
3  the required elements of the claim, which are: (1) plaintiff had a reasonable expectation of
4  privacy; (2) the defendant intentionally intruded on that expectation of privacy; (3) the
5  defendant's intrusion would be highly offensive to a reasonable person; (4) the plaintiff was
6  harmed; and (5) the defendant's conduct was a substantial factor in causing plaintiff's harm. *See*
7  Judicial Counsel of California Civil Jury Instructions ("CACI") 1800.

### 1. Plaintiffs fail to plead that they had a reasonable expectation of privacy in their address books under the circumstances alleged.

Plaintiffs fail to plead any facts establishing that they had an actual, objectively reasonable expectation that Kik would not access or upload data from their address books. *See Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1146 (S.D. Cal. 2005) ("To prevail on the first element of the tort of intrusion upon seclusion, a plaintiff must show: (a) an actual, subjective expectation of seclusion or solitude, and (b) that the expectation was objectively reasonable."). While Plaintiffs generally allege that they "have reasonable expectations of privacy in their iDevices and their mobile address books," (SCAC, ¶ 244), and refer to articles stating that certain percentages of the population at large would not want an app to access their contacts (*id*. at ¶ 57), Plaintiffs failed to plead that they had any expectation that if they downloaded an application that only worked if users established a network of contacts, that application would not access their contacts in order to help them build that network so that it could function properly. Their general allegations regarding an expectation of privacy, which merely parrot the elements of their

---

offensive' conduct…."); *Deteresa v. Am. Broad. Cos., Inc.*, 121 F.3d 460, 466 (9th Cir. 1997) (holding that recording of conversation without plaintiff's consent was insufficient to state an intrusion claim, noting that it is not "a case in which a news team entered someone's bedroom without authorization … [n]or is it a case in which someone gained entrance into another's home by subterfuge … [n]or is it a case in which a private investigator obtained entrance into a hospital room by deception"); *Sanchez-Scott v. Alza Pharm.*, 86 Cal. App. 4th 365, 377–78 (2001) (performance of a breast examination where plaintiff was required to take off her blouse and bra without revealing that a second man present was a drug salesperson and not medical personnel was sufficient to state claim for intrusion).

intrusion claim without offering any factual support, are insufficient to allege this element. *See Twombly*, 550 U.S. at 555–56; *Iqbal*, 129 S. Ct. at 1949.

Even assuming that Plaintiffs had alleged they had a subjective expectation of privacy, they failed to establish that such expectation was objectively reasonable in light of their admission that Kik *publicly disclosed* that its Messenger App uploaded address book data. Indeed, Plaintiffs' own pleadings confirm that Kik and third parties publicly disclosed the App's upload of user address book data almost immediately after its release:

- Plaintiffs original Complaint[4] alleged that Kik's CEO publicly admitted to "access[ing]" and "scan[ning]" its users' address book data just 17 days after the App was released.[5] (Complaint (Dkt. 1), ¶¶ 280–82).

- Plaintiffs' First Amended Complaint ("FAC") included references to multiple publicly-available news sources that disclosed Kik's access of address book data. (FAC (Dkt. 3), ¶ 205.) For example, the FAC cites an article that was published 12 days after the App was released and over eighteen months before Plaintiffs filed suit, which stated that "[o]nce you download the application . . . it checks your address book and recommends friends and other contacts you are likely to know who have already downloaded Kik."[6] The FAC also quotes from an article that describes how Kik "automatically ingests your contacts from the device" to match you with potential contacts.[7] Indeed, the FAC spent twenty paragraphs discussing information about Kik's address book data practices that was publicly-available as of November 2010—just weeks after Kik Messenger launched. (*Id*. at ¶¶ 204–25.)

- Plaintiffs' Second Amended Complaint (Dkt. 103) ("SAC") likewise conceded that Kik had informed users of its actions before any other defendant, and once again cited publicly available news stories about the App. (SAC, ¶¶ 137, 161.)

- Plaintiffs' Consolidated Amended Complaint (Dkt. 362) ("CAC") once again admitted that media reports in 2010 disclosed Kik's actions and provided links to media disclosures. (CAC, ¶¶ 216, 246.)

---

[4] Plaintiffs' allegations from their prior complaints may be considered when deciding the instant motion. *See Robinson v. Salazar*, 885 F. Supp. 2d 1002, 1024 n.12 (E.D. Cal. 2012). *See also Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989); *Owens v. Kings Supermarket*, 198 Cal. App. 3d 379, 383–84 (1988) (court can take notice of facts that are omitted from amended complaint to prevent plaintiff from avoiding defects in prior complaint).

[5] The thread shown in the Complaint's screenshot can be found at http://www.quora.com/Is-it-against-Apples-terms-to-automatically-without-permission-upload-your-iPhones-address-book.

[6] FAC, ¶ 205 n.136 (citing Matt Marshall, *Kik Messenger see explosive start – a mobile chat better than SMS?* (available at http://venturebeat.com/2010/11/03/kik-messenger-sees-explosive-start-a-mobile-chat-better-than-sms/)).

[7] *Id*. at ¶ 205 n.135 (quoting Matt Marshall, *Kik, the Skype of text messages continues crazy growth* (chart) (available at http://venturebeat.com/2010/11/05/kik-sms-growth/) and Mathew Ingram, *Kik's Viral Growth Comes With an Apology* (available at http://gigaom.com/2010/11/09/kiks-viral-growth-comes-with-an-apology/)).

- Plaintiffs' SCAC admits that publicly-available news sources disclosed Kik's actions within days of the App's launch. Plaintiffs allege that Apple knew Kik was improperly uploading address book data because "reporters wrote up numerous reports with titles like "Speedy Messaging App Kik Goes Viral, But is It Cool With Apple's T[erms] O[f] S[ervice?" (SCAC, ¶ 101.) The article Plaintiffs cite, *published eighteen months before this suit was filed*, discloses the very actions on which Plaintiffs base their claim, stating that the Kik Messenger App "automatically imports your contacts without asking for permission."[8]

Moreover, as of November 15, 2010, Kik's Terms of Use disclosed that, "When you register for a Kik Account . . . Kik Messenger will access and upload the phone numbers and emails [sic] addresses (but not names) from your mobile device address books to Kik's servers."[9] (*See* Declaration of Peter Heinke In Support Of Motion to Dismiss ("Heinke Decl.") Ex. A at 1.) Similarly, Kik's Privacy Policy explicitly advised users that, "When you register for a Kik Account, Kik Messenger will use your address book contacts to help you connect with your friends … Kik Messenger will access and upload the phone numbers and email addresses (but not names) from your mobile device address book to Kik's servers, hash it on our servers, and check if those phone numbers and email addresses are registered to a Kik user." (*Id*., Ex. B at 1.)

Finally, as early as October 19, 2010, all users were presented with a disclosure during the enrollment process stating that, if users provided their phone number to Kik (which was *completely optional*) in addition to creating a username, Kik would use that phone number "to find contacts in your address book who are already on Kik." (*Id*., Ex. C.) By December 6, 2010, users were presented with an additional pop-up prompt stating that "'Kik Messenger' would like to access your address book to match you with friends already on Kik" and given the option to select "Don't allow" or "OK." (*Id*., Ex. D.)

---

[8] SCAC, ¶ 101 (citing Alexis Tsotsis, *Speedy Messaging App Kik Goes Viral, But Is It Cool With Apple's TOS?* (available at http://techcrunch.com/2010/11/08/kik/)).

[9] Plaintiffs fail to allege that they downloaded Kik Messenger prior to the public statements referenced in the SCAC and previous complaints. Indeed, Plaintiffs fail to specify anything about their downloading or use of the App, and have repeatedly refused to provide Kik with their usernames or any other information from which Kik can determine when they first registered. The omission of these critical facts in an apparent attempt to avoid dismissal renders the SCAC deficient. *See Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090, 1095 (N.D. Cal. 2008) ("On a motion under Rule 12(b)(6) … dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests."); *Freeman v. ABC Legal Services, Inc.*, 827 F. Supp. 2d 1065, 1069 (N.D. Cal. 2011) (to survive 12(b)(6) motion to dismiss, allegations must "provide Defendants fair notice of nature of plaintiff's claims and the grounds on which the claims rest") (citing *Twombly*, 550 U.S. at 555).

Given Plaintiffs' own citation to numerous public disclosures of Kik's address book data activities within weeks of the App's launch, they have not and cannot plead they had an "objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." Indeed, Plaintiffs themselves allege a particular interest in the "safety and security" of Apple products. Plaintiff Dennis-Cooley alleges that she "generally reads or watches both traditional and non-traditional media, and is exposed to marketing and publicity in a variety of forms. Through that exposure, Dennis-Cooley has viewed numerous advertisements *and reports* about Apple's safety and security." (SCAC, ¶ 163(i) (emphasis added).) Similarly, Plaintiff Green alleges that he "generally reads or watches both traditional and non-traditional media" and has "viewed numerous advertisements and reports about Apple's safety and security." (*Id.* at ¶ 176.) These two Plaintiffs, who purport to have been interested in and reviewed media reports about the security of Apple's products, cannot reasonably have an expectation of privacy when Kik's address book data activities, and Apple's response to those activities, was publicly disclosed. These public disclosures defeat Plaintiffs' intrusion claim. *See Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 36 (1994) (advanced notice of practices may "inhibit reasonable expectations of privacy"); *In re Google, Inc. Privacy Policy Litig*., No. C-12-01382-PSG, 2013 WL 6248499, at *15–16 (N.D. Cal. Dec. 3, 2013) ("*Google Privacy Policy I*") (dismissing claim for intrusion upon seclusion when the privacy policy explicitly stated contact information and geolocation data would be collected). Because Plaintiffs fail to allege that they downloaded the App *before* the public disclosures described in their own pleadings were made, they have failed to plausibly allege they had an actual, objectively reasonable expectation of privacy in their address book data in connection with their use of Kik Messenger and their claims should be dismissed.

**2.     Plaintiffs fail to plead that Kik's conduct was highly offensive.**

Plaintiffs' intrusion claim also fails because Kik's alleged conduct—uploading address book data after disclosing it would do so—does not pass the preliminary determination of "offensiveness." *See Miller*, 187 Cal. App. 3d at 1483 (court makes "a preliminary determination of 'offensiveness'" to determine whether a cause of action for intrusion exists). Whether an intrusion is highly offensive depends on "the degree of intrusion, the context, conduct and

1  circumstances surrounding the intrusion as well as the intruder's motives and objectives, the
2  setting into which he intrudes, and the expectations of those whose privacy is invaded." *Id.* at
3  1483–84. Here, considering the totality of the circumstances in which Kik is alleged to have
4  uploaded certain fields of address book data, it is clear that the nature of the intrusion is not
5  "highly offensive," for at least three reasons.

6  First, the uploading of Plaintiffs' address book data is not highly offensive because
7  Plaintiffs were aware of, and consented to, this action. As described *supra*, the fact that Kik
8  uploaded address book data was widely publicized—it was the topic of a number of news articles
9  and was disclosed within the App during the enrollment process and in Kik's Terms of Use and
10 Privacy Policy. Moreover, Plaintiffs do not allege that Kik lied to them or misrepresented the
11 functionality of the App. Accordingly, Kik's alleged "intrusion" cannot be deemed highly
12 offensive. *See Baugh v. CBS, Inc.*, 828 F. Supp. 745, 757 (N.D. Cal. 1993) (dismissing intrusion
13 claim because "consent is an absolute defense").

14 Second, the circumstances surrounding Kik's uploading of portions of address book data
15 weigh against a finding that the "intrusion" was highly offensive. Kik is a mobile messaging
16 platform that allows users to communicate across operating systems, carriers, and continents. A
17 messaging App with no potential recipients serves no purpose. Plaintiffs concede that one
18 purpose of the contacts scanning was to "enhance [Kik's] social networking features." (SCAC,
19 ¶ 103.) Plaintiffs have previously alleged that they have "more than one hundred contacts on
20 their iDevices." (SAC, ¶ 77.) If Kik had not scanned their address book, each of these contacts
21 would have to be entered manually. Indeed, Plaintiffs fail to allege that, had they known that Kik
22 Messenger would upload information from their contacts, they would not have used that feature
23 or would not have downloaded the App. This strongly suggests that, for Plaintiffs, the utility of
24 Kik's free messaging app, and the convenience of letting Kik quickly and automatically find
25 friends for Plaintiffs, outweighed any intrusion into their privacy. Kik's actions, made in
26 connection with Kik's provision of requested services to users, were not therefore "highly
27 offensive."

28 Critically, Plaintiffs do not allege that Kik retained, disclosed, or otherwise misused their

address book data—which allegations formed the basis of this Court's prior order concluding Plaintiffs had stated a claim for intrusion. (Order, p. 44.) Plaintiffs' only allegation regarding Kik's use of their data in the operative complaint now is that Kik scanned their contacts to "more rapidly grow its user base, avoid the costs of customer acquisition, enhance its social networking features, and increase the value of the company." (SCAC, ¶ 103). That Kik allegedly benefitted from the improved functionality of the app does not, however, make its conduct highly offensive. *See Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992–93 (2011) (unauthorized collection of PII for marketing purposes is not highly offensive because it is "routine commercial behavior"); *see also In re Google, Inc. Privacy Policy Litig.*, No. 12-cv-01382-PSG, 2014 WL 3707508, at *12 (N.D. Cal. July 21, 2014) ("*Google Privacy Policy II*") (using PII to serve targeted ads not highly offensive); *Yunker v. Pandora Media, Inc.*, No. 11-cv-031130JSW, 2013 WL 1282980, at *14–15 (N.D. Cal. Mar. 26, 2013) (profiting from sale of PII to third parties not "an egregious breach of social norms"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (same).

Third, Plaintiffs' address book data is not the type of highly sensitive information that gives rise to an actionable claim for intrusion. The bar is set "high" to state a claim for intrusion. *Belluomini v. Citigroup Inc.*, No. 13-cv-01743-CRB, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013); *Low*, 900 F. Supp. 2d at 1025. "Even disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim." *Low*, 900 F. Supp. 2d at 1025. Here, the relevant address book data (email addresses and phone numbers) is indistinguishable from the types of personal identification information that courts routinely hold as being insufficient to state a claim for intrusion. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) ("*iPhone II*") (collection of personal data and geolocation information insufficient); *Yunker*, 2013 WL 1282980, at *15 (collection of age, gender, and location); *In re Google Android Consumer Privacy Litig.*, No. 11-md-02264-JSW, 2013 WL 1283236, at *11 (N.D. Cal. Mar. 26, 2013) ("*Google Android*") (collection of app activity); *Low*, 900 F. Supp. 2d at 1025 (collection of browser history); *see also Puerto v. Super. Ct.*, 158 Cal. App. 4th 1242, 1253 (2008) ("[T]he

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

10.

KIK'S MOTION TO DISMISS SCAC
13-CV-00453-JST

requested information, while personal, is not particularly sensitive, as it is merely contact information, not medical or financial details, political affiliations, sexual relationships, or personnel information."). In addition, even if Plaintiffs' address book data theoretically could include confidential or sensitive information, Plaintiffs failed to allege what specific confidential or sensitive information was in their address book data and uploaded by Kik. This deficiency, too, defeats their intrusion claim. *See In re Yahoo Mail Litig.*, No. 13-cv-04980, 2014 WL 3962824, at *16 (N.D. Cal. Aug. 12, 2014) (holding that plaintiffs alleging privacy interest in communications must allege with specificity the confidential material in the content of those communications).

### 3. Plaintiffs suffered no harm as a result of Kik's alleged intrusion.

To state an actionable claim for intrusion, Plaintiffs must also plead that they suffered an injury as a result of Kik's alleged intrusion. (*See* Order, p. 46.) *See also* CACI 1800. Plaintiffs plead no facts establishing that they suffered any harm. Indeed, Plaintiffs fail to allege that they suffered "anxiety, embarrassment, [or] humiliation." (*See* Order, p. 46.) Rather, they only plead, in wholly conclusory fashion, that "[a]s a direct and proximate result of the respective App Defendants' actions, Plaintiffs suffered harm and damages." (SCAC, ¶ 248.) This conclusory allegation is insufficient to establish harm.

## B. Plaintiffs Lack Article III Standing for Their Intrusion Claim.

Plaintiffs allege that Kik "uploaded iDevice address book data to Kik Interactive or someone acting on its behalf. As a consequence, Kik Interactive improperly obtained the address book data belonging to Plaintiffs and class members." (SCAC, ¶ 100.) This allegation—that Kik "took [the Kik Plaintiffs'] address book data without . . . consent," (*see, e.g.*, *id*. at ¶¶ 159, 172), coupled with general allegations (specific to no Plaintiff) that iDevice address books contain "highly personal and private" information—is the sum total of Plaintiffs' privacy-related injury allegations. In other words, Plaintiffs claim that Kik's electronic act of accessing Plaintiffs' address books, alone, constitutes Article III injury in fact. Plaintiffs' theory is legally untenable.

Article III requires some "concrete and particularized" injury suffered as a result of the alleged privacy violation itself. Indeed, the cases cited in the Court's Order show just how

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

11.

KIK'S MOTION TO DISMISS SCAC
13-CV-00453-JST

different those cases are from the case at bar. *See Ruiz v. Gap, Inc.*, 380 Fed. App'x. 689, 691 (9th Cir. 2010) (plaintiffs alleged a "greater risk of identity theft" as a result of the violation); *Citizens for Health v. Leavitt*, 428 F.3d 167, 176 & n.9 (3d Cir. 2005) (plaintiffs submitted evidence that "at least one individual plaintiff's health information has been, or will imminently be, disclosed without her consent by private health care providers and drugstore chains, and that she and her family will avoid seeking medical care to prevent further disclosures of medical information without their consent.").

Plaintiffs here allege no such circumstances. Plaintiffs do not allege that Kik's access to their address books somehow increased a risk of identity theft or disclosure to third parties (or even that any human ever saw the contents of their address books). On the contrary, Plaintiffs have abandoned their "public disclosure" theory. Plaintiffs do not allege a violation of any constitutional or statutory privacy right. In fact, Plaintiffs do not even allege that, had they known that Kik would access their contacts, they would not have downloaded the app. (*See* SCAC, ¶¶ 161, 174 (alleging that Plaintiffs would have paid less for their iPhone if they had known that the contacts could be accessed or copied by others, but failing to allege they would not have downloaded Kik Messenger).)

Simply put, Plaintiffs fail to allege any concrete *consequence* of the Kik's electronic access of their contact address book—much less any injury resulting from that access. This is insufficient to create Article III standing. *See, e.g., Yunker*, 2013 WL 1282980, at *4 (holding that constitutional privacy violation created Article III standing, but rejecting argument that access and disclosure alone created Article III standing); *In re Apple iPhone Application Litig.*, No. 11-md-02250-LHK, 2011 WL 4403963, at *4–5 (N.D. Cal. Sept. 20, 2011) ("*iPhone I*") (dismissing privacy claims for lack of Article III standing where plaintiffs "have not identified a concrete harm from the alleged collection and tracking of their personal information sufficient to create injury in fact."); *LaCourt v. Specific Media, Inc.*, No. 10-cv-1256-GW(JCGx), 2011 WL 1661532, at *4–5 (N.D. Cal. Apr. 28, 2011) (no standing where failed to "give some particularized example" of how the collection of plaintiffs' browsing history "deprived Plaintiffs of this information's economic value"); *In re DoubleClick, Inc. Privacy Litig.*, 154 F. Supp. 2d

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

12.

KIK'S MOTION TO DISMISS SCAC
13-CV-00453-JST

497, 525 (S.D.N.Y. 2001) ("[A]lthough demographic information is valued highly … the value of its collection has never been considered a[n] economic loss to the subject."); *Google Android*, 2013 WL 1283238, at *4; *Google Privacy Policy I*, 2013 WL 6248499, *5 (Google's alleged combining and comingling of Plaintiffs' information did not establish an injury-in-fact). As such, their intrusion claim should be dismissed for lack of standing.

### C. Plaintiffs' Conversion Claim Should Be Dismissed For Failure to State a Claim and for Lack of Article III Standing.

Plaintiffs' conversion claim likewise fails for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for lack of Article III standing. Because Plaintiffs' allegations against Kik with respect to the conversion claim are materially indistinguishable from those against other App Developer Defendants, including Instagram, Kik joins and incorporates by reference Instagram's arguments and legal authority regarding Plaintiffs' failure to state a conversion claim or plead injury-in-fact resulting from the alleged conversion.

### D. Plaintiffs' Claims Against Kik Should Be Dismissed With Prejudice.

Plaintiffs have had nearly three years and five complaints to attempt to plead a claim against Kik. They cannot, and Kik requests that the claims against it be dismissed with prejudice. *See Low*, 900 F. Supp. 2d at 1033 (dismissing claims with prejudice "because any amendment would likely be futile"); *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (a "court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint") (citation and quotation omitted).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

13.

KIK'S MOTION TO DISMISS SCAC
13-CV-00453-JST

## V. CONCLUSION

For the above-stated reasons, Kik respectfully requests that the Court dismiss Plaintiffs' claims against it with prejudice.

Dated: August 22, 2014						COOLEY LLP


								*/s/ Mazda K. Antia*
								Mazda K. Antia
								Attorneys for Plaintiffs KIK Interactive, Inc.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

14.

**KIK'S MOTION TO DISMISS SCAC**
**13-CV-00453-JST**