1  Robert B. Hawk (Bar No. 118054)
   Clay James (Bar No. 287800)
2  Maren J. Clouse (Bar No. 228726)
   HOGAN LOVELLS US LLP
3  4085 Campbell Avenue, Suite 100
   Menlo Park, California 94025
4  Telephone: + 1 (650) 463-4000
   Facsimile: + 1 (650) 463-4199
5  robert.hawk@hoganlovells.com
   clay.james@hoganlovells.com
6  maren.clouse@hoganlovells.com

7  Attorneys for Defendant
   APPLE INC.

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                      SAN FRANCISCO DIVISION

12

13  IN RE: APPLE IDEVICE ADDRESS          Case No.  13-CV-00453-JST
    BOOK LITIGATION
14                                        DEFENDANT APPLE INC.'S REPLY IN
                                          SUPPORT OF MOTION TO DISMISS SECOND
15                                        AMENDED CONSOLIDATED COMPLAINT

16                                        The Honorable Jon S. Tigar

17                                        Date:          December 2, 2014
                                          Time:          2:00 p.m.
18                                        Courtroom:     9, 19th Floor

19                                        THIS DOCUMENT RELATES TO ALL ACTIONS:

20                                        *Opperman v. Path, Inc.*, No. 13-cv-00453-JST
                                          *Hernandez v. Path, Inc.*, No. 12-cv-1515-JST
21                                        *Pirozzi v. Apple, Inc.*, No. 12-cv-1529-JST
                                          *Gutierrez v. Instagram, Inc.*, No. 12-cv-6550-JST
22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................1

II.  ARGUMENT ......................................................................................................2

   A.  Plaintiffs' Misrepresentation Claims—Counts 3, 4, 5, and 6—Fail .......................................2

      1.  A supposed "advertising campaign" does not salvage Plaintiffs' claims. .....................2

         a.  Plaintiffs do not adequately allege that they were exposed to the campaign (Factors 1 and 5) ....................................................................... 3

         b.  The SAC fails to allege a long-term or extensive campaign (Factor 2)................... 3

         c.  The SAC fails to identify false or actionable statements (Factor 3). ....................... 5

         d.  The alleged statements did not comprise a single set of messages (Factor 4). .......... 7

      2.  Plaintiffs have not alleged any actionable omission. .................................................8

   B.  Counts 1 and 2 Should Be Dismissed. ...........................................................11

      1.  Plaintiffs' allegations do not support aiding and abetting liability against Apple........11

      2.  Plaintiffs' arguments do not save their conversion claim. ..........................................13

      3.  Plaintiffs' judicial estoppel argument fails. .............................................................14

      4.  Plaintiffs are not entitled to injunctive relief on the facts alleged. ..............................15

   C.  The CDA Bars All Claims That Are Not Based on an Affirmative Misrepresentation..............................................................................15

      1.  The CDA provides robust immunity and applies at the pleading stage.......................15

      2.  Apple has not waived its CDA defenses.................................................................16

      3.  Plaintiffs fail to plead the "offending content" allegedly co-created by Apple or how Apple "required" or "forced" its creation. ...........................................17

         a.  Plaintiffs allege no facts to show that Apple developed software that took their data..................................................................... 17

         b.  Plaintiffs do not allege that Apple required App Defendants to produce offending content.. ................................................................... 18

      4.  The CDA applies to plaintiffs' "omission" claims. ....................................................19

III. CONCLUSION...................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Apodaca v. Whirlpool Corp.*,
   2013 WL 6477821 (C.D. Cal. Nov. 8, 2013)...........................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................1, 17, 19

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) ...............................................................................15, 16, 17

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ...............................................................................................10

*Brannian v. City of San Diego*,
   364 F. Supp. 2d 1187 (S.D. Cal. 2005)................................................................................14

*Chicago Lawyers' Comm. for Civil Rights v. Craigslist, Inc.*,
   519 F.3d 666 (7th Cir. 2008) ...............................................................................................16

*Colony Cove Props., LLC v. City of Carson*,
   640 F.3d 948 (9th Cir. 2011) ...............................................................................................19

*Comm. On Children's Television, Inc. v. Gen. Foods Corp.*,
   35 Cal. 3d 197 (1983) ............................................................................................................4

*Conley v. Gibson*,
   355 U.S. 41 (1957)................................................................................................................16

*DIRECTV, Inc. v. Pahnke*,
   405 F. Supp. 2d 1182 (E.D. Cal. 2005)................................................................................13

*Doctor's Assocs. Inc. v. QIP Holders, LLP*,
   06-cv-1710 (D. Conn. Apr. 19, 2007)...................................................................................15

*Donohue v. Apple, Inc.*,
   871 F. Supp. 2d 913 (N.D. Cal. 2012) ...................................................................................8

*Durand v. U.S. Bank Nat'l Ass'n*,
   2009 WL 1916915 (N.D. Cal. July 1, 2009).........................................................................12

*Elias v. Hewlett-Packard Co.*,
   950 F. Supp. 2d 1123 (N.D. Cal. 2013) .................................................................................8

*Evans v. Hewlett-Packard Co., et al.*,
   2013 WL 5594717 (N.D. Cal. Oct. 10, 2013)..................................................................12, 16

*Fabozzi v. StubHub, Inc.*,
  2012 WL 506330 (N.D. Cal. Feb. 15, 2012) .......................................................................10

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ..................................................................................16,17, 18

*Flo & Eddie Inc. v. Sirius XM Radio Inc.*,
  2014 WL 4725382 (C.D. Cal. Sept. 22, 2014) .....................................................................13

*G.S. Gladstone v. Hillel*,
  203 Cal. App. 3d 977 (1988) ................................................................................................13

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Service, Inc.*,
  958 F.2d 896 (9th Cir. 1992) ...............................................................................................13

*Gentry v. eBay, Inc.*,
  99 Cal. App. 4th 816 (2002) .................................................................................................19

*Goddard v. Google, Inc.*,
  640 F. Supp. 2d 1193 (N.D. Cal. 2009) .............................................................17, 18, 19, 20

*Haskins v. Symantec Corp.*,
  2014 WL 2450996 (N.D. Cal. June 2, 2014) .................................................................3, 4, 6

*Howard v. Superior Ct.*,
  2 Cal. App. 4th 745 (1992) ...................................................................................................11

*In re Actimmune Mktg. Litig.*,
  2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) .........................................................................2

*In re First Alliance Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) ...............................................................................................11

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
  834 F. Supp. 2d 566 (S.D. Tex. 2011) ...................................................................................6

*In re iPhone 4S Consumer Litig.*,
  2013 WL 3829653 (N.D. Cal. July 23, 2013)...................................................................4, 6

*In re iPhone Application Litig.*,
  6 F. Supp. 3d 1004 (N.D. Cal. 2013) .....................................................................................2

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ................................................................................................ *passim*

*In re Yahoo Mail Litig.*,
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) ...................................................................................15

*Inman v. Technicolor USA, Inc.*,
  2011 WL 5829024 (W.D. Pa. Nov. 18, 2011) ......................................................................19

*J&J Sports Prods., Inc. v. Ceballos,*
　2012 WL 4009587 (N.D. Cal. Sept. 12, 2012) ...................................................................13

*J&J Sports Prods., Inc. v. Hernandez,*
　2013 WL 2468354 (N.D. Cal. June 6, 2013) .....................................................................13

*Jones v. Dirty World Entm't Recordings LLC,*
　755 F.3d 398 (6th Cir. 2014) ......................................................................................16, 18

*Kearns v. Ford Motor Co.,*
　567 F.3d 1120 (9th Cir. 2009) ..........................................................................................7

*Kingvision v. Lovato,*
　911 F. Supp. 419 (N.D. Cal. 1995) ...................................................................................13

*Klayman v. Zuckerberg,*
　910 F. Supp. 2d 314 (D.D.C. 2012) ..................................................................................16

*Kremen v. Cohen,*
　337 F.3d 1024 (9th Cir. 2003) ..........................................................................................13

*Levitt v. Yelp! Inc.,*
　2011 WL 5079526 (N.D. Cal. Oct. 26, 2011) ...................................................................16

*Lima v. Gateway, Inc.,*
　710 F. Supp. 2d 1000 (C.D. Cal. 2010) .............................................................................9

*Lone Ranger Television, Inc. v. Program Radio Corp.,*
　740 F.2d 718 (9th Cir. 1984) ............................................................................................13

*Lone Star Nat. Bank. N.A. v. Heartland Payment Sys., Inc.,*
　729 F.3d 421 (5th Cir. 2013)..............................................................................................6

*Long v. Hewlett-Packard Co.,*
　2007 WL 2994812 (N.D. Cal. July 27, 2007)....................................................................9

*Makaeff v. Trump University, LLC,*
　2014 WL 688164 (S.D. Cal. Feb. 21, 2014) ......................................................................4

*Mazza v. Am. Honda Motor Co. Inc.,*
　666 F.3d 581 (9th Cir. 2012) ............................................................................................11

*Minkler v. Apple, Inc.,*
　2014 WL 4100613 (N.D. Cal. Aug. 20, 2014) ...................................................................6

*Morgan v. AT&T Wireless Services, Inc.,*
　177 Cal. App. 4th 1235 (2009) ...........................................................................................4

*Nemet Chevrolet v. Consumeraffairs.com, Inc.,*
　591 F.3d 250 (4th Cir. 2009) ............................................................................................16

iv

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) .................................................................................................14

*Rasmussen v. Apple, Inc.*,
    2014 WL 1047091 (N.D. Cal. Mar. 14, 2014) .........................................................6

*Simmons v. Ware*,
    213 Cal. App. 4th 1035 (2013) ..........................................................................12, 13

*Sprewell v. Golden State Warriors*,
    231 F.3d 520 (9th Cir. 2000) ...................................................................................19

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ...................................................................................1

*Swift v. Zynga Game Network, Inc.*,
    2010 WL 4569889 (N.D. Cal. Nov. 3, 2010) ...........................................................19

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...................................................................................5

*Whiteley v. Philip Morris, Inc.*,
    117 Cal. App. 4th 635 (2004) ....................................................................................8

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ................................................................................8, 9

*Yunker v. Pandora Media, Inc.*,
    2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) .........................................................13

STATUTES

Cal. Civ. Code § 3336 .....................................................................................................14

OTHER AUTHORITIES

Fed. R. Civ. P. 8 ................................................................................................................1

Fed. R. Civ. P. 9(b) .............................................................................................1, 2, 3, 5

Fed. R. Civ. P. 11 ......................................................................................................10, 18

Fed. R. Civ. P. 12(b)(6) ...................................................................................................16

DEF. APPLE'S REPLY ISO MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT
CASE NO. 13-CV-00453-JST

1

## I.   INTRODUCTION

2          In opposing Apple's Motion to Dismiss, Plaintiffs never come to grips with the basic pleading

3   standards that apply to each of Plaintiffs' claims.  Plaintiffs' four misrepresentation claims are, of

4   course, subject to Rule 9(b), and their remaining two aiding and abetting claims require the pleading of

5   facts showing that Apple consciously assisted others' wrongful conduct.  All counts of the SAC are

6   subject to *Twombly/Iqbal* standards.

7          In its Motion to Dismiss, Apple analyzes in detail how the SAC's factual allegations as a whole

8   do not satisfy—and in critical respects, actually undercut—the necessary elements of Plaintiffs' claims,

9   including:  (a) a failure to plead any Plaintiff's individual reliance on a misrepresentation, (b) the

10  absence of factual allegations supporting an inference that Apple engaged in a long-term advertising

11  campaign under *Tobacco II*, (c) the lack of factual pleading to show Apple was a "joint venturer" or

12  "co-developer" with the Apps Defendants; (d) how the actual content of Apple's Human Interface

13  Guidelines do not teach or encourage apps developers to take address book data without permission,

14  and how Apple policies and technical measures sought to prevent that result, and (e) how multiple

15  allegations in the SAC contradict any inference of conscious aiding of wrongdoing by Apple.

16         In their Opposition, however, Plaintiffs consistently refuse to engage when faced with Apple's

17  analysis of the SAC's factual allegations and the materials that Plaintiffs attached to or referenced in

18  the complaint.  Time after time, they insist that the Court credit only broad *conclusions* and accept

19  Plaintiffs' *characterizations* of the SAC's allegations, while arguing simultaneously that any

20  examination of their allegations or incorporated documents raises "fact issues" inappropriate for

21  resolution now.  Plaintiffs ultimately fall back on a plea for discovery.

22         Rule 8, however, "does not unlock the doors of discovery for a plaintiff armed with nothing

23  more than conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The law requires factual

24  allegations, sufficiently plausible "such that it is not unfair to require the opposing party to be subjected

25  to the expense of discovery."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  The SAC furnishes

26  no such allegations against Apple; it must be dismissed.

27

28

1   **II. ARGUMENT**

2       **A. Plaintiffs' Misrepresentation Claims—Counts 3, 4, 5, and 6—Fail**

3           **1. A supposed "advertising campaign" does not salvage Plaintiffs' claims.**

4       Plaintiffs effectively concede that none of them saw or heard any of the misrepresentations

5   alleged to comprise the advertising campaign. Instead, they bet the farm on *Tobacco II*, arguing that an

6   alleged "long-term" advertising campaign excuses them from pleading reliance altogether. But that

7   takes the doctrine too far: Reliance is an element of each of Plaintiffs' misrepresentation claims and

8   must be pled in compliance with Rule 9(b). *See* MTD at 6-8.[1]

9       *Tobacco II* does not eliminate reliance pleading requirements in federal court. At most, it

10  stands for the limited proposition that when plaintiffs sufficiently allege a long-term advertising

11  campaign, they are not required to plead, with an unrealistic degree of specificity, *each*

12  misrepresentation on which they relied. *See, e.g.,* MTD Order at 28. It does not excuse a federal court

13  plaintiff from identifying *any* misrepresentation on which he or she relied. *See In re iPhone*

14  *Application Litig.*, 6 F. Supp. 3d at 1026 n. 21 ("[E]ven if a plaintiff successfully demonstrates that a

15  defendant's alleged misrepresentations were part of an extensive and long-term advertising campaign,

16  the plaintiff still must show that she saw at least *some* portions of that campaign"); *In re Actimmune*

17  *Mktg. Litig.*, 2009 WL 3740648, at *11-13 (N.D. Cal. Nov. 6, 2009), *aff'd* 464 Fed. Appx. 651 (9th Cir.

18  2011); MTD at 8. Because Plaintiffs have failed to plead reliance on any statements comprising the

19  alleged campaign, the SAC must be dismissed.

20      In its Order dismissing the prior Complaint, the Court set out a detailed, six-factor test requiring

21  Plaintiffs to allege specific facts establishing a long-term, extensive advertising campaign. Like the

22  SAC, however, the Opposition resorts to broad-brush assertions that Plaintiffs were "exposed" to the

23  campaign, that the campaign was extensive, that Apple's statements were false, and that Apple was

24  somehow responsible for the statements of others. But the SAC pleads no facts to support these

25  assertions; they are insufficient.

26

27  ---
    [1] Plaintiffs contend that they should not be required to plead something they do not have to prove at
    trial. But each named Plaintiff bears the burden of proving reliance at trial. *See In re iPhone*
28  *Application Litig.*, 6 F. Supp. 3d 1004, at 1020 (N.D. Cal. 2013) (summary judgment for defendant
    proper where plaintiffs produced no evidence that they saw, heard or read alleged misrepresentations).

**a. Plaintiffs do not adequately allege that they were exposed to the campaign (Factors 1 and 5).**

Plaintiffs claim to have alleged exposure in "granular detail," Opp. at 4, but at most they list a handful of statements, assert that they were widely disseminated, and tack on the conclusion that Plaintiffs were "exposed." Rule 9(b) requires more. *See Haskins*, 2014 WL 2450996, at *1 (boilerplate allegations that plaintiffs were "exposed" to listed statements insufficient). And in fact, Plaintiffs' own allegations render their exposure allegations implausible. The SAC recites that Plaintiffs made multiple purchases over a five year period and recall certain security-related statements. But not one of the 15 Plaintiffs recalls seeing or hearing any of the identified statements that comprise the supposed advertising campaign, mention the term "sandboxing," discuss app-to-app security, or otherwise speak to their asserted "particularized expectation of address book security."[2]

The SAC omits other critical details. It fails to plead with particularity *when* or *how* Plaintiffs were exposed to the alleged campaign. *See* MTD Order at 30 (factor 5). With respect to "when," it does not allege when Plaintiffs saw or heard a relevant Apple misstatement *during the period* of the alleged campaign. Nor does the Opposition even meaningfully address the "how" component, as Plaintiffs do not plead sufficient facts to "ensure[] that the advertisements at issue are representations that consumers were likely to have viewed, as opposed to representations that were isolated or more narrowly disseminated." MTD Order at 31. Instead, a substantial portion of the supposed "advertising" appears in out-of-the-way places—esoteric scientific and technical journals, Congressional testimony transcripts, lengthy product user manuals, legal contracts between Apple and third-party developers, and court declarations. These statements are not likely to be viewed by a reasonable consumer; they cannot serve as the basis of an alleged advertising campaign.[3]

**b. The SAC fails to allege a long-term or extensive campaign (Factor 2).**

Plaintiffs allege nothing approaching the decades-long, pervasive public relations campaign at issue in *Tobacco II. In re Tobacco II Cases*, 46 Cal. 4th 298 (2009). Plaintiffs say that the Apple

---

[2] The few details that Plaintiffs claim to remember concern unrelated subjects. MTD at 9.

[3] At most, Plaintiffs hypothesize that "buzz media" would transmit Apple statements at a media-credentialed developer conference to a mass audience. Opp. at 9. Plaintiffs cannot (and do not) say the same with respect to court declarations or scientific journals. Plaintiffs' "buzz marketing" allegations identify no particular statement transmitted to consumers at any particular time, and do not adequately allege falsity, or Apple control over third-party statements. *See* Section II.A.2.b and c.

3

1   campaign lasted five years, but courts have deemed longer alleged campaigns insufficient. *See* MTD at

2   9. And, those few instances in which courts have departed from *Tobacco II's* "decades long"

3   requirement have involved near identical, concentrated, high-volume advertisements.[4]

4        Furthermore, the Opposition ignores that multiple alleged purchases occurred in the infancy of

5   the alleged "campaign," well before the majority of the alleged purchases. *See* MTD at 9-10.

6   "Representations made prior to purchase are relevant to a plaintiff's claim; ones made after are not."

7   MTD Order at 31. Plaintiffs also overstate the length of the campaign by including alleged statements

8   made before the App Store, or any third party application, even existed. And, regardless of duration,

9   Plaintiffs allege only a scattering of statements per year—many of which are not statements by Apple at

10  all, but statements by third parties *about* Apple. MTD at 10.[5]

11       Plaintiffs insist that the alleged statements are merely "examples" and that Apple advertising is

12  "everywhere." Opp. at 7. But the SAC's bottom-of-the-barrel "examples" belie their supposed

13  ubiquity. If Apple advertising related to the alleged misrepresentations were truly "perpetually and

14  globally available" to consumers, Opp. at 7, Plaintiffs would not need to scour product user manuals

15  and obscure technical journals for the few scattered examples they cite in support of the "campaign."

16  Nor would Plaintiffs rely on statements concerning corporate network security or iTunes username

17  password requirements to establish the supposedly "continuous" Apple representations "that the

18  personal information contained on iDevices—including, specifically address books—could not be

---

19  [4] Plaintiffs erroneously invoke *Makaeff v. Trump University, LLC*, 2014 WL 688164 (S.D. Cal. Feb.
20  21, 2014), a class certification decision analyzing reliance requirements for absent class members—not for named plaintiffs. Plaintiffs' own quotation shows why the case is distinguishable: "While it was
    not a long-term campaign as in *Tobacco II*, it was much more targeted, concentrated and efficient than
21  *Tobacco II*. The effect of this campaign was to make it highly likely that each member of the putative
    class was exposed to the same misrepresentation." Opp. at 6. *Morgan v. AT&T Wireless Services, Inc.*,
22  177 Cal. App. 4th 1235 (2009), cited by Plaintiffs, is likewise distinguishable. *Morgan* involved
    uniform, frequent and highly focused advertising – a far cry from what is alleged here. Finally,
23  Plaintiffs cite *Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 213 (1983)—
    a pre-*Tobacco II*, pre-*Iqbal* opinion that also involved allegations of highly concentrated, consistent
24  advertising: "[P]laintiffs allege that each misrepresentation appears (and every listed material fact is
    concealed) in every advertisement for the specified product during the period in question. There is thus
25  no doubt as to what advertisements are at issue. . . ."

26  [5] Plaintiffs protest that the "long term" requirement would immunize the technology industry from
    *Tobacco II* claims. But *Tobacco II* is a "narrow" exception that hinges on the length, extensiveness and
27  uniformity of the alleged campaign—not on the nature of the product at issue. *See Haskins*, 2014 WL
    2450996, at *2. It does not create a broad fraud-pleading exemption for high technology products. *See
28  id.* (two-year campaign insufficient for antivirus software); *In re iPhone 4S Consumer Litig.*, 2013 WL
    3829653, at *12 (N.D. Cal. July 23, 2013) (six-month campaign insufficient).

1   taken without their owners' consent."  SAC ¶3.

2       "Buzz marketing" does not save Plaintiffs' claims.  That people discuss Apple products on the

3   internet does not establish a pervasive advertising campaign *by Apple*.  The Opposition baldly asserts

4   that Apple is "directly responsible for," and "engages in substantial efforts to create" the content of its

5   buzz marketing.  Opp. at 8.  But this is nothing more than a conclusion, lacking the "who, what, when,

6   where, and how" required to state a fraud claim.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

7   1106 (9th Cir. 2003).  Nothing in the SAC establishes that Apple exercised "unbridled control" (or any

8   control) over the imagined legions of bloggers, Tweeters, Yelpers, Facebookers, and journalists who

9   supposedly discussed Apple products.  *See* MTD at 10-11.  Nor does the SAC allege facts plausibly

10  suggesting that third parties disseminated Apple's own marketing messages, at Apple's behest or

11  otherwise.  To the contrary, many of the alleged statements clearly set out (often critical) third-party

12  opinions and commentary.

13      The Court should see Plaintiffs' "buzz marketing" allegations for what they are:  an attempt to

14  base a fraud claim on unidentified statements by unidentified individuals at unspecified times, with no

15  detail regarding the substance of the statements at issue, the circumstances in which they were made,

16  how they can be attributed to Apple, or even how they are false.  If this were sufficient to state a fraud

17  claim, virtually any plaintiff seeking to sue a large corporation in the internet era would be exempt from

18  Rule 9(b) requirements.

19               **c.  The SAC fails to identify false or actionable statements (Factor 3).**

20      In dismissing the prior complaint, the Court required Plaintiffs to attach a "representative

21  sample" of advertisements and to allege, with particularity, what Apple was alleged to have said and

22  how it was false.  MTD Order at 29.  Plaintiffs claim to have done the first, but insist that they are not

23  required to do the second.  They decline to discuss the substance of statements alleged in or attached to

24  their SAC, instead urging that the Court must simply accept their characterization of statements as a

25  "campaign" and their conclusion that the statements were misleading.  But again, labels and

26  characterizations are insufficient to plead a long-term advertising campaign.

27      The supposed advertising campaign here rests in substantial part on general statements

28  regarding "security" and "privacy."  *See* MTD at 11.  But, those statements are not actionable:  they do

                                              5

1    not address "specific and measurable" product characteristics, they cannot be construed as objective

2    representations of fact, and they cannot be proven false.  *Id.* at 11-12.  Plaintiffs offer no response, other

3    than to insist that those statements be counted as part of the campaign anyway.  Opp. at 9-10.  As a

4    matter of law, no reasonable consumer would rely on them; they cannot support a misrepresentation-

5    based claim.  *See Rasmussen v. Apple, Inc.*, 2014 WL 1047091, at *9 (N.D. Cal. Mar. 14, 2014); *In re

6    iPhone 4S Consumer Litig.*, 2013 WL 3829653, at *12.[6]

7            Nor do Plaintiffs allege falsity.  The alleged fact that a third party application uploaded their

8    address books does not establish that every statement mentioning "security" or "privacy" over a five

9    year period was false.  *See Haskins*, 2014 WL 2450996, at *3 (allegation of source code theft did not

10   plead falsity of "[s]tay protected," "detects and removes spyware," and "blocks spyware and worms

11   automatically").  But Plaintiffs offer nothing else.  They allege nothing to suggest that statements of

12   future intent—made before third party applications even existed, acknowledging the security challenges

13   posed by opening Apple's platform to third-party developers—were false at the time they were made.

14   Plaintiffs never say what was false about Apple statements regarding heightened passcode requirements

15   in corporate networks, SSL encryption for iTunes credit card transactions, or username and password

16   requirements for the App Store.  They never explain how Apple Developer Agreement provisions

17   (which actually *prohibited* the alleged conduct) amounted to misrepresentations to consumers—

18   particularly when Plaintiffs elsewhere allege that Apple wanted to keep those agreements out of the

19   public eye.  And while the Opposition mentions the word "sandboxing," it addresses none of the points

20   made in Apple's opening papers:  such alleged statements were few and far between, said nothing to

21   support Plaintiffs' purported belief that address book information could never be accessed by third

22   party applications, and revealed no supporting facts to establish falsity, *i.e.*, that Apple applications

23   were not in fact "sandboxed."  *See* MTD at 12-14.

24           Avoiding any analysis of the alleged falsity of the identified statements they say comprise the

---

25   [6]  Plaintiffs argue, with no supporting authority, that whether these statements are actionable is "up to
     the jury."  Opp. at 10.  But "generalized, vague, and unspecified assertions" are not actionable as a
26   matter of law.  *Rasmussen*, 2014 WL 1047091, at *9.  No reasonable consumer would interpret them as
     a guarantee of perfect security.  *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach
27   Litig.*, 834 F. Supp. 2d 566, 591 (S.D. Tex. 2011), *partially rev'd on other grounds, Lone Star Nat.
     Bank. N.A. v. Heartland Payment Sys., Inc.*, 729 F.3d 421 (5th Cir. 2013); *Minkler v. Apple, Inc.*, 2014
28   WL 4100613, at *7 (N.D. Cal. Aug. 20, 2014).

1   campaign, Plaintiffs ask the Court to consider the "cumulative" impact of alleged representations.  *See*
2   Opp. at 5, 9.  But as a matter of logic, Plaintiffs cannot plead a fraud-based, long-term advertising
3   campaign without identifying actionable or false statements; and they cite no authority suggesting they
4   can.  Moreover  the "cumulative" effect of a campaign cannot be considered without looking at the
5   underlying statements—especially when very few even arguably bear on Plaintiffs' asserted
6   "particularized expectation" of address book security.  Plaintiffs' "cumulative impact" theory is nothing
7   more than a request that the Court credit vague, subjective expectations, untethered to any
8   misrepresentation by Apple.

9        Finally, Plaintiffs contend that Apple's motion to dismiss presents a "jury issue."  Opp. at 10 n.
10  11.  But to be clear, Apple is not asking the Court to make fact determinations.  Rather, it is asking the
11  Court to consider whether the facts pled, if taken as true, would be sufficient to establish the falsity of
12  Apple statements alleged in and attached to the SAC.  To do so, the Court plainly may consider—and
13  indeed must consider—the content of those statements.  It is precisely for this reason that established
14  fraud-pleading standards require plaintiffs to allege specific statements and specific facts establishing
15  falsity.  *See* MTD Order at 23; *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1126 (9th Cir. 2009).

16          **d.  The alleged statements did not comprise a single set of messages (Factor 4).**

17        The alleged advertising campaign fails to set out a "single set of messages."  MTD at 14-15.
18  Plaintiffs argue for a broad interpretation of the words "security" and "privacy," but their own
19  allegations demonstrate that their claims are about *address book security*.  *See* SAC ¶3 (alleging that
20  Apple "consciously and continuously misrepresented its iDevices as secure, and that the personal
21  information contained on iDevices—including, specifically address books—could not be taken without
22  their owners' consent"); *see also id.* ¶18 (citing a "particularized expectation" that Apple devices were
23  secure with respect to address book data).  The SAC's alleged Apple misstatements addressed a variety
24  of unrelated security issues, were directed to different audiences (business users, consumers, regulators
25  and legislators), and originated from speakers with radically different viewpoints.

26        Computer security and consumer privacy have many facets.  To say that the iOS provided secure
27  access to corporate intranets, (SAC Ex. G), or that SSL encryption and iTunes password requirements
28  protected consumer App Store transactions (*id.* Ex. B, ¶76x, 156iii), says nothing about sandboxing

1  applications.  At most, the alleged statements represented a "disparate set of advertising content

2  published in the ordinary course of commerce" MTD Order at 30—not a unified campaign inducing a

3  "particularized expectation" of address book security.[7]

4      **2.  Plaintiffs have not alleged any actionable omission.**

5      **Warranty:**  Under controlling Ninth Circuit law, Apple's disclosure obligations are limited by

6  the terms of applicable warranties.  *See* MTD at 16.  The  SAC still fails to include required factual

7  allegations to support an omissions claim, including when the alleged defects arose, what kind of

8  warranty Apple provided and its terms—all of which this Court's Order called out as missing.  MTD

9  Order at 34.  Plaintiffs' Opposition does not dispute the missing allegations.  Instead, they argue that

10  the Court got it wrong—that they need not plead that defects *manifested* within the warranty period,

11  because the defects were "built into" the devices.  Opp. at 10-11.  But Plaintiffs are wrong: it is well-

12  established that an omissions claim cannot be predicated on merely "latent" defects.  *See* MTD at 17

13  (citing authorities).  Indeed, a contrary rule would effectively "eliminate term limits on warranties,

14  effectively making them perpetual."  *See Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136, 1141 (9th Cir.

15  2012).[8]  Plaintiffs rely on *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913 (N.D. Cal. 2012), but there,

16  plaintiff alleged that the signal meter malfunctioned from the moment he purchased his phone, leading

17  to alleged harm.  Nothing of the kind is alleged here.  Because Plaintiffs have not alleged that Apple's

18  devices failed during the warranty period by permitting uploading of address book data, they cannot

19

20  [7]  Plaintiffs draw a tortured analogy to the tobacco cases, arguing that Apple's position equates to the
argument that statements denying the link between smoking and lung cancer were immunized unless

21  they specifically referenced "tar and chemical additive intake" or nicotine addiction. Opp. at 5. There,
however, medical authorities agreed and the tobacco industry knew (and privately admitted) that

22  smoking caused lung cancer. *See, e.g., Whiteley v. Philip Morris, Inc.,* 117 Cal. App. 4th 635, 644
(2004).  The tobacco companies nevertheless initiated a massive public relations campaign, including

23  forming their own private research institute, to discredit established medical knowledge and deny any
such link. *Id.* at 644-45. The issue was simple:  does smoking cause cancer? Here, in contrast, the

24  alleged statements simply do not address Plaintiffs' "particularized expectation" of address book
security.

25  [8]  Plaintiffs mischaracterize Apple's position and controlling law concerning whether a manufacturer is
obliged to disclose known defects "existing" within the warranty period. Opp. at 10.  As set forth in

26  Apple's opening papers, any disclosure obligation is limited to defects "manifesting" within the
warranty period.  *See* MTD at 16-17.  Plaintiffs' cited authorities agree. *See Elias v. Hewlett-Packard

27  Co.,*950 F. Supp. 2d 1123, 1136 ) (N.D. Cal. 2013) ("Plaintiff may allege fraudulent omissions beyond
safety-related concerns if those omissions led to malfunctions during the warranty period"); *Apodaca v.

28  Whirlpool Corp.*, 2013 WL 6477821, at *7-8 (C.D. Cal. Nov. 8, 2013) (holding, as to Plaintiff
Apodaca, that allegations of malfunction within warranty period adequately pled a duty to disclose).

1  plead a duty to disclose.

2        Similarly, Plaintiffs seek to excuse their failure to plead the warranty terms by arguing that the

3  terms are not relevant on a pleadings motion.  Far from irrelevant, however, the applicable warranty

4  terms establish that Apple had no duty to disclose.  *See* RJN Exs. A-E at ¶7 ( iOS is provided "AS IS"

5  and "WITHOUT WARRANTY OF ANY KIND;" Apple "DISCLAIM[S] ALL WARRANTIES"); *id.*

6  Ex. A at ¶5(c), Exs. B-E at ¶5(d) (Apple disclaims any warranty with respect to "any aspect" of third

7  party apps).  Unable to confront the plain language of the warranties, Plaintiffs protest that they pose

8  "questions of fact."  Opp. at 11.  But Plaintiffs point to no legitimate ambiguity or fact question, and

9  they cite no relevant authority.[9]  To the contrary, courts have dismissed claims on the basis of similar

10  warranty language.  *See, e.g., Long v. Hewlett-Packard Co.*, 2007 WL 2994812, at *6 (N.D. Cal. July

11  27, 2007), *aff'd* 316 Fed. Appx. 585 (9th Cir. 2009) (dismissing breach of warranty claim predicated on

12  extra-contractual statements where warranty stated that "WARRANTIES ARE EXCLUSIVE" and

13  "NO OTHER WARRANTY … IS EXPRESSED OR IMPLIED").  This Court should do the same.

14        **Active Concealment:**  Plaintiffs cannot claim as omissions information that Plaintiffs

15  acknowledge, throughout their SAC, Apple disclosed.  In particular, the SAC identifies numerous Apple

16  disclosures that third party applications could upload or had uploaded address books.  *See* MTD at 5-6.

17  In addition, Apple's Privacy Policy[10] explicitly discloses that third-party apps may collect contact

18  details from their devices.  Request for Judicial Notice ("RJN"), Ex. G at 4; *see also* Dkt. No. 147-1.

19  This is precisely the activity that Plaintiffs claim to have believed *could not* happen.  SAC ¶80 (Apple

20  led public to believe that uploading of address books by third party applications was "impossible");

21  Opp. at 13 ("Apple told consumers that . . .  iDevices were configured such that Apps were not

22

23  ───────────────────

24  [9]  Unlike defendants in *Lima v. Gateway, Inc.*, 710 F. Supp. 2d 1000, 1006 (C.D. Cal. 2010), Apple is
not seeking to assert "warranty defenses."  Rather, to plead the existence of a duty to disclose, *Plaintiffs
must plead* applicable warranty terms.  Order at 33-34; *see also Wilson*, 668 F.3d at 1141

25  (manufacturer's duty to consumers is limited to its warranty obligations).

26  [10] Plaintiffs purport to identify "numerous ambiguities and internal conflicts," in the privacy policy
disclosure but provide a single supposed example.  Opp. at 13.  And contrary to Plaintiffs' proffered
interpretation, nothing in the Privacy Policy limited the word "contact" to user contact information.

27  Plaintiffs also suggest that the Privacy Policy in question issued two months *after* their lawsuit was
filed.  Opp. at 12. n. 14.  To the contrary, the cited Privacy Policy language appeared as early as July

28  2010—a bare two years into the supposed "long-term advertising campaign."  Dkt. No. 147-1 at ¶8.

1  supposed to be able to access other data. . . ").[11]

2         Plaintiffs argue that "a misrepresentation claim is not defeated merely because there was

3  alternative 'information available to the consumer plaintiff.'"  Opp. at 13 (quoting *Tobacco II*).  Here,

4  however, the issue is whether information was "actively concealed"—a conclusion that cannot be

5  reconciled with Plaintiffs' own allegations.  According to Plaintiffs' SAC, the information was both

6  repeatedly disclosed *by Apple itself* and actually *known* to consumers.  *See* SAC ¶34 (alleging that

7  "every representation, promise, hint, or even rumor about Apple's products quickly spreads through

8  traditional and non-traditional media to *virtually the entire population of this country*") (emphasis

9  added).  These facts, as alleged in the SAC, in and of themselves distinguish this case from *Tobacco II*,

10  and defeat any claim of fraudulent concealment.  *See, e.g.*, *Fabozzi v. StubHub, Inc.*, 2012 WL 506330,

11  at *6 (N.D. Cal. Feb. 15, 2012); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009).

12         **Exclusive Knowledge:**  For the same reasons, Plaintiffs fail to plead that Apple had exclusive

13  knowledge.  According to the SAC, newspapers, scientific journals, website pages, and media reports

14  widely and openly discussed the very alleged security flaws that Plaintiffs otherwise claim were hidden.

15  *See, e.g.*, ¶76xxiii, Ex. U, ¶¶77ii, v, Exs. Z, CC, ¶76ix; *see also* CAC ¶219 (media reports regarding

16  Aurora Feint application).  Plaintiff seek to dismiss these reports as "sporadic," Opp. at 14, but

17  according to their "buzz marketing" allegations, such reports would be "invariably reported by

18  thousands of media outlets, dissected by pundits and bloggers … and available on countless websites

19  and social media platforms."  SAC ¶62.  *Plaintiffs cannot have it both ways.*  They are not entitled,

20  under Rule 11, to rely on sweeping allegations of fact to support their advertising campaign claim, insist

21  that every statement referencing "security" or "privacy" somehow bears on their "particularized

22  expectation" of address book security, and contend that such statement would promptly become known

23  to the entire U.S. population; but then, when it suits their purposes, pick which Apple statements they

24  want to rely on, dismiss the remainder as irrelevant (even when they discuss the particular security issue

25  at hand), and contend that they were few and far between or unknown to consumers.

26         **Partial Representations:**  Finally, Plaintiffs claim that Apple made partial disclosures,

27  ─────────────────────
[11] The SAC cites numerous other appropriately qualified Apple statements that made clear consumers

28  could not expect perfect security.  *E.g.* SAC ¶¶ 76iii, 77i, Ex. E; RJN Ex. F at 2.

1    triggering a duty of full disclosure.  Opp. at 14.  Because, however, Plaintiffs fail to adequately identify

2    false or misleading statements, they cannot state an omission claim under this theory.  *See* Order at 33

3    (dismissing "partial disclosure" allegations because Plaintiffs did not adequately identify

4    misrepresentations); *see also* MTD at Section III.A.2.c; *supra.* at Section II.A.2.c.  What is more,

5    Plaintiffs cannot base a "partial representations" omissions claim on statements they never saw, heard or

6    relied upon.  *See, e.g., Mazza v. Am. Honda Motor Co. Inc.*, 666 F.3d 581, 596 (9th Cir. 2012) ("For

7    everyone in the class to have been exposed to the omissions … it is necessary for everyone in the class

8    to have viewed the allegedly misleading advertising").  Because they depend on underlying alleged

9    misrepresentations, these omission claims fail for the same reason as Plaintiffs' affirmative

10   misrepresentation claims.

### B.  Counts 1 and 2 Should Be Dismissed.

#### 1.  Plaintiffs' allegations do not support aiding and abetting liability against Apple.

13          In support of their two aiding and abetting counts against Apple, Plaintiffs offer conclusions—

14   and nothing more—asserting that Apple intentionally helped apps access address books without

15   authorization.  In doing so, Plaintiffs do not dispute that aiding and abetting requires "actual knowledge

16   of the specific primary wrong" and "a conscious decision to participate in tortious activity for the

17   purpose of assisting another in performing a wrongful act."  *See* Apple MTD at 18-19, citing *Howard v.*

18   *Superior Ct.*, 2 Cal. App. 4th 745, 749 (1992) and *In re First Alliance Mortg. Co.*, 471 F.3d 977, 993

19   (9th Cir. 2006); *see* Opp. at 15-16.  But they nevertheless identify no relevant factual allegation in the

20   SAC.  Plaintiffs say that "Apple's iOS Human Interface Guidelines expressly teach and tell App

21   Defendants to take contacts data without seeking permission."  Opp. at 15.  But that assertion ignores

22   the actual content of the HIG, which does not remotely teach taking data without permission.  *See*

23   Apple MTD at 29-30; Reply, *infra* at 19.  Plaintiffs also point to supposedly "harmful APIs."  Opp. at

24   16 (citing ECF No. 478-26 at 12-13, 29).  But again, far from supporting Plaintiffs' assertion that Apple

25   knowingly assisted wrongful conduct, the cited Exhibit merely concludes that certain sandboxing rules

26   were "too loose" because of a "rush to get a product to market."  *Id.*  And while Plaintiffs proclaim that

27   "Apple's reach extends deep into every aspect and phase in the life of each app and over the entire

28   consumer iDevice ecosystem," Opp. at 16, such an unsupported generalization cannot support aiding

and abetting liability.

Further, numerous SAC allegations *contradict* Plaintiffs' "knowing assistance" claims.  For example, the SAC alleges that Apple "should have learned" of App Defendants' wrongful conduct; repeatedly issued policies prohibiting the alleged wrongful conduct; removed apps from the App Store after learning they transmitted user information without permission; and put in place technical safeguards to prevent wrongful conduct.  *See* Apple MTD at 20 and 27-29.  These allegations simply cannot be reconciled with Plaintiffs' assertion of knowing assistance, and the Opposition makes no attempt to do so.  Plaintiffs aiding and abetting claims are not plausible given the facts pled.

Nor do Plaintiffs allege any facts to support their conclusion that Apple was a "joint venturer." Opp. 16-17[12]  A joint venture has three elements: the members must have joint control, share the profits, and each have an ownership interest.  *Simmons v. Ware*, 213 Cal. App. 4th 1035, 1049 (2013). With respect to the third element, Plaintiffs do not allege facts —nor could they—suggesting that Apple and the App Defendants have any co-ownership interest in any entity developing or selling apps (or in each other).  For that reason alone, the joint venture allegations fail.

Plaintiffs likewise fail to allege a profit-sharing relationship.  In *Evans v. Hewlett-Packard Co.,* 2013 WL 5594717 (N.D. Cal. Oct. 10, 2013), Judge Alsup ruled that Plaintiff had not adequately alleged that Hewlett-Packard was in a joint venture relationship with a seller of an app on HP's web-based App Catalogue.

> [P]laintiffs argue that defendants are partners with the third-party content providers because they have a profit-sharing agreement. Plaintiffs cite to *Cnty. of Riverside v. Loma Linda Univ.,* 173 Cal. Rptr. 371, 376 (Ct.App.1981), which held that a joint venture involves "a common business undertaking, an understanding as to the sharing of profits and losses and a right of joint control."  Plaintiffs' allegations do not meet this standard. While defendants do "share" profits with content developers, the proper characterization is not traditional "profit-sharing," but rather a mere commission.

2013 WL 5594717 at *4.  Similarly, these Plaintiffs do not allege any sharing of *profits and losses* but

---

[12]  Footnote 1in Plaintiffs' Opposition—suggesting that Apple has admitted that third party apps are its own products or that it is a co-developer or joint venturer—relies on high-level, out-of-context, post-SAC statements that furnish no support for Plaintiffs' suggested inferences.  In any case, the materials referenced in that footnote are not alleged in the SAC and thus not properly before the Court; allegations first raised in an opposition brief cannot be considered in the context of a motion to dismiss. *See, e.g., Durand v. U.S. Bank Nat'l Ass'n*, 2009 WL 1916915, at *1 n.2 (N.D. Cal. July 1, 2009).

1   rather Apple's charging of a commission for sales through the app store.  SAC ¶ 50.[13]

2       **2. Plaintiffs' arguments do not save their conversion claim.**

3       Plaintiffs argue that conversion can occur even where purely personal information is copied and

4   the property owner retains the original.  App. Opp. at 14-18.  But the authority on which Plaintiffs rely

5   is distinguishable in at least two respects.  First, the "property" at issue in this case consists of *personal*

6   *information*—not, as in the cases cited by Plaintiffs, commercial rights or intellectual property for

7   which there was a specific, expected or existing revenue stream.  *Compare* Apple MTD, cases cited at

8   21 (*e.g., Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at \*17 (N.D. Cal. Mar. 26, 2013)), to App.

9   Opp., cases cited at 16 (*e.g., Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718, 726

10  (9th Cir. 1984)).  Second, Plaintiffs' cited cases are inapposite because the copies at issue in those cases

11  (or right to control whether copies were made) were subject to a *separate property interest* recognized

12  or established by law—in most cases by copyright law—and taking the copy did, in fact, deprive the

13  owner of the copy's commercial value.[14]  In those cases, but not here, plaintiffs lost a defined, existing,

14  and separate property interest.

15      As this Court found with regard to the FAC, Plaintiffs have alleged no facts supporting any

16  reduction in value of Plaintiffs' address books or their contents—or any other injury or damage.  Order

17  at 39-40.  Damage, however, is a necessary element of a conversion claim.  *See, e.g., Kremen v. Cohen*,

18  337 F.3d 1024, 1030 (9th Cir. 2003).  In response, Plaintiffs offer only a convoluted argument that

19  California law affords tort remedies, apart from compensation for damages suffered.  App. Opp. at 18-

---

20  [13]  The SAC's allegations likewise fail to satisfy the first element of a joint venture:  "An essential
21  element of a partnership or joint venture is the right of joint participation in the management and
    control of the business.  *Simmons*, 213 Cal. App. 4th at 1056 (internal quotations omitted).

22  [14]  *See G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Service, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992)
    ("Rasmussen has an ownership interest *in the use of* his STC") (emphasis added); *Flo & Eddie Inc. v.*
23  *Sirius XM Radio Inc.*, 2014 WL 4725382, at \*11 (C.D. Cal. Sept. 22, 2014) (plaintiff had "ownership
    interest in the right to publicly perform its sound recordings"); *J&J Sports Prods., Inc. v. Hernandez*,
24  2013 WL 2468354, at \*1 (N.D. Cal. June 6, 2013) (plaintiff owned "exclusive commercial distribution
    rights"); *J&J Sports Prods., Inc. v. Ceballos*, 2012 WL 4009587, at \*2 (N.D. Cal. Sept. 12, 2012)
25  (plaintiff alleged "ownership of the distribution rights to the Program" defendant copied and
    distributed); *DIRECTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189-90 (E.D. Cal. 2005) ("Plaintiff
26  possesses a right to distribute programming via satellite broadcast"); *Don King Prods./ Kingvision v.*
    *Lovato*, 911 F. Supp. 419, 423 (N.D. Cal. 1995) (plaintiff alleged "exclusive rights to distribute the
27  Program in California").  *G.S. Gladstone v. Hillel*, 203 Cal. App. 3d 977, 989 (1988), did not explicitly
    recognize conversion of copies of jewelry designs, as Plaintiffs argue.  Instead, the opinion reasoned
28  that equity precluded defendant from making copies of jewelry from molds he had stolen.

---

13

19.  The statute on which Plaintiffs rely, however, Civil Code section 3336,[15] does not say that injury is presumed from any conversion, as Plaintiffs imply, *see* App. Opp. at 19; instead, section 3336 offers presumptive *measures* of damage—if there are any damages to measure.  Cal. Civ. Code § 3336.[16]

### 3.  Plaintiffs' judicial estoppel argument fails.

Plaintiffs argue that Apple cannot move to dismiss Plaintiffs' conversion claim, because Apple has (according to Plaintiffs) sued a party for conversion based on non-destructive copying of information.  Opp. at 17.  But Plaintiffs offer in support only vague characterizations of pleadings in an unrelated case, *Apple, Inc. v. Devine*, while failing to provide the Court with (or ask it to take judicial notice of) any part of the record of that case.  *Id.*  Supplemental RJN ("SRJN") Ex. J.  They also fail to establish the doctrine's requisite elements.  As Plaintiffs' own cited authority prescribes, judicial estoppel requires that "the party has succeeded in persuading a court to accept an earlier position."  *See* Opp. at 17 (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).  But that did not occur here. The docket in the *Devine* action shows that the case was stayed shortly after filing due to a related criminal prosecution of the defendant, and that no substantive ruling by the Court has issued in the more than four years since the case was filed.  Plaintiffs' argument is accordingly a non-starter.  SRJN Ex. K.

In all events, Apple has taken no position in this case that is "clearly inconsistent"—or inconsistent in any respect—with its position in the other (prior) case.  A complaint for conversion of Apple intellectual property (trade secrets, including product designs and pricing and forecasting information, which defendant allegedly sold for more than a million dollars) simply has no bearing on the argument at issue here:  whether *personal* information can be converted absent facts pled to show

---

[15]  The statute says:  "The detriment caused by the wrongful conversion of personal property is presumed to be:  First–The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and Second–A fair compensation for the time and money properly expended in pursuit of the property."  Cal. Civ. Code § 3336.

[16]  In *Brannian v. City of San Diego*, 364 F. Supp. 2d 1187, 1193 (S.D. Cal. 2005), App. Opp. at 19, the court found that plaintiffs sufficiently alleged injury when they stated they would have bought insurance but were prevented from doing so by defendant's policies, and that injury gave plaintiffs standing to seek nominal damages.  That case cannot be read in the reverse to conclude that the pursuit of nominal damages creates injury or somehow confers standing.  *Id.* at 1193-94.

14

1    injury or damages.  Judicial estoppel has no application.[17]

2          **4.  Plaintiffs are not entitled to injunctive relief on the facts alleged.**

3          Plaintiffs' efforts to obtain injunctive relief suffer from the same familiar problem:  The SAC

4    offers only conclusions of future harm, alleging no facts to support the conclusion that Apple is

5    presently facilitating unauthorized access to Plaintiffs' address books, or is about to do so.  Instead, the

6    "ongoing conduct" amounts only to allegations that Apple continues to operate the App Store and

7    provide tools to developers.  Opp. at 18-19 ("Apple *still* assists App Defendants to design their Apps,

8    *still* provides APIs for accessing and uploading address books").  Especially given their prior

9    allegations that Apple fixed supposed privacy protection gaps, CAC ¶ 120, Plaintiffs' conclusion that

10   "[t]here is clearly still a substantial likelihood of the same misconduct continuing to occur in the

11   absence of injunctive relief" lacks all support.  Moreover, the SAC fails to allege Plaintiffs' intent to

12   buy more Apple devices, instead alleging they *would not have purchased* them if they knew about the

13   purported unauthorized address book access.  SAC ¶ 278.  Plaintiffs' Opposition arguments, going to

14   whether Plaintiffs could credibly support an allegation of future purchase—if Plaintiffs had made such

15   allegation—are beside the point.  Because Plaintiffs have never alleged that they will likely buy more

16   of the devices at issue, their injunctive relief claims fail.

17         **C.  The CDA Bars All Claims That Are Not Based on an Affirmative Misrepresentation.**

18              **1.  The CDA provides robust immunity and applies at the pleading stage.**

19         Plaintiffs insist that the CDA is not an immunity statute but, rather, a narrow affirmative

20   defense that should not be adjudicated on a motion to dismiss.  Plaintiffs rely primarily on *Barnes v.*

21   *Yahoo!, Inc.,* 570 F.3d 1096, 1100 (9th Cir. 2009) and *Doctor's Assocs. Inc. v. QIP Holders, LLP*, 06-

22   cv-1710 (D. Conn. Apr. 19, 2007).  Neither supports Plaintiffs' position.

23         As an initial matter, *Doctor's Assocs.* is a two-page, unpublished Connecticut district court

24   ───────────────
[17]  With respect to Plaintiffs' intrusion claim, Apple noted in its MTD that, if the Court were inclined to
25   revisit its sufficiency, additional authority existed supporting the conclusion that the alleged use of
     Plaintiffs' address books is not sufficiently offensive to state a claim.  MTD at n. 17.  There is yet
26   further recent authority supporting that proposition.  *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041
     (N.D. Cal. 2014). (holding on motion to dismiss that alleged unauthorized access to user emails does
27   not give rise to a privacy violation; "there is no legally protected privacy interest and reasonable
     expectation of privacy in emails as a general matter"; California law protects only "confidential" or
28   "sensitive" email content, such as financial information) (citing cases).

order applying the now outdated, pre-*Twombly* pleading standard of *Conley v. Gibson*, 355 U.S. 41 (1957). It does not undercut the weight of other, more recent authority—including the prior Order of this Court—establishing that the CDA provides "robust" protection against claims within its scope, (Order at 19), which should be, and regularly are, dismissed at the earliest possible stage.[18] Notably, in close CDA analyses, the Ninth Circuit has commanded that courts err on the side of immunity. *See Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1167 (9th Cir. 2008). *Barnes* is not to the contrary – in fact, the Ninth Circuit *affirmed* the district court's CDA-based dismissal, on a Rule 12(b)(6) motion, of one of the plaintiff's two claims. *Barnes,* 570 F.3d at 1105. Nothing in Barnes establishes that the CDA should not be applied at the pleading stage.

Nor does *Barnes* narrow the scope of the CDA in any way relevant to this case. Unlike the defendant in *Barnes*, 570 F.3d at 1100, Apple never has claimed that the CDA provides "general immunity from liability" for third-party content. Rather, Apple invokes the immunity provided by the statute's language and the decisional authority applying that language.

**2. Apple has not waived its CDA defenses.**

Plaintiffs erroneously contend that Apple has "waived any CDA defense." *See* Opp. at 27. Again, they rely on *Barnes*, but that case involved a disturbing, unusual set of facts. Ms. Barnes' former boyfriend posted on Yahoo a fake profile of the plaintiff in which she appeared to solicit sex. *Id.* at 1098. After repeated pleas, Yahoo allegedly promised to remove the fake profile but failed to do so. On those facts, the Ninth Circuit allowed a claim of promissory estoppel to proceed. *Id.* at 1108.

*Barnes* is of no assistance to these Plaintiffs. Unlike the *Barnes* plaintiffs, they do not allege promissory estoppel or any other contract-based claim. Nor can they now recast their SAC to include one. *See Klayman v. Zuckerberg*, 910 F. Supp. 2d 314, 320 (D.D.C. 2012) (rejecting an attempt to rely on *Barnes* contract-based rationale when raised for the first time in opposition to motion to dismiss).

---

[18] CDA provides "*immunity from suit* rather than a mere defense to liability'" – an immunity that would be "effectively lost" if it could not be decided at the Rule 12(b)(6) stage. *Nemet Chevrolet v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 406-8, 417 (6th Cir. 2014) (overturning district court's denial of CDA dismissal and criticizing failure to address it early in the proceedings). *See also, e.g.*, *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1105 (9th Cir. 2009); *Chicago Lawyers' Comm. for Civil Rights v. Craigslist, Inc.*, 519 F.3d 666, 671-72 (7th Cir. 2008); *Levitt v. Yelp! Inc.*, 2011 WL 5079526, at *6 (N.D. Cal. Oct. 26, 2011), *aff'd* 765 F.3d 1123 (9th Cir. 2014); *Evans*, 2013 WL 5594717, at *3.

16

What is more, *Barnes* actually affirmed dismissal under the CDA of a second claim based on the allegation that Yahoo negligently failed to take down objectionable content after having undertaken to do so.  570 F.3d at 1102-1103.  The *Barnes* court observed, rightly, that taking down content is quintessential "publisher" conduct immunized under the CDA, and plaintiff could not evade the CDA by alleging Yahoo undertook to do something (remove or edit content) and did it badly.  *Id.*

The lesson of *Barnes* is clear.  An undertaking to provide protection against apps taking data, without more, is insufficient.  Because Plaintiffs have never identified an enforceable promise to any identified plaintiff as the "counter-party to a contract"[19] or alleged anything else to establish a waiver of CDA defenses, their claims are barred by the CDA.

### 3. Plaintiffs fail to plead the "offending content" allegedly co-created by Apple or how Apple "required" or "forced" its creation.

To establish that Apple is a non-immunized "content provider," Plaintiffs must plead facts, consistent with *Twombly* and *Iqbal* plausibility requirements, that Apple either developed the specific "offending content" or "required" the offending third party content, per the narrow exception set forth in *Roommates*, 521 F.3d at 1167.  Plaintiffs plead no such facts.[20]

### a. Plaintiffs allege no facts to show that Apple developed software that took their data.

Plaintiffs fail to allege facts supporting an inference that *Apple* developed any "offending content," *i.e.* the specific (but unidentified) functionality that supposedly took Plaintiffs' data without permission.  Instead, the SAC concludes, with no supporting factual allegations, that Apple:

---

[19]  *Barnes* is distinguishable for another reason: Yahoo relied only on section 230(c)(1), which relates to "speaker" liability, but not on section 230(c)(2), which as the court noted:

> provides an additional shield from liability, but only for "any action voluntarily taken in good faith to restrict access to or availability of material that the provider ... considers to be obscene ... or otherwise objectionable. . . . [E]ven those who cannot take advantage of subsection (c)(1), perhaps because they developed, even in part, the content at issue, can take advantage of subsection (c)(2). . . . "

*Id.* at 1105 (citations omitted).  Here, Apple asserted both sections 230(c)(1) <u>and</u> (c)(2); this Court, moreover, appears to have relied on (c)(2) as the basis for footnote 12 of its Order, which found that certain Apple activities related to screening apps and providing software tools are subject to the CDA.

[20]  *See Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1196 (N.D. Cal. 2009) ("[T]he Court must examine the pleading to determine whether Plaintiff alleges mechanisms that plausibly suggest the collaboration, control, or compulsion that [plaintiff] ascribes to [developer's] role in the creation of the offending [content].").

17

is a comarketer, co-seller, worldwide-agent for, co-venturer in, and co-developer of each App in this suit and is chiefly responsible for the existence of and instructing on the use of the harmful APIs that enable non-alerted App access to users' address books."

Opp. at 25. The SAC does not, however, identify any such APIs (*see* discussion supra at 11-12) or any other code developed or co-developed by Apple that takes data without permissions. Nor does it allege facts to suggest that Apple instructed the App Defendants how to use any API to steal data. At most, the SAC refers to APIs (once) as only one of many neutral tools—"editing software, simulators, forums, guides, design and approval criteria, code, code resources and libraries, APIs, performance enhancing tools, testing software . . ."—provided as a matter of course to developers. SAC ¶ 45. This Court has already found that providing such tools is protected under the CDA. Order at 22-23, n. 12.

Further, the allegation that Apple and the App Defendants are co-venturers and co-developers is a bare conclusion contradicted by other SAC allegations. *Supra* at 12. For example, while asserting broadly that Apple somehow *helped create* alleged data-stealing functionality, the SAC simultaneously alleges that Apple "learned or should have learned" of data theft functionality *after* the apps had been created and submitted to Apple for review. SAC ¶¶ 93, 99, 104, 110, 114, 118, 122, 126, 130, 134. The conclusion that Apple *created* illegal content cannot be squared with Plaintiffs' own allegations, all made subject to Rule 11.

### b. Plaintiffs do not allege that Apple required App Defendants to produce offending content.

Plaintiffs' allegations also fall short of pleading that Apple *required* apps developers to employ offending content. Plaintiffs identify a single alleged Apple contribution to the alleged scheme to steal consumer contacts data: Apple's Human Interface Guidelines ("HIG"). But Plaintiffs once again fail to explain how the actual words of the HIG (or any other Apple document or policy) required or forced the App Defendants to collect Plaintiffs' data and transfer it off a device without first seeking permission. *Roommates*, 521 F.3d at 1172 ("Roommate's website is designed to force subscribers to divulge protected characteristics and discriminatory preferences. . . ."); *Jones*, 755 F.3d at 410-414 (rejecting district court's less rigorous *encouragement* standard in favor of the *requirement* test adopted in *Roommates*).

Although Plaintiffs *argue* that "Apple's iOS Human Interface Guidelines expressly teach App

1   Defendants to take contacts data without permission or notice" (Opp. at 24), they do not *identify* a single

2   line in the HIG that condones, let alone *requires* taking data without permission. Instead, Plaintiffs

3   insist that the Court must accept their characterization of what the HIG says. Opp. at 25. But the

4   opposite is true. The Court need not accept the truth of allegations that are contradicted by documents

5   referenced in the SAC. *See Sprewell v. Golden State Warriors,* 231 F.3d 520, 527-528 (9th Cir. 2000);

6   *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011) (citing *Ashcroft v. Iqbal*,

7   556 U.S. 662 (2009)).

8        Plaintiffs' reliance on *Swift v. Zynga Game Network, Inc.*, 2010 WL 4569889 (N.D. Cal. Nov. 3,

9   2010) is likewise misplaced. The *Zynga* plaintiff alleged what Plaintiffs here fail to: facts showing the

10  defendant created specifically identified "offensive content," along with a plausible explanation for its

11  participation in the allegedly fraudulent scheme. The *Zynga* plaintiff alleged that Zynga was

12  responsible for the basic scheme by which users of Zynga's on-line games could earn "virtual currency"

13  that advanced them in the game—either by using real dollars to purchase virtual currency, or by taking

14  advantage of "special offers" embedded in the games, which made fraudulent charges to users' credit

15  cards. *Zynga*, 2010 WL 4569889, at *5. Plaintiffs alleged that Zynga provided the design, layout, and

16  format of those special offers and profited directly from the scheme itself. *Id.* In contrast, Plaintiffs

17  here never identify the specific "offending content" that Apple supposedly provided, do not allege

18  factually how Apple facilitated, let alone "required" the App Defendants' to make apps that stole data,

19  and provide no plausible explanation for how Apple profited in any way from conduct that violated

20  Apple's express policies and broke Apples' technical protections. CAC ¶¶ 204, 335, 343.

21       **4.   The CDA applies to plaintiffs' "omission" claims.**

22       Plaintiffs cite no authority supporting their contention that the CDA does not apply to

23  omissions-based claims. In fact, other courts have found that Section 230 shields website operators

24  from analogous "failure to warn" claims, and other courts have cautioned against allowing plaintiffs to

25  avoid the CDA by recasting their claims as a failure to disclose. *See, e.g.*, *Gentry v. eBay, Inc.*, 99 Cal.

26  App. 4th 816, 821 (2002) (eBay immune from liability for failure to disclose risks associated with sales

27  of fake memorabilia); *see also Inman v. Technicolor USA, Inc.*, No. C 11-666, 2011 WL 5829024, at

28  *2 (W.D. Pa. Nov. 18, 2011); *Goddard v. Google*, 640 F.Supp.2d at 1196. Ignoring this line of cases,

19

1    Plaintiffs merely assert that Apple is not immune on failure to warn claims, Opp. at 25, and

2    immediately segue into allegations concerning supposed Apple misrepresentations.  Those are not

3    omissions and do not preclude CDA immunity for omissions.

4    **III.     CONCLUSION**

5           For the foregoing reasons, the SAC's claims against Apple should be dismissed with prejudice.

6

7    Dated:   October 29, 2014                    HOGAN LOVELLS US LLP

8                                                 By: */s/ Robert B. Hawk*
                                                  Robert B. Hawk
9                                                 Attorneys for Defendant APPLE INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEF. APPLE'S REPLY ISO MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT
CASE NO. 13-CV-00453-JST