Timothy L. Alger, Bar No. 160303
TAlger@perkinscoie.com
Julie E. Schwartz, Bar No. 260624
JSchwartz@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350

Amanda J. Beane (*pro hac vice*)
ABeane@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Defendant
Twitter, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARC OPPERMAN, et al., <br><br> Plaintiff, <br><br> v. <br><br> PATH, INC., et a., <br><br> Defendant. | Case No. 13-cv-00453-JST <br><br> TWITTER, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT <br><br> Date: December 2, 2014 <br> Time: 2:00 p.m. <br> Judge: Hon. Jon S. Tigar |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................... 1
II. ARGUMENT ............................................................................................................................ 3
    A. Plaintiffs' Intrusion Claim Fails Because Twitter Did Not Invade Their Interest in Solitude or Seclusion ................................................................................ 3
        1. Use of Lawfully Accessed Data is Not an Intrusion on Seclusion ............. 3
        2. In Light of Their Consent to the "Find Your Friends" Feature, Plaintiffs Cannot Plausibly Allege They Had a Privacy Expectation for their Address Books That Excluded Twitter ......................................... 4
        3. Plaintiffs Are Unable to Plausibly Allege Twitter Copied Address Book Data for Twitter's Own Use ................................................................ 6
        4. Plaintiffs Cannot Plausibly Plead That Twitter, by Using Its Servers to Match Plaintiffs With Other Twitter Users, Committed an Egregious Breach of Social Norms ...................................................... 6
    B. Plaintiffs' Conversion Claim Fails Because There Has Been No Interference With Any Exclusive Right to Property ............................................... 7
        1. Plaintiffs Lack Standing for Conversion .................................................... 7
        2. Plaintiffs Are Unable to Allege a Defined Property Interest That Can Be Exclusively Controlled, and Which They Have a Claim of Exclusivity ................................................................................................ 9
        3. No "Wrongful Disposition" Occurred ...................................................... 10
III. CONCLUSION ...................................................................................................................... 11

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*American Master Lease LLC v. Idana Partners, Ltd.*,
225 Cal. App. 4th 1451 (2014).................................................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................................5

*Ault v. Hustler Magazine*,
860 F.2d 877 (9th Cir. 1988).....................................................................................................3

*Bank of New York v. Fremont Gen. Corp.*,
523 F.3d 902 (9th Cir. 2008)...................................................................................................10

*Baugh v. CBS, Inc.*,
828 F. Supp. 745 (N.D. Cal 1993) ............................................................................................4

*Brannian v. City of San Diego*,
364 F. Supp. 2d 1187 (S.D. Cal. 2005) ....................................................................................8

*Burlesci v. Petersen*,
68 Cal. App. 4th 1062 (1998)...................................................................................................8

*Clapper v. Amnesty Intern. USA*,
133 S. Ct. 1138 (2013) ..............................................................................................................9

*Cramer v. Consolidated Freightways, Inc.*,
209 F.3d 1122 (9th Cir. 2000)...................................................................................................7

*Cramer v. Skinner*,
931 F.2d 1020 (5th Cir. 1991)...................................................................................................8

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ..................................................................................................................8

*DIRECTV, Inc. v. Pahnke*,
405 F. Supp. 2d 1182 (E.D. Cal. 2005) ....................................................................................9

*Don King Productions/Kingvision v. Lovato*,
911 F. Supp. 419 (N.D. Cal. 1995) ...........................................................................................9

*Flo & Eddie Inc. v. Sirius XM Radio Inc.*,
No. CV 13-5693 PSG RZX, 2014 WL 4725382 (C.D. Cal. Sept. 22, 2014) ...........................9

*G.S. Rasmussen Assoc. Inc. v. Kalitta Flying Service, Inc.*,
958 F.2d 896 (9th Cir. 1992)..............................................................................................4, 9

*Gladstone v. Hillel*,
    203 Cal. App. 3d 977 (1988) ............................................................................................... 8, 9

*Glus v. Brooklyn Eastern Dist. Terminal*,
    359 U.S. 231 (1959) ................................................................................................................ 8

*Hartford Financial Corp. v. Burns*,
    96 Cal. App. 3d 591 (1979) .................................................................................................. 10

*Hernandez v. Hillsides*,
    47 Cal. 4th 272 (2009) ......................................................................................................... 2, 7

*Hill v. Nat'l Collegiate Athletic Assn.*,
    7 Cal. 4th 1 (1994) .................................................................................................................. 6

*Igauye v. Howard*,
    114 Cal. App. 2d 122 (1952) ................................................................................................ 10

*In re Google, Inc. Privacy Policy Litig.*,
    No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ...................................... 8

*In re iPhone Application Litig.*,
    6 F. Supp. 3d 1004, 1014 ........................................................................................................ 8

*In re Yahoo Mail Litig.*,
    No. 5:13-cv-04980, 2014 WL 3962824 (N.D. Cal. Aug. 12, 2014) ................................ passim

*Kramer v. Boynton*,
    258 Cal. App. 2d 171 (1968) .................................................................................................. 8

*Kremen. A&M Records v. Heilman*,
    75 Cal. App. 3d 554 (1977) .................................................................................................... 9

*Kremen v. Cohen*,
    337 F.3d 1024 (9th Cir. 2003) ...................................................................................... 2, 9, 10

*Leadsinger, Inc. v BMG Music Publ'g*,
    512 F.3d 522 (9th Cir. 2008) ................................................................................................ 11

*Lone Ranger Television, Inc. v. Program Radio Corp.*,
    740 F.2d 718 (9th Cir. 1984) .................................................................................................. 9

*Low v. LinkedIn Corp.*,
    No. 11–CV–01468–LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) .............................. 8

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................................ 9

*Marich v. MGM/UA Telecommunications*,
    113 Cal. App. 4th 415 (2003) ............................................................................................. 1, 3

| | |
|---|---|
| *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.*, 306 F.3d 806 (9th Cir. 2002) | 3 |
| *Merrimon v. Unum Life Ins. Co. of America*, 758 F.3d 46 (1st Cir. 2014) | 8 |
| *Opperman v. Path, Inc.*, No. 13-cv-00453-JST, 2014 WL 1973378 (N.D. Cal. May 14, 2014) | 6, 7, 8 |
| *Pearson v. Dodd*, 410 F.2d 701 (D.C. Cir. 1969) | 3, 4 |
| *Root v. Lake Shore & M.S. Ry. Co.*, 105 U.S. 189 (1881) | 8 |
| *Shulman v. Group W. Productions, Inc.*, 18 Cal. 4th 200 (1998) | 3, 7 |
| *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) | 11 |

**STATUTES**

Cal. Civ. Code § 980(a)(2) ... 10

Cal. Civ. Code § 3336 ... 2, 8

**OTHER AUTHORITIES**

Restatement (Second) Torts (1977), § 672B, cmt. a ... 3

# I. INTRODUCTION

Plaintiffs attempt to allege two claims against Twitter – intrusion on seclusion and conversion – but both fail because they lack facts establishing an invasion of their privacy interests (necessary for intrusion) by Twitter, or an impairment of their property interests (necessary for conversion).

Plaintiffs hope to keep their claims alive by conclusorily lumping all the App Developer Defendants together in a consolidated opposition. But they cannot plead any tort relating to Twitter because of Plaintiffs' *express grant of access* to Twitter. The Court should look at the allegations against each of the App Developers separately.

Plaintiffs admit in the SCAC and in their Opposition that they gave Twitter permission to access their address book information to help them find friends already using Twitter. *Pursuant to that permission*, Twitter uploaded address book data to its servers to look for matches in its database of other users. All this is uncontested, and Plaintiffs admit they have no other facts to support their claims.

*Intrusion:* Plaintiffs contend that Twitter only had permission to access their address book information, not *copy* it. But, even if we accept Plaintiffs' allegations as true, post-access copying or retention does not constitute an invasive act that gives rise to an intrusion on seclusion claim. *See Marich v. MGM/UA Telecommunications*, 113 Cal. App. 4th 415, 419-420 (2003) (holding that post-access modifications to a video are not intrusion). Plaintiffs acknowledge that the alleged wrongful act by Twitter is the alleged copying. (Plaintiffs' Opposition to App Defendants' Motion to Dismiss Second Consolidated Amended Complaint ("Opp'n") [Dkt. No. 508] at 7.) This ends their lawsuit against Twitter because the intrusion tort does not offer a remedy for actions that occur after an invasion; rather, it is designed to deter and punish the invasion itself.

Further, Plaintiffs contracted with Twitter to share their address books for the purpose of matching their contact information with other Twitter users, so they cannot have expected their address books to remain confidential as to Twitter. Twitter offered an *optional service*, and Plaintiffs could have declined to use it, while still fully enjoying the Twitter mobile application.

Plaintiffs expressly agreed to let Twitter conduct a "scan" to find friends, and were informed of this in the application's terms of service, however – and uploading data for comparison with other data on central servers is common sense. *See In re Yahoo Mail Litig.*, No. 5:13-cv-04980, 2014 WL 3962824 (N.D. Cal. Aug. 12, 2014) (holding that Yahoo could upload and store emails based on consent to "scan and analyze" those emails).

Moreover, Twitter's alleged actions were not "highly offensive" as a matter of law because there can be no invasion for "misguided" or "excusable" intrusions, or where Twitter's "motives and intentions" were simply to provide a requested service. *Hernandez v. Hillsides*, 47 Cal. 4th 272, 295 (2009) (employer did not invade employees' privacy by videotaping offices when employer's motive was to identify improper computer use).

*Conversion:* Plaintiffs lack standing to assert a conversion claim because, as this Court has already found, they have not alleged an injury-in-fact. Plaintiffs cannot cure that defect by pointing to section 3336 of the Civil Code, which creates a presumption for the amount of damages for conversion and does nothing to supplant the standing analysis. (Opp'n at 15-20.)

Nor have Plaintiffs established a sufficient property interest to sustain a conversion claim for intangible property, as they completely ignore the controlling test set forth in *Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003) (establishing a three-part test for conversion claims regarding intangible property). Conversion can occur only where the defendant injures the plaintiff by interfering with or depriving the plaintiff of property controlled to the exclusion of all others. Plaintiffs are unable to plead such a property interest, nor can they plead an impairment of that interest by Twitter.

Finally, conversion requires a wrongful act, and Plaintiffs have alleged nothing *wrongful* here. *Id.* Twitter's actions here were pursuant to Plaintiffs' consent and in furtherance of a requested service; Plaintiffs have pled nothing to the contrary.

## II. ARGUMENT

**A. Plaintiffs' Intrusion Claim Fails Because Twitter Did Not Invade Their Interest in Solitude or Seclusion.**

### 1. Use of Lawfully Accessed Data is Not an Intrusion on Seclusion.

Plaintiffs do not dispute that Twitter was given permission to access their address books. (Opp'n at 11.) This is fatal to their intrusion claim because intrusion requires nonconsensual "penetrat[ion] [of] some zone of physical or sensory privacy" or "unwanted access to data about" the plaintiff. *Shulman v. Group W. Productions, Inc.*, 18 Cal. 4th 200, 232 (1998); *see also* Restatement (Second) Torts (1977), § 672B, cmt. a (intrusion "consists solely of an intentional interference with [plaintiff's] interest in solitude or seclusion"). Subsequent nonconsensual retention or use of data to which a defendant properly had access might be unlawful under *other* legal theories, but it is not intrusion on seclusion. The Court of Appeal explained this in *Marich*, 113 Cal. App. 4th 415, where subsequent modifications to an illicitly obtained recording were not separate invasions. *See also Pearson v. Dodd*, 410 F.2d 701, 705-06 (D.C. Cir. 1969) (distinguishing intrusion from publication injury).

Here, Plaintiffs' entire claim against Twitter in the SCAC is alleged *nonconsensual copying*. But this is not actionable as intrusion because it is not an invasive act – as established in cases involving much more egregious alleged facts. *Marich*, 113 Cal. App. 4th at 432 ("What a defendant does with surreptitious recording after obtaining it may affect the measure of damages but it is not a new obtaining"); *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.*, 306 F.3d 806, 818 (9th Cir. 2002) (rejecting intrusion claim based on surreptitious tape recording because plaintiff freely shared information with undercover reporters).[1] The central question for an intrusion claim is whether Twitter had the right of access to the address book data pursuant to consent – and it indisputably did. *See Ault v. Hustler Magazine,* 860 F.2d 877, 882-83 (9th Cir. 1988) (consent to be photographed is a complete defense to intrusion claim based on subsequent

---

[1] Plaintiffs claim that *Med. Lab. Mgmt.* is inapposite because it is based on Arizona law, which is less restrictive than California law, but in fact the Ninth Circuit held that "even if we assume that the Arizona Supreme Court would embrace an interest in limited privacy as broad as that articulated by the California Supreme Court, we still conclude that as a matter of law [plaintiff's] privacy expectation was not reasonable." 306 F.3d at 816.

publication); *Baugh v. CBS, Inc.,* 828 F. Supp. 745, 756-57 (N.D. Cal 1993) (consent is absolute defense to intrusion and trespass claims, even where imperfectly obtained).

The Twitter mobile application's "Find Your Friends" feature was disclosed to Plaintiffs and they freely and expressly elected to use it. Plaintiffs could have declined to give Twitter access to their address books, and still used the Twitter application to communicate with friends and the world at large.

Plaintiffs are unable to respond to these facts. Instead, they claim that the motions to dismiss filed by the App Developer Defendants generally "blur the lines between a business and its product," and any user consent was limited to the operation of particular applications on their mobile devices. They assert that their consent to a "scan" consisted solely of permission for an "on device look," not transfer to "corporate headquarters." (Opp'n at 11.) But *where* the data went or resides (or is even used) is irrelevant for an intrusion claim, which offers a remedy only for a nonconsensual invasion. *Pearson*, 410 F.2d at 705-06.

Further, even if we assume such allegations could make out an intrusion claim, Plaintiffs allege no facts that support any contention that *Twitter* went beyond the disclosed description of its optional friend-finding feature, or that *Twitter* "uploaded Plaintiffs' private data to others" or that anyone at *Twitter's* "corporate headquarters" accessed or used any address book data. (Opp'n at 11.)

Plaintiffs' attempted analogy to Microsoft gobbling up "every Word document or Excel spreadsheet" is ridiculous, because a user of Word or Excel is merely employing software to create and manipulate documents, and the user does not ask Word or Excel to compare the user's documents against documents belonging to other people. Twitter's "Find Your Friends" feature is a *service* that Twitter offers users which, by its nature, compares two data sets – with express consent. Users *ask* Twitter to review and match data.

**2. In Light of Their Consent to the "Find Your Friends" Feature, Plaintiffs Cannot Plausibly Allege They Had a Privacy Expectation for their Address Books That Excluded Twitter.**

Plaintiffs also do not dispute that consent vitiates any reasonable expectation of privacy, but argue that they consented only to an "on device look," and that "permission to look [is not]

-4-	TWITTER, INC.'S REPLY IN SUPPORT OF
MOTION TO DISMISS (13-cv-00453-JST)

consent to take." (Opp'n at 10-12.)  Of course, Twitter did not "take" anything; it is only alleged to have copied address book information for the purpose of matching Twitter users.  Plaintiffs' address books remained available to Plaintiffs, without impediment, on their mobile devices.  Plaintiffs entered into an agreement with Twitter in which they gave up a right to contend their address books were confidential to the exclusion of Twitter's review of the data for matching their contacts with existing Twitter users.

Twitter obtained consent to "scan [Plaintiffs'] contacts for people you already know on Twitter" (SCAC ¶ 124), and as Judge Koh explained in *Yahoo Mail*, permission to review user data necessarily constitutes transfer to and use of central computer servers.  2014 WL 3962824, at *9 (holding that it is "implausible" that users who agreed to let Yahoo "scan and analyze" emails "did not . . . realize that in order to engage in analysis of emails, Yahoo would have to store the emails somewhere on its servers").  Judge Koh made this statement in considering a Wiretap Act claim, but its logic applies here:  in order for a provider such as Twitter to match a user's contacts with Twitter's database of millions of other users, it "ha[s] to store the [information] somewhere on its servers."[2]  No reasonable user would believe that Twitter, in looking for the user's friends, is going to stuff an elephant into a purse.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (dismissal is proper where plaintiff has failed to plead enough facts "to state a claim for relief that is plausible on its face;" mere conclusions are "not entitled to the assumption of truth").

Plaintiffs' assertion that Twitter only was granted permission to somehow engage in matching of millions of users by conducting an "on device look" is also implausible given Twitter's Terms of Service.  The Terms explain that users may share, and Twitter may collect, information from "your address book so that we can help you find Twitter users you know." (*See* Declaration of Sung Hu Kim ("Kim Decl."), ¶¶ 9-11, Exs. D-I, K-P.)   All Twitter users, including Plaintiffs, must agree to Twitter's Terms before using Twitter.  (*Id*. ¶¶ 2-4, Exs. A-B.)  Whether described as consent or notice, Twitter informed Plaintiffs that it would upload address book data, and Plaintiffs could not reasonably expect otherwise.

---

[2] Plaintiffs argue that the court should not consider Twitter's necessity argument on a motion to dismiss (Opp'n at 8), overlooking the fact that Judge Koh's finding also came on a motion to dismiss.

### 3. Plaintiffs Are Unable to Plausibly Allege Twitter Copied Address Book Data for Twitter's Own Use.

Plaintiffs argue that the Court already adjudicated the consent issue, but the Court's prior Order found that consent may be invalid if the language does not also disclose that "the app would transmit a copy of the address book to Defendants *for their own use*." *See Opperman v. Path, Inc.*, No. 13-cv-00453-JST, 2014 WL 1973378, at *44 (N.D. Cal. May 14, 2014) (emphasis added). This Court's decision on consent hinged on Plaintiffs' contention that the App Developers uploaded content for their own use. *Id.* ("Plaintiffs allege that they would not have consented had they known that their apps would not only scan their address books to determine whether their friends were using the same app, but then upload the address books to the app developer *for other purposes*") (emphasis added).

The SCAC contains no allegation that Twitter copied data from Plaintiffs' address books for its own use. Indeed, it contains no allegation that Twitter copied data for any purpose other than matching Plaintiffs with their friends on Twitter. Plaintiffs further admit they have no idea whether Twitter did anything with any address book data other than to provide the service requested.[3] (Opp'n at 3, 7.) In *Yahoo Mail*, Judge Koh rejected a similarly speculative claim – namely, that plaintiffs did not consent to some unspecified, vaguely-alleged use – noting that "Plaintiffs do not allege what they believe Yahoo was planning to do with the email content in the future separate and apart from the various uses of which this Court has already found users were on notice[.]" 2014 WL 3962824, at *10. The same is true here: Plaintiffs cannot offer any facts supporting their bald assertion that Twitter exceeded any consent. That consent created a relationship between Plaintiffs and Twitter that gave Twitter access to Plaintiffs' address books.

### 4. Plaintiffs Cannot Plausibly Plead That Twitter, by Using Its Servers to Match Plaintiffs With Other Twitter Users, Committed an Egregious Breach of Social Norms.

An intrusion is only actionable if it is "highly offensive," which means an "egregious breach of social norms." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26, 37 (1994).

---

[3] Plaintiffs refer to a *Los Angeles Times* article that they claim includes an admission that Twitter "used" data for other purposes (Opp'n at 4, n.8), but which contains no such admission.

Courts can decide this issue as a matter of law and must consider "all of the surrounding circumstances, including the 'degree and setting' of the intrusion and 'the intruder's 'motives and objectives.'" *Hernandez*, 47 Cal. 4th at 295; *see also Cramer v. Consolidated Freightways, Inc.*, 209 F.3d 1122, 1131 (9th Cir. 2000) ("privacy rights can be altered or waived under California law and must be considered in context").

Plaintiffs ask the Court to ignore this legal question and instead leave the issue entirely to the jury. (Opp'n at 7). But this element presents a question of law because there are no disputed facts: Twitter told Plaintiffs it would scan their contacts to find friends, Plaintiffs accepted, and Twitter allegedly uploaded their contacts in order to do so. (SCAC ¶ 124.) Plaintiffs have alleged no facts against Twitter to suggest unlawful use of the address book data, acts that exceeded the scope of consent, or any improper "motives and objectives."[4]

Examples of highly offensive behavior include "bizarre" or "shocking" incidents such as secretly recording or spying on accident victims, *see Shulman*, 18 Cal. 4th at 200, and Plaintiffs point to no case in which a Court found an alleged invasion to be "highly offensive" where the defendant performed a task requested by the plaintiff, but where the plaintiff misunderstood the task at hand. Of course, Plaintiffs' misunderstanding here is "implausible," *Yahoo Mail*, 2014 WL 3962824, at *9, but even still, "no cause of action will lie for accidental, misguided, or excusable acts of overstepping upon legitimate privacy rights." *Hernandez*, 47 Cal. 4th at 295.

### B. Plaintiffs' Conversion Claim Fails Because There Has Been No Interference With Any Exclusive Right to Property.

#### 1. Plaintiffs Lack Standing for Conversion.

This Court has already determined that Plaintiffs lack standing to allege conversion (and most other common law claims). *Opperman*, 2014 WL 1973378, at *23 (rejecting Plaintiffs' argument that "interfere[ence] with their property rights in their address books" confers standing). Nothing in Plaintiffs' SCAC or Opposition changes the Court's conclusion.

---

[4] Even the *Los Angeles Times* article on which Plaintiffs rely, ostensibly to support their claim that Twitter *might* have done something wrong, simply states that Twitter uploaded limited contact information (phone number and email address) for "Find Your Friends" purposes. (Opp'n at 4, n. 8.) (citing http://articles.latimes.com/2012/feb/14/business/la-fi-tn-twitter-contacts-20120214).

First, Plaintiffs' reliance on Civil Code section 3336, which creates a presumption for the amount of damages at issue in a conversion claim, is misplaced. There is no support for the proposition that section 3336 or any asserted entitlement to damages supplants the constitutional standing analysis. (Opp'n at 19.) Plaintiffs cite not a single case where a court found standing solely on the basis of section 3336 or the availability of damages, instead focusing their energies on cases that have no application here.[5] Constitutional standing analysis requires a showing of concrete harm. *See, e.g., In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1014, n.5 (N.D. Cal. 2013) (mere transmission of data alone is not "concrete harm" sufficient for standing); *Low v. LinkedIn Corp.*, No. 11–CV–01468–LHK, 2011 WL 5509848, at *4 (N.D. Cal. Nov. 11, 2011) (mere collection of information is "insufficient to establish an injury-in-fact that is concrete and particularized").

Second, Plaintiffs' claim that they have standing because Twitter "benefited" in some improper way must be rejected. (Opp'n at 19-20.) "Benefits" are insufficient to show standing because, as this Court acknowledged, "a plaintiff must do more than point to the dollars in a defendant's pocket; he must sufficiently allege that in the process he *lost dollars of his own*." *Opperman*, 2014 WL 1973378, at *23 (quoting *In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at*5 (N.D. Cal. Dec. 3, 2013)) (emphasis added). In any event, there is no support for Plaintiffs' bare claim that Twitter "benefited," as Plaintiffs allege no facts showing Twitter did anything other than help Plaintiffs find their friends using Twitter, as Plaintiffs requested – which is obviously a benefit to *Plaintiffs*.

Plaintiffs maintain that they need discovery before they can show standing, but they have it backwards. Plaintiffs must first allege facts sufficient to support a "concrete and particularized"

---

[5] *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006) (addressing neither conversion nor § 3336); *Brannian v. City of San Diego*, 364 F. Supp. 2d 1187, 1193 (S.D. Cal. 2005) (same); *Cramer v. Skinner*, 931 F.2d 1020, 1027 (5th Cir. 1991) (same); *Merrimon v. Unum Life Ins. Co. of America*, 758 F.3d 46, 53 (1st Cir. 2014) (same); *Gladstone v. Hillel*, 203 Cal. App. 3d 977, 991 (1988) (addressing § 3336 only on the basis of damages, not standing); *Kramer v. Boynton*, 258 Cal. App. 2d 171 (1968) (addressing neither Article III standing or § 3336); *American Master Lease LLC v. Idana Partners, Ltd.*, 225 Cal. App. 4th 1451 (2014) (same); *Burlesci v. Petersen*, 68 Cal. App. 4th 1062 (1998) (same); *Glus v. Brooklyn Eastern Dist. Terminal*, 359 U.S. 231 (1959) (same); *Root v. Lake Shore & M.S. Ry. Co.*, 105 U.S. 189 (1881) (same).

TWITTER, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS (13-cv-00453-JST)

injury before they can proceed to discovery; failure to sufficiently allege such an injury deprives the Court of jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Generic allegations and speculation are insufficient. *Clapper v. Amnesty Intern. USA*, 133 S. Ct. 1138, 1150 (2013).

### 2. Plaintiffs Are Unable to Allege a Defined Property Interest That Can Be Exclusively Controlled, and Which They Have a Claim of Exclusivity.

Plaintiffs implicitly acknowledge that their address book data is "intangible property" (Opp'n at 14), which means that they can only bring a conversion claim if they can show (1) "an interest capable of precise definition," (2) property "capable of exclusive possession or control," and (3) that "the putative owner [has] established a legitimate claim to exclusivity." *Kremen*, 337 F.3d at 1030. These requirements insure that the conversion tort occurs only where the defendant injures the plaintiff by interfering with or depriving the plaintiff of property that they can and do control to the exclusion of all others.

Plaintiffs make no attempt to grapple with these requirements established by *Kremen*.[6] Instead, they argue at length that California courts have allowed conversion claims involving copying. (Opp'n at 15-18.) But in all of the cases Plaintiffs cite, the court made a threshold determination that conversion was appropriate for the intangible property at issue, either by virtue of the *Kremen* test itself, a state law expressly creating a property right sufficient for conversion, or by relying on decades of case law establishing the same.[7]

---

[6] Plaintiffs' argument that *Kremen* is distinguishable because it dealt with a different type of intangible property is baseless. (Opp'n at 18, n.29.) The court established a three-part test precisely so that future courts can analyze conversion claims for other types of intangible property. *Kremen*, 337 F.3d at 1030.

[7] For example, in *G.S. Rasmussen Assoc. Inc. v. Kalitta Flying Service, Inc.*, 958 F.2d 896, 902-903 (9th Cir. 1992), the court found conversion only after considering and applying the factors it would later adopt in *Kremen*. *A&M Records v. Heilman*, 75 Cal. App. 3d 554, 570 (1977), predates *Kremen*, but in any event the court based its finding in part on California law expressly prohibiting the unauthorized sale of recorded performances. *Id.* at 570. *Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718, 726 (9th Cir. 1984), relied on *A&M Records* to find an intangible property right in radio broadcasts. Plaintiffs cites a series of cases regarding proprietary, closed-circuit, or satellite broadcasts, but California federal courts have already considered and determined that "exclusive rights to distribute proprietary cable programming" satisfies the property interest for a conversion tort. *DIRECTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189 (E.D. Cal. 2005) (citing *Don King Productions/Kingvision v. Lovato*, 911 F. Supp. 419, 423 (N.D. Cal. 1995)). The court in *G.S. Gladstone v. Hillel*, 203 Cal. App. 3d 977, 989 (1988), recognized conversion because defendant retained plaintiff's tangible jewelry mold and used it to create and sell jewelry akin to plaintiffs. And *Flo & Eddie Inc. v. Sirius XM Radio Inc.*, No. CV 13-5693 PSG RZX,

Here, Plaintiffs' address book information does not pass the threshold requirement of *Kremen* for a property right that can be converted. Plaintiffs do not attempt to define their property interest, instead vaguely describing address book data as containing a slew of records that Twitter is not alleged to have retained. (SCAC at ¶ 54.) Nor can Plaintiffs make any legitimate claim of exclusivity – address book information is digital information about *other people*, and Plaintiffs admittedly granted access to Twitter to that information. (*Id.* at ¶ 124.) There is no defined, exclusive property interest here.

### 3. No "Wrongful Disposition" Occurred.

Plaintiffs' argument that the copying of their address book information can be conversion fails for the additional reason that there has been no "wrongful disposition." *Kremen*, 337 F.3d 1029 (the tort of conversion requires "ownership or right to possession of property, wrongful disposition of the property right and damages").

It is "well settled that there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking, use or disposition of his property." *Bank of New York v. Fremont Gen. Corp.*, 523 F.3d 902, 914 (9th Cir. 2008). Again, Plaintiffs expressly consented to Twitter matching the contacts on their mobile devices with Twitter's user data. (*See* SCAC, ¶ 124; Kim Decl., ¶¶ 9, 11, Exs. D-I, K-P); *see also Yahoo Mail*, 2014 WL 3962824, at *9 (by obtaining consent to "scan and analyze" emails, Yahoo necessarily obtained consent to collect and store those emails).

Plaintiffs have pled no facts to suggest that Twitter did anything more than what it offered to do. Plaintiffs have not alleged that they lost access to their contacts, or that Twitter did anything to impair their use of the address books on their mobile devices. Thus, Plaintiffs cannot maintain a conversion claim against Twitter. *Hartford Financial Corp. v. Burns*, 96 Cal. App. 3d 591, 598 (1979) (quoting *Igauye v. Howard*, 114 Cal. App. 2d 122, 126 (1952)) (holding that conversion requires an "act of dominion wrongfully exerted" in manner that is "in denial of or inconsistent with" Plaintiffs' rights).

---

2014 WL 4725382 (C.D. Cal. Sept. 22, 2014), found a property right existed in public performances of sound recordings under Cal. Civ. Code § 980(a)(2).

### III. CONCLUSION

Twitter urges the Court to consider the allegations against the Defendants separately, and reject Plaintiffs' continuing strategy of painting all defendants with the same broad brush. Plaintiffs are unable to plead intrusion and conversion claims against Twitter, given Plaintiffs' consent to access and use of their address books by Twitter, and given Plaintiffs' inability to plausibly allege that Twitter exceeded that consent or impaired any exclusive property right.

Further, the Court should not give Plaintiffs leave to amend, given that this is their fifth complaint, and further amendment would be futile. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (a district court "may in its discretion deny leave to amend 'due to . . . repeated failure to cure deficiencies by amendments previously allowed, . . . [and] futility of amendment.'") (quoting *Leadsinger, Inc. v BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)).

Accordingly, for the reasons stated above and in its moving papers, Twitter respectfully requests that the Court dismiss all claims against Twitter in the Second Consolidated Amended Complaint, with prejudice.

DATED: October 29, 2014                  **PERKINS COIE LLP**

By:     */s/ Timothy L. Alger*
        Timothy L. Alger

Attorneys for Defendant
Twitter, Inc.