COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone:  (415) 693-2000
Facsimile:  (415) 693-2222

MAZDA K. ANTIA (214963) (mantia@cooley.com)
4401 Eastgate Mall
San Diego, CA 92121-1909
Telephone:  (858) 550-6000
Facsimile:  (858) 550-6420

Attorneys for Kik Interactive, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MARC OPPERMAN, *et al.*, <br><br>      Plaintiff, <br><br> v. <br><br> PATH, INC. *et al.*, <br><br>      Defendant. | Case No. 13-cv-00453-JST <br><br> **KIK INTERACTIVE, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)** <br><br> DATE:  December 2, 2014 <br> TIME:  2:00 p.m. <br> COURTROOM:  9 <br> JUDGE:  Hon. Jon S. Tigar |

## I. INTRODUCTION

In its Motion to Dismiss (Dkt. No. 500), Kik established that its data-collection practices were publicly disclosed within weeks of its App's release in at least four ways: (1) public statements by Kik executives describing these practices, (2) news reports by third parties detailing Kik's access of users' address-book data, (3) in-app disclosures during the enrollment process, and (4) disclosures made in Kik's Terms of Use and Privacy Policy. (*See* Mot. at 6:3–7:20.) These plain-English public disclosures and Kik's in-app consent process, made long before Plaintiffs filed their first complaint, preclude Plaintiffs as a matter of law from alleging any reasonable expectation that Kik would not access their address-book data. In fact, Plaintiffs consented to that access to enable them to take full advantage of Kik's free messaging services. This argument alone defeats Plaintiffs' claims against Kik.

In response, Plaintiffs ignore Kik's arguments and skirt around Kik's numerous disclosures. Instead, Plaintiffs indiscriminately lump the App Developer Defendants together *en masse* and baldly assert that the App Developer Defendants "collective[ly] fail[ed] . . . to disclose to users what their Apps were doing." (Opp. at 1:17–18.) This generalized aspersion does not withstand scrutiny with respect to any App Developer Defendant, and certainly not with regard to Kik. The App Developer Defendants did not "collectively" do anything—they offer different services, with different consent processes, to different users—and Plaintiffs' own allegations demonstrate that their claims against Kik should be dismissed. For example, Plaintiffs fail to allege basic information about their use of Kik's Messenger App, such as when they first registered for the service and which consent process Kik presented them when they set up their accounts. Plaintiffs admit, however, that Kik's data-collection practices were widely disclosed almost immediately after the App's launch, and Plaintiffs do not deny knowledge of those practices. Nor do they deny having seen one of the two consent flows Kik began to present users more than eighteen months before Plaintiffs filed suit. Instead, Plaintiffs respond to Kik's entire Motion in a single footnote, arguing that a company cannot "continue misappropriating customer information without any liability once its initial misconduct is publicly revealed." (Opp. at 10, n.23.) Kik's Motion is not directed to a "misappropriation" claim, and Plaintiffs ignore that their

invasion-of-privacy claim requires them to establish an actual and reasonable expectation that Kik would *not* access their address books. That the fact and nature of Kik's access was *publicly disclosed* and *voluntarily consented to* precludes the Plaintiffs who downloaded the Kik App from establishing this element.

As a result of Plaintiffs' own admissions regarding the numerous public disclosures of Kik's address book access practices, as well as the in-app consent process, Terms of Use, and Privacy Policy, Plaintiffs cannot state claims that depend on an expectation that such access would not occur. Plaintiffs' claims against Kik also fail for the reasons common to other App Developer Defendants—including Plaintiffs' failure to establish Article III standing, failure to allege a "highly offensive" intrusion, and failure to allege the conversion of a property right.[1] For these reasons, Kik respectfully requests that the Court dismiss Plaintiffs' claims against it with prejudice.

## II. ARGUMENT

Plaintiffs' Opposition virtually ignores Kik's entire Motion, incorrectly describing it as "identical" to Instagram's and "essentially the same" as the other App Developer Defendants' motions. (Opp. at 2:8–12.) Plaintiffs' refusal (or inability) to address head-on the arguments in Kik's Motion further demonstrates the weakness of their claims against Kik, each of which should be dismissed based on the Kik-specific arguments herein.

### A. Plaintiffs Fail to Rebut Kik's Challenge to Their Intrusion Claim.

Kik's Motion demonstrated that Plaintiffs' intrusion claim should be dismissed on any of three independent grounds: (1) Plaintiffs lacked any reasonable expectation of privacy in their address-book data under the circumstances alleged; (2) Plaintiffs failed to allege facts supporting their contention that Kik's conduct was "highly offensive"; and (3) Plaintiffs failed to allege facts supporting their claim for harm and damages. Plaintiffs' generalized responses to these arguments do not salvage their intrusion claim against Kik.

---

[1] As stated in Kik's Motion, here too Kik joins the other App Developer Defendants' briefing regarding common legal issues such as conversion and Article III standing. (*See* Mot. at 13:6–13.)

### 1. Plaintiffs had no reasonable expectation that Kik's App would perform differently than Kik had publicly disclosed it would perform.

As detailed in Kik's Motion, Plaintiffs cannot plead that they had an actual, *objectively reasonable* expectation that Kik would not access or upload data from their address books. Indeed, Plaintiffs admit that Kik and other third parties *publicly disclosed* that Kik's App uploaded users' address-book data. (*See* Mot. at 6:3–7:20.) Nor do Plaintiffs deny that (1) Kik disclosed "access[ing]" and "scan[ning]" its users' address book data 17 days after the App was released; and (2) multiple publicly available news sources—as identified by Plaintiffs themselves—also described within two weeks of the App's launch Kik's access of address-book data. (*See* Mot. at 6:8–9.) In fact, Plaintiffs have always alleged that Kik *differs* from other App Developer Defendants because its friend-matching process was disclosed as early as November 2010. (*Id*; Second Amended Complaint (Dkt. No. 103), ¶ 137 ("Prior to February 2012, none of the Defendants (*with the exception of Kik Interactive*) publicly disclosed that inclusion of their Apps on iDevices would or could, in combination with an iDevice and/or iOS, cause the iDevice to self-transmit the iDevice owner's address book without the authorization of the iDevice owner.") (emphasis added).) Far from claiming ignorance of these public statements, Plaintiffs paid particular attention to "reports" in both "traditional and non-traditional media" regarding the security of Apple products. (*See* Mot. at 8:4–11 (citing SCAC, ¶¶ 163(i) & 176).) These public reports and disclosures put Plaintiffs on notice of Kik's privacy practices (or should have), and render Plaintiffs' claim to have had a "reasonable" expectation of privacy entirely implausible.

The filing date of the initial Complaint in this case, as well as Plaintiffs' class definition, bolster this argument. Plaintiffs filed their original Complaint following a February 2012 public report discussing another App Developer Defendant (*not* Kik); Plaintiffs alleged that the report put them on notice of the App Developer Defendants' privacy practices. (*See* Compl. (Dkt. No. 1), ¶ 118 ("The Application Developer Defendants' actions relating to the Plaintiffs' private Address Book Data was inherently undiscoverable by the Plaintiffs and was not discovered by Plaintiffs until sometime after the publication of an article on February 8, 2012 describing how Defendant Path's Path App accessed and used such address book data without prior

1  permissions."); *see also* Consolidated Amended Complaint (Dkt. No. 362), ¶ 119 (citing Feb. 28, 2012 New York Times article reporting that "some apps were taking people's address book information without their knowledge").) Further, Plaintiffs defined their class period as *ending* in February 2012. (SCAC, ¶ 233 (defining iDevice class as "[a]ll United States residents who purchase iDevices between July 10, 2008 and February 2012").) Admitting they were on notice of the App Developers' practices as of February 2012—and thus ending the class period at that point—Plaintiffs implicitly conceded that public disclosure of the App Developer Defendants' privacy practices cut off liability for intrusion.

Thus, under Plaintiffs' apparent theory of liability, only those Plaintiffs who downloaded the apps at issue *before* the apps' access of address book data was made public could have had a reasonable expectation of privacy. But Kik's activities were publicly disclosed within days of its App's launch—long before February 2012—and no Plaintiff alleges to have downloaded the Kik App prior to these public disclosures. Consequently, these Plaintiffs cannot assert claims against Kik.

Plaintiffs respond by asserting (in a footnote, sans legal authority) that Kik's disclosures are irrelevant because a company cannot "continue misappropriating customer information" once its "misconduct" is public. (Opp. at 10, n.23.) This argument misapprehends the elements of Plaintiffs' claims: Kik's Motion is not directed to "misappropriation" claims, and Plaintiffs cannot have reasonably expected that Kik's practices with respect to their address-book data would be any different than the public disclosures describing those practices. *See Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 36 (1994) (no reasonable expectation of privacy where practices disclosed); *In re Google, Inc. Privacy Policy Litig.*, No. 12-cv-01382-PSG, 2013 WL 624899, at *15–16 (N.D. Cal. Dec. 3, 2013) (dismissing intrusion claim where privacy policy disclosed that contact information would be collected). As the California Supreme Court has held in considering intrusion claims, an opportunity to "consent voluntarily to activities impacting privacy interests" is "obviously" relevant to whether an individual had an expectation of privacy. *Hill*, 7 Cal. 4th at 36. Here, Kik's public disclosure of its data-collection practices in November

2010—more than a year before Plaintiffs filed their initial complaint—defeats any reasonable expectation of privacy and scuttles Plaintiffs' intrusion claim as a matter of law.

      **2. Plaintiffs cannot assert an intrusion claim because they consented to Kik's accessing their address book data.**

Plaintiffs similarly fail to rebut Kik's arguments regarding the legal effect of its in-app consent process, Terms of Use, and Privacy Policy. The record is undisputed that those disclosures advised users that, when they registered for a Kik account, Kik would access their address-book contacts to help them connect with friends. (*See* Mot. at 7:5–20; *see also* Declaration of Peter Heinke in Support of Kik's Motion to Dismiss (Dkt. No. 500-1) ("Heinke Decl."), Exs. A–D.)[2] Again, Plaintiffs have never claimed ignorance of these Terms or Privacy Policy. Nor do Plaintiffs dispute the substance of Kik's consent process, which disclosed that if users provided their phone number to Kik—which was *optional*—Kik would use it to match them with contacts already on Kik. (*See* Mot. at 7:14–20.) Plaintiffs argue that Kik's "find friends" process "did not have a specific screen for consent" (Opp. at 5, n.11 (citing SCAC, ¶ 102)), but the SCAC's factual allegations provide no support for this assertion: The SCAC states only that "Plaintiffs Dennis-Cooley and Green (the 'Kik Interactive Plaintiffs') each recall using the Kik Messenger App, logging in, and navigating within the App." (SCAC, ¶ 102.) This is not a denial that Plaintiffs proceeded through a consent process when they registered for Kik Messenger; the SCAC simply omits any discussion of that process—presumably because such details would defeat Plaintiffs' claims. Having failed to acknowledge (much less deny) the consent process Plaintiffs undertook when using Kik's App, they lack any factual basis to argue that the process was insufficient or misleading. Under established law, it was not. *See, e.g.*, *Perkins v. LinkedIn Corp.*, No. 13-cv-04303-LHK, 2014 WL 2751053, at *1–2, 13 (N.D. Cal. June 12, 2014)

---

[2] Plaintiffs do not dispute that Kik's Terms of Use and Privacy Policy disclosed this process accurately: "Kik Messenger will access and upload the phone numbers and email addresses (but not names) from your mobile device address book to Kik's servers, hash it on our servers, and check if those phone numbers and email addresses are registered to a Kik user . . . . Emails and phone numbers are not shared in this process . . . . After this process is complete, Kik will promptly delete your address book information from its databases." (*See* Heinke Decl., Exs. A & B.)

(upholding consent flow for LinkedIn that is materially similar to Kik's).[3] Indeed, Plaintiffs have not cited (nor are we aware of) any case affirming an intrusion claim when the defendant's practices were publicly disclosed prior to the plaintiff's involvement.[4]

Plaintiffs' failure to address Kik's consent process also confirms their failure to satisfy Rule 8's basic pleading standards. Plaintiffs claim to have complied with Rule 8 and to have provided "more detail than is required." (Opp. at 25:8–9.) Not so. The Kik Plaintiffs have repeatedly failed to specify, among other things, when they downloaded or registered for Kik's App and what prompts they were presented with when they did so. Notably, Plaintiffs also have repeatedly refused to provide their usernames to Kik—thus preventing Kik from identifying the dates on which they first registered and downloaded the App. This is likely no accident: Plaintiffs have avoided describing the consent process they completed to obscure the fact that they had notice that Kik would "access [their] address book to match [them] with friends already on Kik." (*See* Heinke Decl. Ex. D.) Because Plaintiffs have not provided Kik information sufficient for Kik to identify their account information and formulate a response to their claims, they have failed to meet Rule 8's most basic pleading requirements. For this reason, too, their complaint should be dismissed. *See, e.g.*, *Coren v. Mobile Entm't, Inc*., No. 08-cv-05264-JF (PVT), 2009 WL 264744, at *1 (N.D. Cal. Feb. 4, 2009) (holding that Rule 8 requires "identification of the plaintiff" and rejecting complaint that included plaintiff's name but not plaintiff's cell phone number, which was required for mobile content provider defendant to identify customers in its records).

---

[3] In trying to distinguish *Perkins*, Plaintiffs generally contend that the App Developer Defendants' disclosures were "vague" or "non-existent." (Opp. at 5:2–8.) Kik's disclosures were certainly not "non-existent," and Plaintiffs fail to specify what about them is "vague."

[4] While not specifically referencing Kik, the Opposition argues that the Court's prior Order trumps Kik and other App Developer Defendants' consent arguments. However, the prior Order is not applicable here (1) for the reasons detailed in the opening brief (Mot. at 9:28–10:5); and (2) because the prior Order did not address the arguments in Kik's current Motion.

### 3. There is nothing "highly offensive" about a voluntary feature that enables the use of Kik's free service as intended by accessing information that is neither sensitive nor confidential.

Even if Plaintiffs had alleged a reasonable expectation that Kik would not access their address-book information—despite public and in-app disclosures to the contrary—Plaintiffs' intrusion claim fails for lack of "highly offensive" conduct. The "context, conduct and circumstances" surrounding an alleged intrusion all bear on whether that intrusion is "highly offensive." (Mot. at 8:27–9:3 (citing *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1483–84 (1986)).) Plaintiffs fail to address Kik's arguments that (1) the utility of Kik's free messaging app and the convenience of letting Kik quickly and automatically find friends for Plaintiffs outweighed any minimal intrusion on their privacy; and (2) as a result, Kik's actions, made in connection with Kik's provision of requested services to users, were not "highly offensive." (*See* Mot. at 9:14–27.) Plaintiffs also do not explain how Kik's actions could be highly offensive when they were disclosed by Kik and reported by the press. In addition, for the reasons described in Kik's Motion and other App Developer Defendants' briefing, Kik's alleged benefit from the services it provided to Plaintiffs (*see* SCAC, ¶ 103) does not render its alleged intrusion "highly offensive." (*See* Mot. at 10:5–14); *see also In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041–42 (N.D. Cal. 2014) (concluding that defendant's alleged scanning and storage of private email content for "own financial gain" insufficient to state invasion-of-privacy claim); *Yunker v. Pandora Media, Inc.*, No. 11-cv-03113-JSW, 2013 WL 1282980, at *15 (N.D. Cal. Mar. 26, 2013) (collecting and sharing PII for "marketing purposes" is not "egregious breach of social norms").

Plaintiffs' intrusion claim likewise fails because they have not alleged what sensitive or confidential information was contained in the limited data fields Kik allegedly accessed. (*See* Mot. at 10:15–11:9.) Rather, Plaintiffs rely on the hyperbolic contention that their address book information is sensitive and confidential because it *could* contain information regarding the "identities of friends, enemies, lovers, ex-lovers, family, doctors, financial institutions, business associates, etc." (Opp. 9:7–8.) Overheated speculation is no substitute for concrete allegations describing, at a minimum, (1) the content of a specific Plaintiff's address book, and (2) how (if at

all) Kik's practices compromised the content of that data. Courts in this district have recently confirmed that plaintiffs claiming invasion of privacy *must* allege what confidential or sensitive information was allegedly intercepted. *See Yahoo Mail*, 7 F. Supp. 3d at 1040–41 (collecting cases); *Sunbelt Rentals, Inc. v. Victor*, No. 13-cv-4240-SBA, 2014 WL 4274313, at *6 (N.D. Cal. Aug. 28, 2014). Because Plaintiffs have made no attempt to do so here, their intrusion claim must be dismissed.

### 4. Plaintiffs fail to plead any harm caused by Kik's alleged intrusion.

Plaintiffs do not dispute that, to state a claim for intrusion, they must plead that they suffered an injury. (Mot. at 17:1–10.) Yet Plaintiffs offer only the generalized allegation that, "[a]s a direct and proximate result of the respective App Developer Defendants' actions, Plaintiffs suffered harm and damages." (SCAC, ¶ 248.) Plaintiffs believe this conclusory allegation to be sufficient because "[d]amages flowing from an invasion of privacy logically would include an award for mental suffering and anguish." (Opp. at 12:8–9 (citations and quotations omitted).) But the fact that damages *might be available* for mental anguish does not excuse Plaintiffs from their burden to plead facts establishing that they *actually suffered* mental anguish. *See Cohen v. Facebook, Inc.*, 10-cv-5282 RS, 2011 WL 5117164, at *2 (N.D. Cal. Oct. 27, 2011) (noting that, when pleading non-economic damages such as mental anguish, plaintiff must, at a minimum, plead facts supporting claim of mental anguish); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) ("more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required to survive motion to dismiss).

### B. Plaintiffs' Article III Intrusion Argument Misapprehends the Applicable Legal Standard.

Plaintiffs' intrusion claim fails for the additional, independent reason that Plaintiffs concede they alleged no injury-in-fact (nor even any consequence) resulting from Kik's alleged intrusion. (*See* Mot. at 11:18–13:5.) Plaintiffs miss the mark entirely by asserting Article III standing based on "a personal stake in the outcome of the controversy" arising from intrusion on "their mobile devices and their private addresses." (Opp. at 12:16–19.) As explained in Instagram's reply brief, which Kik joins as to the Article III argument, the law requires a

"concrete and particularized" "injury-in-fact"—not just any "personal stake" in "the outcome" of a lawsuit. *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (to demonstrate "personal stake in the outcome," "plaintiff must show he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged [] conduct") (quotations omitted). Having failed to allege any such injury-in-fact resulting from the alleged intrusion, Plaintiffs' claim should be dismissed.

### C. Plaintiffs' Conversion Claim Fails for Lack of Article III Standing and Failure to State a Claim.

As further described in Instagram's reply, Plaintiffs fail to establish Article III standing for their conversion claim based on the availability of "nominal damages." And, for the reasons described in Instagram's and other App Developer Defendants' reply briefs, Plaintiffs' conversion claim should be dismissed because they have not alleged a protectable, convertible property interest in their address-book data. (*See also* Mot. at 13:6–13.)

### D. Plaintiffs' Claims Against Kik Should Be Dismissed With Prejudice.

Having now attempted *five times* to state a claim against Kik, Plaintiffs have long-since exhausted any argument that yet another amended complaint will salvage their claims. The costs and burdens of discovery far outweigh the nominal (at best) possibility that Plaintiffs will ever identify an actionable legal theory, and in fact, their previous complaints and multiple admissions foreclose their claims against Kik. As such, Kik respectfully requests that Plaintiffs' claims against it be dismissed with prejudice.

## III. CONCLUSION

For the above-stated reasons, Kik respectfully requests that the Court dismiss Plaintiffs' claims against it with prejudice.

Dated: October 29, 2014                     COOLEY LLP

                                            */s/ Mazda K. Antia*
                                            Mazda K. Antia
                                            Attorneys for Plaintiffs KIK Interactive, Inc.