1   COOLEY LLP
    MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2   MATTHEW D. BROWN (196972) (brownmd@cooley.com)
    101 California Street, 5th Floor
3   San Francisco, CA  94111-5800
    Telephone:     (415) 693-2000
4   Facsimile:     (415) 693-2222

5   COOLEY LLP
    MAZDA K. ANTIA (214963) (mantia@cooley.com)
6   ERIN E. GOODSELL (262967) (egoodsell@cooley.com)
    4401 Eastgate Mall
7   San Diego, CA  92121-1909
    Telephone:     (858) 550-6000
8   Facsimile:     (858) 550-6420

9   Attorneys for Defendant INSTAGRAM, LLC

10

                    UNITED STATES DISTRICT COURT
11
                  NORTHERN DISTRICT OF CALIFORNIA
12

13

14  MARC OPPERMAN, *et al.*,                 Case No. 13-cv-00453-JST
       for themselves and all others
15     similarly situated,                   **INSTAGRAM, LLC'S REPLY IN SUPPORT
                                             OF ITS MOTION TO DISMISS SECOND
16            Plaintiffs,                    CONSOLIDATED AMENDED COMPLAINT**

17  vs.                                       Date:        December 2, 2014
                                             Time:        2:00 P.M.
18  PATH, INC., *et al.*,                     Courtroom: 9
                                             Judge:       Hon. Jon S. Tigar
19
              Defendants.
20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**Table of Contents**

                                                                                                      **Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT .................................................................................................................. 2

        A.      Plaintiffs Lack Article III Standing To Assert Their Intrusion Claim ................... 2

        B.      Plaintiffs Lack Article III Standing To Assert Their Conversion Claim ............... 3

        C.      Plaintiffs Fail To State A Claim For Intrusion ...................................................... 5

                1.      A user who asks Instagram to "Find Friends" from their "Contacts"
                        does not have a reasonable expectation that Instagram will not
                        access address book data .............................................................................. 6

                        a.      Instagram's disclosures put users on notice that Instagram
                                would access their address book data ............................................... 6

                        b.      The prior Order's "consent" rationale does not apply ..................... 8

                2.      Plaintiffs failed to allege facts establishing that Instagram's conduct
                        was highly offensive ..................................................................................... 8

                        a.      The context and circumstances of Instagram's alleged
                                intrusion demonstrate it was not highly offensive .......................... 9

                        b.      Plaintiffs failed to allege that their address book data
                                contains sensitive or confidential information .............................. 10

                3.      Plaintiffs failed to plead that they were injured by Instagram's
                        alleged intrusion ......................................................................................... 12

        D.      Plaintiffs Fail To State A Claim For Conversion ................................................ 12

                1.      Plaintiffs fail to allege a specific convertible property interest in the
                        information contained in their address books ............................................. 12

                2.      Plaintiffs failed to establish that Instagram wrongfully dispossessed
                        them of their property rights ...................................................................... 14

                3.      Plaintiffs failed to establish that they were injured by Instagram's
                        alleged conversion of their address book data .......................................... 15

        E.      Plaintiffs' Claims Should Be Dismissed With Prejudice ..................................... 15

III.    CONCLUSION ............................................................................................................. 15

# Table Of Authorities

**Page**

**Cases**

*In re Am. Home Mortg. Holding*,
458 B.R. 161 (Bankr. D. Del. 2011) ........................................................................5

*In re Apple iPhone Application Litig.*,
No. 11-md-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ...................3

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ...........................................................................................10

*Askew v. Trustees Gen. Assembly of Church of the Lord Jesus Christ of the
Apostolic Faith Inc.*,
684 F.3d 413 (3d Cir. 2012) .....................................................................................5

*Bank of New York v. Fremont Gen. Corp.*,
523 F.3d 902 (9th Cir. 2008) ..................................................................................14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................12

*Citizens for Health v. Leavitt*,
428 F.3d 167 (3d Cir. 2005) .....................................................................................2

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ....................................................................................................2

*Cohen v. Facebook, Inc.*,
10-cv-5282-RS, 2011 WL 5117164 (N.D. Cal. Oct. 27, 2011) ..............................12

*DIRECTV, Inc. v. Pahnke*,
405 F. Supp. 2d 1182 (E.D. Cal. 2005) ..................................................................13

*Don King Prods./Kingvision v. Lovato*,
911 F. Supp. 419 (N.D. Cal. 1995) .........................................................................13

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co. Inc.*,
499 U.S. 340 (1991) ................................................................................................13

*Fields v. Napa Milling Co.*,
164 Cal. App. 2d 442 (1958) .....................................................................................4

*Flo & Eddie Inc. v. Sirius XM Radio Inc.*,
No. 13-cv-5693-PSG, 2014 WL 4725382 (C.D. Cal. Sept. 22, 2014) ...................13

**Table of Authorities**
(continued)

Page

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*,
 958 F.2d 896 (9th Cir. 1992)..............................................................................13, 14

*In re Google Android Consumer Privacy Litigation*,
 No. 11-md-02264-JSW, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ................................2, 3

*Hernandez v. Path, Inc.*,
 No. 12-cv-01515-YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012)....................................14

*Hill v. Nat'l Collegiate Athletic Ass'n*,
 7 Cal. 4th 1 (1994) ........................................................................................................5

*In re iPhone Application Litig.*,
 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...............................................................................13

*J & J Sports Prods., Inc. v. Ceballos*,
 No. 11-cv-5438-LHK, 2012 WL 4009587 (N.D. Cal. Sept. 12, 2012)............................13, 14

*J & J Sports Prods., Inc. v. Hernandez*,
 No. 12-cv-05773-JST, 2013 WL 2468354 (N.D. Cal. June 6, 2013) ......................................14

*Jones v. ConAgra Foods, Inc.*,
 No. 12-cv-01633-CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014)....................................4

*Kizer v. Cnty. of San Mateo*,
 53 Cal. 3d 139 (1991) ........................................................................................................4

*Kramer v. Boynton*,
 258 Cal. App. 2d 171 (1968)...............................................................................................4

*Kremen v. Cohen*,
 337 F.3d 1024 (9th Cir. 2003)............................................................................................13

*LaCourt v. Specific Media, Inc.*,
 No. 10-cv-1256-GW, 2011 WL 1661532 (N.D. Cal. Apr. 28, 2011)........................................3

*Lone Ranger Television, Inc. v. Program Radio Corp.*,
 740 F.2d 718 (9th Cir. 1984)..............................................................................................13

*Low v. LinkedIn Corp.*,
 900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...............................................................................15

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ..........................................................................................................2

1

**Table of Authorities**
**(continued)**

2

**Page**

3

*Miller v. Nat'l Broad. Co.*,
    187 Cal. App. 3d 1463 (1986)..................................................................................5, 8, 9

4

5

*Moreno v. Greenwood Auto Ctr.*,
    91 Cal. App. 4th 201 (2001) ...............................................................................................3

6

*NAACP v. Alabama*,
    357 U.S. 449 (1958)...........................................................................................................11

7

8

*Perkins v. LinkedIn Corp.*,
    No. 13-cv-04303-LHK, 2014 WL 2751053 (N.D. Cal. June 12, 2014) ...............................6, 7

9

10

*Riley v. California*,
    134 S. Ct. 2473 (2014) ......................................................................................................11

11

*Robinson v. Salazar*,
    885 F. Supp. 2d 1002 (E.D. Cal. 2012)................................................................................6

12

13

*Ruiz v. Gap, Inc.*,
    380 Fed. App'x. 689 (9th Cir. 2010)....................................................................................2

14

15

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013).............................................................................................10

16

*Sunbelt Rentals, Inc. v. Victor*,
    No., No. 13-cv-4240-SBA, 2014 WL 4274313 (N.D. Cal. Aug. 28, 2014) .......................9, 11

17

18

*Tyrone Pac. Int'l, Inc. v. MV Eurychili*,
    658 F.2d 664 (9th Cir. 1981)...............................................................................................4

19

20

*United States v. Zavala*,
    541 F.3d 562 (5th Cir. 2008).............................................................................................11

21

*Valdez-Lopez v. Chertoff*,
    656 F.3d 851 (9th Cir. 2011)..........................................................................................5, 8

22

23

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...........................................................................................................3

24

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........................................................................ *passim*

25

26

*Yunker v. Pandora Media, Inc.*,
    No. 11-cv-03113-JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013)...................................10

27

28

**Table of Authorities**
**(continued)**

**Page**

**Statutes**

Cal. Civ. Code
    section 3336 ..................................................................................................................3, 4, 14
    section 3360 .......................................................................................................................4, 14

## I.        INTRODUCTION

Plaintiffs' Opposition, like their latest Complaint, continues to attack the "App Defendants" *en masse*.  In doing so, Plaintiffs ignore three key points Instagram identified in its Motion that doom Plaintiffs' claims against Instagram.   First, Plaintiffs' own allegations demonstrate that Instagram accessed portions of their address book data only after Plaintiffs requested that Instagram "Find Friends" from their "Contacts."  Second, Instagram accessed only basic address book data fields that were neither inherently sensitive nor valuable.   Third, Instagram accessed the basic address book data fields to do exactly what Plaintiffs requested: find and connect with friends on Instagram.  As a result, Plaintiffs cannot establish Article III standing and their allegations fail to state claims for intrusion or conversion against Instagram.

As to the constitutionally-mandated standing requirement, Plaintiffs concede that they failed to allege any "injury-in-fact" resulting from Instagram's accessing their contacts.  Instead, Plaintiffs claim to have Article III standing because they own the devices from which their data was accessed.  This argument ignores decades of Supreme Court precedent requiring more than just any personal connection to a controversy.  Plaintiffs here have failed to allege an "injury-in-fact" because they had full possession and control of their address book data at all times and nowhere in the SCAC do they allege that their address book data was misused, that it contained any sensitive material, or that they otherwise suffered any concrete injury as a result of Instagram's access.

Further, in broadly asserting that the App Defendants as an undifferentiated whole invaded their privacy, Plaintiffs fail to address Instagram's specific arguments and completely ignore the consent process they admittedly followed when they downloaded Instagram's free App and used its optional "Find Friends" feature.  Plaintiffs instead assert that the App Defendants invaded their privacy by not only "scanning" their contacts for the purpose of finding friends, but also "uploading" Plaintiffs' contacts for the purpose of growing the App Defendants' own businesses.  These are distinctions without a difference, as multiple courts have held.  It is implausible to assume that an internet-based service could find other users without uploading a user's contacts and comparing them to others in its system.  And routine commercial practices

1   such as enabling users to find other people (as phone books and directories in the offline world

2   have done for decades) cannot support a claim for a highly offensive invasion of privacy.

3       Finally, Plaintiffs cannot resuscitate their previously-dismissed conversion claim by

4   relying on cases involving plaintiffs who possessed a *property right* that permitted them to

5   exclude others from using and/or copying their intangible property.  Here, Plaintiffs fail to plead

6   any facts establishing that they possess a similar property right in the factual information stored in

7   their iDevices, or that Instagram's accessing that information at Plaintiffs' request interfered with

8   Plaintiffs' use of that information.

9       Instagram respectfully requests that Plaintiffs' claims be dismissed with prejudice.

10  **II.     ARGUMENT**

11      **A.     Plaintiffs Lack Article III Standing To Assert Their Intrusion Claim.**

12      Instagram showed that Plaintiffs failed to allege any cognizable injury, or even any

13  consequence, resulting from Instagram's alleged intrusion.  (*See* Mot. at 7:17–10:2.)  In response,

14  Plaintiffs claim they have Article III standing because "it was their mobile devices and their

15  private addresses that were intruded upon." (Opp. at 12:17–19.)  But the law requires a "concrete

16  and particularized" "injury-in-fact"—not just any personal connection to a lawsuit.  *See*, *e.g.*, *City

17  of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) ("plaintiff must show he has sustained or is

18  immediately in danger of sustaining some direct injury as the result of the challenged [] conduct")

19  (quotations omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

20      This is why courts in similar cases, including the cases Plaintiffs cite, have found Article

21  III's threshold jurisdictional requirements met only where the plaintiffs alleged an injury that was

22  *something more* than the alleged intrusion itself.  *See Ruiz v. Gap, Inc.*, 380 Fed. App'x. 689, 691

23  (9th Cir. 2010) (plaintiff alleged "greater risk of identity theft" as a result of theft of laptop);

24  *Citizens for Health v. Leavitt*, 428 F.3d 167, 176 n.9 (3d Cir. 2005) (plaintiff submitted evidence

25  establishing health information had been or imminently would be disclosed and that plaintiff

26  would stop seeking medical care to prevent further disclosures).[1]   Plaintiffs do not allege

27

28  ------

    [1] Plaintiffs rely on *In re Google Android Consumer Privacy Litigation*, No. 11-md-02264-JSW,
    2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) to support their argument that "where plaintiffs

1  something more here.  (Mot. at 7:17–10:2.)  They retained full possession and control over their

2  contacts at all times, and there is no allegation in the SCAC that any such information was

3  disclosed to anyone other than Instagram, which used the information to help Plaintiffs find their

4  friends.  (*See id.* at 4:7–5:6.)  Indeed, Plaintiffs do not even allege that anything in their address

5  book data was sensitive.  (*See id.* at 16:3–9.)  Their intrusion claim should therefore be dismissed

6  for lack of standing.  *See, e.g.*, *In re Apple iPhone Application Litig.*, No. 11-md-02250-LHK,

7  2011 WL 4403963, at *4–6 (N.D. Cal. Sept. 20, 2011) ("*iPhone I*"); *LaCourt v. Specific Media,*

8  *Inc.*, No. 10-cv-1256-GW (JCGx), 2011 WL 1661532, at *4–5 (N.D. Cal. Apr. 28, 2011).

9  **B.    Plaintiffs Lack Article III Standing To Assert Their Conversion Claim.**

10  Plaintiffs offer no substantive response to their failure to allege any injury-in-fact relating

11  to their conversion claim.  Instead, Plaintiffs repeat their conclusory allegations that their address

12  books "have both intrinsic and commercial value" and that "Defendants benefitted from

13  wrongfully taking them."  (Opp. at 20:11–16.)  But the Court already held that these allegations

14  did not establish Article III standing.  (Order Granting in Part and Denying in Part Defendants'

15  Motion to Dismiss (Dkt. 471) ("Order") at 39:13–40:9.)

16  Rather than adding factual allegations to overcome this fundamental flaw, Plaintiffs assert

17  that they do not need to plead injury-in-fact to have Article III standing for their conversion claim

18  because they can obtain "nominal damages".  (Opp. at 18:22–19:5.)  This argument improperly

19  conflates the *existence of injury-in-fact* required to establish Article III standing with the *measure*

20  *of damages* once a claim has been stated.  Indeed, the statutory provisions Plaintiffs rely on do not

21  support Plaintiffs' position.  Civil Code section 3336 does not create a presumption that a plaintiff

22  who pleads a claim for conversion has necessarily *suffered* an injury.  Rather, section 3336

23  establishes *how to measure* the damage a plaintiff has suffered after properly pleading a

24  conversion claim.  *See Moreno v. Greenwood Auto Ctr.*, 91 Cal. App. 4th 201, 209 (2001) ("The

25

26  have alleged a ***common law*** invasion of privacy claim, **nothing more is required** to establish
   standing."  (Opp. at 13:8–10 (first emphasis added).)  But *Google Android* held that plaintiffs had

27  standing "[w]ith respect to the alleged violations of the ***constitutional right to privacy***" based on
   *Warth v. Seldin*, 422 U.S. 490, 500 (1975).  2013 WL 1283236, at *6 (emphasis added).  Here,

28  Plaintiffs have not and cannot assert a *constitutional* privacy claim.

1      *measure of damages* for conversion is set forth in section 3336….") (emphasis added).   It is

2      axiomatic that Plaintiffs must first establish the elements of a conversion claim, including

3      damages, before section 3336 becomes relevant.  *See Tyrone Pac. Int'l, Inc. v. MV Eurychili*, 658

4      F.2d 664, 666–67 (9th Cir. 1981) (holding plaintiff is not entitled to damages under § 3336

5      because he "suffered no damages cognizable in this action … [and] therefore failed to establish

6      the third element of the tort").   Section 3336 can no more substitute for Article III's injury-in-fact

7      requirement than it can for a conversion claim's damages requirement.

8            Plaintiffs similarly misconstrue Civil Code section 3360.  Contrary to Plaintiffs' assertion,

9      nominal damages are *not* "always available under California law."  (*See* Opp. at 19:2.)  Plaintiffs

10     must first prove that they sustained damages—*i.e.*, satisfy all elements of their claim—before

11     they can be awarded nominal damages.  *See Kizer v. Cnty. of San Mateo*, 53 Cal. 3d 139, 147

12     (1991) ("Even nominal damages … require actual injury."); *Fields v. Napa Milling Co.*, 164 Cal.

13     App. 2d 442, 447–48 (1958) (nominal damages under § 3360 not available because plaintiff

14     failed to establish the damages element of her negligence claim).  Plaintiffs cite no authority for

15     the proposition that the availability of nominal damages if a claim is proven can substitute for

16     Article III's threshold injury-in-fact requirement.   Moreover, the plain language of the section

17     makes it clear that it applies only in cases where the defendant has breached a duty to the

18     plaintiff.  *See* CAL. CIV. CODE § 3360 ("When a ***breach of duty*** has caused no appreciable

19     detriment to the party affected, he may yet recover nominal damages.") (emphasis added).  Here,

20     the conversion claim is not premised on a breach of duty owed by Instagram.  Indeed, Plaintiffs

21     fail to cite a single conversion case where the court awarded nominal damages under section

22     3360.[2]  *See Jones v. ConAgra Foods, Inc.*, No. 12-cv-01633-CRB, 2014 WL 2702726, at *23

23     (N.D. Cal. June 13, 2014) (nominal damages not available under § 3360 where "claim has

24     nothing to do with a breach of duty").[3]  Plaintiffs have not and cannot establish injury-in-fact and

25

26     [2] Plaintiffs' reliance on *Kramer v. Boynton*, 258 Cal. App. 2d 171 (1968), is misplaced.  (*See* Opp. at 19:2–4.)  The *Kramer* court addressed whether the trial court had properly granted a new

27     trial—not whether nominal damages were available.  *See id.* at 173.

28     [3] Plaintiffs cannot establish standing by claiming that a constructive trust is an available remedy for a conversion claim (Opp. at 19:15–20:16) because the mere availability of this *remedy* does

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1     their conversion claim should be dismissed.

2         **C.**      **Plaintiffs Fail To State A Claim For Intrusion.**

3         Plaintiffs rely heavily on the Court's prior Order to argue that they have stated a claim for

4 intrusion. (*See*, *e.g.*, Opp. at 4:2–16; 6:19–22; 7:8–16.)  This reliance is misplaced for at least two

5 reasons.  First, the prior Order does not save Plaintiffs' *current* intrusion claim because Plaintiffs

6 abandoned their (baseless) allegations that Instagram disclosed their data to third parties or

7 otherwise misused their data.  (*Compare* Consolidated Amended Complaint (Dkt. 362) ("CAC"),

8 ¶ 320 ("*Instagram* thus obtained, retained, disclosed, and de-privatized the identified Plaintiffs'

9 valuable private mobile address books…."), *with* SCAC, ¶ 115 (the "Instagram App uploaded

10 iDevice address book data to Instagram").)[4]  The omission of these allegations materially changes

11 the intrusion analysis because Instagram's conduct could have been intrusive only if it went

12 beyond the scope of Plaintiffs' consent to such a degree that it was "highly offensive".  *See Miller*

13 *v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1483–84 (1986) (offensiveness of act depends on

14 "conduct and circumstances surrounding the intrusion"); *Hill v. Nat'l Collegiate Athletic Ass'n*, 7

15 Cal. 4th 1, 26 (1994) (no reasonable expectation of privacy if plaintiffs consented to intrusion).

16         Second, if the Court's Order was *not* premised on the CAC's allegations of unauthorized

17 disclosure to third parties or other harmful misuse, Instagram respectfully submits that the

18 Order's holding contradicts every other state and federal case considering similar intrusion

19 claims.  Indeed, we are unaware of, and Plaintiffs fail to identify, a single case sustaining an

20 intrusion claim based on allegations of routine practices similar to those alleged in the SCAC.

21

22                                          

not relieve Plaintiffs of the burden of establishing that they have standing to pursue their *claim* of
23 conversion.  *See Askew v. Trustees Gen. Assembly of Church of the Lord Jesus Christ of the Apostolic Faith Inc.*, 684 F.3d 413, 417 & n.1 (3d Cir. 2012) (affirming dismissal of request for
24 constructive trust because plaintiff lacked standing to assert underlying claim); *see also In re Am. Home Mortg. Holding*, 458 B.R. 161, 171 (Bankr. D. Del. 2011) ("The imposition of a
25 constructive trust is a remedy, not a separate cause of action.").

26 [4] As Instagram detailed in its Motion, Plaintiffs cannot rely on previous iterations of their
27 complaint to salvage their claims.  *See Valdez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011) (it is "well-settled" that the filing of an amended complaint means the prior complaint is
28 "supersede[d]").

1

2

**1.      A user who asks Instagram to "Find Friends" from their "Contacts" does not have a reasonable expectation that Instagram will not access address book data.**

3      Instagram showed that because Plaintiffs downloaded an app whose main purpose is to

4   share photos with friends and then voluntarily used the option to "Find friends" "from [their]

5   contact list", they could not have had a reasonable expectation that Instagram would not access

6   their address book information.  (Mot. at 12:1–26.)  Plaintiffs fail to address Instagram's consent

7   process in the Opposition, instead contending that (1) the undifferentiated App Defendants'

8   disclosures in general are too vague to constitute consent, (Opp. at 5:1–8), and (2) the Court's

9   prior Order held that Plaintiffs did not consent to the App Defendants' actions, (*id.* at 4:11–16).

10  Plaintiffs are wrong.

11

**a.      Instagram's disclosures put users on notice that Instagram would access their address book data.**

12      Plaintiffs characterize the App Defendants' disclosures as "vague or non-existent" or

13  "cryptic."   (Opp. at 2:21 & 5:6.)   Plaintiffs' Opposition, however, does not explain why

14  *Instagram*'s disclosures are vague.  Plaintiffs fail even to acknowledge that they affirmatively

15  permitted Instagram to "Find Friends" from their "Contacts", instead ignoring Instagram's

16  disclosures altogether.   (*See id.* at 5 n.11 (listing all App Defendants *except* Instagram).)

17  Plaintiffs admit, however, that they "navigat[ed] within the *Instagram* App to a 'Find friends'

18  screen, tapp[ed] a displayed 'From my contact list' button bar, and then … [were] presented with

19  a list of recognizable names that the Plaintiff could choose to 'follow' by pressing another button

20  near each name."  (CAC, ¶ 317.)[5]  Both the SCAC and Opposition are silent on how Instagram's

21  disclosure was misleading.

22      In any event, Instagram's disclosures are similar to those approved recently by the court in

23  *Perkins v. LinkedIn Corp.*, No. 13-cv-04303-LHK, 2014 WL 2751053 (N.D. Cal. June 12, 2014).

24  In *Perkins*, plaintiffs challenged LinkedIn's alleged practice of "harvesting email addresses from

25  the contact lists of email accounts."  *Id.* at *1.  During the enrollment process, users were

26

27

28

---

[5] Plaintiffs cannot escape these detrimental admissions by omitting them from the SCAC.  *See Robinson v. Salazar*, 885 F. Supp. 2d 1002, 1024 n.12 (E.D. Cal. 2012).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   presented with a screen titled "Connect with people you know on LinkedIn" with a disclosure

2   stating that LinkedIn is asking for their "Google Contacts" from their "Google Account."  *Id.* at

3   \*2.  Selecting "Allow" directed users to a page titled "people you know on LinkedIn," which

4   displayed a list of LinkedIn users who matched the email addresses that LinkedIn collected from

5   the users Google account.  *Id.*  Users could then choose to connect with some, all, or none of the

6   displayed users.  *Id.*  The court concluded that based on these disclosures a reasonable user should

7   have understood "that LinkedIn was collecting email addresses from the user's external email

8   account."  *Id.* at \*13 (dismissing claims for violation of the Stored Communications Act and

9   Wiretap Act on the basis of consent).

10   Similarly, Instagram notified Plaintiffs during the "Find Friends" process that it would

11   access their contacts.  These disclosures were on-screen prompts that Plaintiffs had to navigate

12   through and affirmatively select.  (*See* First Amended Complaint (Dkt. 3), ¶¶ 457–58.)

13   Moreover, the "Find Friends" feature is optional.  (*See id.*)  These facts render implausible

14   Plaintiffs' allegation that they did not consent to Instagram's access.

15   Plaintiffs' artificial distinction between consent to "on-device scanning" and consent to

16   "uploading" (*see* Opp. at 11:6–12:3) does not change this result.  Initially, this distinction finds no

17   support in the plain language of Instagram's disclosures, which do not limit Instagram to "on-

18   device" access or scanning.  In addition, recent case law confirms that a reasonable user would

19   understand that to "scan" necessarily means to "upload."  *In re Yahoo Mail Litig.*, 7 F. Supp. 3d

20   1016, 1030–31 (N.D. Cal. 2014) (a "reasonable user" of online services would know that

21   "scanning and analyzing" data necessarily entails its "collection and storage").  The court's

22   analysis in *Yahoo* applies with equal force here.  Some communication must occur between a

23   user's device and Instagram's servers for Instagram to perform the service requested by the user:

24   finding other friends who use Instagram.  Consequently, any alleged "upload" for purposes of

25   comparison was within the scope of Plaintiffs' consent.

26   **b.     The prior Order's "consent" rationale does not apply.**

27   Plaintiffs *no longer allege* that *Instagram* used their data for any purpose other than

28   helping Plaintiffs "determine whether their friends were using the same app."  (Order at 44:12–

13.)  They abandoned their baseless allegations that Instagram disclosed this data to third parties or otherwise misused their information.  (*Compare* CAC, ¶ 320, *with* SCAC, ¶¶ 114–17.)  Thus, the previous Order does not help Plaintiffs here, as Plaintiffs cannot rely on previous iterations of their complaint to salvage their claims.  *See Valdez-Lopez*, 656 F.3d at 857.  Plaintiffs now claim that Instagram exceeded the scope of their consent because they allege Instagram used the "Find Friends" functionality and related data to grow its own user base, enhance the value of its company, and improve its services.  (SCAC, ¶ 117.)  But Plaintiffs make no attempt to explain why it matters that Instagram allegedly benefitted in that way.  Plaintiffs admit that they chose to use the optional "Find Friends" feature to find and connect with other friends on Instagram, and the SCAC admits that Instagram provided that very service to Plaintiffs.  A potential benefit to Instagram does not undermine Plaintiffs' consent.  *See Yahoo*, 7 F. Supp. 3d at 1041–42.

> **2.    Plaintiffs failed to allege facts establishing that Instagram's conduct was highly offensive.**

Plaintiffs attempt to sidestep their failure to allege a highly offensive intrusion by contending that the issue should be decided by a jury.  (Opp. at 7:3–10.)  But this Court can, and should, evaluate the sufficiency of Plaintiffs' allegations on a motion to dismiss.  (*See* Mot. at 13:1–16:18.)  "While what is 'highly offensive to a reasonable person' suggests a standard upon which a jury would properly be instructed, ***there is a preliminary determination of 'offensiveness' which must be made by the court in discerning the existence of a cause of action for intrusion***."  *Miller*, 187 Cal. App. 3d at 1483 (emphasis added).[6]  Here, Plaintiffs' non-conclusory factual allegations are insufficient as a matter of law to establish that Instagram's conduct was highly offensive.  (*See* Mot. at 13:1–16:18.)[7]

---

[6] Plaintiffs confuse this analysis by arguing that the threshold determination can only be made when the facts are undisputed, but the case they cite does not support this position.  (*See* Opp. at 7:4–5.)

[7] Plaintiffs argue that Instagram could have provided its "Find Friends" service without uploading Plaintiffs' address book data.  (*See* Opp. at 8:11–19.)  This argument misses the point.  Plaintiffs must allege why Instagram's alleged use of their contacts in connection with the "Find Friends" feature was highly offensive, not what alternative methods might have been available to find their friends.

### a. The context and circumstances of Instagram's alleged intrusion demonstrate it was not highly offensive.

It is undisputed that the "context, conduct and circumstances" surrounding an alleged intrusion all bear on whether that intrusion is "highly offensive." (Mot. at 13:9–12.) This includes both the manner in which the alleged intrusion occurred, and the purposes for the intrusion—including how the information was ultimately used. *See Sunbelt Rentals, Inc. v. Victor*, No., No. 13-cv-4240-SBA, 2014 WL 4274313, at *6–7 (N.D. Cal. Aug. 28, 2014) (dismissing intrusion claim because plaintiff "fails to aver any facts to establish that [defendant's] use of the intercepted communications was highly offensive"). Here, Plaintiffs admit that Instagram is a free service that enables people to connect and share photos with friends, and that Plaintiffs chose to use the optional "Find Friends" feature. (*See* Mot. at 4:7–5:6.) Under such circumstances, Plaintiffs' allegations that Instagram accessed their contacts to enable Plaintiffs to find and connect with their friends cannot constitute "highly offensive" conduct. (*See id*. at 13:1–15:15.)

Plaintiffs' responses are not persuasive. First, Plaintiffs misconstrue the prior Order to claim that Instagram's "use" of the data is irrelevant. (Opp. at 7:14–15.) The Order noted only that an allegation of a "highly offensive use" is not *required* in order to state a claim for intrusion. (Order at 45 n.23.) The Order did not overrule well-settled case law establishing that the way that a defendant used the data—which is part of the "context and circumstances surrounding the invasion"—should be considered when determining an intrusion's offensiveness. *Miller*, 187 Cal. App. 3d at 1483–84. Here, the SCAC does not allege that Instagram used Plaintiffs' data to do anything other than perform the services that Plaintiffs requested. *See Sunbelt Rentals,* 2014 WL 4274313, at *6–7.

Second, Plaintiffs contend that they "do allege the App Defendants' misuse of the data." (Opp. at 7:14.) But the cited paragraphs (*id*. at 7 n.14), only two of which are specific to Instagram, provide no support. Paragraph 115's bare allegation that Instagram uploaded address book data "[w]ithout prior user consent" is trumped by Plaintiffs' admission that they chose to use the optional "Find Friends" feature to connect with their friends. (*See* Mot. at 12:8–16.)

Paragraph 117's allegation that Instagram benefitted from providing the "Find Friends" service is likewise unavailing; that Instagram may have benefitted from enabling users to find and connect with their friends is of no consequence.  *See Yahoo*, 7 F. Supp. 3d at 1041–42 (concluding that defendant's alleged scanning and storage of private email content for "own financial gain" insufficient to state an invasion of privacy claim); *Yunker v. Pandora Media, Inc.*, No. 11-cv-03113-JSW, 2013 WL 1282980, at *15 (N.D. Cal. Mar. 26, 2013) (collecting and sharing PII for "marketing purposes" is not "egregious breach of social norms").[8]

Finally, Plaintiffs suggest that their intrusion claim cannot be decided on a motion to dismiss because they need discovery to reveal "what happened to the data once [Instagram] took it." (Opp. at 7:12–8:3.)  Predictably, Plaintiffs fail to cite any authority that allows them to avoid dismissal simply because they do not have facts to support their claim.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1954 (2009) ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."); *Somers v. Apple, Inc.*, 729 F.3d 953, 966 (9th Cir. 2013) (plaintiff's speculation that he might find relevant evidence in discovery "is not enough to permit the [complaint] to survive a Rule 12(b)(6) motion to dismiss").  Plaintiffs, and Plaintiffs alone, can describe how they were harmed.  They have not; to the contrary, they did not even allege they would have declined to use Instagram's voluntary "Find Friends" feature if they had known that Instagram would access their address book data.  (*See* Mot. at 7:24–8:2.)

### b. Plaintiffs failed to allege that their address book data contains sensitive or confidential information.

Plaintiffs' intrusion claim independently fails because Plaintiffs failed to plead what about their specific address book data was sensitive or confidential.  (*See* Mot. at 15:16–16:9.)  Plaintiffs skirt this requirement by contending, incorrectly, that they do not need to allege what about the specific contents of their address book data is sensitive or confidential.  But *Yahoo*

---

[8] Plaintiffs argue that *Yunker* is distinguishable because "the court found that plaintiffs voluntarily consented to providing raw personal data." (Opp. at 8 n.16.)  Plaintiffs are wrong.  The court in *Yunker* never made such a finding.  Indeed, in dismissing plaintiffs' privacy claim, the court concluded that plaintiffs' allegations were "similar to the allegations in … *Folgelstrom*" where the defendant allegedly had obtained "plaintiff's address without his knowledge or permission." 2013 WL 1282980, at *14–15.

makes it clear that Plaintiffs must do so to state an intrusion claim. *See* 7 F. Supp. 3d at 1040–41 (collecting cases). This position was recently reaffirmed in *Sunbelt Rentals*, which held that an invasion of privacy claim cannot simply "refer generally to 'private electronic data'" but must instead "identify the contents" that are actually sensitive or confidential. 2014 WL 4274313, at *6. Plaintiffs cannot ask the Court to assume that the content in the limited fields allegedly uploaded by Instagram was sensitive enough to plead their intrusion claim; they need to plead facts establishing their privacy interest, and they do not.

Plaintiffs further argue that their address books *could* contain information regarding the "identities of friends, enemies, lovers, ex-lovers, family, doctors, financial institutions, business associates, etc." (Opp. at 9:5–8; *see also* SCAC, ¶ 56.) But more than two years into the case, not one Plaintiff makes a single concrete allegation about the content of his own address book or how Instagram's access to that data compromised that content. Plaintiffs' citations to Fourth Amendment cases do not help them because those cases do not demonstrate that the specific address book data allegedly accessed in this case is inherently sensitive. *See United States v. Zavala*, 541 F.3d 562, 577 (5th Cir. 2008) (discussing the private information on cell phones generally); *Riley v. California*, 134 S. Ct. 2473, 2494–95 (2014) (same).[9] In fact, the *Yahoo* court specifically rejected plaintiffs' reliance on Fourth Amendment cases as "inapposite" to the question of whether an intrusion is "egregious." *See* 7 F. Supp. 3d at 1042 n.11. In rejecting plaintiffs' allegations that Yahoo violated their right to privacy by scanning, storing, and disclosing their emails, the court explained that plaintiffs cannot claim a "legally protected privacy interest … in emails generally." *Id.* at 1040. Instead, plaintiffs "must allege that the email intercepted actually included content that qualifies under California law as 'confidential' or 'sensitive' … [because] courts make their decisions regarding whether a plaintiff has stated a

---

[9] Plaintiffs' reliance on *NAACP v. Alabama*, 357 U.S. 449 (1958) is also misplaced. (*See* Opp. at 9:9–11.) *NAACP* involved the entirely different issue of whether forcing a group to reveal its membership list violated its members' rights to freedom of speech and assembly. *Id.* at 460. The NAACP showed that the revelation of its members' identities would expose them to "economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." *Id.* at 462. Here, Plaintiffs do not assert that Instagram engaged in any conduct that "may have the effect of curtailing [their] freedom to associate." *See id.* at 460–61.

legally protectable privacy interest based on the nature of the information at issue." *Id*. at 1041.

Likewise, here, Plaintiffs only claim in conclusory fashion that address book data "is among the most private and personal of such information a user maintains on an iDevice" without identifying any specific confidential or sensitive information that was uploaded. (*See* SCAC, ¶ 56.) As in *Yahoo*, Plaintiffs have failed to state a claim for intrusion.

### 3. Plaintiffs failed to plead that they were injured by Instagram's alleged intrusion.

Plaintiffs do not dispute that they are required to plead that they suffered an injury to state a claim for intrusion. (Mot. at 17:1–10.) Plaintiffs' only allegation of harm, however, is that "[a]s a direct and proximate result of the respective App Defendants' actions, Plaintiffs suffered harm and damages." (SCAC, ¶ 248.) Plaintiffs contend this conclusory allegation of harm is sufficient because "[d]amages flowing from an invasion of privacy logically would include an award for mental suffering and anguish." (Opp. at 12:8–9 (citations and quotations omitted).) But the fact that damages *might be available* for mental anguish does not excuse Plaintiffs from their burden to plead facts establishing that they *actually suffered* mental anguish. *See Cohen v. Facebook, Inc.*, 10-cv-5282-RS, 2011 WL 5117164, at *2 (N.D. Cal. Oct. 27, 2011) (noting that when pleading non-economic damages such as mental anguish, a plaintiff must, at a minimum, plead facts supporting their claim of mental anguish); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) ("more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required to survive a motion to dismiss).

### D. Plaintiffs Fail To State A Claim For Conversion.

Plaintiffs argue that their conversion claim should survive even though they were not dispossessed of their alleged property. Plaintiffs are wrong: Plaintiffs have alleged neither a convertible property interest in the information contained in their address books, nor that Instagram interfered with, much less dispossessed Plaintiffs of, Plaintiffs' use of that information.

### 1. Plaintiffs fail to allege a specific convertible property interest in the information contained in their address books.

Plaintiffs' primary argument is that California courts have held that certain forms of intangible property may be subject to conversion. (Opp. at 14:10–18:15.) This is beside the

12.

point.  While intangible property may theoretically be subject to conversion, the information in Plaintiffs' address books is not because Plaintiffs have not identified *a property interest* in the information allegedly accessed by Instagram in connection with the "Find Friends" feature.  (*See* Mot. at 17:16–27 (citing *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003).)

This distinguishes Plaintiffs' claim from every case they cite, which all involved plaintiffs that possessed *a property right* that permitted them to exclude others from using and/or copying their intangible property.[10]  Here, Plaintiffs fail to plead any facts establishing that they possess a similar property right in the data allegedly accessed by Instagram.  Plaintiffs do not, for example, claim to have copyright ownership; they cannot, because the Supreme Court has long held that names and telephone numbers are "uncopyrightable facts."  *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co. Inc.*, 499 U.S. 340, 361 (1991) (names and telephone numbers "are uncopyrightable facts" because "they existed before [plaintiff] reported them and would have continued to exist if [plaintiff] had never published a telephone directory").  Nor do Plaintiffs claim that their data qualifies for protection as a trade secret.[11]  Because Plaintiffs fail to establish that they have a property right in the information allegedly accessed by Instagram—which is the first element of conversion—their claim fails.  *See*, *e.g.*, *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1075 (N.D. Cal. 2012) ("*iPhone II*").

---

[10] *See G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 903 (9th Cir. 1992) (plaintiff had permit issued by FAA giving him the right to transfer or license his approved modifications to others); *Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718, 725–26 (9th Cir. 1984) (plaintiffs held copyrights giving them right to prevent defendant from making copies); *Flo & Eddie Inc. v. Sirius XM Radio Inc.*, No. 13-cv-5693-PSG, 2014 WL 4725382, at *11 (C.D. Cal. Sept. 22, 2014) (plaintiffs held copyright giving them right to prevent defendant from performing songs); *J & J Sports Prods., Inc. v. Ceballos*, No. 11-cv-5438-LHK, 2012 WL 4009587, at *1 (N.D. Cal. Sept. 12, 2012) (plaintiff owned "commercial distribution rights to broadcast" boxing match); *DIRECTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189 (E.D. Cal. 2005) ("Plaintiff possesses a right to distribute programming via satellite broadcast, thereby satisfying the first element of conversion."); *Don King Prods./Kingvision v. Lovato*, 911 F. Supp. 419, 423 (N.D. Cal. 1995) ("[P]laintiff's alleged exclusive rights to distribute the Program in California satisfy the first element of conversion (i.e., that the plaintiff owns a right to possession of property.").

[11] For the reasons made clear in Yelp and Foodspotting's briefs, Plaintiffs' claims are also preempted by the Copyright Act.

2.       **Plaintiffs failed to establish that Instagram wrongfully dispossessed them of their property rights.**

Plaintiffs also have not alleged that Instagram dispossessed them of—or even interfered with—any property right.  As an initial matter, Plaintiffs admit that they gave permission to Instagram to access their contacts when Plaintiffs chose to use the optional "Find Friends" feature.  That admission alone defeats Plaintiffs' conversion claim.  *See Bank of New York v. Fremont Gen. Corp.*, 523 F.3d 902, 914 (9th Cir. 2008) (noting that the "law is well settled that there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking, use or disposition of his property") (quotation and citation omitted).  Further, Plaintiffs admit they still possess copies of their address book data, and fail to provide a single example of a use they sought to make with their property that was hindered by Instagram's actions.  For instance, Plaintiffs do not allege that they attempted to sell or license their address book data but were unable to do so because Instagram had uploaded certain portions of it.  This distinguishes Plaintiffs' claim from every case they cite, all of which involve plaintiffs who were dispossessed of their right to license their property rights to others and had established some *value* associated with that license right.  *See*, *e.g.*, *Rasmussen*, 958 F.2d at 906 (holding plaintiff "suffered damages by being denied a return on his investment as a condition for granting [defendant] the right to use his STC"); *J & J Sports*, 2012 WL 4009587, at *2 (awarding damages in amount of commercial license defendant would have had to pay to broadcast program); *J & J Sports Prods., Inc. v. Hernandez*, No. 12-cv-05773-JST, 2013 WL 2468354, at *3 (N.D. Cal. June 6, 2013) (same).   Because Plaintiffs have failed to allege facts establishing that they have been "dispossessed" of their right to profit from their address book data, their conversion claim fails.  *See Hernandez v. Path, Inc.*, No. 12-cv-01515-YGR, 2012 WL 5194120, at *7 (N.D. Cal. Oct. 19, 2012) (dismissing conversion claim because plaintiff "only alleged that Path copied the information").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.    **Plaintiffs failed to establish that they were injured by Instagram's alleged conversion of their address book data.**

As explained in Section B, *supra*, Plaintiffs' arguments regarding damages fail because they are based on a misreading of Civil Code sections 3336 and 3360.  And Plaintiffs' conclusory and speculative allegations that they somehow have been deprived of the value of their data are insufficient.  (Mot. at 18:15–19.)   Accordingly, Plaintiffs' conversion claim should also be dismissed because they have failed to satisfy the damages element.

E.    **Plaintiffs' Claims Should Be Dismissed With Prejudice.**

The SCAC is Plaintiffs' seventh attempt to plead claims against Instagram over a two-and-a-half year period.  Plaintiffs' Opposition identifies no facts that could be pled to salvage their claims against Instagram specifically; instead, it offers only incorrect legal theories for why the facts alleged are sufficient and generalized allegations against all App Defendants that inappropriately seek to paint all App Defendants with the same broad brush.  Instagram therefore requests that the claims against it be dismissed with prejudice.  *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1033 (N.D. Cal. 2012) (dismissing claims with prejudice "because any amendment would likely be futile").).

III.    **CONCLUSION**

For the above-stated reasons, Instagram respectfully requests that the Court dismiss Plaintiffs' claims against it with prejudice.

Dated: October 29, 2014                    COOLEY LLP


                                           */s/ Mazda K. Antia*
                                           Mazda K. Antia
                                           Attorneys for Defendant Instagram, LLC