October 1, 2015

The Honorable Jon S. Tigar
United States District Court Judge
San Francisco Courthouse
Courtroom 9, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *Opperman v. Path, Inc. et al.,* United States District Court No. 13-cv-0453-JST
              <u>Joint Letter Regarding Discovery Dispute Between Plaintiffs and Path, Inc.</u>

Dear Judge Tigar:

      This joint discovery letter brief is filed pursuant to the Court's Civil Standing Order, effective September 17, 2013.  This dispute concerns whether Plaintiffs may take the depositions of Defendant Path, Inc.'s ("Path") Chief Executive Officer David Morin and former Chief Technology Officer and Director Server Side Architecture Nathan Folkman.  Path seeks a protective order against the deposition of Mr. Morin, Path's CEO, under the "apex" doctrine.  Mr. Folkman seeks a protective order quashing a subpoena for his deposition and asserts undue burden of being deposed a second time.  Plaintiffs request that the Court overrule Path and Mr. Folkman's discovery objections and compel the depositions of Mr. Morin and Mr. Folkman.  In accordance with this Court's Standing Order, counsel for Plaintiffs and for Path and Mr. Folkman met and conferred by phone on September 14, 2015, and again on September 21, 2015, reaching an impasse.  Counsel jointly submit this letter brief summarizing the dispute.

## **Defendant Path, Inc.'s Position**

      Plaintiffs assert a single claim against Path:  intrusion upon seclusion based on Path's uploading of address books from users of its iOS mobile application.  *See* Second Consolidated Complaint at ¶¶ 243-255 (Dkt. 558).  Path provided substantial discovery on this issue beginning in January 2013 in the related *Hernandez v. Path, Inc.* case, producing more than 6000 pages of documents in response to four sets of requests for production, responding to four sets of interrogatories, and two sets of requests for admission and providing two corporate representatives who testified in a Rule 30(b)(6) deposition.  Tellingly, while the Court indicated that "further factual development" may be necessary as to other Defendants, those sections of the order did not apply to *Path*.  *See* Dkt. 543 at 5.

      Other than the question of what, if any, damages Plaintiffs suffered, no other factual questions as to Path remain for additional discovery.  Path has acknowledged in the discovery it has provided that it uploaded the contacts from the iOS devices of users of its service who logged in to versions 2.0 through 2.0.5 of its mobile app between November 29, 2011 and February 7, 2012.  It has also provided testimony, interrogatory responses and documents showing that it used those "to match users to persons they knew who were also using Path."  *See* Exs. 1-3 (excerpts from Path's discovery responses).[1]  It has further provided sworn deposition

---

[1] An Administrative Motion to Seal certain exhibit portions accompanies this letter-brief. To the extent Path designated other portions of discovery Confidential, Path de-designates the excerpted sections in and attached to this letter-brief that are not the subject of the sealing motion.

testimony and interrogatory responses that it did not sell or otherwise transfer the uploaded contacts to any third parties, and that it deleted the entirety of those contacts from its database on February 8, 2012, over one month before Plaintiffs filed this lawsuit. Path also provided contemporaneous documentary evidence showing the February 8, 2012 deletion of the contacts database.

Plaintiffs have also had the opportunity to question Path witnesses extensively on these topics. Plaintiffs' counsel in the related *Hernandez* case deposed two Path employees in May 2013 on these topics pursuant to Rule 30(b)(6). *See* Ex. 4 (30(b)(6) Deposition Topics 5-9, 11-15). Mr. Folkman, one of Path's corporate designees, testified for over 90 pages regarding Path's acquisition of contact information and its sole use of such information to help users find and connect with their contacts who were also members of Path's limited social network. Further discovery on these points from Path's CEO and again from Mr. Folkman, who has not worked for Path since October 2013, would only be cumulative and harassing.

**Dave Morin Is an Apex Officer Who Lacks Unique Knowledge on Relevant Issues**

Under the "apex doctrine," courts routinely issue protective orders barring or limiting the deposition of a party's "apex" officer unless the party seeking the deposition demonstrates that (i) the officer has "unique, non-repetitive, firsthand knowledge of the facts at issue in the case," *and* (ii) there are no other less intrusive means of discovery available. *Affinity Labs of Texas v. Apple Inc.*, No. 09-4436, 2011 U.S. Dist. LEXIS 53649, at *40-41 (N.D. Cal. May 9, 2011); *Groupion, LLC v. Groupon, Inc.*, No. 11-0870, 2012 U.S. Dist. LEXIS 12684, at *6-7 (N.D. Cal. Feb. 2, 2012). When seeking to depose apex officers and directors, the burden shifts to the party seeking the deposition to "meet its burden to show that [the CEO] has 'unique' and 'non-repetitive' knowledge regarding any relevant topic that is not available through less burdensome means." *See Affinity Labs*, at *43-44. Plaintiffs fail to meet this burden.

Finally, Plaintiffs' assertion that the apex doctrine applies only to top officers of large corporations finds no support in the case law. As CEO of Path, Mr. Morin "represents the quintessential 'apex.'" *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 282 F.R.D. 259, 265 (N.D. Cal. 2012). The only other cases Plaintiffs cited pertained to managers of a sub-division or found that the former CEO of a small company *was* indeed an apex officer, and Plaintiff's "single-hierarchy" quote completely miscites the case law. *Compare Lexington Ins. Co. v. Sentry Select Ins. Co.* No. 1:08-cv-01539, 2009 WL 4885173 at *7 (E.D. Cal. 2009) and *WebSideStory, Inc. v. NetRatings, Inc.*, No. 06-cv-00408, 2007 WL 1120567 at *3 (S.D. Cal. 2007) *with Apple*, 282 F.R.D. at 263. That Path's hierarchy is not "rigid" is irrelevant where Plaintiffs seek the deposition of the *CEO*. Plaintiffs must still demonstrate the "unique personal knowledge required to compel a deposition of a CEO." *Apple*, 282 F.R.D. at 265 (finding unique personal knowledge but limiting deposition of CEO to two hours). Accordingly, because Plaintiffs have not shown that Mr. Morin has unique, personal and non-cumulative knowledge relevant to Plaintiffs' claims, a protective order should issue against his deposition.

Plaintiffs have not shown that that Mr. Morin has *unique or superior* personal knowledge of discoverable information. During the meet-and-confer process, Plaintiffs failed to identify *any* relevant facts that are uniquely in the possession of Mr. Morin. Instead, they have

The Honorable Jon S. Tigar
10/1/2015
Page 3

referenced internal communications between Mr. Morin and others, which by their very nature were not unique to Mr. Morin, or public statements akin to the ones the *Affinity Labs* court found non-unique. *Affinity Labs*, 2011 U.S. Dist. LEXIS 53649 at *27. Tellingly, they all included, among others, Mallory Paine and/or Nathan Folkman, the two corporate representative witnesses Plaintiffs in the related *Hernandez* case deposed in May 2013. *See* Plaintiffs' Exs. B-D. That Plaintiffs declined to spend time questioning Mr. Paine at his deposition about these communications is no reason for Plaintiffs to seek the testimony from an apex officer.

Mere firsthand knowledge of relevant information is insufficient to meet the standard for deposing a CEO; the information sought must also be unique and non-repetitive. *Id.* at *42 ("firsthand knowledge of relevant information" "misstates the standard for deposing a CEO"). Plaintiffs have provided no explanation for why additional testimony by Mr. Morin about communications between Mr. Morin *and others* that Path *produced in discovery* would be both unique and non-repetitive.

Nor have plaintiffs adequately explained why any testimony by Mr. Morin, about these emails or otherwise, would be relevant to the single claim in this litigation. Pursuant to Federal Rule of Civil Procedure 26(b)(1), discovery must be relevant to any party's claim or defense. Outside of what has already been produced in the related *Hernandez v. Path*, No. 12-cv-1515 action, Plaintiffs seek no additional information that is relevant to the remaining claim in this case of Intrusion upon Seclusion.

Plaintiffs' claim for intrusion upon seclusion depends on "(1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person." Order on Motion to Dismiss (Dkt. 471 at p. 42). Path has acknowledged the relevant facts as to Path's acquisition and manner of use of the address book data at issue; testimony from Mr. Morin on that topic would only be cumulative. What Mr. Morin as CEO personally knew about the acquisition of address books or knew of public statements by users on the topic has no bearing on the remaining elements of the cause of action, namely whether Plaintiffs suffered any harm. But that issue depends entirely on discovery to be obtained from the Plaintiffs, not Path. Plaintiffs have articulated no other relevant information Mr. Morin may have that has not already been produced in the related action or could have been asked of Mr. Paine. Instead, Plaintiffs misrepresent chat logs in which Mr. Morin *asked Mr. Folkman to confirm* a computer record that *Mr. Folkman* pasted into the chat, documenting his deletion of the contacts database. Ex. 5 (chat log excerpt); *see* Ex. 6 (Folkman Depo., at 103:10-104:17). Plaintiffs also introduce a version of an email that Mr. Folkman testified to at length at his deposition. *Compare id.* at 119:21-123:17, transcript exh. 8 *with* Plaintiffs' Ex. B. Because Plaintiffs have failed to show good cause that Mr. Morin has unique or superior personal knowledge, Path respectfully requests the Court issue a protective order[2] prohibiting a deposition of Mr. Morin as duplicative and harassing, and unnecessary under the apex doctrine.

---

[2] *See* Ex. 7 (Proposed Order). Furthermore, in light of the disagreement regarding whether the depositions should take place, the parties have not conferred regarding specific potential dates. Should the Court order depositions, Path requests the Court direct the parties to meet-and-confer to determine mutually agreeable dates within 30 days of the order.

The Honorable Jon S. Tigar
10/1/2015
Page 4

## **Mr. Folkman Was Deposed on the Same Issues More Than Two Years Ago**

Mr. Folkman is not a party to this action. While he previously worked for Path, he left Path nearly two years ago. Furthermore, Mr. Folkman has already testified at deposition in the related *Hernandez* case. Plaintiffs have articulated no reason why any testimony Mr. Folkman could give would not be duplicative, irrelevant to the one remaining claim in the case, or outweighed by the considerable burden of a second deposition on Mr. Folkman.

Under Federal Rule of Civil Procedure 45(d)(3)(A)(iv), the Court should quash a subpoena that subjects a person to undue burden. Courts "weigh the burden to the subpoenaed party against the value of the information to the serving party," and "the unwanted burden thrust upon non-parties is a factor entitled to special weight." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014). "Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party" and will quash subpoenas where the witness lacks "material and unique relevant information such that [the party's] need for [the witness's] testimony outweighs the burden." *Id.* at 410-11.

Plaintiffs' subpoena to take a second deposition of Mr. Folkman is akin to seeking leave for a second deposition under Federal Rule of Civil Procedure 30(a)(2) where "the deponent has already been deposed in the case." Rule 26(b)(2)(C) provides that a court should limit discovery where "the discovery sought is unreasonably cumulative or duplicative," "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action," or "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *See Groupion*, 2012 U.S. Dist. LEXIS 12684, at *15.

In *Hernandez*, Mr. Folkman testified at length in May 2013 on the precise topics at issue in this case. *See* Ex. 4 (30(b)(6) Deposition Topics 5-9, 11-15). Mr. Folkman testified for over 90 pages regarding Path's acquisition of contact information and its sole use of such information to help users "find friends," including that Path did not "mine" the database for any other information. Ex. 6 (Folkman Depo., at 118:5-24, 119:6-123:17). During the meet-and-confer process, Plaintiffs identified no new relevant topics that the previous 30(b)(6) deposition topics did not cover. Instead, Plaintiffs only pointed to deposition questions where Mr. Folkman either testified on the topic or answered that he was not aware of anyone at Path who knew the answer. *See* Ex. 6 (Folkman Depo., at 49:11-14; at 57:1-6). It would serve no purpose to force Mr. Folkman, a nonparty, to reappear for deposition after two and half years have passed on these same topics. Path has also voluntarily produced its server code, which Mr. Folkman has not seen in nearly two years. As Mr. Folkman has no additional relevant testimony, subjecting Mr. Folkman to another deposition on these exact same topics is unreasonably cumulative and duplicative and would place an undue burden on his time and resources, and the Court should quash the subpoena.

The Honorable Jon S. Tigar
10/1/2015
Page 5

## PLAINTIFFS' STATEMENT[3]

*Morin Deposition*

Path objects to Mr. Morin's deposition because, it says, Mr. Morin is an "apex" witness. Mr. Morin is the co-founder of a small company comprising 41 employees as of June of 2012. Ex. A (PATH-HERN 000987.) Plaintiffs filed the original complaint in this action in July of 2012. (ECF # 1.)

Path's argument is quickly dispelled by its own statements. Mr. Morin did not outrank other Path executives. Ex. A (PATH-HERN 000987.) Path characterized itself to the Federal Trade Commission as lacking a corporate hierarchy. Ex. A (PATH-HERN 000987.) Under these circumstances, Path cannot invoke the apex doctrine to a non-hierarchical management structure. *See Apple, Inc. v. Samsung Electronics Co., Ltd.*, 282 F.R.D. 259 (N.D. Cal. 2012).

Apex doctrine is not "a tool for evading otherwise relevant and permissible discovery." *See id.* at 263. An executive who claims apex protection "carries a heavy burden." *Id.* Apex protections are "judicially-created" under the Federal Rules, to prevent discovery abuses. *See* Fed. R. Civ. P. 26(b)(1); *Apple v. Samsung, supra,* 282 F.R.D. at 263; *WebSideStory, Inc. v. NetRatings, Inc.*, No. 06-cv-00408, 2007 WL 1120567 at *2 (S.D. Cal. 2007). In particular, apex means the witness was "removed from . . . personal, non-repetitive knowledge" of the misconduct, rendering a deposition futile. *See Apple v. Samsung, supra,* 282 F.R.D. at 263. Relevant here, executives with "hands-on action" in a company's misconduct are not apex witnesses. *See id.* at 265.

Path's apex argument fails on three separate grounds.

*First*, apex protections do not apply without a "single-hierarchy corporate structure" to justify them. *Lexington Ins. Co. v. Sentry Select Ins. Co.* No. 1:08-cv-01539, 2009 WL 4885173 at *7 (E.D. Cal. 2009). Here, Path presents no hierarchy. In discovery responses, Path denies a corporate hierarchy, stating "Path does not have a rigid, hierarchical distribution of responsibility and authority." Ex. A (PATH-HERN 00987.) Arguing below, Path does not cite a case applying apex protection without some "single-hierarchy corporate structure." *Apple v. Samsung, supra,* 282 F.R.D. at 263; *Lexington Ins. Co.*, 2009 WL 4885173, at *7.

*Second*, there is only a single departure in apex case law from the "single-hierarchy" model. *Apple v. Samsung, supra,* 282 F.R.D. at 264. That is where a corporate structure has *multiple* hierarchies, and only one hierarchy is relevant. *See id.* at 264 (assessing each "apex" official's executive role at Samsung Electronics Co., LTD relative to the "corporate mountain range" at that company). There, the only executive qualified for apex safeguards is the executive "holding rank at the top of the relevant hierarchy." *See id.* at 265. This apex model does not apply to Path. Path cannot claim its management structure to consist of multiple, relevant hierarchies; Path's own statements preclude this argument, as Path is/was "a small, early-stage

---

[3] Plaintiff's citations to "PATH-HERN" are to documents (designated "confidential") produced by Path in discovery. Path has de-designated the sections quoted herein.

start-up company." Ex. A (PATH-HERN 000987.)  It follows that Path was too small to develop a corporate hierarchy with Mr. Morin at the apex.  At the time of its reporting to the Federal Trade Commission, June 20, 2012, Path had 41 employees.  Ex. A (PATH-HERN 000986.)  In brief, Path's management did not make use of ranks, meaning Mr. Morin could not hold rank even if he wanted to.  *Apple v. Samsung*, *supra,* 282 F.R.D. at 264-65.

*Third*, Plaintiffs can—but need not—show Mr. Morin's "hands-on action which demonstrates the unique personal knowledge required to compel a deposition of a CEO." *See id.* at 265.  Plaintiffs seek to depose Mr. Morin on Plaintiffs' intrusion claim.  Plaintiffs allege the Path App intruded upon their private affairs.  (ECF # 478.)  To prove the claim, Plaintiffs must establish "intrusion into a private, place, conversation, or matter." (ECF # 543.)  Plaintiffs must also establish the intrusion was "highly offensive to a reasonable person." (ECF # 543.)

Path's discovery responses in this case direct Plaintiffs to its production from *Hernandez v. Path, Inc.*, No. 4:12-cv-01515-YGR.  Mr. Morin had direct knowledge of the Path App's intrusion and its offensiveness, as evidenced by the following excerpts from that production:

1) Mr. Morin knew about Path App's access to address book data and Path's intended use of the data.  On October 11, 2011 at 4:20 PM PST, Path employee Mark Lewandowski sent an email to Path executives describing plans to access and transmit user data to Path servers.  Ex. B (PATH-HERN 000704-707.)  Lewandwoski stated: "Additionally, as we store contact information from many users and grow our identity/relationship network we can employ more standard social graph mining techniques, including but not limited to, the number of friends in common, type of relationship, frequency of communication, etc." Ex. B (PATH-HERN 000706.)  The next morning at 10 AM PST, Morin responded to the email chain, stating in pertinent part: "This has to be done for 2.0." Ex. B (PATH-HERN 000704.)

2) Mr. Morin knew Path's access to the data was highly offensive.  Ex. C (PATH-HERN 000871.)  On January 18, 2012, Mr. Morin was warned about a "backlash" from Path users.  Ex. C (PATH-HERN 000871.)  The same day, Mr. Morin acknowledged the backlash and his own knowledge of it, stating: "Yup we know." Ex. C (PATH-HERN 000871.)

3) Mr. Morin knew the Path App violated Path's privacy commitments, showing lack of user consent.  Ex. D (PATH-HERN 000872-873, 877.)  On January 20, 2012, Path Director of Mobile Engineering Mallory Paine circulated a calendar notification calling for a "Strategic Review Session." Ex. D (PATH-HERN 000872.)  Paine listed the email address "dave@path.com" as one of the "Required Attendees."  Ex. D (PATH-HERN 000872.)  Paine's notification included the following statement: "1. Upload the entire address book topic." Ex. D (PATH-HERN 000872.)  Path Director of Product Dylan Casey circulated meeting notes via email on January 21, 2012.  Ex. D (PATH-HERN 000877.)  Casey's meeting notes state: "We communicate how we respect privacy publicly, but uploading the address book w/out notice seem contrary to our values." Ex. D (PATH-HERN 000877.)

4) Mr. Morin made public representations about Path's transmission and storage of address book data. Ex. E ("We are sorry. –Path," Dave Morin, Feb. 8, 2012 ("Morin Post").) In a public statement on February 8, 2012, Mr. Morin stated: "We always transmit this and any other information you share on Path to our servers over an encrypted connection. It is also stored securely on our servers using industry standard firewall technology." Ex. E (Morin Post.)

5) Mr. Morin knew that Path's contact database included over six hundred million address book records. On February 8, 2012, Mr. Morin stated in Path's employee chat logs: "How many total was that? 662 million? wow." Mr. Morin followed his chat statement with a colon and right parenthesis: the smiley-face emoticon. Ex. F (PATH-HERN 006176.)

Coupled with Path's description of Mr. Morin's role as "Overall responsibility for the company," these examples show Mr. Morin's "hands-on action" relating to:

- the magnitude of the Path App's intrusion,
- the lack of consent from Path users,
- the extent to which Path used or planned to use the data it obtained through the intrusion, and
- Path's mechanism of transmitting address book data to its servers.

While this showing would satisfy the relevant standard, Plaintiffs are not required by apex doctrine to make this showing. *Apple v. Samsung*, *supra,* 282 F.R.D. at 263-65. Plaintiffs' deposition should extend to all topics otherwise discoverable.

*Folkman Deposition*

Path also objects to a deposition of Nathan Folkman, styled as a motion to quash.[4] Mr. Folkman served as Path's Director of Server Side Architecture and the company's Chief Technology Officer. Path says that Mr. Folkman provided full responsive testimony in a prior related case, *Hernandez v. Path, Inc.*, *supra,* 4:12-cv-01515-YGR, related to this case via ECF # 360; he has not been deposed in any other related case. Even viewing Folkman's earlier deposition as responsive later, Path's position is untenable. Unlike in the prior, related *Hernandez* case, this Court ordered Plaintiffs to direct their efforts toward "further factual development" of two key topics: "the parameters of Plaintiffs' consent" and "Defendants' use of [address book] data." (ECF # 543.) On this basis, Plaintiffs' deposition questions will differ from those of prior counsel in *Hernandez*.

---

[4] Path insisted that Mr. Folkman be subpoenaed for his deposition because he is now a former Path employee. (He still worked for Path at the time of his deposition in the *Hernandez* matter.) Plaintiffs agreed to do so with the express understanding that Path's attorneys would accept service of that subpoena for Mr. Folkman, and that both Mr. Folkman's and Mr. Morin's depositions would take place after this Court's resolution of the present dispute.

The Honorable Jon S. Tigar
10/1/2015
Page 8

     Per the Court's Order, Plaintiffs will depose Mr. Folkman to achieve further factual development.  Path's production of documents (including source code) suffers from gaps related to Path's storage, use, and intended use of address book data.  As of February 8, 2012, Path stored 600,000,000 records in its "Contacts" database, according to Path's statements in employee chat logs.  Ex. F (PATH-HERN 006176.)  While Path has produced select portions of source code in native format, showing how its application interacted with user devices, Path only this week produced corresponding source code to show how address book data travelled to Path's database.  Mr. Folkman's testimony will assist Plaintiffs in further factual development on this point.  (ECF # 543.)

     Path's written discovery responses raise questions that Mr. Folkman's deposition will answer.  Path's written responses provide, without elaboration, that "Path only used address book data to match users to persons they knew who were also using Path."  Ex. G (Path's Answers and Objections to Plaintiffs' First Set of Requests for Production of Documents, Request No. 14.)  Path's limited responses raise serious questions that are central to Plaintiffs' claims.  For instance, databases exist for the sake of long-term storage and use.  If Path's intended use for 600,000,000 address book records was limited to matching, and the matching occurred instantaneously, why use a database at all?

     During the parties' second meet and confer, the parties discussed Path's use of address book data.  Path referred Plaintiffs to Mr. Folkman's deposition in *Hernandez v. Path, Inc.*, *supra,* No. 4:12-cv-01515-YGR.  Mr. Folkman's prior testimony provides some insight about this question, but the testimony is still inadequate about how Path mined the address book data in the Contacts database.  Ex. H (Folkman Tr. 122:15—123:3)

> Q. Then it says: "Mine data to determine what features or combination of features provide the strongest signal for -- for relationship strength. 'Again, we can eyeball these, but until I have the full schema from Mallory and Lowell, as well as fleshed-out data model, this is difficult to estimate.'"  Was that ever done?
> A. I mean, partially.
> Q. And what do you mean "partially"?
> A. So what was implemented was a simplified version of what was being proposed here that relied on explicit matching of phone numbers and e-mail addresses.

This line of inquiry during Mr. Folkman's testimony did not extend to details about Path's data-mining or any new data Path created related to its users' interests, relationships, levels of social influence, or other commercially valuable insights.   All of these areas of inquiry are relevant to the Court's order for further factual development.

*Conclusion*

     To prevent any further prejudice to Plaintiffs by Path's delays, Plaintiffs seek an order compelling Mr. Morin and Mr. Folkman to provide deposition testimony.  The Court should compel Mr. Morin and Mr. Folkman to appear for deposition within 10 days of entry of the order, enclosed for the Court's consideration.

The Honorable Jon S. Tigar
10/1/2015
Page 9

Dated: October 1, 2015　　　　　　　　　　FENWICK & WEST LLP

　　　　　　　　　　　　　　　　　　　　　By: __/s/ Tyler G. Newby_____
　　　　　　　　　　　　　　　　　　　　　　　Tyler G. Newby (CSB No. 205790)
　　　　　　　　　　　　　　　　　　　　　　　Jedediah Wakefield (CSB No. 178058)
　　　　　　　　　　　　　　　　　　　　　　　Kathleen Lu (CSB No. 267932)
　　　　　　　　　　　　　　　　　　　　　　　FENWICK & WEST LLP
　　　　　　　　　　　　　　　　　　　　　　　555 California Street, 12th Floor
　　　　　　　　　　　　　　　　　　　　　　　San Francisco, CA 94104
　　　　　　　　　　　　　　　　　　　　　　　Telephone: 415.875.2300
　　　　　　　　　　　　　　　　　　　　　　　Facsimile: 415.281.1350
　　　　　　　　　　　　　　　　　　　　　　　Attorneys for Defendant Path, Inc.
　　　　　　　　　　　　　　　　　　　　　　　　　and nonparty Nathan Folkman

Dated: October 1, 2015　　　　　　　　　　By: /s/ David M. Given
　　　　　　　　　　　　　　　　　　　　　　　David M. Given
　　　　　　　　　　　　　　　　　　　　　　　Nicholas A Carlin
　　　　　　　　　　　　　　　　　　　　　　　Conor H. Kennedy
　　　　　　　　　　　　　　　　　　　　　　　PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
　　　　　　　　　　　　　　　　　　　　　　　39 Mesa Street, Suite 201
　　　　　　　　　　　　　　　　　　　　　　　San Francisco, CA 94129
　　　　　　　　　　　　　　　　　　　　　　　Tel: (415) 398-0900
　　　　　　　　　　　　　　　　　　　　　　　Fax: (415) 398-0911

　　　　　　　　　　　　　　　　　　　　　　　Michael von Loewenfeldt
　　　　　　　　　　　　　　　　　　　　　　　James M. Wagstaffe
　　　　　　　　　　　　　　　　　　　　　　　Frank Busch
　　　　　　　　　　　　　　　　　　　　　　　KERR & WAGSTAFFE LLP
　　　　　　　　　　　　　　　　　　　　　　　101 Mission Street, 18th Floor
　　　　　　　　　　　　　　　　　　　　　　　San Francisco, CA 94105
　　　　　　　　　　　　　　　　　　　　　　　Tel: (415) 371-8500
　　　　　　　　　　　　　　　　　　　　　　　Fax: (415) 371-0500

　　　　　　　　　　　　　　　　　　　　　　　*Interim Co-Lead Counsel for Plaintiffs*

　　　　　　　　　　　　　　　　　　　　　　　Carl F. Schwenker (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　　LAW OFFICES OF CARL F. SCHWENKER
　　　　　　　　　　　　　　　　　　　　　　　The Haehnel Building
　　　　　　　　　　　　　　　　　　　　　　　1101 East 11th Street
　　　　　　　　　　　　　　　　　　　　　　　Austin, TX 78702
　　　　　　　　　　　　　　　　　　　　　　　Tel: (512) 480-8427
　　　　　　　　　　　　　　　　　　　　　　　Fax: (512) 857-1294

　　　　　　　　　　　　　　　　　　　　　　　*Plaintiffs' Liaison Counsel*

The Honorable Jon S. Tigar
10/1/2015
Page 10

Jeff Edwards (admitted *pro hac vice*)
EDWARDS LAW
The Haehnel Building
1101 East 11th Street
Austin, TX 78702
Tel: (512) 623-7727
Fax: (512) 623-7729

Jennifer Sarnelli (SBN 242510)
GARDY & NOTIS, LLP
501 Fifth Avenue, Suite 1408
New York, NY 10017
Tel: (212) 905-0509
Fax: (212) 905-0508

*Plaintiffs' Steering Committee*

The Honorable Jon S. Tigar
10/1/2015
Page 11

## ATTESTATION PURSUANT TO GENERAL ORDER 45

I, Tyler G. Newby, attest that concurrence in the filing of this document has been obtained from the signatories indicated by a "conformed" signature (/s/) in this e-filed document.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 1st day of October, 2015 in San Francisco, California.


DATED:  October 1, 2015

Respectfully submitted,


FENWICK & WEST LLP

By:*/s/ Tyler G. Newby*
Tyler G. Newby (CSB No. 205790)
tnewby@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:     415.875.2300
Facsimile:      415.281.1350
Attorneys for Defendant Path, Inc.
        and nonparty Nathan Folkman