David M. Given (SBN 142375)
Nicholas A. Carlin (SBN 112532)
Conor H. Kennedy (SBN 281793)
**PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP**
39 Mesa Street, Suite 201
The Presidio
San Francisco, CA   94129
Tel: 415-398-0900
Fax: 415-398-0911
Email:    dmg@phillaw.com
Email:    nac@phillaw.com
Email:    chk@phillaw.com

*Interim Co-Lead Counsel for Plaintiffs*
[ADDITIONAL COUNSEL LISTED BELOW]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK OPPERMAN, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>PATH, INC., et al.,<br><br>            Defendants. | Case No.  13-cv-00453-JST<br><br>**REDACTED VERSION OF PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION RE PATH APP; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>THIS DOCUMENT RELATES TO THE FOLLOWING CASES<br>*Opperman v. Path, Inc.*, No. 13-cv-00453-JST<br>*Hernandez v. Path, Inc.*, No. 12-cv-1515-JST<br>(collectively, the "Related Actions")<br><br>Date:   April 12, 2016<br>Time:  2:00 p.m.<br>Ctrm:  9, 19th Floor |

*Sidebar (rotated):* PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP / 39 Mesa Street, Suite 201 / San Francisco, CA  94129 / (415) 398-0900

**TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION .................................................................. 1

II.   STATEMENT OF ISSUE TO BE DECIDED ............................... 3

III.  STATEMENT OF CLASS-WIDE FACTS .................................. 3

      A.   Contacts Is Configured to Accumulate Enormous Quantities of Data. ................. 3

      B.   Path Took Each User's Contacts Data With No Notice or Warning. .................... 5

      C.   Path Designed Version 2.0 to Exploit Easy Access to Contacts Data. ................. 5

      D.   ████████████████████ the Path App Accessed iDevice Users' Contacts
           Data and Sent That Data to Path ████████ ................................. 6

      E.   Path Gave No Notice of the Contacts Data Upload. .......................... 7

      F.   Path Did Not Disclose Anything about Contacts Data in its Privacy Policy. ........ 7

      G.   Path Undertook Steps to ██████████████████████████ ........ 8

      H.   Path Knew the Path App Violated its Privacy Commitment to Users. ............ 8

      I.   The Path App Uploaded Hundreds of Thousands of Users' Contacts Data. ......... 9

      J.   Path Relied on the Path App to Increase User Growth and User Engagement,
           Enabling Path to Secure $34 Million in Venture Funding. ................. 10

IV.   STATEMENT OF FACTS SPECIFIC TO PLAINTIFFS ................. 11

V.    PROCEDURAL BACKGROUND ............................................ 11

VI.   ARGUMENT ................................................................... 11

      A.   Applicable Legal Standards. ................................................. 11

      B.   The Requirements Of Rule 23(A) Are Met ............................... 12

           1.   Numerosity is Satisfied. ............................................. 12

           2.   Commonality is Satisfied. ........................................... 13

           3.   Plaintiffs' Claims are Typical of the Proposed Class(es) ............ 14

           4.   Plaintiffs are Adequate Class Representatives ..................... 15

                a.   Plaintiffs' Counsel is Adequate ............................ 15

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

i

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION RE PATH APP; MPA IN SUPPORT THEREOF**
**Case No. 13-cv-00453-JST**

|  |  | b. | Plaintiffs Are Adequate Class Representatives. | 16 |
|  |  | c. | Plaintiffs Will Prosecute Class Claims Vigorously. | 16 |
|  | 5. | Ascertainability is Satisfied. | | 16 |
|  |  | a. | Verifying Class Members | 16 |
|  |  | b. | Notice and Administration | 17 |
|  | 6. | The Requirements of Rule 23(b) are Satisfied. .. | | 18 |
|  |  | a. | Common Issues of Law and Fact Predominate. | 19 |
|  |  | b. | A Class Action Is Superior. | 22 |
| V. | CONCLUSION | | | 23 |

Phillips, Erlewine, Given & Carlin, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION RE PATH APP; MPA IN SUPPORT THEREOF**
**Case No. 13-cv-00453-JST**

**TABLE OF AUTHORITIES**

PAGE(S)

CASES

*Amchem Products v. Windsor,*
  521 U.S. 591 (1997) .................................................................................................... **19**

*Am. Master Lease v. Idanta Partners,*
  225 Cal.App.4th 1451 (2014) .................................................................................... **19**

*Amgen v. Conn. Ret. Plans etc.,*
  ___ U.S. ___, 133 S. Ct. 1184, (2013) .................................................................... **12**

*Arnott v. U.S. Citizenship & Immigration,*
  290 F.R.D. 579 (C.D. Cal. 2012) ............................................................................ **11**

*Avina v. Spurlock,*
  28 Cal. App. 3d 1086 (1972) .................................................................................... **22**

*Blackie v. Barrack,*
  524 F.2d 891 (9th Cir. 1975) .................................................................................... **12**

*Brazil v. Dell Inc.,*
  No.07-CV-01700-RMW, 2010 WL 5387831, at *2 (N.D. Cal. Dec. 21, 2010) ...................... **16**

*Brown v. Hain Celestial Group,*
  No. 11-CV-03082, 2014 WL 6483216, at *12 (N.D. Cal. Nov. 18, 2014) ...................... **14, 15**

*Browning v. Yahoo! Inc.,*
  2007 WL 4105971, at *4 (N.D. Cal. 2007) ............................................................ **17**

*Cohen v. Trump,*
  303 F.R.D. 376 (S.D. Cal. 2014) ............................................................................ **13**

*County of San Bernardino v. Walsh,*
  158 Cal.App.4th 533 (2007) .................................................................................... **20**

*Cummings v. Connell,*
  402 F.3d 936 (9th Cir. 2005) .................................................................................... **22**

*Dei Rossi v. Whirlpool,*
  No. 2:12-CV-00125-TLN, 2015 WL 1932484, at *11 (E.D. Cal. Apr. 28, 2015) ................ **23**

*Ellis v. Costco,*
  285 F.R.D. 492 (N.D.Cal. 2012) ............................................................................ **21**

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

iii

*Erica P. John Fund v. Halliburton*,
   __ U.S. __, 131 S. Ct. 2179 (2011) ................................................................. **19**

*Gawara v. U.S. Brass,* 63 Cal. App. 4th 1341, 1361 (1998) ................................ **21**

*Gen. Tel. Co. of Sw. v. Falcon,*
   457 U.S. 147 (1982) ......................................................................................... **16**

*General Telephone Co. of the Southwest v. Falcon*,
   457 U.S. 147 (1982). ........................................................................................ **14**

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir.1998) .......................................................................... **15**

*Hanon v. Dataproducts*,
   976 F.2d 497 (9th Cir. 1992) .......................................................................... **11**

*Harris v. comScore, Inc.,*
   292 F.R.D. 579 (N.D. Ill. 2013) ...................................................................... **13**

*Hernandez v. Hillsides* (2009)
   47 Cal.4th 272 ........................................................................................ **2, 14, 19**

*Hopkins v. Stryker Sales*,
   No. 11-CV-02786-LHK, 2013 WL 496358 at *12 (N.D. Cal. Feb. 6, 2013) ...... **11**

*In re Cooper Cos. Inc. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009) ..................................................................... **12**

*In re Electronic Books Antitrust Litigation*,
   Case No. 1:11-md-02293-DLC (S.D.N.Y.) ...................................................... **18**

*In re HiEnergy Technologies Sec. Litig.*,
   No. 8:04CV01226 DOCJTLX, 2006 WL 2780058, at *3 (C.D. Cal. Sept. 26, 2006) .......... **12**

*In re Intermec Corp. Sec. Litig.,*
   Fed. Sec. L. Rep. (CCH) 96, 178 (W.D.Wash.1991) ...................................... **13**

*In re Netflix Privacy Litigation*,
   2012 WL 1598819, at *4 ................................................................................... **17**

*In re Netflix Privacy Litigation*,
   2012 WL 2598819, at *4; *Browning v. Yahoo!, Inc*., 2007 WL 4105971, at *4 ............... **18**

*Keilholtz, v. Lennox Hearth Products, Inc.,*
   268 F.R.D. 330 (N.D. Cal. 2010) ..................................................................... **18**

*Lanovaz v. Twinings*,
   No. 12-cv-02646, 2015 WL 729705, at *2 (N.D. Cal. Feb. 19, 2015) ............... **21**

iv

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

*Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 238 (N.D. Cal. 2014) ................................... 16, 17, 22

*McCrary v. Elations Co.*,
   No. 13-CV-00242-JGB-OPx, 2014 WL 1779243, at *7 (N.D. Cal. Jan. 13, 2014) ............. 16

*Mortimer v. Baca*,
   No. 00-cv-13002-DDP (shx), 2005 WL 1457743, at *2 (C.D. Cal. May 25, 2005) ............. 19

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, (1950) ........................... 17

*O'Phelan v. Loy*,
   497 F. Appx. 720 (9th Cir. 2012) ............................................................................. 22

*Patel v. Trans Union*,
   308 F.R.D. 292 (N.D. Cal. 2015) .............................................................................. 12

*Rai v. Santa Clara Valley Transp. Auth.*,
   No. 5:12-CV-004344-PSG, 2015 WL 860761, at *5 (N.D. Cal. Feb. 24, 2015) ............. 12, 19

*Riley v. California*, 573 U.S. ___, 134 S.Ct. 2473 (2014) ........................................... 2, 19

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2009) ................................................................................. 13

*Rodriguez v. West Publishing*, 563 F.3d 948, 961 & n.6 (9th Cir. 2009) ............................... 16

*Rosa v. Taser Intern.*,
   684 F.3d 941 (9th Cir. 2012) ............................................................................. 21, 22

*Schwartz v. Harp*,
   108 F.R.D. 279 (C.D.Cal.1985) ................................................................................ 13

*Shulman v. Group W*,
   18 Cal. 4th 200 (1998) ..................................................................................... 13, 19

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) ................................................................................... 17

*Varnado v. Midland Funding*,
   43 F.Supp.3d 985 (N.D. Cal. 2014) ........................................................................... 21

*Vietnam Veterans v. C.I.A.*,
   288 F.R.D. 192 (N.D. Cal. 2012) .............................................................................. 12

*Wal-Mart Stores, Inc. v. Dukes*,
   ___ U.S. ___, 131 S. Ct. 2541 (2011) ....................................................................... 13

*Walnut Manor Assocs. v. Keys*,
   No. C057198, 2010 WL 3412131, at *9 (Cal. Ct. App. Aug. 31, 2010) ........................... 22

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

v

*Weeks v. Baker & McKenzie,*
  63 Cal. App. 4th 1128 (1998) ................................................................. **21**

*Weinberger v. Thornton,*
  114 F.R.D. 599 (S.D.Cal.1986) ............................................................... **13**

*Zinser v. Accufix Research,*
  253 F.3d 1180 (9th Cir. 2001) ............................................................... **12**

STATUTES

**Cal. Civ. Code §3294** ............................................................................... **21**

**Cal. Civ. Code §3360** ............................................................................... **22**

RULES

**Rule 23** ............................................................................................ **passim**

TREATISES

**Restatement 2d Torts, §§ 652B** ........................................................ **14, 20**

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION RE PATH APP; MPA IN SUPPORT THEREOF**
**Case No. 13-cv-00453-JST**

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 12, 2016, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 9, 19th Floor of the United States District Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102, before the Honorable Jon S. Tigar, Plaintiffs Jason Green, Stephanie Cooley, and Lauren Carter (hereinafter, "Plaintiffs"), on their own and on behalf of the putative class (defined below), hereby move this Court for an Order: (1) granting class certification in the above-captioned action ("Action") against Defendants Path, Inc. and Apple, Inc. pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure; (2) appointing Plaintiffs as Class Representatives; and (3) appointing Plaintiffs' Interim Co-Lead Counsel (hereinafter, "Plaintiffs' Counsel") as Class Counsel.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Declaration of Conor H. Kennedy and exhibits thereto (including written discovery responses and documents produced by Defendants Path, Inc. and Apple, Inc.), the accompanying Declaration of David M. Given, the accompanying Declaration of Michael von Loewenfeldt, the respective declarations of Plaintiffs and the exhibits thereto, the papers and records on file in this Action, and such other written and oral arguments as may be presented at or before the hearing to the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs move to certify the following class and subclass against Defendants Path, Inc. ("Path") and Apple, Inc. ("Apple"), on Plaintiffs' claim against Path for invasion of privacy/intrusion on seclusion and against Apple as its "agent" for aiding and abetting same:

> **Intrusion Class**:  All persons in the U.S. who received from Apple's App Store a copy of version 2.0 through 2.0.5 of the iOS mobile application entitled Path (the "Invasive Versions").

> **Intrusion Upload Subclass**: All members of the Intrusion Class that were Path registrants and activated via their Apple iDevice (iPhone, iPad, iPod touch) any of

1

the Invasive Versions of the iOS Path app between November 29, 2011 and February 7, 2012 (the "Subclass Period").

The Intrusion Class defines a broad liability class where all members are entitled to damages for Path's and Apple's implantation on their iDevices of software designed to and capable of uploading their private iDevice mobile address book data ("Contacts") without consent. *Hernandez v. Hillsides*, 47 Cal.4th 272, 285 (2009).  The Intrusion Upload Subclass defines a co-extensive or potentially smaller class where members' Contacts were taken by Path via its App which, as discussed below, happened automatically upon activation of that App.

Both definitions identify an objective, ascertainable group of people.  That group of people is numerous.  Plaintiffs' privacy claim arises from Path's and Apple's uniform course of conduct directed at those people.  Those people have clearly recognized privacy rights in their iDevices and the Contacts data contained thereon.  *Riley v. California*, 573 U.S. ___, 134 S.Ct. 2473 (2014).  Path's and Apple's course of conduct resulted in one or more privacy violations uniform across both proposed classes, whose measure of damages are also uniform across those classes.

This motion calls for a straightforward application of Rule 23(a) and 23(b)(3).  The common evidence discovered to date and described below shows: (A) the number of iDevice users meeting the above class definitions is at least 480,000; (B) these users are ascertainable via their respective email addresses in Path's possession and by download records in Apple's possession; (C) Plaintiffs' claims against both Path and Apple arise predominantly from common factual and legal questions; and (D) because the claims are typical of those of the class, Plaintiffs can and will adequately protect the interests of the proposed class in a representative capacity.

Plaintiffs move to certify the proposed class pursuant to Rule 23(a) and 23(b)(3), appoint Plaintiffs as Class Representatives, and appoint Plaintiffs' Counsel  as Class Counsel pursuant to Rule 23(g)(1).

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

2

**II.      STATEMENT OF ISSUE TO BE DECIDED**

Applying the Federal Rules of Civil Procedure, whether the Court will certify a class in this Action as proposed above.

**III.     STATEMENT OF CLASS-WIDE FACTS**

The Path App uniformly obtained private data without notice or consent from every user in the proposed subclass and sent that data to Path's servers.  Kennedy Decl., ¶ 17, Exh. M at 44:2-5; 50:11-15, ███ ████████  The factual issues necessary to resolve Plaintiffs' and the putative class members' invasion of privacy claims against both Path and Apple are common and subject to proof by the same documents and percipient and expert testimony.

Path admits nonconsensual access to and uploading of class members' iDevice Contacts. (ECF # 569, at 1.)  Path's concession tracks Plaintiffs' allegations in the Second Consolidated Amended Complaint; the Invasive Versions of the Path App were designed to and did in fact harvest from class members' iDevices massive amounts of private address book data and sent that data to Path's web servers, without any user prompt or privacy policy disclosure.  (ECF # 478, at ¶¶ 79-80.)

Path obtained each Contact's name and birthday, and all their phone numbers, email addresses, and street addresses.  Kennedy Decl., ¶ 17, Exh. M at 44:2-5; 50:11-15. ████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████  Kennedy Decl. ¶ 6, Exh. D-1 (pp. 1-3).  Path stored the data in a database, amassing more than 600,000,000 records in less than three months.  Kennedy Decl. ¶ 14, Exh. J-2 (p. 1).

**A.      Contacts Is Configured to Accumulate Enormous Quantities of Data.**

Contacts is the out-of-the-box, digital address book feature for owners of Apple mobile devices ("iDevices").   Kennedy Decl. ¶ 18, Exh. X (pp. 1-3).  As the name suggests, Apple designed Contacts for the user to input the contact information of others.  Kennedy Decl. ¶ 18, Exh. X (pp. 1-3).  According to Apple, the "Address Book database is ultimately owned by the user."  (ECF # 1-2, at 25.)

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

Apple configured Contacts to accumulate and maintain enormous quantities of data. For example, the number of entries in Contacts for Plaintiff Stephanie Cooley exceeds 400 entries. Declaration of Stephanie Cooley ["Cooley Decl."], ¶ 8.  The number of address book entries is "limited only by the amount of memory" on a user's iDevice.  Kennedy Decl. ¶ 18, Exh. X (pp. 1-3).

Apple designed Contacts for simplicity of use.  A user can quickly add address book entries for later retrieval without disrupting other tasks on the same iDevice.  Kennedy Decl. ¶ 18, Exh. X (pp. 2-4).  Simultaneous to retrieving a text message or sending off an email, the user can press a single button and call up Contacts.  Kennedy Decl. ¶ 18, Exh. X (pp. 1-3).  Using her touch screen key pad, she can input a person's first name, last name, phone number(s), email address(es), and street address, among other information in several other data fields.  Kennedy Decl. ¶ 18, Exh. X (pp. 2-4).

Once Contacts adds an address book entry, a user can connect with that person via her iDevice at the push of a button.  Kennedy Decl. ¶ 18, Exh. X (pp. 2-4).  (This applies to all three of the iDevices at issue here – iPhones, iPads, iPod Touches.)  Using their iDevices, users can rapidly browse their Contacts entries, select one entry, push a short sequence of buttons, and quickly start typing out an email to the selected person.  Kennedy Decl. ¶ 18, Exh. X (pp. 2-4).  For iPhones, mobile phones that double as handheld computers, Contacts works in concert with the phone; users can instantly dial a phone number from Contacts or text message the number.  Kennedy Decl. ¶ 18, Exh. X (pp. 2-4).

Contacts also works together with social and communication software developed for the iDevice by other companies ("Apps").  Kennedy Decl. ¶ 18, Exh. X (pp. 2-4); ¶ 27, Exh. W (pp. 2-4).  Throughout the relevant period, Apps have been available for direct download to iDevices from Apple's online App market ( the "Apple App Store").  Cooley Decl., ¶¶ 4-6, Exh. A, Declaration of Jason Green ["Green Decl."], ¶¶ 4-6, Exh. A, Declaration of Lauren Carter ["Carter Decl."], ¶¶ 4-6, Exh. A.

4

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

**B.      Path Took Each User's Contacts Data With No Notice or Warning.**

Starting on November 29, 2011, Path launched a new version (2.0) of the Path App to take address book records from users' iDevices.  (ECF # 567, at 1.)  See also Kennedy Decl. ¶ 17, Exh. M at 44:2-5, 49:6-14, 50:11-15, ¶ 6, ████████████  ████  ████████████ ██████  By February 2012, Path had taken and passed 662,187,372 private address book records through to its servers and stored them in a special "Contacts" database.  Kennedy Decl. ¶ 14, Exh. J-2 (p. 1).  Path obtained all of this data in secret and without a user prompt.  Kennedy Decl. ¶ 17, Exh. M at 49: 6-14, ████  ██████████████

Path violated Apple's public consent rules every single day for almost three months. Kennedy Decl. ¶ 25, ██████████  Apple published its consent rules with a press release in September 2010.  Kennedy Decl. ¶ 18, Exh. N.  Section 17.1 says: "Apps cannot transmit data about a user without obtaining the user's prior permission and providing the user with access to information about how and where the data will be used."  Kennedy Decl. ¶ 19, Exh. O (p. 5). Behind the scenes, however, Apple's rules went unenforced, as Apple now admits: "developers technically can get this content without user interaction."  Kennedy Decl. ¶ 21, Exh. Q (p. 1).  In effect, Apple and Path implanted and installed a bug on users' iDevices, activated once a user registered to use the Path App.

**C.      Path Designed Version 2.0 to Exploit Easy Access to Contacts Data.**

Path designed the Path App as a foothold into each user's Contacts.  Kennedy Decl. ¶ 6, Exh. D-1 (p. 2).  Path captured this data to ████████████████████  Kennedy Decl. ¶ 6, Exh. D-1 (p. 2).  Path designed the Path App to transfer that data without any consent prompt.  Kennedy Decl. ¶ 9, Exh. F, ¶ 17, Exh. M at 49: 6-14,████  ████████████████ ██

On October 11, 2011, Path ████████████████████  Kennedy Decl. ¶ 6, Exh. D-1 (pp. 1-3). ████████████████ ██████████████████████████████  Kennedy Decl. ¶ 6, Exh. D-1 (pp. 1-3). ██████████ stated: ████████████████████ ██████████████████████

5



1    ██████████ Kennedy Decl. ¶ 6, Exh. D-1 (p. 3).  "Additionally," ███████ wrote, ███

2    █████████████████████████████████████████████████████████████

3    █████████████████████████████████████████████████████████████

4    ███████████████████████████████████ Kennedy Decl. ¶

5    6, Exh. D-1 (p. 3).

6        The next morning, ██████████████ responded ██████████████, stating in

7    pertinent part: ██████████████ Kennedy Decl. ¶ 6, Exh. D-1 (p. 1).  ████████

8    ████████████████████████████████████████████████████████████

9    ███████████████████████████ October 13, 2011 █████████

10   ████████████████████████████████████████████████████████

11   ████████ Kennedy Decl. ¶ 7, Exh. D-2.

12       On October 20, 2011, ██████████████████████████████████

13   █████████████████████ Kennedy Decl. ¶ 8, Exh. E (p. 1).  In an email on the

14   same day, Lewandowski stated to Folkman: For the Path App "[t]o get recommendations you

15   need to upload a set of contacts."  Kennedy Decl. ¶ 9, Exh. F.  He continued: the Path App "will

16   be doing this seamlessly for new users by uploading the users' contacts from their address

17   book."  Kennedy Decl. ¶ 9, Exh. F.  In other words, Path (and the Path App) would not seek

18   consent or otherwise notify the user with a prompt.  Kennedy Decl. ¶ 9, Exh. F, ¶ 17, Exh. M at

19   49: 6-14, ████ ███████████████

20       **D.**    **Consistent with** ██████████**, the Path App Accessed iDevice Users'**
             **Contacts Data and Sent That Data to Path** ██████████

21       The Path App uploaded the contents of each user's Contacts upon logon (i.e., once the

22   app is activated).  (ECF # 569, at 1.)  This included any new user who finished the process of

23   creating a new account and existing users who updated to an Invasive Version.  Kennedy Decl. ¶

24   6, Exh. D-1 (p. 1), Decl. ¶ 10, Exh. G, ¶ 17, Exh. M at 49:6-14.  Once activated, the Path App

25   selected from Contacts the address book entries representing each included person's first and

26   last name, all of that person's email addresses, all of that person's phone numbers, each street

27   address, and the person's birthday.  Kennedy Decl. ¶ 17, Exh. M at 44:2-5.

28

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

1  ███████████████████████████████████████████ Kennedy Decl. ¶

2  6, Exh. D-1 (pp. 1-3), ████ ████████████████ The Path App ████████ █████

3  ████████████████████████████ Kennedy Decl. ████ ████████████████████ Path

4  then transferred the incoming data from its servers to a server-side "Contacts" database.

5  Kennedy Decl. ¶ 17, Exh. M at 44:9-12.

6       Path captured the data ██████████ Kennedy Decl. ¶ 6, Exh. D-1 (pp. 1-3).  Over

7  the span of two and a half months, Path accumulated more than 600,000,000 records in Path's

8  database.  Kennedy Decl. ¶ 14, Exh. J-2 (p. 1).

9       **E.**      **Path Gave No Notice of the Contacts Data Upload.**

10       Path did not seek consent to upload Contacts data to Path's servers: The Path App

11  uploaded Contacts data the moment any new user signed up for Path or any existing user signed

12  into Path.  Kennedy Decl. ¶ 10, Exh. G, ¶ 17, Exh. M at 49:6-14, ████ ████████████

13  ██████  Path designed the Path App to be "seamless[]," a euphemism for: *without pausing to*

14  *obtain user consent*.  Kennedy Decl., ¶ 9, Exh. F.

15       Under examination, Nathan Folkman testified that upload of Contacts happened

16  "automatically," and "in the background," during registration.  Kennedy Decl. ¶ 17, Exh. M at

17  49:6-14.  "Background" means the Path App failed to prompt users regarding the upload of their

18  data to Path's servers.  Kennedy Decl. ¶ 17, Exh. M at 49:6-14. ████████████████████

19  ██████████████████ Kennedy Decl. ████ ████████████████████████

20       **F.**      **Path Did Not Disclose Anything about Contacts Data in its Privacy Policy.**

21       On the "About" page of its website, Path described its "Values," and included the

22  following statement: "Path should be private by default.  Forever.  You should always be in

23  control of your information and experience."  Kennedy Decl. ¶ 2, Exh. A.  Path's Privacy Policy

24  disclosed that the Path App collected only certain information: IP address (a network address),

25  operating system, browser type, web address of referring site, and site activity information, none

26  of which apply to a user's private iDevice address book data.  Kennedy Decl. ¶ 3, Exh. B.

27

28

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION RE PATH APP; MPA IN SUPPORT THEREOF**
**Case No. 13-cv-00453-JST**

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

**G.**     **Path Undertook Steps to** ███████████████████████

Path asserts it obtained this data only to conduct so-called "friend matching."  Kennedy Decl. ¶ 5, C-2 (pp. 3) ("Path began uploading users' contacts from their mobile devices to Path's servers to enhance the FriendRank recommendation service").  But documents show that Path personnel ████████████████████████████████████████████████████.  Kennedy Decl. ¶ 6, Exh. D-1 (pp. 1-3).

Path personnel stated: ████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████      Kennedy Decl. ¶ 6, Exh. D-1 (p. 3) (emphasis added).  Path admitted via its CTO that ██████████  ███████████████████████
████████████████      Kennedy Decl. ¶ 17, Exh. M at 122:15-23.

Path's decision to store the data rather than delete it after friend matching reveals their hidden intent: It confirms Path intended ████████████████ and use it irrespective of users' privacy rights.  Kennedy Decl. ¶ 17, Exh. M at 44:9-12, 122:15-23.  Path's meteoric growth during the Class Period suggests Path mined the data, ████████████████████████████
████████████████      Kennedy Decl. ¶ 6, Exh. D-1 (pp. 1-3).  In public, Path boasted at the tail end of the Class Period that the Path App increased new user registrations and overall user engagement, and CEO Dave Morin tied these statistics to a new round of venture funding.  Kennedy Decl. ¶ 30, Exh. Z.  Path started this round of venture funding on January 19, 2012 and secured a $34 million investment in April 2012.  Kennedy Decl. ¶ 33, Exh. CC, ¶ 11, Exh. H (p. 5).

**H.**     **Path Knew the Path App Violated its Privacy Commitment to Users.**

Path personnel knew the Path App took private data without consent.  Kennedy Decl., ¶¶ 15-16, Exhs. K & L.  But Path continued collecting data without consent well into February 2012, when the public caught Path with its hands in the proverbial cookie jar and Path's CEO issued a public mea culpa.  Kennedy Decl. ¶ 12, Exh. I (p. 1), ¶ 14 Exh. J-2 (p. 2) ("We are sorry.  We made a mistake. [T]he way we had designed our 'Add Friends' feature was wrong.").

8

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

One day after the media reported Path started raising a new funding round, Path planned a "high level strategic" meeting about Path's "Upload the entire address book topic."  Kennedy Decl., ¶¶ 33 & 15, Exhs. CC & K.  Calendar invites and agenda notes show Path CEO Dave Morin attended the meeting.  Kennedy Decl., ¶¶ 15 & 16, Exhs. K & L.  The same notes demonstrate Path personnel appreciated the Path App violated privacy assurances to users.  Kennedy Decl. ¶ 16, Exh. L.  The notes state: "We communicate how we respect privacy publicly, but uploading the address book w/out notice seem contrary to our values."  Kennedy Decl. ¶ 16, Exh. L.  Path's public website communications suggested privacy was fundamental to Path's services.  Kennedy Decl. ¶ 2, Exh. A.

After this "strategic" meeting, Path continued the same data collection.  Between January 10th and February 7th, 2012, Path amassed an additional 100 million address book records.  Kennedy Decl. ¶ 14, Exh. J-2 (p. 2).  Path personnel attributed the company's eventual decision to stop collecting data this way to a public backlash in February, rather than this private meeting in January.  Kennedy Decl. ¶ 13, Exh. J-1 (p. 3).

## I.    The Path App Uploaded Hundreds of Thousands of Users' Contacts Data.

Path admits it has email addresses provided by users who registered for Path accounts between November 29, 2011 and February 8, 2012, as well as earlier registrants.  Kennedy Decl. ¶ 32, Ex BB (p. 5).  Based on these records, Path has produced approximate user base figures for the Path App, culled down to the users who registered (i.e., signed up) for Path between November 29, 2011 and February 7, 2012.  Kennedy Decl. ¶ 4, Exh. C-1 (pp. 18-20).

Path's figures allow Plaintiffs to calculate that at least 480,125 users in the U.S. unwittingly sent their address book data to Path.  Kennedy Decl. ¶ 4, Exh. C-1 (pp. 18-20).  Any user who registered for the Invasive Versions of the Path App had their address book data sent to Path's server.  Kennedy Decl. ¶ 17, Exh. M at 50:11-15, ¶ 6, Exh. D-1 (pp. 1-3), ███████  ████████████████████   In November of 2011, 8,780 users in the U.S. registered for the Path App.  Kennedy Decl. ¶ 4, Exh. C-1 (p. 18) (identifying number of registrations on month-by-month basis during Class Period).

The next month, December 2011, an additional 347,490 U.S. users registered for Path. Kennedy Decl. ¶ 4, Exh. C-1 (p. 19).  The final full month of Path's undisclosed data collection was January 2012, before a public backlash disrupted Path's data collection.  Kennedy Decl., ¶¶ 22, 23, 33 & 13, Exhs. R, S, AA & J-1.  In that month, 124,055 U.S. users registered for Path. Kennedy Decl. ¶ 4, Exh. C-1 (p. 20).  Thus, in total, the approximate number of new registrations for the Path App came to 480,125 in the U.S. during the Subclass Period.  Kennedy Decl. ¶ 4, Exh. C-1 (pp. 18-20).

**J.      Path Relied on the Path App to Increase User Growth and User Engagement, Enabling Path to Secure $34 Million in Venture Funding.**

Path experienced unprecedented expansion in its user base between November 29, 2011 and February 7, 2012.  Kennedy Decl. ¶ 29, Exh. Y.  That growth is illustrated by, among other things, historic data available through App Annie Ltd.'s "App Annie" Business Intelligence Platform.  Kennedy Decl. ¶ 29, Exh. Y.  Beginning in December 2011, the Path App jumped in rank from irrelevant (below 750th) to one of the 25 most downloaded Apps for Apple iDevices in the U.S.  Kennedy Decl. ¶ 29, Exh. Y.  And among social networking Apps, the Path App jumped in rank from below 250th to one of the top five downloaded Apps for Apple iDevices in the U.S. (and stayed there).  Id.

According to Path, prior to launching Version 2.0, Path saw 25,351 total new user registrations in all of November of 2011.  Kennedy Decl. ¶ 4, Exh. C-1 (p. 18).  The next month, after Version 2.0's launch, 860,285 new users registered globally.  Kennedy Decl. ¶ 4, Exh. C-1 (p. 19).  By January 19, 2012, media sources reported that Path had started a new round of fundraising.  Kennedy Decl. ¶ 33, Exh. CC.

On February 3, 2012, Path announced a major milestone: two million new registered users – "roughly the same amount Path got in its entire first year," according to media reports. Kennedy Decl. ¶ 30, Exh. Z.  Path CEO Dave Morin foreshadowed that his company would secure new investment in a media interview, intimating he expected the new investment would close soon.  Kennedy Decl. ¶ 30, Exh. Z.  Two months later, in April 2012, Path completed a $34 million round of Series B venture capital financing.  Kennedy Decl. ¶ 11, Exh. H (p. 5). Path was reportedly valued at $250 million dollars.  Kennedy Decl. ¶ 34, Exh. P.

10

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

## IV.     STATEMENT OF FACTS SPECIFIC TO PLAINTIFFS

Apple App Store purchase histories show Plaintiffs each downloaded an Intrusive Version of the Path App.  Cooley Decl., ¶¶ 3-6, Exh. A, Green Decl., ¶¶ 3-6, Exh. A, Carter Decl., ¶¶ 3-6, Exh. A.  Each of the Plaintiffs downloaded the Path App to an iDevice and registered for the App, as evidenced by their use of the App (registration was required to use the App).  Cooley Decl., ¶ 6, Green Decl., ¶ 6, Carter Decl., ¶ 6.

Plaintiffs had address book entries on their iDevices.  Carter Decl., ¶ 8; Cooley Decl., ¶ 8; Green Decl., ¶ 8.  For any iDevice user whose address book was uploaded to Path's server, Path obtained all of the listed email addresses, phone numbers, street addresses, and birthdays for everybody in their contact list.  Kennedy Decl. ¶ 17, Exh. M at 50:11-14.

## V.     PROCEDURAL BACKGROUND

On June 27, 2014, Plaintiffs filed their operative pleading against Apple, Path, and additional App Developers. (ECF # 478).  On March 23, 2015, following extensive briefing, the Court issued its Order denying various motions to dismiss and finding, among other things, that Plaintiffs adequately pled a claim for invasion of privacy/intrusion on seclusion against Path and Apple, including for aiding and abetting on the part of Apple in connection therewith. (ECF # 543).  Consistent with prior decisional law in this case (ECF # 543 at 22-23, 30-34), Plaintiffs focus their discussion of the underlying invasion of privacy/intrusion on seclusion claim (and the joint liability for and aiding and abetting of same) under California law.

## VI.     ARGUMENT

### A.     Applicable Legal Standards.

Whether to certify a class is within the Court's discretion. *Hopkins v. Stryker Sales*, No. 11-CV-02786-LHK, 2013 WL 496358 at *12 (N.D. Cal. Feb. 6, 2013).

A party seeking class certification must satisfy the four prerequisites of Rule 23(a): "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Arnott v. U.S. Citizenship & Immigration*, 290 F.R.D. 579, 583 (C.D. Cal. 2012) (citing *Hanon v. Dataproducts*, 976 F.2d 497, 508 (9th Cir. 1992)) (internal quotation

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

marks omitted).  In addition to these statutory requirements, courts in the Northern District of California, including this Court, require the proposed class to be "ascertainable" by its definition.  *Vietnam Veterans v. C.I.A.*, 288 F.R.D. 192, 211 (N.D. Cal. 2012).

After Rule 23(a) is met, the proposed class must also satisfy Rule 23(b)(1), (2), or (3). *Zinser v. Accufix Research*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Plaintiffs here seek to certify a class under Rule 23(b)(3), which permits class actions where "the court finds that the questions of law or fact common to Class Members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *Amgen v. Conn. Ret. Plans etc.*, ___ U.S. ___, 133 S. Ct. 1184, 1194-95 (2013).  In the event, for these purposes the Court "take[s] the substantive allegations of the complaint as true."  *Blackie v. Barrack*, 524 F.2d 891, 901 & n.17 (9th Cir. 1975).

**B.**      **The Requirements Of Rule 23(A) Are Met**

The proposed classes both meet all of the requirements for class certification, satisfying numerosity, commonality, typicality, adequacy, and ascertainability. Fed. R. Civ. P. 23(a).

**1.**      **Numerosity is Satisfied.**

Plaintiffs satisfy the numerosity requirement under Rule 23(a)(1), because the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Patel v. Trans Union*, 308 F.R.D. 292 (N.D. Cal. 2015) (finding numerosity satisfied when 11,000 persons were identified even though the "period . . . is slightly longer than the class period."); *Rai v. Santa Clara Valley Transp. Auth.*, No. 5:12-CV-004344-PSG, 2015 WL 860761, at *5 (N.D. Cal. Feb. 24, 2015) (class of forty or more members "raises a presumption of impracticability of joinder based on numbers alone").  Plaintiffs do not need precise Class figures to satisfy numerosity.  *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (internal citations omitted); *see also In re HiEnergy Technologies Sec. Litig.*, No. 8:04CV01226 DOCJTLX, 2006 WL 2780058, at *3 (C.D. Cal. Sept. 26, 2006) ("Where the exact size of the proposed class is unknown, but general knowledge and common sense indicate

it is large, the numerosity requirement is satisfied.") (quoting *In re Intermec Corp. Sec. Litig.,* Fed. Sec. L. Rep. (CCH) 96, 178 (W.D.Wash.1991) (citing *Weinberger v. Thornton,* 114 F.R.D. 599, 602 (S.D.Cal.1986); *Schwartz v. Harp,* 108 F.R.D. 279, 281-282 (C.D.Cal.1985)).

The proposed classes include by definition all Path users in the U.S. who logged onto (read: activated) the Path App from their iDevices during the Subclass Period. (By definition because to activate the Path App from an iDevice one had to receive the Path App from the Apple App Store.)  These include new users who registered (i.e., signed up) for the Path App during the Subclass Period.  Kennedy Decl. ¶ 10, Exh. G, ¶ 17, Exh. M at 44:2-5, 48:2-22, 49:6-14. (Registration is a subset of logon, see Section VI.B.5.a., below.)  Path's records put that number at 480,125.  Kennedy Decl. ¶ 4, Exh. C-1 (pp. 18-20).

## 2. Commonality is Satisfied.

Common issues not only exist in this case, but as shown in Section VI.B.6.a, below, they predominate.  Rule 23(a)(2) is met where "there are questions of law or fact common to the class."  *Cohen v. Trump*, 303 F.R.D. 376, 382 (S.D. Cal. 2014).  All questions of fact and law need not be common to satisfy this rule.  *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2009).  "Commonality requires the plaintiff to demonstrate that the Class Members have suffered the same injury" such that the "claims must depend upon a common contention [] capable of classwide resolution."  *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541, 2551 (2011) (citation and quotation marks omitted).

As demonstrated with more particularity below, the intrusion claims all turn on the same common questions of law and fact.  *Harris v. comScore, Inc.*, 292 F.R.D. 579, 585 (N.D. Ill. 2013).  Accord *Wal-Mart Stores, supra*, 131 S. Ct. at 2545 (class members "must depend on a common contention… of such a nature that it is capable of class-wide resolution which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke").  Plaintiffs and putative class members will demonstrate the uniform intrusion into a private place (as described above) with regard to each member of both proposed classes and that the intrusion was highly offensive to a reasonable person. *Shulman v. Group W,* 18 Cal. 4th 200, 231 (1998); see also *Hernandez*, supra, 47 Cal.4th

13

at 285 (noting that intrusion liability may occur upon placement of surveillance device);

Restatement (Second) Torts, § 652B, cmt. 2

### 3.    Plaintiffs' Claims are Typical of the Proposed Class(es).

Rule 23(a)(3) typicality is met where "the claims or defenses of the representative [plaintiffs] are typical of the claims or defenses of the class." Under Rule 23(a)'s "permissive standards," representative plaintiffs are typical if their claims are "reasonably co-extensive with those of absent Class Members; they need not be substantially identical." *Brown v. Hain Celestial Group*, No. 11-CV-03082, 2014 WL 6483216, at *12 (N.D. Cal. Nov. 18, 2014) (citation and quotation marks omitted). Courts assessing typicality consider: "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other Class Members have been injured by the same course of conduct." *Id.* (citation omitted).

Typicality and commonality prerequisites "tend to merge" because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 161, 163 & n. 13 (1982). Path's and Apple's misconduct was co-extensive with regard to Plaintiffs and the putative class members. *See id.*

The operative pleading alleges that Path committed identical intrusions on seclusion against Plaintiffs and class members alike, and that Apple joined in and aided and abetted in those privacy violations. See ECF # 478, at 62-63. (Apple's iPhone Developer Program License Agreement, to which Path and Apple are parties, provides that Apple is Path's "agent for," among other things, "delivery of the [Path App] to end-users," and Apple is authorized to act for Path in a fulsome capacity enumerated at length in that agreement. Kennedy Decl. ¶ 34, Exh. DD at 28-29.) Plaintiffs are aware of no individualized defenses available to Path or Apple likely to become the focus of the litigation.

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

14

### 4.      Plaintiffs Are Adequate Class Representatives.

The adequacy prong of Rule 23(a)(4) is satisfied where Plaintiffs show they "will fairly and adequately protect the interests of the class."  The requisite showing is three-fold.  *Brown*, No. 11-cv-03082, 2014 WL 6483216, at *14 (quoting *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir.1998)).   Class counsel must be qualified and competent; Plaintiffs and Class counsel must both show an absence of any apparent conflicts of interest with other Class Members; and Plaintiffs and Class counsel must show they will "prosecute the action vigorously" on behalf of the class.  *See id.*

### a.      Plaintiffs' Counsel is Adequate.

To evaluate the adequacy of counsel, the Court "must" consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(a).  In addition, the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(b).

Here, Plaintiffs' Counsel satisfies all requirements.  Plaintiffs' Counsel has invested a substantial amount of time over a course of three and a half years to identify and investigate, and litigate the claims in this action, successfully brief and argue multiple rounds of motions to dismiss, engage in discovery, and has retained and worked closely with competent, knowledgeable experts.  See Declaration of Attorney David M. Given ("Given Decl."); Declaration of Michael von Loewenfeldt ("MVL Decl.").

Plaintiffs' Counsel are experienced and knowledgeable concerning complex litigation. They have the resources to commit to adequately and vigorously advance the Class's interests. The Court in evaluating Plaintiffs' Counsel's application to serve as lead counsel for the coordinated actions has previously evaluated the qualifications of counsel and determined that each firm on Plaintiffs' Steering Committee ("PSC") would "fairly and adequately represent the interests of the class."  (ECF # 63, at 2.)

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

15

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

### b.  Plaintiffs Are Adequate Class Representatives.

As Plaintiffs' claims are typical of the Class, they have no conflicts with Class Members. Rule 23(a)(4)'s adequacy requirement evaluates whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the Class Members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 158 & n.13 (1982).  Moreover, merely speculative conflicts will not affect adequacy. *Rodriguez v. West Publishing*, 563 F.3d 948, 961 & n.6 (9th Cir. 2009).  Plaintiffs' claims are identical to those of the other putative class members.  Each Plaintiff downloaded the Path App.  Each Plaintiff activated the Path App.

### c.  Plaintiffs Will Prosecute Class Claims Vigorously.

Plaintiffs' Counsel have dedicated the full resources of their and the other PSC firms to this Action, including the time and efforts of their senior attorneys, associates, paralegals, and administrative support staff, and will continue to do so.  Given Decl., ¶ 10; MVL Decl. ¶ 10. Likewise, Plaintiffs are prepared to continue representing the proposed classes competently and diligently in their claims against Path and Apple, both through trial and appeal if necessary. Plaintiffs and their counsel have demonstrated their commitment to prosecuting this action on behalf of all putative class members.  Accordingly, they satisfy the adequacy requirement.

### 5.  Ascertainability is Satisfied.

### a.  Verifying Class Members

Plaintiffs have proposed two precise, objective, and presently (and easily) ascertainable classes that satisfying Rule 23(a).  *McCrary v. Elations Co.*, No. 13-CV-00242-JGB-OPx, 2014 WL 1779243, at *7 (N.D. Cal. Jan. 13, 2014) (internal quotation omitted); *see also Brazil v. Dell Inc.,* No.07-CV-01700-RMW, 2010 WL 5387831, at *2 (N.D. Cal. Dec. 21, 2010). Ascertainability requires objective criteria to define the Class but does not require positive identification of Class Members.  *See Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 238 (N.D. Cal. 2014).  The cornerstone of ascertainability is a class definition that gives notice to putative members.  *See id.*

16

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

Plaintiffs have proposed two classes defined by precise, objective criteria.  The Intrusion Class includes anyone who downloaded any of the Invasive Versions of the Path App.  The Upload Subclass includes anyone who activated the Path App during the Class Period.

The evidence available permits the Court to identify the people who comprise each proposed class.  First, Path possesses records showing registration by email address for the Path App during the Class Period.  Kennedy Decl. ¶ 4, Exh. C-1 (pp. 18-20), ¶ 32, Exh. BB (p. 5). (Registration is the logon by a new user of the Path App, i.e., "sign up."  Kennedy Decl. ¶ 10, Exh. G.)  Second, Apple possesses records showing each user who received (i.e., downloaded) the pertinent versions of the Path App.  Cooley Decl., ¶¶ 4-6, Exh. A, Green Decl., ¶¶ 4-6, Exh. A, Carter Decl., ¶¶ 4-6, Exh. A.

While Path's records may be incomplete as to the number of members of the Intrusion Upload Subclass (for example, if the Path App was installed on a user's iDevice, but Path has no record of the user's registration), lack of perfect identification of the Subclass is not a bar to certification.  All members of the Upload Subclass are necessarily members of the Intrusion Class, and thus will receive Notice.  That notice provides an opportunity for correction of incomplete records for people who claim Subclass membership.  See *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 238-40 (N.D. Cal. 2014) (responses to class notice that rely on applicant's "self-identification" do not preclude ascertainability finding).

### b.      Notice and Administration

The proposed classes are ideally suited to provide for adequate notice and administration. Adequate notice is "the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action'" *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (quoting *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314, (1950)).  Courts in this District have approved email as an appropriate form of direct notice.  *In re Netflix Privacy Litigation*, 2012 WL 1598819, at *4 ("Email notice is especially appropriate here given the online nature of Netflix's business and the fact that Settlement Class Members had to provide a valid email address when creating their Netflix accounts."); *Browning v. Yahoo! Inc*., 2007 WL 4105971, at *4 (N.D. Cal. 2007) ("Email notice

17

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

was particularly suitable in this case, where settlement Class Members' claims arise from their visits to Defendants' Internet websites.").

For those individuals who do not receive direct email notice, publication notice will ensure the "best practicable" alterative notice.  *In re Netflix Privacy Litigation*, 2012 WL 2598819, at *4; *Browning v. Yahoo!, Inc.*, 2007 WL 4105971, at *4.  The Court can ascertain class membership status without unreasonable effort or cost.  *Keilholtz, v. Lennox Hearth Products*, *Inc.*, 268 F.R.D. 330, 336 (N.D. Cal. 2010) ("[A] class definition is sufficient if the description of the class is 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a Class Member.'").

Download records from the Apple App Store will allow the Court to ascertain whether an individual is a member of the Intrusion Class.  (Should it become necessary, mailing postal addresses can be confirmed by official or other reliable data sources.)  Notice to the Intrusion Class includes, by definition, notice to the presumptively smaller Intrusion Upload Subclass.

As it turns out, the Apple App Store is an extraordinarily robust platform for class notice and claims administration in cases of this kind.  The technology associated with downloads of Apps from the Apple App Store allows for effective, direct notification and payment to members of the proposed classes; Apple itself has agreed to employ it in settlement of other class cases involving users of their iDevices, vouching for its efficacy especially in the event of so-called "micropayments."  See, e.g., *In re Electronic Books Antitrust Litigation*, Case No. 1:11-md-02293-DLC (S.D.N.Y.), ECF # 642-1 ("Settlement Agreement by and Among Apple, Inc., Plaintiff States and Class Plaintiffs") & #647-2 ("Plaintiffs' Consumer Distribution Plan").

### 6.      The Requirements of Rule 23(b) Are Satisfied.

In addition to the requirements of Rule 23(a), Plaintiffs must show that "[1] questions of law or fact common to Class Members predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

### a.    Common Issues of Law and Fact Predominate.

Rule 23(b)(3) predominance tests if the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Products v. Windsor,* 521 U.S. 591, 623 (1997).   This inquiry is "more searching than the Rule 23(a)(2) 'commonality' inquiry." *Mortimer v. Baca*, No. 00-cv-13002-DDP (shx), 2005 WL 1457743, at *2 (C.D. Cal. May 25, 2005).  "Where common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Rai*, supra, at *13.

Predominance analysis begins "with the elements of the underlying cause of action." *Erica P. John Fund v. Halliburton*, __ U.S. __, 131 S. Ct. 2179, 2184 (2011) (internal citations omitted).  Here, the Court has held that Plaintiffs have adequately alleged a cause of action for invasion of privacy.  (ECF # 543, at 30-34.)  To sustain an invasion of privacy by intrusion on seclusion, Plaintiffs must plead and prove: (1) intrusion into a private place, conversation, or matter, (2) in a manner highly offensive to a reasonable person.  *Shulman*, supra, 18 Cal. 4th at 231.  See also *Hernandez v. Hillsides, Inc.,* supra, 47 Cal.4th at 285; *Riley v. California*, Supra, 134 S.Ct. at 2489 (holding that mobile devices are subject to strong privacy protections).

Similarly, as it relates to the aiding and abetting claim against Apple (ECF # 543, at 22 [citations omitted]), "Plaintiffs must [show] that Apple (1) knew [Path's] conduct constituted a breach of duty and gave substantial assistance or encouragement to [Path] to so act, or (2) gave substantial assistance to [Path] in accomplishing [Path's] invasion of privacy, and Apple's own conduct, separately considered, constitute a breach of the duty to Plaintiffs."  If the aiding and abetting claim or other joint liability theories are proved, Apple will be liable to Plaintiffs on the invasion of privacy claim for some or all of the damages attributable to the underlying wrong. *Am. Master Lease v. Idanta Partners*, 225 Cal.App.4th 1451, 1486 (2014).

Accordingly, common issues of law and fact predominate.  The legal inquiry across the proposed classes is the same.  And the legal elements are susceptible to class-wide factual proof.  What Path did and how, and what Apple knew about it and how it behaved both before and after the launch of the Path App, are all issues of fact susceptible to class-wide proof.

19

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

1    While Path has raised as its Fourth Affirmative Defense that members of the Intrusion

2  Upload Subclass consented to its misconduct (ECF # 558, at 34.), that defense is neither possible

3  nor plausible.  Path took data and committed these acts without user notice and therefore, by

4  definition, without consent.  Kennedy Decl. ¶ 10, Exh G, ¶ 17, Exh. M at 44:2-5, 9-12, 48:2-22,

5  49:6-14, ███ ███████████████ Apple, its agent, even agrees that Path did so.  Kennedy

6  Decl. ████ ██████ ¶ 34, Exh. DD at 28.  Based on class-wide proof, Path's consent argument

7  will fail on a class-wide basis with respect to both proposed classes.

8    Finally, damages can be shown on a class-wide basis.  Plaintiffs' primary theory of

9  damages is the value of the inherent privacy interest lost to Path App recipients (the Intrusion

10  Class) and users (the Intrusion Upload Subclass).  *See* Restatement 2d Torts, §§ 652B, cmt. b.

11  ("the intrusion itself makes the defendant subject to liability") & 652H ("one who establishes a

12  cause of action for invasion of privacy is entitled to recover damages for the harm to his interest

13  in privacy resulting from the invasion").  Plaintiffs expect to provide "conjoint analysis" surveys

14  establishing a uniform, class-wide value for both classes attributable to the privacy interest the

15  Path App invaded.  To be clear, this component of damage is separate and distinct from damage

16  for individualized emotional distress or mental anguish; rather, the "interest in privacy"

17  measures the societal value placed on the invaded privacy interest itself together with the

18  egregiousness of the invasion.  Post, *Social Foundation of Privacy*, 77 Cal.L.Rev. 947, 965 &

19  nn. 47-51 (1989).

20    Unjust enrichment damages are also available class-wide for the Intrusion Upload

21  Subclass, and susceptible to common proof.  *County of San Bernardino v. Walsh,* 158

22  Cal.App.4th 533, 542 (2007), as modified (Jan. 25 & 28, 2008) ("[t]he defendant may be under a

23  duty to give to the plaintiff the amount by which [the defendant] has been enriched.").  Common

24  evidence will show Path realized a commercial benefit in venture funding by way of Path's

25  unauthorized data collection and use.  Kennedy Decl. ¶ 33, Exh. CC, ¶ 11, Exh. H (p. 5), ¶ 30,

26  Exh. Z.

27    Starting on November 29, 2011, Path used the Intrusion Upload Subclass members'

28  Contacts address book data to ██████████████████ via the Path App, ██████████████

20

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

██████  Kennedy Decl. ¶ 6, Exh. D-1 (pp. 1-3.)  Path started a new round of venture funding, after realizing a 40-fold increase in new registrations.  Kennedy Decl. ¶ 3, Exh. C-1 (pp. 18-20), ¶ 33, Exh. CC.  Path closed the funding round in April of 2012 and received $34 million in new investment.  Kennedy Decl. ¶ 11, Exh. H (p. 5.)  Plaintiffs will rely on a damages expert to show the portion of the valuation underlying Path's $34 million Series B round was "attributable to the underlying wrong."  *Lanovaz v. Twinings*, No. 12-cv-02646, 2015 WL 729705, at *2 (N.D. Cal. Feb. 19, 2015) (quoting Rest. (Third) of Restitution and Unjust Enrichment § 51).

Plaintiffs can also claim punitive damages under Cal. Civ. Code §3294(a), awardable across the putative classes. *Varnado v. Midland Funding*, 43 F.Supp.3d 985, 994 (N.D. Cal. 2014) ("Plaintiff has sufficiently stated a claim for intrusion on seclusion, which may support a claim for punitive damages."); *see also Ellis v. Costco*, 285 F.R.D. 492, 543 (N.D.Cal. 2012) ("Because the purpose of punitive damages is not to compensate the victim, but to punish and deter the defendant, any claims for such damages hinges, not on facts unique to each Class Member, but on the defendant's conduct toward the class as a whole.").

To prove up punitive damages, Plaintiffs intend to present "clear and convincing evidence" Path and Apple acted with knowledge of the "probable dangerous consequences to plaintiffs' interests and deliberately failed to avoid these consequences."  *Rosa v. Taser Intern.*, 684 F.3d 941, 949 (9th Cir. 2012) (quoting *Gawara v. U.S. Brass,* 63 Cal. App. 4th 1341, 1361 (1998)); *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1164 (1998) (burden of proof). One day after media sources announced Path started to seek venture funding, Path planned a "high level" meeting to acknowledge it collected address book data "w/out notice" and thereby violated user privacy.  Kennedy Decl., Exs. CC & L.  After Path's "strategic" meeting, Path stayed on the same active course of conduct.  Kennedy Decl. ¶ 14, Exh. J-2 (p. 2), ¶ 17, Exh. M at 122:15-23.

By February 7th, 2012, Path had amassed an additional 100 million address book records, and had started to mine the data.  Kennedy Decl. ¶ 14, Exh. J-2 (p. 2), ¶ 17, Exh. M at 122:15-23.  This evidence shows Path acted with the requisite level of knowledge contemplated by California's general punitive damages statute.  Cal. Civ. Code §3294(a); *Rosa, supra*, 684

21

F.3d, at 949.  Plaintiffs expect the evidence to show that neither Path nor Apple, as Path's agent, retailer, marketer and collaborator for the Path App, can credibly claim an absence of insight into the Path App or its workings.

In the event Path or Apple defeats these theories of damages, Plaintiffs will still establish a right to class-wide nominal damages.  *O'Phelan v. Loy*, 497 F. Appx. 720, 721-22 (9th Cir. 2012) (unpublished).  Numerous authorities confirm nominal damages are available on a class-wide basis, in cases in California where "there have been real, actual injury and damages suffered by a plaintiff [but] the extent of plaintiffs' injury and damages cannot be determined from the evidence presented."  Cal. Civ. Code §3360; *O'Phelan*, 497 F. Appx., at 721-22; *Cummings v. Connell*, 402 F.3d 936, 944 (9th Cir. 2005); *Walnut Manor Assocs. v. Keys,* No. C057198, 2010 WL 3412131, at *9 (Cal. Ct. App. Aug. 31, 2010) (quoting *Avina v. Spurlock,* 28 Cal. App. 3d 1086, 1088 (1972)).  In determining the amount of nominal damages to be awarded, the Court need not weigh any individualized matters.  Kennedy Decl. ¶ 10, Exh. G, ¶ 17, Exh. M at 44:2-5, 9-12, 48:2-22, 49:6-14, ¶ 24, Exh. T, ¶ 26, Exh. V.  Rather, members of either proposed class will be entitled to the same nominal damage award.  *See id.*

### b.       A Class Action Is Superior.

This class action is superior to other available methods of adjudication for this case.  To determine whether a class action is superior to individual actions, the "matters pertinent" under Rule 23(b)(3) include "(A) the Class Members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against Class Members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).  "[C]ertification pursuant to Rule 23(b)(3) ... is appropriate 'whenever the actual interests of the parties can be served best by settling their differences in a single action.'"  *Lilly*, supra, 308 F.R.D., at 241 (internal citations omitted).

Here, each factor weighs in favor of class action treatment.  As of this time, in each of the related actions, none of the Plaintiffs are seeking to *individually* control a separate action.

22

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

1    Indeed, given "the small size of each Class Member's claims in this situation, class treatment is

2    not merely the superior, but the only manner in which to ensure fair and efficient adjudication of

3    the present action." *Dei Rossi v. Whirlpool*, No. 2:12-CV-00125-TLN, 2015 WL 1932484, at

4    *11 (E.D. Cal. Apr. 28, 2015). Concentrating the litigation in this forum creates maximum

5    efficiency, and avoids the specter of millions of people bringing claims in courts throughout the

6    State of California. *Id.* ("each member of the class pursuing a claim individually would burden

7    the judiciary, which is contrary to the goals of efficiency and judicial economy advanced by

8    Rule 23"). Neither Path nor Apple can credibly suggest otherwise in light of their earlier

9    positions in the case. See, e.g., *Hernandez v. Path, Inc.*, No. 12-cv-1515-JST at ECF # 23, at 3-

10   5, ECF # 25, at 2, and ECF # 52, at 4-6; see also ECF # 322, at 3-4.

11         Finally, Plaintiffs are aware of no unique procedural or substantive difficulties inherent

12   in managing this class action. Notice can be accomplished by "direct" email notice to the Class

13   Members, and by court-approved publication notice. Indeed, "[g]iven that common questions

14   predominate [], certification will not generate any complexities from a case management

15   perspective." *Rai*, supra, 2015 WL 860761, at *16.

16   **V.      CONCLUSION**

17         Plaintiffs' claims on the Path App satisfy each of the requirements of Rule 23(a) and the

18   requirements of Rule 23(b)(3). Plaintiffs' motion for class certification should be granted.

19   Plaintiffs should be appointed as Class Representatives and Plaintiffs' Counsel should be

20   appointed as Class Counsel. Plaintiffs also respectfully request that should the Court grant the

21   instant motion, that it set a case management conference within 30 days of its Order to resolve a

22   plan for class notice and trial of the Action against Path and Apple.

23

24   Dated: Jan. 8, 2016                         /s/  David M. Given_____
                                                 David M. Given
25                                               Nicholas A Carlin
                                                 Conor H. Kennedy
26                                               PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
                                                 39 Mesa Street, Suite 201
27                                               San Francisco, CA 94129
                                                 Tel: (415) 398-0900
28                                               Fax: (415) 398-0911
                                                 23

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN, LLP
39 Mesa Street, Suite 201
San Francisco, CA  94129
(415) 398-0900

Michael von Loewenfeldt
James M. Wagstaffe
Frank Busch
KERR & WAGSTAFFE LLP
101 Mission Street, 18th Floor
San Francisco, CA 94105
Tel: (415) 371-8500
Fax: (415) 371-0500

*Interim Co-Lead Counsel for Plaintiffs*

Carl F. Schwenker (admitted *pro hac vice*)
LAW OFFICES OF CARL F. SCHWENKER
The Haehnel Building
1101 East 11th Street
Austin, TX 78702
Tel: (512) 480-8427
Fax: (512) 857-1294

*Plaintiffs' Liaison Counsel*

Jeff Edwards (admitted *pro hac vice*)
EDWARDS LAW
The Haehnel Building
1101 East 11th Street
Austin, TX 78702
Tel: (512) 623-7727
Fax: (512) 623-7729

Jennifer Sarnelli (SBN 242510)
GARDY & NOTIS, LLP
Tower 56
126 East 56th Street, 8th Floor
New York, NY 10022
Tel: (212) 905-0509
Fax: (212) 905-0508

*Plaintiffs' Steering Committee*

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION RE PATH APP; MPA IN SUPPORT THEREOF**
**Case No. 13-cv-00453-JST**