DAVID M. GIVEN (SBN 142375)
NICHOLAS A CARLIN (SBN 112532)
CONOR H. KENNEDY (SBN 281793)
**PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP**
39 Mesa Street, Suite 201
San Francisco, CA 94129
Tel: (415) 398-0900
Fax: (415) 398-0911
dmg@phillaw.com
nac@phillaw.com
chk@phillaw.com

MICHAEL VON LOEWENFELDT (SBN 178665)
JAMES M. WAGSTAFFE (SBN 95535)
FRANK BUSCH (SBN 258288)
**KERR & WAGSTAFFE LLP**
101 Mission Street, 18th Floor
San Francisco, CA 94105
Tel: (415) 371-8500
Fax: (415) 371-0500
mvl@kerrwagstaffe.com
wagstaffe@kerrwagstaffe.com
busch@kerrwagstaffe.com

Interim Co-Lead Counsel for Plaintiffs
*All counsel listed on signature pages*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MARC OPPERMAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PATH, INC., et al. <br><br> Defendants. | Case No.: 13-cv-00453-JST <br><br> **CLASS ACTION** <br><br> **JOINT LETTER BRIEF REGARDING OUTSTANDING DISCOVERY DISPUTES** <br><br> THIS DOCUMENT RELATES TO ALL CASES: <br><br> *Opperman v. Path, Inc.*, No. 13-cv-00453-JST <br> *Hernandez v. Path, Inc.*, No. 12-cv-1515-JST <br> *Pirozzi v. Apple, Inc.*, No. 12-cv-1529-JST |

I.   **INTRODUCTIONS**

**Plaintiffs**:  At the January 5th Case Management Conference, the Court spoke of asymmetric "leverage," i.e., Defendants' ability to impede discovery of information and documents in their exclusive possession and control to gain a tactical advantage in litigation.  In this case, to date, the record is that Plaintiffs have faced a sustained and coordinated effort by the App Defendants (and to some extent, Apple) to resist the collection, review, and production of clearly relevant documents, including those bearing on Defendants' misrepresentations, privacy intrusions, and contentions that all their actions were coextensive with consents satisfying iOS development privacy rules.  Of those parties, only Path has completed its document production, including source code, precipitating a pending class certification motion; most have barely begun, some not at all.1  This effort is in sharp tension with the App Defendants' request for an "early, targeted" round of summary judgment motions – following three years of Rule 12 motion practice (and a discovery stay) and with no promise, despite the Court's prompting, that Defendants will not seek an additional summary judgment round (or two or three) should the first effort fail.

**Defendants:**  Apple and Path have a ripe, urgent discovery dispute that requires resolution so they can oppose Plaintiffs' pending class-certification motion.  With respect to the remaining App Defendants and Plaintiffs, however, Plaintiffs' statements on December 8, 2015—that "discovery on Path is much farther along …," whereas "[d]iscovery as to each of the other app developers … is in various, mostly nascent states" (ECF #592 at 10)—remain true.  The meet-and-confer process between Plaintiffs and the other App Defendants has only just begun.  Those Defendants believe that continued good-faith discussions will narrow the issues to those truly requiring judicial intervention within the schedules proposed for summary judgment and class-certification briefing.

Given these differing postures, Defendants Apple and Path provide argument on the discovery issues that are ripe for decision.  **Apple asks that Plaintiffs be required to:  1) produce their devices for inspection, including the Contacts data at issue, by January 20, 2016; 2) complete production of all discovery already agreed upon by January 20, 2016; and 3) that Plaintiff Judy Paul sit for deposition by February 5, 2016.**  The other App Defendants identify current areas of dispute to assist the Court in determining an appropriate schedule for summary judgment and class-certification motions, but do not seek a ruling on these issues because they are not yet ripe.  If the Court is nonetheless inclined to rule on any of these disputed issues, the Non-Path App Defendants request the opportunity to submit individualized letter briefs pursuant to Local Rules prior to any decision.

II.   **PLAINTIFFS' STATEMENT**

**Background.**  Plaintiffs propounded timely discovery requests to Defendants for categories of documents and information oriented toward class certification subjects.  Many requests were as simple as a request for the number and identity of people who downloaded the address book data harvesting version(s) of an iOS app.  Plaintiffs defined basic terms, like "ADDRESS BOOK DATA," and chose customary industry terms, like "information lifecycle," to convey what they needed.  Plaintiffs also modified their discovery instructions to accommodate each App Defendant based upon ESI conferences held in July/August 2015.  For source code excerpts, Plaintiffs attached a copy of the Apple API guidelines and pointed to specific page numbers.  That discovery, identified in the tables below, was met with boilerplate objections and lawyer sophistry (for example, "we don't understand the meaning of the word 'about'").  *See* ECF No. 592, at 10 & n. 3.

**Outstanding RFPs to App Defendants.** On August 14, 2015, Plaintiffs propounded

---

[1]  Yelp (48 pages produced), Electronic Arts (several hundred pages), Twitter (24 pages), Rovio (22 pages) and Zepto (14 pages) began theirs on the heels of the parties' early December request for a case management conference (figures as of 9 A.M. PDT on January 13th).

document requests for the following categories of documents from the App Defendants:

| Categories of Documents | Request Numbers | Date Range |
|---|---|---|
| Source Code, Comments, and Workflow: Client and server-side versions of each application and database server platform associated with receiving data. | RFP Nos. 10, 11, 12 | Class Period (varies by Application Defendant, based on data harvesting) |
| All communications about Address Book Data. | RFP Nos. 19, 20 | No date restrictions |
| All agreements, contracts, written obligations between each App Defendant and Apple for iTunes Apple App Store sale/distribution. | RFP No. 4 | No date restrictions |
| All rules/guidelines Apple provided regarding Address Book Data. | RFP Nos. 7, 8 | No date restrictions |
| All documents and information showing Apple's assistance to the App Developers about the harvesting of Address Book Data (i.e., guidance, training, tools, code, APIs or tutorials). | RFP No. 9 | No date restrictions |
| All documents and data relating to the named plaintiffs | RFP Nos. 3, 6, 13 | No date restrictions |
| All documents relating to the use of Address Book Data for sharing, processing, profiling, tracking, marketing, sales, advertising, or promotional efforts. | RFP Nos. 14, 15 | No date restrictions |
| All documents regarding the duration of retention of Address Book Data | RFP No. 16 | No date restrictions |
| All documents relating to any assessment of the commercial value of Address Book Data. | RFP Nos. 17, 18 | No date restrictions |

**Outstanding RFPs to Apple:** On the same date, Plaintiffs propounded the following:

| Categories of Documents | Request Number | Proposed Date Range |
|---|---|---|
| Documents related to absent class members | RFP Nos. 34-36 | No restrictions on documents; definition restricted to pre-September 30, 2012 |

**Outstanding Interrogatories to App Defendants.** On the same date, Plaintiffs propounded interrogatories on the App Defendants. The following categories of information have not yet been produced by all of the App Defendants:

| Categories of Information | Interrogatory | Date Range |
|---|---|---|
| Identify versions of each application that harvested Address Book Data as alleged in the SCAC (*i.e.*, subject to an inadequate consent flow) | ROG Nos. 1, 2, 3 (Rovio/Zepto: 1, 2, 3, 4) | Class Period (varies by Application Defendant, based on data harvesting) |
| Dates of publication of each version identified above | ROG Nos. 1, 2, 3 (Rovio/Zepto: | Class Period (see above) |

2

|  | 1, 2, 3) |  |
| --- | --- | --- |
| User base figures and class membership, identities of number of users, number of iDevices, and unique device identifiers. | ROG No. 12 (Rovio/Zepto: 13) | Class Period (see above) |
| Profits, revenue, and fundraising attributable to any apps engaged in Address Book Data harvesting. | ROG No. 16. (Rovio/Zepto: 17) | No date restrictions |
| Each App Defendant's treatment of Address Book Data after "find friend" matching took place. | ROG No. 10 (Rovio/Zepto: 11) | No date restrictions |
| Uses of Address Book Data, including licensing, marketing, and advertising. | ROG Nos. 8, 9 (Rovio/Zepto: 9, 10) | No date restrictions |
| Assistance or communications between Apple and the App Defendants relevant to Address Book Data, matching "friend finder" or harvesting functionality, Address Book Framework APIs. | ROG Nos. 13, 17 (Rovio/Zepto: 14, 18) | No date restrictions |

Plainly, each of the listed categories is reasonably calculated to obtain relevant, proportionally necessary evidence going to the class allegations embodied in the operative pleading. *Surfvivor Media v. Survivor Prods.,* 406 F.3d 625, 635 (9th Cir. 2005).

**Argument.** The App Defendants have uniformly resisted discovery with a diverse array of non-specific objections. With the exception of Yelp, the App Defendants have not complied with Fed. R. Civ. P. 34(b)(2)(C). Despite promises to produce subject to these objections, Plaintiffs have not received a single, meaningful document production from any of the App Defendants (save Path). As to interrogatories, Plaintiffs asked for and still require basic information about the nature and scope of the misconduct at issue and the identity of those it was directed at.

**Boilerplate Objections.** The parties dispute whether unspecified objections merit wholesale refusal to engage in the search, collection, and production of document discovery. Almost every App Defendant continues to assert blanket objections, without applying each objection to each request, followed by a vague promise to produce responsive documents or no indication as to whether production will ever occur.[2] The App Defendants contend, contrary to law, that Plaintiffs are entitled to apprehend the documents being withheld, or the specific basis why, only if they first meet and confer, multiple times, separately, with each of the App Defendants. *Live Nation v. Miller*, 2014 WL 1877912 at *4 (N.D.Cal. May 9, 2014) (discussing Rule 34 (b)(2)(C)); *McCowen v. Trimac Transp.*, 2015 WL 5184473, at *3 (N.D. Cal. Sept. 4, 2015) (boilerplate objections like ones here "are without merit").

**Specific Case-Wide Discovery Objections.** The Court can and should act now to clear the deadwood, as it were. Other, more intractable "in the weeds" disputes may warrant reference to a magistrate judge. (*See* App Defendants' final footnote, discussing disputes they have yet to specify, either in their formal discovery responses or this letter brief.) The following overarching discovery disputes merit the Court's swift resolution, *on a case-wide basis*:

---

[2] Neither Foodspotting nor Foursquare yet owes documents. Plaintiffs reached agreement with Electronic Arts ("EA")/Chillingo, during a telephonic meet and confer on these topics held Thursday, January 7th, and on that basis, excludes EA's production from discovery to compel (in this letter).

3

*First*, the App Defendants object to producing discovery before and after the period of liability, despite failing to produce evidence determinative of that period. As an example, Plaintiffs seek all documents and information showing Apple's assistance to the App Developers relating to data harvesting. Twitter, Yelp, Instagram, Kik, Gowalla, and Rovio all object as to timeframe. Discovery outside the class period is proper. *Hatamanian v. Advanced Micro Devices*, 2015 WL 7180662 at *2 (N.D. Cal. Nov. 16, 2015). Time restrictions should not apply to the categories of documents and information sought, with exceptions indicated in the table above in the right-most column. **The Court should adopt this protocol in its order.**

*Second*, Apple and a number of the App Defendants object on privacy grounds to Plaintiffs' request that they identify users who obtained the data harvesting versions of each app, a comically divergent stance to their positions on the privacy claim's merits. Most courts in this District grant such discovery. *McCowen*, supra, 2015 WL 5184473 at *4 (line of authority establishing class member contact information is appropriate pre-certification discovery). *See also Artis v. Deere & Co.*, 276 F.R.D. 348, 351 (N.D. Cal. 2011) (same). While the identities of class members are entitled to a degree of privacy, here the abridgment of that interest is minimal (Defendants will no doubt continue to invoke the case protective order and stamp everything they produce "confidential") and outweighed by the vindication of class rights, including privacy rights Defendants themselves violated. *Khalilpour v. CELLCO*, 2010 WL 1267749 at *3 (N.D. Cal. Apr. 1, 2010). **The Court should therefore overrule this objection in its order.**

*Third*, most of the App Defendants have indicated they will not produce documents or information corresponding to versions of their data harvesting apps that the named Plaintiffs did not download or use. Class treatment is not narrowly limited only to the precise version these individuals used. The test is **typical** not identical. Plaintiffs are entitled to conduct discovery about prior and subsequent similar versions and to seek certification regarding all substantially similar versions. **The Court should overrule this objection, and state in its order that these "standing" objections are improper as a basis to delay or deny pre-certification, class-wide discovery encompassing the period of wrongdoing.**

To prevent further prejudice from Defendants' delays, the Court should rule as indicated above and compel Defendants to produce the documents and information outlined above **within 30 days**.

**Plaintiffs' Privacy Interests in Contact Data and Phone Contents**. Defendants ask the Court to order production of two categories of private information: all contact data on Plaintiffs' mobile devices[3] at the time of the alleged intrusions and inspection of all mobile devices Plaintiffs used at the time of the alleged intrusions. Neither request should be allowed.

Plaintiffs are unaware of **any** evidence on their devices that would prove whether their Contacts were uploaded or the permissions sought, and no Defendant has identified any such information.[4] The devices do not "log" that activity. Those records are in the defendants' possession, not on Plaintiffs' devices. *See* ECF Nos. 395-2 to 395-6. The devices instead contain

---

[3] Plaintiffs produced metadata showing the existence of contacts on their iOS mobile devices. Defendants insist on access to the iterant contact data itself. But they have as yet failed to specify how a different name, email address, or the quantities thereof would render a person's Apple mobile device and associated mobile address book any less private in view of the expectations of privacy outlined by the U.S. Supreme Court in *Riley v. California* and by Apple in its iOS device, platform, and developer literature and executive keynotes and speeches.

[4] Apple has since limited its inspection request to 12 apparently hidden locations on Plaintiffs' mobile devices, including areas it says contain online banking and certain internet search information. Apple has refused to answer questions regarding what data they seek or how it relates to this case.

highly sensitive private material beyond the contacts (such as photos, browser histories, calendars, music, communications, credit and banking information, medical data, etc.). Forensic analysis of an individual's smartphone constitutes an "extreme step," in most cases denied unless "the information sought is not reasonably accessible through other sources." *Lee v. Stonebridge Life Ins.*, No. 11-CV-43, 2013 WL 3889209, at *1-2 (N.D. Cal. July 30, 2013). *See also Brady v. Grendene USA,* 12-CV-00604, 2015 WL 4523220 (S.D. Cal. Jul. 24, 2015); *Bakhit v. Safety Marking*, No. 13-CV-1049, 2014 WL 2916490, at *3 (D. Conn. June 26, 2014) (denying requests to inspect mobile phones, even via third-party vendor).

Nor are the actual contents of any individual's Contacts relevant to this case. Plaintiffs do not allege or intend to prove that anything unique about any Plaintiff's contacts would entitle different Plaintiffs or class members to different relief. *See* ECF No. 609, at 20:8-22:15. When pressed to substantiate the relevance of iPhone contents, each Defendant merely insists that it is "obviously relevant" while providing no explanation as to why. What is obvious is defendants' attempt to manufacture an "individuality" argument instead of seeking actual relevant evidence. Notably, Path has had an image of Plaintiff Carter's phone, including contacts, for years and has failed to identify any data on that phone that is in any way relevant to this case, much less so relevant that it justifies the extreme intrusion on privacy Defendants seek. Plaintiffs' claims do not turn on the content or particularities of any individual's address book. *See* ECF No. 617 (Jan. 5th Tr.), at 14:3-8. Plaintiffs should not be subject to a new invasion of privacy as the price for suing over Defendants' prior invasion of that privacy.

**Remaining Discovery**: Plaintiffs do not believe that unilateral deadlines to complete production of documents for Plaintiffs who are not members of the proposed Path App class is appropriate or necessary. Plaintiffs have agreed to expedite production and deposition of the three Path App plaintiffs standing for the class certification motion. Plaintiffs have agreed to discuss mutual deadlines to complete production for any Plaintiff but have received only silence in response. Ms. Paul is *not* a Path App class member; Path has insisted that the version Ms. Paul used did not harvest contacts (indeed, has threatened Plaintiffs with sanctions for seeking that version's source code). There is no reason to expedite her discovery, or to require her deposition, in advance of the hearing on that motion.

**Plaintiff Pirozzi's Discovery Objections**: Ms. Pirozzi objects to all discovery requests from the App Defendants to her on the grounds that she has only stated causes of action against Apple. She has no claims against the App Defendants. Similarly, she objects to all discovery requests by Apple seeking to produce her iDevice or the contact data thereon. Ms. Pirozzi has only alleged causes of action related to Apple's false and misleading advertising of the iDevices. Neither her iDevice nor her contact data bear any relevance to those claims.

## III. DEFENDANTS' STATEMENT

## APPLE'S AND PATH'S POSITION

**INSPECTION OF PLAINTIFFS' IDEVICES FOR CONTACTS AND OTHER RELEVANT DATA**

Plaintiffs allege they purchased iPhones and other Apple devices believing the generalized proposition that those devices would protect their privacy, then downloaded apps from the Apple App Store that accessed data from Plaintiffs' Contacts without getting Plaintiffs' permission before doing so. After putting their Apple mobile devices and the Contacts data on them at issue in this lawsuit, Plaintiffs now refuse to produce for inspection those very devices and data. Nearly all Defendants requested Plaintiffs' Contacts data as of the proposed class period. Path also requested inspection of Plaintiffs' devices (or a backup or image), while Apple requested

certain files regarding app installations, user actions affecting security, notifications, and data transfers off the devices.[5]

After months of discussion, Defendants now understand that only 5 of the 14 named Plaintiffs kept the devices they used during the proposed class periods, and only 1 created a forensic image of her device (in 2013) for purposes of this litigation.[6] Plaintiffs provided no specifics about whether the remaining devices preserve data as of the filing of the original complaint. Plaintiffs have not, despite repeated requests, disclosed *when* each named Plaintiff was advised to preserve his or her device and/or data. Because Plaintiffs have refused to provide specific information, issues relating to Plaintiffs' apparent failure to preserve relevant evidence are not yet ripe. Defendants reserve their rights to seek appropriate relief once the extent of Plaintiffs' preservation deficiencies is determined.

But Plaintiffs' obligation to produce the requested devices and data is ripe and must be decided now given the current class certification schedule, and upcoming depositions, noticed for the first week of February. The requested device data is directly relevant to class certification. Defendants expect this evidence will undercut central allegations in the Complaint and demonstrate that Plaintiffs cannot carry their Rule 23 burdens in the pending class certification motion. Plaintiffs' "primary theory" of injury and damages relies on a supposed "inherent privacy interest" in Plaintiffs' Contacts information. (ECF #609 at 20.) The requested data bears on whether and to what extent Plaintiffs' address books contain sensitive, private or confidential information; whether Defendants' alleged conduct may be deemed *highly* offensive to a reasonable person in light of the circumstances; and the damages, if any, that each Plaintiff could have suffered. (ECF #471 at 45-46.) Contacts data is also relevant to predominance and commonality; Defendants expect the requested data to show substantial variations among Plaintiffs in what types of information they store in their Contacts (emails only, names and phone numbers only, or, as Plaintiffs' counsel suggested at oral argument, personal comments) and the amount of such data (Plaintiffs' estimates have varied between 50 and hundreds of entries). The data on Plaintiffs' devices should also show how they used the apps at issue, whether (or when) those apps actually accessed contacts data, whether they did so without permission, and whether and under what circumstances the apps transferred data off the devices. Defendants also expect Plaintiffs' devices to show substantial variation in how and when Plaintiffs disclose their contacts data to third parties other than Defendants. If Plaintiffs regularly consented to mobile applications accessing and storing their contacts data, that undercuts their arguments as to the *highly* offensive nature of such access and whether actual injury occurred.

Plaintiffs claim that all of the requested device data is irrelevant and that their devices are entitled to absolute protection against disclosure in litigation that they commenced. Plaintiffs, however, have presented *no* evidence substantiating the privacy of any data in their contacts; instead, they ask the Court to presume the truth of a central element of their intrusion claims on which they bear the burden of proof. Plaintiffs' reliance on *Riley v. California*, 134 S.Ct. 2473 (2014), is unavailing, as that case addresses the reasonableness of a warrantless cell phone search. It does not establish that cell phone contents are beyond the reach of civil discovery in a

---

[5] While Apple has (and has produced) records of Plaintiffs' device and App Store purchase histories, it has no access to data resident on Plaintiffs' devices, including Contacts, app installation or use, security settings or other user actions impacting security, or access to or transfer of data. Contrary to Plaintiffs' assertions, Apple identified specific files on the devices that may contain evidence of such actions. And contrary to their assertions, Apple did not request files that it believes would "contain online banking and certain internet search information."

[6] In 2013, two plaintiffs (including one who remains in the case today) produced device data, including contacts data. This undermines Plaintiffs' current position that this data is not relevant.

case regarding that very data.  In fact, courts routinely order the inspection and production of ESI from cell phones, particularly where the plaintiff puts that information at issue.  *E.g.*, *Freres v. Xyngular Corp.*, 2014 WL 1320273, at *3-4 (D. Utah Mar. 31, 2014) (ordering production of plaintiff's phone where plaintiff "initiated this case and put her alleged cross-recruiting, or absence of such conduct, at issue"); *Ewald v. Royal Norwegian Embassy*, 2013 WL 6094600 (D. Minn. Nov. 20, 2013) (granting motion to compel as to cell phones used to send texts related to allegations); *see also Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 267 F.R.D. 443, 447 (D. Conn. 2010).  Plaintiffs waived any purported privacy protections when they asserted claims putting that information at issue.  *E.g.*, *Lahrichi v. Lumera Corp.*, 433 Fed. App'x 419 (9th Cir. 2011) (therapist-patient privilege waived); *Peake v. Chevron Shipping Co.*, 245 Fed. App'x 680, 683-84 (9th Cir. 2007) (doctor-patient privilege waived).

Plaintiffs cite an inapposite ruling where the court denied, without prejudice, a motion for inspection of cell phones where other discovery could produce the information sought.  *See Bakhit v. Safety Marking, Inc.*, 2014 WL 2916490, at *3 (D. Conn. June 26, 2014).  Here, Defendants have tried to obtain some of the necessary information through other discovery methods, but Plaintiffs have stonewalled by claiming they do not recall the answers (see Path's Interrogatories to Plaintiffs, below).  Plaintiffs also miss the mark by relying on *Lee v. Stonebridge Life Insurance Co.*, 2013 WL 3889209 (N.D. Cal. July 30, 2013), where the court denied a request to access the plaintiff's iPhone because it *did not contain the relevant data*.  *Id.* *1.  Here, by contrast, the requested devices were those used to download the apps challenged in this case, and the requested device data includes the very data allegedly improperly accessed.

Plaintiffs' objections regarding medical privacy, privilege, and "highly sensitive materials" ring hollow.  Plaintiffs never identified any specific data from their devices that they seek to withhold based on those objections, as Rule 34 now requires.  At meet-and-confer, Plaintiffs' counsel insisted that *nothing* on Plaintiffs phones (other than the few redacted screenshots Plaintiffs produced) was relevant.  Plaintiffs also refuse to produce certain files from their Apple devices that may contain information about app installations, user actions affecting security, notifications, and data transfers off the devices—all issues relevant to this case.  Thus, Plaintiffs gain no support by citing a case in which an overbroad discovery request encompassed "confidential state or private personal information that is wholly unrelated to the litigation." *John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008).  To the extent legitimate privileged material exists on Plaintiffs' old devices, a vendor can identify and extract only the requested data (omitting any attorney-client communications or irrelevant data such as medical information, photos, etc.) with minimal burden to Plaintiffs.

Plaintiffs' claims of burden are baseless.  Plaintiffs alleged they used the devices in question in 2012.  They do not allege that they still currently use them as their primary devices, and most have admitted they have upgraded to newer devices.  Path requested inspection *or* a backup image precisely to minimize any burden associated with production.  That one class plaintiff and one former class plaintiff previously produced full images of the devices they used the Path app on from 2013 demonstrates the ease of complying with this request.

Plaintiffs' offer to produce "metadata showing the existence of contacts"—i.e. their Contacts data with all substance redacted—is inadequate.  Such a production would be virtually useless, preventing Defendants from probing Plaintiffs' allegations about the private nature of such information or the supposed injury they claim to have suffered.  Plaintiffs yesterday served amended responses to Defendants' requests for production, stating that Plaintiffs will produce some documents and withhold others, but maintaining their privacy and burden objections.  Plaintiffs' vague and non-committal responses are insufficient.  <u>Defendants respectfully request that this Court order Plaintiffs to produce their devices for inspection (and copying of relevant files/folders), including the Contacts data at issue, by January 20, 2016</u>.

## PATH'S INTERROGATORIES TO PLAINTIFFS (NOS. 1-3)

In an attempt to streamline discovery, Path requested the named Plaintiffs for the proposed class against the Path App identify the number of contact entries they had during the proposed class period; identify any mobile apps they allowed to access their contact data; and identify any mobile apps they allowed to transmit their contact data. Each Plaintiff gave only a vague estimate as to their number of contacts. During conference, Plaintiffs' counsel refused to state whether Plaintiffs had inspected their devices or relied on their now four-years-old memories. As to the identity of apps, Mr. Green and Ms. Dennis-Cooley stated facts suggesting that they did in fact give permission to other apps to access and/or transmit their address book data, but confessed they could not recall specifics (Ms. Carter stated she did not "believe" she had done so). Again, at conference, Plaintiffs' counsel refused to state whether Plaintiffs had inspected their devices in answering.

Plaintiffs had an obligation to inspect the devices in their possession when responding to Path's interrogatories. The vague estimates in their responses indicate they did not. Plaintiffs put their contacts and disclosure history squarely at issue by basing their entire complaint on the allegation that Path uploaded those contacts without their consent and that such access and transmission by an app was a *highly* offensive intrusion on their privacy. That Plaintiffs *today* cannot remember how many contacts were on their devices *then* is no excuse when Plaintiffs filed their complaint approximately one month after the end of the class period when contemporaneous records (i.e., their devices) existed. Nor may Plaintiffs ignore such records because examining them is burdensome; Rule 33 permits production of the records for examination. Thus, Path respectfully requests the Court order Plaintiffs Jason Green, Stephanie Dennis-Cooley, and Lauren Carter to produce their devices for inspection, or, if the devices are no longer in Plaintiffs' possession, answer that the records from which the answers could have been ascertained have been destroyed.

## TIMING OF REMAINING DISCOVERY FROM PLAINTIFFS

First, in light of the impending deadline for Apple's opposition to class certification, Apple requests that Plaintiffs be ordered to produce all documents and data they have agreed to produce (in their responses to Apple's Requests for Production and related meet and confer negotiations) no later than January 20, 2016. Plaintiffs have agreed to a response deadline for only the three named Plaintiffs who provided declarations in support of the motion for class certification against Apple and Path. But Defendants are entitled to production from all Plaintiffs: all Plaintiffs assert injury from App Defendants' access to their Contacts information, a central issue in the pending motion. Apple's requests were served in nearly five months ago in August 2015.

Second, Apple also requested priority discovery, including a deposition, from Plaintiff Judy Paul, who alleges that she downloaded the Path app and that it "took [her] address book data without her consent." (SCAC ¶ 208.) Plaintiffs have refused, asserting that she has not been proposed as a class representative in their Path class motion or submitted a declaration in connection therewith. But the evidence Plaintiffs chose to put forward in support of their motion plainly does not limit the evidence that Apple is entitled to develop in opposition to it. Apple is entitled to discovery that may bear on class issues, like commonality, typicality, and predominance, including from Ms. Paul, who is asserting against Path (and Apple) the very invasion of privacy claim that Plaintiffs now seek to certify (a claim Ms. Paul has never amended or sought to dismiss). (*Id.* at pp. 61-62.) Apple therefore asks that the Court order that Ms. Paul fully respond to outstanding discovery requests (and produce responsive documents/data) by January 20 and sit for deposition by February 5.

## PLAINTIFFS' REQUEST FROM APPLE FOR ABSENT CLASS MEMBER INFORMATION

Plaintiffs' request for information identifying every Apple customer who downloaded each app at issue in the case is burdensome and irrelevant at this stage of the litigation—and in conflict with their claimed inherent privacy interest in a person's use of his or her device. Plaintiffs

8

Case No. : 13-cv-00453-JST                                           JOINT LETTER BRIEF
                                                                     RE DISCOVERY DISPUTES

claim they need these records to demonstrate that the named Plaintiffs' contacts were uploaded, but the requested information would not establish this fact. Apple has produced its records regarding the named Plaintiffs, which show when they purchased or downloaded particular apps, and it has provided discovery about the number of downloads of each of the apps. Plaintiffs have articulated no reason that information about absent class members bears on any disputed issue now being litigated.

## **OTHER APP DEFENDANTS' POSITIONS**

Plaintiffs have only just begun to meet and confer with the other App Defendants regarding their respective discovery responses. Although most App Defendants served responses in October 2015, Plaintiffs waited months to begin the meet and confer process—if at all. Yelp, EA, Chillingo, Rovio, and ZeptoLab have received *no* request to meet and confer. Gowalla, Instagram, and Kik received initial correspondence on December 28, 2015; Plaintiffs *never responded* to Instagram's and Kik's December 29 offer, or ZeptoLab's January 7 offer to meet and confer. Twitter met and conferred with Plaintiffs in mid-December—within days of receiving Plaintiffs' request to confer—and made progress but did not resolve all disagreements. Although many App Defendants accepted Plaintiffs' invitation to confer en masse on January 7, 2016, the call did not involve the meaningful discussion contemplated by this Court's rules or desired by the Defendants who participated. For many App Defendants, the January 7th call was the beginning—not the end—of the meet-and-confer process. Most App Defendants agreed to produce documents regarding many, if not most, of Plaintiffs' requests, with the disputes primarily involving subject-matter overbreadth and time-period limitations. Plaintiffs' own delay in initiating the meet-and-confer process, and Defendants' prompt and good faith responses to Plaintiffs' eventual outreach, disprove Plaintiffs' assertion that Defendants are intentionally impeding discovery to gain a tactical advantage.

The meet-and-confer process regarding Plaintiffs' discovery responses is likewise in its early stages. Plaintiffs' responses to some of Defendants' discovery is not yet due. EA and Chillingo sent a meet and confer letter to Plaintiffs on December 4, 2015, but received no response. Instagram and Kik met and conferred with Plaintiffs on January 11, 2016, during which Plaintiffs agreed to supplement their responses. Plaintiffs served amended responses on some, but not all, Defendants at 10 p.m. on January 12, and have continued to attempt resolution of their disputes up until the deadline for this filing. These attempts underscore that discovery disputes between the non-Path App Defendants and Plaintiffs are simply not ripe for resolution.

Given the varying and preliminary stages of each party's respective individual meet-and-confer process, the App Defendants do not seek an immediate Court order on the issues identified below. Nor do the App Defendants believe that Plaintiffs' request for such an order is appropriate given Plaintiffs' failure to promptly commence or adequately conduct the meet and confer process, and the fact that there is no schedule in place with deadlines necessitating premature resolution of any disputes. The App Defendants thus identify the following issues as potential but not-yet-ripe disputes.[7] Notably, several App Defendants submit that the only issue relevant to their limited summary judgment motions is the source code production—which Plaintiffs have likewise informed the Court is the "conclusive digital evidence" needed in the case. Thus, there is no basis for Plaintiffs' request to postpone the App Defendants' summary judgment motions.

---

[7] While the issues identified exist for at least one App Defendant, they do not necessarily share uniform views on these issues. The App Defendants are different parties that served different discovery responses and different discovery requests—all the more reason why Plaintiffs' attempt to "meet-and-confer" *en masse* and to compel production of documents in one fell swoop is improper.

9

**Source code.** EA, Chillingo, Gowalla, Instagram, Kik, Rovio, Twitter and Yelp have agreed to produce source code, but several of them need to meet and confer with Plaintiffs regarding which excerpts or versions of code will be produced.

**"Boilerplate" objections.** Plaintiffs accuse Defendants of asserting "boilerplate" objections. Notably absent from their letter is an *example* of an improper objection. For many requests, App Defendants agreed to search for and produce specified categories of documents.

**Date Range**. Plaintiffs seek documents for a *six-year* time period extending nearly four years after they filed suit in March 2012. Some App Defendants proposed a cut-off of March 2012; others September 2012 as a compromise. The date range may differ by app or topic at issue.

**Financial Information.** Plaintiffs requested documents relating to assessments of the "commercial value" of address book data. Certain App Defendants have objected to these requests because restitution is not an available remedy in an intrusion claim. Plaintiffs also requested information regarding Defendants' "monthly revenues" and revenue "sources". Defendants believe there is no basis to request revenues untethered to specific uses of address book data.

**Defendants' User Information.** Several App Defendants contend they are not required to provide user identification information. For most App Defendants, user ID's are not tied to actual names and so, contrary to Plaintiffs' suggestion, would not serve to "identify" putative class members.

**Retention and Storage of Address Book Data.** Several App Defendants objected to Plaintiffs' requests for documents relating to the retention of address book data. Those App Defendants contend that because address book data was used only to perform requested address-book matching services, documents regarding how or for how long that data was stored are irrelevant—particularly since the tort of intrusion is limited to the invasion and not subsequent acts.

**Plaintiffs' Spoliation.** The App Defendants join Path's and Apple's discussion regarding Plaintiffs' failure to preserve devices or data from their devices. Further, Plaintiffs have refused to engage in discussions regarding identification of custodians or email search protocols.

**Plaintiffs' Documents and Information Regarding Third Party Access to Address Book Information.** Plaintiffs have not produced information regarding non-defendant apps they downloaded, social networks they were members of during the class period, and other documents regarding third party access to their address books. This topic remains under discussion with Plaintiffs. The App Defendants believe this information is relevant to Plaintiffs' reasonable expectation of privacy, the "offensiveness" of any alleged intrusion, and Plaintiffs' damages.

Respectfully submitted,

Dated: January 13, 2016

**KERR & WAGSTAFFE LLP**

By: */s/Michael von Loewenfeldt*
James M. Wagstaffe (95535)
Michael von Loewenfeldt (178665)
Frank Busch (258288)
KERR & WAGSTAFFE LLP
101 Mission Street, 18th Floor
San Francisco, CA 94105
Tel.: 415-371-8500
Fax: 415-371-0500

wagstaffe@kerrwagstaffe.com
mvl@kerrwagstaffe.com
busch@kerrwagstaffe.com

David M. Given
Nicholas A. Carlin
PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Ste. 201
San Francisco, CA 94129
Tel: 415-398-0900
Fax: 415-398-0911
dmg@phillaw.com
nac@phillaw.com

*Interim Co-Lead Counsel for Plaintiffs*

Carl F. Schwenker (admitted *pro hac vice*)
LAW OFFICES OF CARL F. SCHWENKER
The Haehnel Building
1101 East 11th Street
Austin, TX 78702
Tel: 512-480-8427
Fax: 512-857-1294
cfslaw@swbell.net

*Plaintiffs' Liaison Counsel*

Jeff Edwards (admitted *pro hac vice*)
EDWARDS LAW
The Haehnel Building
1101 East 11th Street
Austin, TX 78702
Tel: 512-623-7727
Fax: 512-623-7729
cfslaw@swbell.net

Jennifer Sarnelli
GARDY & NOTIS, LLP
126 E. 56th Street, 8th Floor
New York, NY 10022
Tel: 212-905-0509
Fax: 212-905-0508
jsarnelli@gardylaw.com

**ATTORNEYS FOR OPPERMAN PLAINTIFFS**

Dated: January 13, 2016  **FENWICK & WEST LLP**

By: */s/ Tyler G. Newby*
Tyler G. Newby (Bar No. 205790)
FENWICK & WEST LLP
555 California Street

San Francisco, CA 94041
Tel: 415-875-2300
Fax: 415-281-1350
tnewby@fenwick.com
**ATTORNEYS FOR DEFENDANT PATH, INC.**

Dated: January 13, 2016

**COOLEY LLP**

By: */s/ Mazda K. Antia*
Mazda K. Antia (Bar No. 214963)
4401 Eastgate Mall
San Diego, CA 92121-1909
Tel: 858-550-6000
Fax: 858-550-6420
mantia@cooley.com

**ATTORNEYS FOR DEFENDANTS INSTAGRAM, LLC & KIK INTERACTIVE, INC.**

Dated: January 13, 2016

**DURIE TANGRI LLP**

By: */s/ Michael H. Page*
Michael H. Page (Bar No. 154913)
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
Tel: 415.362.6666
Fax: 415.236.6300
mpage@durietangri.com

**ATTORNEYS FOR DEFENDANTS YELP INC. & FOODSPOTTING, INC.**

Dated: January 13, 2016

**DHILLON LAW GROUP INC.**

By: */s/ Harmeet K. Dhillon*
Harmeet K. Dhillon (Bar No. 207873)
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Tel: 415-433-1700
Fax: 415-520-6593
Harmeet@dhillonlaw.com

12

**ATTORNEYS FOR DEFENDANT GOWALLA INC.**

Dated: January 13, 2016　　**HUESTON HENNIGAN LLP**

By: */s/ Robert N. Klieger*
Robert N. Klieger (SBN 192962)
Ellen C. Kenney (SBN 295022)
Matthew Z. Kaiser (SBN 304714)
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, California 90014
Tel: (213) 788-4340
Fax: (888) 775-0898
rklieger@hueston.com
akenney@hueston.com
mkaiser@hueston.com

**ATTORNEYS FOR DEFENDANTS ELECTRONIC ARTS, INC. AND CHILLINGO LTD.**

Dated: January 13, 2016　　**PERKINS COIE, LLP**

By: */s/ Timothy L. Alger*
Timothy L. Alger (Bar No. 160303)
PERKINS COIE LLP
3150 Porter Dr.
Palo Alto, CA 94304-1212
Tel: 650.838.4334
Fax: 650.838.4350
TAlger@perkinscoie.com

**ATTORNEYS FOR DEFENDANT TWITTER, INC.**

Dated: January 13, 2016　　**MORRISON & FOERSTER LLP**

By: Plaintiffs believe the letter brief reflects Foursquare's position, but counsel for Foursquare was not available to approve the filing in its final form.

David F. McDowell (CA SBN 125806)
MORRISON & FOERSTER LLP

13

707 Wilshire Blvd., Ste. 6000
Los Angeles, California 90017-3543
Tel: 213-892-5200
Fax: 213-892-5454
DMcDowell@mofo.com

**ATTORNEYS FOR DEFENDANT
FOURSQUARE LABS, INC.**

Dated: January 13, 2016     **HOLLAND & KNIGHT LLP**

By: */s/ Judith R. Nemsick*
Christopher G. Kelly
Judith R. Nemsick
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Tel: (212) 513-3200
Fax: (212) 385-9010
christopher.kelly@hklaw.com
judith.nemsick@hklaw.com

Shelley G. Hurwitz
HOLLAND & KNIGHT LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: (213) 896-2476
shelley.hurwitz@hklaw.com

**ATTORNEYS FOR DEFENDANT ROVIO
ENTERTAINMENT LTD. S/H/A ROVIO
MOBILE OY**

Dated: January 13, 2016     **MITCHELL SILBERBERG & KNUPP LLP**

By: */s/ Jeffrey M. Movit*
Christine Lepera
Jeffrey M. Movit
Valentine A. Shalamitski
MITCHELL SILBERBERG & KNUPP LLP
12 E. 49th St., 30th Floor
New York, NY 10017
Tel: 917-546-7708
jmm@msk.com

Naomi Beckman-Straus
Valentine A. Shalamitski
MITCHELL SILBERBERG & KNUPP LLP
11377 W. Olympic Blvd.
Los Angeles, CA 90064
Tel: 310-312-2000
nxs@msk.com

**ATTORNEYS FOR DEFENDANT ZEPTOLAB UK LIMITED**


Dated:  January 13, 2016                **HOGAN LOVELLS US LLP**

By: */s/ Robert B. Hawk*
Robert B. Hawk
Maren J. Clouse
Jenny Q. Shen
HOGAN LOVELLS US LLP
4085 Campbell Ave., Suite 100
Menlo Park, CA 94025
Tel.: 650.463.4000
Fax:  650.463.4199
robert.hawk@hoganlovells.com
maren.clouse@hoganlovells.com
jenny.shen@hoganlovells.com

Clayton C. James
HOGAN LOVELLS US LLP
1200 Seventeenth Street, Suite 1500
Denver, CO 80202
Tel:  303.899.7300
Fax:  303.899.7333
clay.james@hoganlovells.com

**ATTORNEYS FOR DEFENDANT APPLE INC.**

# ATTESTATION

      I attest that concurrence in the filing of this document has been obtained from the other signatories listed above.

Dated: January 13, 2016               **KERR & WAGSTAFFE LLP**

                                       By: */s/ Michael von Loewenfeldt*
                                                  Michael von Loewenfeldt