UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC OPPERMAN, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> KONG TECHNOLOGIES, INC., et al., <br><br> Defendants. | Case No.13-cv-00453-JST <br><br> **ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Re: ECF No. 878 |

Plaintiffs[1] move for preliminary approval of class action settlement with the App Defendants.[2] ECF No. 878. For the reasons below, the Court will grant the motion.

**I.  BACKGROUND**

**A. Factual and Procedural Background**

This is a class action against Apple and various mobile application ("app") developers for alleged invasions of privacy. See Second Consolidated Amended Complaint ("SCAC"), ECF No. 478. The Plaintiffs allege that the apps unlawfully uploaded their address book data without their knowledge or consent, and that Apple aided and abetted them in that conduct. Id. ¶¶ 246, 250-52.

Discovery and motion practice have been extensive since this case began in March 2012. The parties engaged in three years of motion to dismiss briefing, which significantly narrowed the Plaintiffs' claims. See ECF Nos. 55, 67, 543. Since formal discovery began in August 2015, Plaintiffs' counsel "have defended a dozen-plus Plaintiff depositions (some Plaintiffs were

---

[1] The Plaintiffs include Allen Beuershausen, Giuliana Biondi, Lauren Carter, Stephen Dean, Stephanie Cooley, Jason Green, Claire Hodgins, Gentry Hoffman, Rachelle King, Nirali Mandalaywala, Claire Moses, Judy Paul, and Gregory Varner.
[2] The App Defendants include Foodspotting, Inc. ("Foodspotting"), Foursquare Labs, Inc. ("Foursquare"), Gowalla, Inc. ("Gowalla"), Instagram, LLC ("Instagram"), Kik Interactive, Inc. ("Kik"), Kong Technologies, Inc. (formerly known as Path, Inc.) ("Path"), Twitter, Inc. ("Twitter"), and Yelp! Inc. ("Yelp").

deposed more than once), have responded to hundreds of written discovery requests, have supervised the forensic imaging of Plaintiffs' respective iDevices, have posed hundreds of written discovery requests to the App Defendants, have reviewed those requests and conducted all follow up meet and confer to them, have organized and reviewed tens of thousands of pages of documents produced in the case and have spent hundreds of thousands of dollars in out-of-pocket costs in prosecuting the action." ECF No. 879 ¶ 7. Plaintiffs' counsel has also deposed several Apple, Twitter, and Path employees, and has retained a source code expert and two damages experts. Id. ¶¶ 8-9.

In July 2016, the Court certified nominal and punitive damage claims against Path and Apple for a class comprising all persons in the United States who downloaded an offending version of the Path app from the App Store and activated the app via their Apple device between November 29, 2011 and February 7, 2012. See ECF No. 761.

In August 2016, several Plaintiffs filed an omnibus motion for class certification against five of the remaining App Defendants and Apple on their invasion of privacy and aiding and abetting claims. ECF No. 799.[3] This settlement agreement, if approved, would render that motion moot.

In September 2016, the Court denied Yelp's motion for summary judgment. ECF No. 828.

Two of the App Defendants settled with Plaintiffs prior to joint mediation. ECF No. 879 ¶ 10. Formal settlement negotiations began in November 2016 and involved three in-person mediation sessions with Judge Cahill at JAMS in San Francisco. Id. The parties filed a notice of settlement with this Court in January 2017. ECF No. 856.

The Plaintiffs have now moved for preliminary approval of their class action settlement with the App Defendants. ECF No. 878.

---

[3] At the same time, Plaintiffs filed a motion for class certification against Apple on their false advertising claims. ECF No. 801-3. That motion remains pending and is unaffected by the proposed settlement agreement.

2

**B. Terms of the Agreement**

Plaintiffs seek provisional certification of a settlement class comprising all persons in the United States who activated the pertinent versions of the challenged apps on their Apple devices during the relevant time periods.

Pursuant to the settlement agreement, the App Defendants will pay $5.3 million to establish a non-reversionary common fund from which settlement class members who submit valid claims will be sent cash or cash-equivalent payments on a per-app basis. See ECF No. 884 §§ 1.37, 2.1-2.3. The App Defendants will separately pay for the settlement administrator's costs and notice expenses.[4] Id. §§ 5.1-5.4, 8.3.

In exchange, class members will release the App Defendants and Apple from all claims that were or could have been asserted in relation to the alleged misappropriation and misuse of Plaintiffs' private address book data. Id. §§ 1.28, 1.29, 11.1, 11.3. Apple will not be released from the misrepresentation and false advertising claims. Id. § 1.28.

The settlement administrator will provide notice to class members via a settlement website, a toll-free number, direct email to class members, and a Twitter Promoted Tweet to those class members for whom a Twitter handle is available. Id. §§ 5.2, 5.3.

To receive payment, class members must submit an electronic claim form through the settlement website within 120 days after the Court grants preliminary approval. Id. §§ 7.1, 1.1. The settlement administrator will then calculate each class member's share, depending on how many of the apps they designated on their electronic claim form (up to a maximum of eight shares). Id. §§ 7.7, 7.8, 7.5. The settlement administrator will distribute payment to each class member on a pro rata basis via either a physical postcard check (valid for ninety days) or electronic payment in the form of a cash value credit on Amazon.com (no expiration date). Id. §§ 7.4, 7.7, 7.8. Any funds from checks not cashed within ninety days and from failed electronic payments shall be distributed on a *cy pres* basis to the Electronic Frontier Foundation, a leading

---

[4] Administrative costs allocated to Foodspotting, Gowalla, and Yelp shall be deducted from the settlement payment itself. Id. § 5.1.1.

nonprofit organization defending civil liberties in the digital world. Id. § 7.10.

Alternatively, individuals may opt out of the class by sending a written request to the settlement administrator within sixty days after the notice date. Id. §§ 1.22, 6.2.

Class counsel will separately petition the Court to allocate a portion of the settlement payment to reasonable attorneys' fees, costs, and expenses, as well as an incentive award for each representative Plaintiff. Id. §§ 8.1, 9.1. Should the Court decide to award less than the amounts sought, the difference will remain in the settlement account to pay eligible claimants. Id. §§ 8.2, 8.3, 9.2, 9.3.

Class members may object to the settlement, class counsel's fee application, and/or the amount requested for incentive awards for the representative Plaintiffs by filing an objection with the Court within 120 days after the entry of the preliminary approval order. Id. §§ 6.1, 1.21.

## II. PROVISIONAL CERTIFICATION

The Rule 23 requirements are satisfied. The settlement class is sufficiently numerous because it contains an estimated seven million eligible claimants. ECF No. 879 ¶ 12.[5] Moreover, the Court previously certified a substantially similar class against one of the App Defendants (the Path app), finding that the commonality, typicality, predominance, and superiority requirements were all satisfied. ECF No. 761. For the same reasons, the Court finds that those requirements are met here. The Court accordingly grants provisional certification of the settlement class.

## III. PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### A. Legal Standard

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Courts generally employ a two-step process in evaluating a class action settlement. First, courts make a "preliminary determination" concerning the merits of the settlement and, if the class action has

---

[5] This number is over-inclusive because many class members used more than one of the challenged apps. Id. ¶ 12. However, Plaintiffs estimate that, once duplicates are removed, the class will still contain around five million members. Id.

4

settled prior to class certification, the propriety of certifying the class. See Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." City of Seattle, 955 F.2d at 1276. The Court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (quotation omitted); see also MCL, 4th § 21.632 (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."). Second, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate."

Preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." In re Tableware, 484 F. Supp. 2d at 1079 (quotation omitted). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance a number of factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the state of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Id. at 1026 (citations omitted). The proposed settlement must be "taken as a whole, rather than the

individual component parts" in the examination for overall fairness. Id. Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its entirety." Id.

### B. Analysis

#### 1. Non-Collusive Negotiations

In examining the means by which the parties arrived at the settlement agreement, the Court concludes that the negotiations and agreement were non-collusive. The settlement was reached after the parties engaged in five years of litigation, extensive motion practice, and negotiations that were overseen by a neutral third-party mediator, the Honorable William J. Cahill (Ret.) from JAMS. These facts support the conclusion that the settlement agreement is non-collusive and likely to benefit the class members. See, e.g., Harris v. Vector Marketing Corp., No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).

#### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

Although the Court denied Yelp's motion for summary judgment, liability remains highly disputed and uncertain in this case as to each of the individual App Defendants. And Plaintiffs' counsel acknowledge that "variations among the App Defendants in available information regarding users who had their address book data uploaded by a charged app could create ascertainability issues on class certification." ECF No. 879 ¶ 16. Plaintiffs' counsel further declares that "[c]ontinuation of this litigation would be risky, expensive and create substantial delay in recovery to class members." Id. Therefore, this factor weighs strongly in favor of settlement.

#### 3. The Amount Offered in Settlement

To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer. In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). The $5.3 million settlement amount is consistent with the Court's prior ruling concerning nominal damages. ECF No. 761 at 24-25. It also exceeds other data privacy

6

class action settlements that courts in this district have approved. See, e.g., Fraley v. Facebook, Case No. 11-1726 (N.D. Cal.) (approving a $20 million settlement for an estimated 124 million class members); In re Google Referrer Header Privacy Litig., Case No. 10-04809 (N.D. Cal.) (approving a $9 million settlement for an estimated 62 million class members); In re Google Buzz Privacy Litig., Case No. 10-00672 (N.D. Cal.) (approving an $8.5 million settlement for an estimated 37 million class members). Therefore, the settlement amount is substantively reasonable and favors approval.

### 4. The Extent of Discovery Completed and the State of the Proceedings

Plaintiffs contend that "[t]he information revealed in discovery as well as their experts' review and analysis of same, together with the Court's rulings, provided Plaintiffs and their counsel with a sufficient baseline to evaluate the strengths and weaknesses of Plaintiffs' claims and the benefits of the proposed Settlement Agreement." ECF No. 878 at 24. Given the extensive discovery and advanced stage of these proceedings, which have been ongoing for more than five years, the Court agrees that the parties have gathered "sufficient information to make an informed decision about the settlement." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000).

### 5. The Experience and Views of Counsel

Based on his litigation of this case and experience, Plaintiffs' counsel believes that "the Settlement Agreement is fair, reasonable and adequate and in the best interests of the class" because it "provides appropriate monetary relief for Settlement Class Members while allowing them to avoid the risks of unfavorable, and in some cases possibly dispositive, rulings . . ." ECF No. 879 ¶ 19-20. This weighs in favor of approving the settlement agreement.[6]

---

[6] The Court considers this factor, as it must, but gives it little weight. "Although a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." Principles of the Law of Aggregate Litigation § 3.05 comment a (2010).

### 6. The Reaction of Class Members to the Proposed Settlement

The Court will wait until the final approval hearing to determine the reaction of the class members to the settlement.

### 7. Preferential Treatment

The settlement agreement does not provide preferential treatment to any class member. Under the settlement agreement, each class member will receive their pro rata share of the settlement amount based on the number of apps they used that uploaded their address book data. ECF No. 884 §§ 7.1, 7.4, 7.5. This equal method of distribution is reasonable and fair.

### 8. The Presence of Obvious Deficiencies

The Court has reviewed the settlement agreement and did not find any obvious deficiencies. To the extent any objector calls attention to any such deficiency, the Court will consider it at the final approval hearing.

## IV. NOTICE

The Court must separately evaluate the proposed notice procedure. Under Federal Rule of Civil Procedure 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must state:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Plaintiffs propose sending summary notice directly to class members via email and/or tweet. ECF No. 884 §§ 5.2.1, 5.2.2. Because some of the App Defendants cannot identify the specific users who had their address book data uploaded, they will email notice to every user who downloaded and registered for the app during the relevant time period, thus resulting in over-inclusive notice. ECF No. 879 ¶¶ 13, 14. The full notice will be posted on the settlement website.

ECF No. 884 § 5.3. Both the summary notice and the full notice contain each of the required elements listed above and "clearly and concisely state in plain, easily understood language" the key elements of the Settlement and the class members' rights under it. See ECF No. 884-2 (long form notice); ECF No. 884-3 (summary notice via email); ECF No. 884-4 (summary notice via Promoted Tweet); Fed. R. Civ. P. 23(c)(2)(B). Class members are also informed about how to opt out of the class, how to object to the settlement, and how to attend the final approval hearing. See id. In addition, the settlement administrator will set up a toll-free number to call for more information about the settlement. ECF No. 884 § 5.3.

The Court approves this notice procedure.

## V. PLAN OF ALLOCATION

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." In re Oracle Sec. Litig., No. C–90–0931–VRW, 1994 WL 502054, at *1–2 (N.D. Cal. June 16, 1994) (citing Class Pls. v. City of Seattle, 955 F.2d 1268, 1284–85 (9th Cir. 1992)). "A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." In re Oracle Sec. Litig., No. 90-0931, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 16, 1994).

The settlement agreement provides that payments to each class member will be allocated on a pro rata basis that takes into account the number of apps that each class member used, with no portion reverting to Defendants. ECF No. 884 §§ 7.1, 7.4, 7.5, 7.10.2-7.10.4. This equal method of distribution is fair in light of the nominal damages sought in this case.

## VI. ATTORNEYS' FEES AND INCENTIVE AWARDS

The settlement agreement contemplates a separate petition to allocate a portion of the settlement payment to reasonable attorneys' fees and incentive awards for representative Plaintiffs. ECF No. 884 §§ 8.1, 9.1. Although this matter will be separately briefed, the Court reminds class counsel that, absent "special circumstances," the benchmark for attorneys' fees in this Circuit is

9

twenty-five percent. Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)).

**CONCLUSION**

The Court grants the motion for preliminary approval and further orders as follows.

1.     The Court provisionally certifies a settlement class comprising all natural persons in the United States who meet one or more of the following class definitions:

- who received from Apple's App Store a copy of versions 2.5 through 3.1 of the iOS mobile application entitled Foodspotting, and activated via such App on their Apple iDevice the "Find iPhone Contacts" feature of the Foodspotting mobile application between August 9, 2011 and February 19, 2012;

- who received from Apple's App Store one or more of versions 1.1 through 4.2 of the iOS mobile application entitled Foursquare, and did one or both of the following between April 4, 2009 and February 14, 2012: (1) for versions 1.1 through 4.2, activated via such App on their Apple iDevice (iPhone, iPad, iPod Touch) the "Add Friends" feature of the Foursquare mobile application or (2) for versions 3.1 through 4.2, registered via their iDevice as a Foursquare user through the Foursquare mobile application;

- who received from Apple's App Store one or more of versions 1.5.0 through 4.1 of the iOS mobile application entitled Gowalla, and did one or both of the following within the Gowalla mobile application between February 23, 2010 and February 23, 2012: (1) selected a checkbox stating "Automatically connect with friends from my address book" and then depressed a "Let's Get Started" button; (2) depressed a "Find Friends" button and then depressed an "Address Book" button;

- (A) owned an Apple iDevice on which he or she registered an account for any of the versions 1.0.0 through 2.0.7 of the Instagram App obtained from the Apple App Store; (B) utilized the Find Friends feature of the Instagram App between October

10

6, 2010 and February 10, 2012; and (C) resided within the United States at the time he or she registered an Instagram account and used the Find Friends Feature;

- (A) owned an Apple iDevice on which he or she downloaded from Apple App Store, installed, and registered an account on the Kik App; (B) installed version 5.4.0 of the Kik App; (C) after installing version 5.4.0, utilized the Suggested Friends feature of the Kik App between December 22, 2011 and February 11, 2012; (D) as a result of such use of the Suggested Friends Feature, had contacts data uploaded to Kik's servers in non-hashed format; and (E) resided within the United States at the time he or she registered a Kik account and used the Suggested Friends Feature;

- who received from Apple's App Store a copy of version 2.0 through 2.0.5 of the iOS mobile application entitled Path, and who were Path registrants and activated via such App on their Apple iDevice the Path mobile application between November 29, 2011 and February 7, 2012;

- who received preinstalled on an Apple iDevice and/or from Apple's App Store between March 11, 2011 and February 21, 2012 a copy of versions 3.3 through 4.0.1 of the iOS mobile application entitled Twitter, and activated via such App on their Apple iDevice the "Find Friends" feature of the Twitter mobile application; and/or

- who received from Apple's App Store a copy of versions 4.0.0 through 5.6.0 of the iOS mobile application entitled Yelp, and activated via such App on their Apple iDevice the "Find Friends" feature of the Yelp mobile application between January 16, 2010 and February 22, 2012.

Excluded from the Class are Defendants, any entities in which Defendants have a controlling interest or which have a controlling interest in Defendants, Defendants' respective officers, directors, employees, subsidiaries, affiliates, and attorneys, and the

11

Judge presiding over the Action and any of their employees or immediate family members.

2. Plaintiffs are conditionally certified as the Class Representatives, and the following law firms are conditionally appointed as class counsel: Kerr & Wagstaffe LLP; Phillips, Erlewine, Given & Carlin LLP; Edwards Law; the Law Offices of Carl F. Schwenker; and Gardy & Notis, LLP.

3. The Court approves the notice plan, including the full notice, summary notice, and claim form. The Court also approves the allocation plan.

4. The Court adopts the following schedule as proposed by the Plaintiffs:

| Event | Date |
| --- | --- |
| Last day for settlement administrator to send notice and start operating settlement website | August 11, 2017 |
| Last day for Plaintiffs to file their motion for attorneys' fees, costs, and incentive awards | September 22, 2017 |
| Last day for class members to file a claim, request exclusion, or object to the settlement | November 10, 2017 |
| Last day for parties to file motion for final approval and supporting briefs | November 30, 2017 |
| Hearing on motion for final approval and motion for attorneys' fees, costs, and incentive awards | December 14, 2017 at 2:00pm |

IT IS SO ORDERED.

Dated: July 6, 2017



JON S. TIGAR
United States District Judge

12