UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC OPPERMAN, et al., <br><br>　　　　Plaintiffs, <br><br>　v. <br><br>KONG TECHNOLOGIES, INC., et al., <br><br>　　　　Defendants. | Case No. 13-cv-00453-JST <br><br>**ORDER GRANTING FINAL APPROVAL AND GRANTING IN PART ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS** <br><br>Re: ECF Nos. 903, 910 |

Before the Court are Plaintiffs' unopposed motion for final approval of class action settlement, ECF No. 910, and Plaintiffs' unopposed motion for attorneys' fees, costs, and incentive awards, ECF No. 904. The Court previously granted a motion for preliminary approval of the settlement, ECF No. 894, and held a final fairness hearing on the pending motions on December 14, 2017. The Court will grant the motion for final approval, and will grant in part and deny in part Plaintiffs' motion for attorneys' fees, costs, and incentive awards.

## I.　BACKGROUND

### A.　The Parties and Claims

Plaintiffs are users of Apple iOS applications, or "apps," that allegedly unlawfully uploaded their address book data without their knowledge or consent. They brought this action for invasion of privacy and other claims on behalf of themselves and similarly situated app users against Apple and various application developers ("App Defendants").[1] ECF No. 478 ¶¶ 246,

---

[1] The App Defendants include Foodspotting, Inc. ("Foodspotting"), Foursquare Labs, Inc. ("Foursquare"), Gowalla, Inc. ("Gowalla"), Instagram, LLC ("Instagram"), Kik Interactive, Inc. ("Kik"), Kong Technologies, Inc. (formerly known as Path, Inc.) ("Path"), Twitter, Inc. ("Twitter"), and Yelp! Inc. ("Yelp"). At one time, there were additional application developer defendants, but they are no longer parties to the case.

250-52. Plaintiffs filed their case in March 2012, and since that time the parties have briefed several rounds of motions to dismiss, strike, sever, and transfer; conducted significant formal discovery including forensic imaging of Plaintiffs' phones, depositions, and the deployment of source code experts; and briefed multiple summary judgment motions. ECF No. 894 at 1-2.

On July 15, 2016, the Court certified Plaintiffs' invasion of privacy claims for class resolution against defendants Path and Apple, including claims for nominal and punitive damages. ECF No. 761 at 3, 25-28.[2] After further motion practice and a mediation with retired judge William Cahill, the parties reached a formal settlement in November 2016, filed a notice of settlement with this court, ECF No. 856, and moved for preliminary approval. ECF No. 878. The Court granted preliminary approval in July 2017. ECF No. 894.

**B.     Terms of the Settlement**

The settlement agreement provides that the App Defendants will pay $5.3 million to establish a non-reversionary common fund from which class members who submit valid claims will be sent cash or cash-equivalent payments on a per-app basis. ECF No. 884 §§ 1.37, 2.1-2.3, 7.8.[3] The App Defendants other than Foodspotting, Gowalla, and Yelp will separately pay the costs of settlement administration. Id. §§ 1.2, 5.1-5.4, 8.3. The settlement agreement does not include dismissed claims, including those claims against Apple for misrepresentation and false advertising. ECF No. 902.

The class is comprised of all persons in the United States who activated one of the applicable apps on an Apple device during the relevant time period.[4] Each class member will receive a pro-rata amount depending on how many of the apps they designated on their electronic claim form (up to eight). ECF No. 884 §§ 7.7, 7.8, 7.5. The funds will be dispersed either in a

---

[2] The Plaintiffs brought several other claims against Apple, as to which the Court denied class certification. ECF No. 900. The Plaintiffs subsequently stipulated to the dismissal of those claims with prejudice. ECF No. 902.

[3] The parties agree that this settlement resolves the invasion of privacy claims against Apple that the Court previously certified for class resolution, although Apple is not contributing to the settlement fund.

[4] The detailed class definition is described at ECF No. 910 at 9-10.

2

check, valid for ninety days, or in a cash value credit on Amazon.com with no expiration date. Id. §§ 7.4, 7.7, 7.8. Any funds from checks not cashed or failed Amazon payments will be distributed on a *cy pres* basis to the Electronic Frontier Foundation, a leading non-profit defending civil liberties in the digital world. Id. § 7.10.4.

## II. FINAL APPROVAL OF SETTLEMENT AGREEMENT

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Id. at 1026. To assess a settlement proposal, the district court must balance a number of factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant;[5] and (8) the reaction of the class members to the proposed settlement.

Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004).

### A. Adequacy of Notice

"The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). The Court approved the parties' proposed notice procedures, ECF No. 894. Notice was carried out substantially in compliance with this plan. ECF No. 910.

The settlement administrator, KCC Class Action Services, LLC ("KCC") established a settlement website and a toll-free number. ECF No. 910 at 11. KCC sent notices to over 13 million potential class members by email, implemented a twitter campaign over the course of three

---

[5] There is no governmental participant in this case, so the Court need not consider this factor.

3

months, and sent reminder notices. Id. 91,739 class members submitted claims. Id. at 12.[6]
In light of these actions, and the Court's prior order granting preliminary approval, the Court finds the parties have provided adequate notice to the settlement class members.

Defendants have also provided the required notice to federal and state attorneys general under the Class Action Fairness Act. 28 U.S.C. § 1715(d) ("An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b)."). ECF No. 919.

### B. Fairness, Adequacy, and Reasonableness

#### 1. Strength of Plaintiffs' Case; Risk, Expense, Complexity, and Likely Duration of Continuing Litigation; and Risk of Maintaining Class Status Throughout Trial

Approval of a class settlement is appropriate when "there are significant barriers plaintiffs must overcome in making their case." Chun-Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). As the Court at the preliminary approval stage, "liability remains highly disputed and uncertain in this case as to each of the individual App Defendants." ECF No. 894 at 6. Moreover, since this Court granted preliminary approval, it denied class certification on Plaintiffs' claims against Apple. ECF No. 900. This "determination highlights the difficulties that Plaintiffs would need to overcome in order to certify a class against any App Defendant that would obtain more than nominal damages on behalf of the class." ECF No. 910 at 15. The difficulties and risks of further litigation weigh in favor of approving a class settlement. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965-66 (9th Cir. 2009). Accordingly, this factor weighs in favor of granting final approval.

#### 2. Settlement Amount

"In assessing the consideration obtained by the class members in a class action settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must

---

[6] Because of duplication and fraudulent claims, Plaintiffs estimate that 81,853 class members submitted legitimate claims for approximately 298,772 app downloads. ECF No. 910 at 12.

4

be examined for overall fairness.'" Nat'l Rural Telecomms. Cooperative v. DIRECTV, Inc., 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting Officers for Justice, 688 F.2d at 628). "In this regard, it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." Id. (citing Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998)).

In this case, each class member will receive a pro rata distribution of the $5,300,000 settlement fund based on the number of apps they downloaded. ECF No. 910 at 8. Given the number of submitted claims, each class member who did submit a claim will receive, on average, $39, or $10.70 per app downloaded. ECF No. 910 at 13. Given that the Court certified only claims for nominal and punitive damages, the settlement is possibly a better result than the potential recovery available at trial.[7] This factor weighs in favor of approval.

### 3. Extent of Discovery

Discovery in this case was extensive. It included more than a dozen depositions, hundreds of written discovery requests, e-discovery, and forensic imaging. ECF No. 878 at 11. The Court concludes that the parties have "sufficient information to make an informed decision about settlement." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted). This factor also weighs in favor of approval.

### 4. Counsel's Experience

Plaintiffs' counsel recommends the Court approve the settlement. "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted). Counsel for both sides have substantial experience, and the settlement was reached after a three full days of mediation with a JAMS mediator. ECF Nos. 905-909. This factor weighs in favor of approval.[8]

---

[7] The high per-class-member recovery figure is driven by the low claims rate. The class is comprised of approximately 1.9 million persons, meaning that more than 95 of class members did not submit claims.

[8] The Court considers this factor, as it must, but gives it little weight. "[A]lthough a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." Principles of the Law of Aggregate Litigation § 3.05 cmt. a (Am. Law. Inst. 2010).

5

#### 5. Reaction of the Class

Finally, class members' positive reaction to a settlement weighs in favor of settlement approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." In re Omnivision, 559 F. Supp. 2d at 1043 (citation omitted).

In this case, eight class members opted out of the settlement, and none has objected. ECF No. 910 at 8. The App Defendants estimate that the class members made 7 million app downloads. Id. at 10-11.[9] On average, class members who submitted claims made 3.7 downloads each. Id. at 11. A fair estimate of the class size is therefore approximately 1.9 million. Against this backdrop, the lack of any objection and the receipt of only eight opt-opts constitutes a positive reaction. This factor weighs in favor of approval. See e.g., Churchill Vill., 361 F.3d at 577 (approving a settlement that received 45 objections (.05%) and 500 opt-outs (.56%) out of 90,000 class members).

After reviewing all of the required factors, the Court finds the settlement fair, reasonable, and adequate, and grants Plaintiffs' motion for final approval of the settlement.

### III. ATTORNEYS' FEES AND COSTS

#### A. Common Fund

Plaintiffs in this case request a fee award out of the common fund. Specifically, Plaintiffs request an award from the common fund of $1,590,000, constituting 30% of the $5,300,000 settlement proceeds. No one has opposed the Plaintiffs' motion for attorneys' fees, costs, and incentive awards. ECF No. 903.

"Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. In re Bluetooth Headset Products Liability Litig., 654 F.3d 935, 942 (9th Cir. 2011) (citation omitted). "Because the benefit to the

---

[9] The App Defendants provided an "overinclusive" list of 13 million potential users, all of whom received notice of the settlement. ECF No. 910 at 10-11.

class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." Id.

"Applying this calculation method, courts [in the Ninth Circuit] typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." Id. (citing Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)). The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." Six (6) Mexican Workers, 904 F.2d at 1311. When considering whether to depart from the 25% benchmark, courts consider a number of special factors, including whether class counsel "'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047-50 (9th Cir. 2002)).

Plaintiffs argue that special circumstances support departure from the circuit benchmark. First, Plaintiffs argue that the result achieved is consistent with the Court's prior ruling providing for nominal damages, ECF No. 761 at 24-25. According to Plaintiffs, moreover, the settlement amount, $5.3 million, exceeds on a per head basis other data privacy class action settlements. See, e.g., In re Google Referrer Header Priv. Litig., 87 F. Supp. 3d 1122, 1129, 1132 (N.D. Cal. 2015) ($8.5 million settlement for over 100 million class members in digital privacy case); Fraley v. Facebook, No. C 11-1726-RS, 2013 WL 4516806, at *1 (N.D. Cal. Aug. 26, 2013) ($20 million settlement).

Plaintiffs also argue that the quality of representation was high, as class counsel certified a contested class, defeated a motion for summary judgment, survived repeated motions to dismiss, and navigated complex discovery. ECF No. 903 at 10. As to the novelty and complexity of the

matter, Plaintiffs argue the case involved new and complicated "substantive issues of federal and state privacy law as they relate to modern app technology" as evidenced by the lengthy docket and numerous published decisions. Id. Finally, Plaintiffs argue the case was prosecuted on a contingent basis. Id.

Most convincingly, however, Plaintiffs argue that the 30% fee is reasonable in light of their much larger lodestar fee amount. Id. at 9. Where, as here, 25% would result in a negative lodestar multiplier, this Court has awarded fees in excess of that benchmark. Betancourt v. Advantage Human Resourcing, Inc., No. 14-CV-01788-JST, 2016 WL 344532, at *8 (N.D. Cal. Jan. 28, 2016) (awarding 34.3% of settlement when counsel was seeking 72% of its lodestar); Bennett v. SimplexGrinnell LP, No. 11-CV-01854-JST, 2015 WL 12932332, at *5-6 (N.D. Cal. Sept. 3, 2015) (awarding 38.8% of settlement fund, which amounted to 59.7% of lodestar). Plaintiffs claim that under the lodestar method, their fees total over $4 million, as the case was "fiercely litigated" for over 7000 hours. ECF No. 903 at 5-6. As a result, Plaintiffs claim that their requested fee of $1,590,000 under the common fund method is "unquestionably reasonable." Id. at 4-5. The Court conducts a detailed lodestar crosscheck infra, and concludes that the requested fee is significantly lower than the lodestar. Combined with the duration and complexity of the case, this factor justifies a departure from the 25% benchmark. The Court finds that the requested fee is reasonable.

**B.   Lodestar comparison**

The Court performs a lodestar cross-check to ensure the reasonableness of its selected percent-of-the-fund award. To "determin[e] the amount of a reasonable fee" under the lodestar method, a court takes "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). A district court must then "exclude from this initial fee calculation hours that were not 'reasonably expended.'" Id. at 434 (citation omitted). When determining the correct number of hours and fees associated with proper billing for those hours, "the determination of fees 'should not result in a second major litigation'" and "trial courts need not, and indeed should not, become green-eyeshade accountants." Fox v. Vice, 563 U.S. 826, 838 (2011) (quoting Hensley, 461 U.S. at 437). Rather,

8

the Court seeks to "do rough justice, not to achieve auditing perfection." Fox, 563 U.S. at 838.

The reasonable hourly rate must be based on the "experience, skill, and reputation of the attorney requesting fees." Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986), amended, 808 F.2d 1373 (9th Cir. 1987). To determine a reasonable hourly rate, the court looks to "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." Chalmers, 796 F.2d at 1210-11. The relevant community is typically the forum, here, San Francisco, California. Schwarz v. Sec'y of Health & Human Servs., 73 F.3d 895, 906 (9th Cir. 1995). To inform and assist the Court in making this assessment, "the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). Plaintiffs claim hourly rates of $350 to $800 for attorneys, and $195 to $200 for paralegals and law clerks, as follows:

| Timekeeper | Admitted to Bar | Hourly Rate |
| --- | --- | --- |
| David M. Given | 1986 | $750 |
| Nicholas A. Carlin | 1983 | $750 |
| Conor H. Kennedy | 2010 | $450 |
| Brian S. Conlon | 2011 | $450 |
| Anna G. Wald | 2015 | $350 |
| PEG&C paralegal and law clerks | n/a | $195 |
| Michael von Lowenfeldt | 1995 | $700 |
| James Wagstaffe | 1980 | $800 |
| Michael Ng | 2001 | $650 |
| Frank Busch | 2008 | $450 |
| Daniel Veroff | 2013 | $350 |
| Julie Stockton | 2012 | $350 |
| Daniel Zarchy | 2015 | $295 |

9

| K&W Paralegals | n/a | $200 |
| --- | --- | --- |
| Jeff Edwards | 1999 | $650 |
| Scott Medlock | 2005 | $525 |
| David James | 2014 | $400 |
| Sean Flammer | 2007 | $475 |
| Jennifer Sarnelli | 2003 | $575-725[10] |
| Mark C. Gardy | 1984 | $725-825 |
| James S. Notis | 1994 | $725-825 |
| Orin Kurtz | 2004 | $475-650 |
| Charles Germershausen | 2006 | $425-475 |
| Kira German | 2007 | $400-450 |
| Carl F. Schwenker | 1993 | $675 |

Class counsel each compared their fees to those in the Laffey Matrix for the San Francisco, California area and affirmed that their rates were comparable. See, e.g., ECF No. 907 ¶ 8. The Ninth Circuit has explained that "the relevant community [for purposes of determining reasonable hourly rates] is the forum in which the district court sits." Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997). The rates requested are in line with those in this district. Betancourt, 2016 WL 344532, at *8 n.5 (noting that "reasonable rates for partners range from $560 to $800, associates range from $285 to $510, and paralegals and litigation support staff range from $150 to $240"). The Court concludes that the rates requested by class counsel are reasonable.

As for the amount of hours, PEG&C spent 147.9 hours on attorney and client meetings/strategy, 92.9 hours on case and file management, 933.4 hours on research, pleadings, and motions, 827.2 hours on discovery, 20.6 hours on court appearances, and 155.5 hours on settlement for a total of 2,177.5 hours and a total lodestar of $987,010. ECF No. 905 at 6-11.

Kerr & Wagstaffe spent 416 hours on attorney strategy, 106 hours on case management, 90

---

[10] The range of hourly rates for Gardy & Nortis lawyers is accounted by increasing hourly rates over time between 2012 and 2017. ECF No. 908 at 7.

hours on client communications, 1,197 hours on research, motions, and court appearances, 397 hours on discovery, and 258 hours on settlement for a total of 2,547.6 hours and a total lodestar of $1,177,228.33. ECF No. 906 at 7-10.

Edwards Law spent 126.3 hours on attorney strategy, 22.1 hours on case management, 160.3 hours on client meetings, 241.7 hours on pleadings, court appearances, and research, and 601.6 hours on discovery, for a total of 1,152 hours and a total lodestar of $629,426. ECF No. 907 at 6-9.

Gardy & Nortis spent a total of 401.2 hours for a total lodestar of $236,752.5. ECF No. 908 at 7. While Gardy & Nortis provides the number of hours per attorney per task code, the firm neither describes what the tasks codes represent, nor the total firm hours per type of task. Id. at 8. In light of the Court's ultimate conclusion regarding the relationship between the lodestar and the requested fee, *see infra*, the Court elected not to request further briefing on this point.

The Law Offices of Carl. F. Schwenker, spent a total of 3,855.1 hours for a total lodestar of $2,602,192.5. These hours included 207.5 hours of attorney strategy, 42.4 hours of case management, 258.8 hours of client meetings and settlement, 1,169.3 hours of pleadings, motions, research and court appearances, and 553.4 hours of discovery. ECF No. 909 at 11-12. Only 57.9% of this time, or $1,506,669, was incurred from October 2013 to August 2017, the time during which all other counsel requested fees, including the Edwards Law Firm, who has been on the case for the same amount of time as Schwenker. ECF Nos. 909 at 5; 907 at 3. Schwenker did not explain why the firm should be entitled to fees for a longer time period than other class counsel, and the Court declines to consider that time period. Accordingly the appropriate lodestar for Schwenker is reduced at the outset to $1,506,669.

Schwenker's fees are also significantly larger than those any other firm, including the larger firms which served as co-lead counsel. This may well be because Schwenker incurred all of the fees himself as partner, instead of delegating tasks to associates or paralegals on the class counsel team. Courts have the discretion to reduce the hourly rate for tasks that less skilled persons could have performed. Ferland v. Conrad Credit Corp., 244 F. 3d 1145, 1148 (9th Cir. 2001). To adjust the lodestar for the excessive fees requested by Schwenker the Court both only

11

1 includes the four year period considered by the other firms and reduces them in amount to the
more reasonable fees requested by the Edwards firm, who appears to have performed similar work
over a similar time period, for a total of $629,426. ECF No. 907 at 6-9.

Even after these reductions, however, the lodestar comparison still reveals that Plaintiffs' fees are reasonable. As a percentage of the common fund, class counsel request $1,590,000, ECF No. 903 at 4, and the lodestar as adjusted for the reductions in Schwenker's requested fees is $3,659,843. Thus, the requested fees are a small percentage – 43% – of the adjusted lodestar. Comparing a percentage fee award to the lodestar "provides a check on the reasonableness of the percentage award." Vizcaino, 290 F.3d at 1050. Percentage awards in the range of one to four times the lodestar are common. Id. at 1051 n.6 (citing In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." (quoting 3 Newberg § 14.03 at 14-15))). The comparison therefore reveals that Plaintiffs are requesting lower fees than the lodestar and the requested fees are reasonable.

## IV. COSTS

The Plaintiffs also request $150,000 in costs pursuant to the limit stated in the Class Notice. ECF No. 884-2 ¶ 11. According to Class Counsel, this amount "is a substantially reduced figure agreed to by counsel in the overall context of the Settlement" and only partially reimburses, for example, the costs of discovery, expert analysis, and mediation expenses. ECF No. 903 at 11-12. Pursuant to the Court's instruction during the final fairness hearing on December 14, 2017, the Plaintiffs submitted receipts showing costs in excess of $150,000. ECF No. 920. A review of the receipts shows that counsel for Plaintiffs indeed incurred over $150,000 in costs. Id. The Court approves the Plaintiffs' reasonable cost request.

## V. INCENTIVE AWARDS

Finally, Plaintiffs request incentive awards of $15,000 to each of the thirteen named class representatives. ECF No. 903 No. 2. Incentive awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness

to act as a private attorney general." Rodriguez, 563 F.3d at 958-959 (internal citation omitted). Courts evaluate incentive awards individually, "using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003) (citation and internal quotations and alterations omitted). Indeed, "courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013). "An incentive award of $5,000 is presumptively reasonable, and an award of $25,000 or even $10,000 is considered 'quite high.'" In re: Cathode Ray Tube (CRT) Antitrust Litig., No. 1917, 2016 WL 4126533, at *11 (N.D. Cal. Aug. 3, 2016) (citation omitted).

The requested awards in the aggregate, $195,000, represent 3.7% of the $5.3 million settlement fund. ECF No. 903 at 12. Each class representative submitted a declaration explaining the time, effort, and risk involved in prosecuting the case. ECF No. 904 at 6. The hours expended on the case by each class representative varied widely, from 30 to 160 hours, but generally were not substantial. See Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 336 (N.D. Cal. 2014) (awarding $10,000 where plaintiffs contributed 200 hours). Moreover, unlike in employment cases, does not appear that the class representatives encountered great personal risk in prosecuting the case. Boring v. Bed Bath & Beyond, No. 12-CV-05259-JST, 2014 WL 2967474, at *3 (N.D. Cal. June 30, 2014) (holding that $7,500 was a reasonable enhancement award where class representative risked backlash from defendant (his employer)). While the class representatives explained that they "provided extensive and very personal information to Class Counsel . . . including contacts from [their] phone[s] and detailed information about those contacts," these risks are not as acute as those in the employment context. ECF No. 904 at 33. Moreover, given that each class member will receive an average of $39, the requested incentive award is approximately 385 times the average class member's recovery. "[T]o ensure that an incentive payment is not excessive, the court must balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment."

13

Wren v. RGIS Inventory Specialists, No. C-06-05778 JCS, 2011 WL 1230826, at *32 (N.D. Cal. Apr. 1, 2011), supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011) (quoting Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003)). Accordingly, the Court denies the request for incentive awards in the amount of $15,000. After reviewing the declarations of the thirteen class representatives, the Court grants the following incentive awards: $7,500 to each of Stephanie Cooley, Steve Dean, Jason Green, and Gentry Hoffman; and $5,000 each to Allen Beurershausen, Giuliana Biondi, Lauren Carter, Claire Hodgins, Rachelle King, Nirali Mandalaywala, Claire Moses, Judy Paul, and Greg Varner.

## CONCLUSION

The Court grants final approval of the proposed settlement and grants in part and denies in part Plaintiffs' motion for attorneys' fees, costs, and incentive awards. The Plaintiffs' requested fees and costs are granted in full, and the Court grants incentive awards of either $7,500 or $5,000 as set forth above.

**IT IS SO ORDERED.**

Dated: March 27, 2018

_____
JON S. TIGAR
United States District Judge

14